# <u>Exhibit A</u>

Interim Order

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone: (775) 823-2900
Facsimile: (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

NORTHERN NV ACQUISITIONS, LLC

- ☐ Affects this Debtor
- ☐ Affects all Debtors
- ☐ Affects Reno Land Holdings, LLC
- ☐ Affects River Central, LLC
- ☐ Affects Tropicana Station, LLC
- ☐ Affects FCP Holding, Inc.
- ☐ Affects FCP Voteco, LLC
- ☐ Affects Fertitta Partners LLC
- ☒ Affects Station Casinos, Inc.
- ☐ Affects FCP MezzCo Parent, LLC
- ☐ Affects FCP MezzCo Parent Sub, LLC
- ☐ Affects FCP MezzCo Borrower VII, LLC
- ☐ Affects FCP MezzCo Borrower VI, LLC
- ☐ Affects FCP MezzCo Borrower V, LLC
- ☐ Affects FCP MezzCo Borrower IV, LLC
- ☐ Affects FCP MezzCo Borrower III, LLC
- ☐ Affects FCP MezzCo Borrower II, LLC
- ☐ Affects FCP MezzCo Borrower I, LLC
- ☐ Affects FCP PropCo, LLC

Chapter 11

Case No. _____________;
Jointly Administered

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 552 AND FED. R. BANKR. P. RULE 4001(b), (c) AND (d) (I) AUTHORIZING THE DEBTORS TO (A) USE CASH COLLATERAL; (B) OBTAIN UNSECURED, SUBORDINATED POST-PETITION FINANCING; (C) MAKE LOANS TO NON-DEBTOR SUBSIDIARIES, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) GRANTING RELATED RELIEF, AND (IV) SCHEDULING FINAL HEARING**

Hearing Date: July 30, 2009
Hearing Time: 1:30 p.m.

The motion, dated July 28, 2009 (the "Motion"), of Station Casinos, Inc.[1] ("SCI") and its affiliated debtors and debtors in possession other than the CMBS Debtors[2] (collectively, the "Debtors", which term as used herein, for the avoidance of doubt, shall not include the CMBS Debtors) in the above-captioned chapter 11 cases (the "Chapter 11 Cases") requesting entry of an interim and final order pursuant to sections 105, 361, 362, 363, 364 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeks, among other things:

(a) Cash Collateral Use.[3] SCI may use cash (which is generated primarily from the operation by the non-debtor Guarantors[4] and Unrestricted Subsidiaries of their casinos and related assets), including all of the Prepetition Secured Parties' cash collateral (as defined in section 363 of the Bankruptcy Code, the "Cash Collateral") and all products and proceeds thereof, now owned or hereafter acquired, in which the Prepetition Agent, on behalf of the Prepetition Secured Parties, purports to have a lien or security interest, to satisfy the Debtors' and certain of their subsidiaries' ongoing general corporate and working capital expenses, to pay operating costs and other expenses, subject to the terms of this Interim Order, including, without limitation, the Budget (defined below) and to make adequate protection payments to the Prepetition Agent (defined below). Notwithstanding anything herein to the contrary, neither the Debtors nor any other estate representatives (including, without limitation, the Committee or any trustee) shall use or be permitted to use any cash or Cash Equivalents deposited or maintained from time to time in the

---

[1] The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, SCI, FCP Holding, Inc. ("FCP Holding"), FCP Voteco LLC ("FCP Voteco") and Fertitta Partners LLC ("Fertitta Partners", and together with FCP Holding and FCP Voteco, the "Holding Companies"), FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC and FCP PropCo, LLC. Collectively, the Holding Companies own one hundred percent (100%) of the stock of SCI.

[2] The "CMBS Debtors" are, collectively, FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC. The CMBS Debtors did not join in making the Motion, are not seeking any relief under the Motion and are not awarded any relief under this Interim Order.

[3] In the event of any conflict or inconsistency between the summaries provided in the introductory paragraphs of this Interim Order, on the one hand, and the specific terms, conditions and provisions set forth elsewhere in this Interim Order, the specific terms, conditions and provisions of this Interim Order shall prevail.

[4] Capitalized terms used but not defined herein have the meanings given them in the Motion, the Prepetition Loan Agreement or, if not defined therein, the Forbearance Agreement (each as defined below).

letter of credit cash collateral account (the "L/C Cash Collateral Account"; and the amounts deposited or maintained therein the "L/C Cash Collateral") established pursuant to the L/C Cash Collateral Agreement, and the term "Cash Collateral" as used herein shall not include the L/C Cash Collateral. For the avoidance of doubt, cash or Cash Equivalents pledged to Bank of America, N.A. by Vista (as defined below), a non-debtor, wholly owned subsidiary of SCI, to secure the Cash Management Obligations of SCI and its Subsidiaries (the "CMO Cash Collateral") shall not be "Cash Collateral" as such term is used herein and nothing herein shall be deemed to authorize the Debtors, their Subsidiaries or any estate representative (including, without limitation, the Committee or any trustee) to use the CMO Cash Collateral.

(b) Adequate Protection. The Prepetition Agent (for the benefit of the Prepetition Secured Parties) shall receive all of the following adequate protection in respect of the use, sale or lease of the Prepetition Collateral, including the use of Cash Collateral, the Carve-Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code: (A) replacement liens on all assets (other than "Excluded Assets" as defined in the prepetition Security Agreement) of the Debtors, whether now owned or hereafter acquired, and the products and proceeds thereof, pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code; (B) a superpriority claim against the Debtors pursuant to section 507(b) of the Bankruptcy Code; (C) a catch up payment of all unpaid prepetition interest and fees (including, without limitation, Letter of Credit fees and agency fees); (D) current cash payment of all postpetition interest and fees (including, without limitation, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued under the Prepetition Loan Agreement or such other applicable prepetition agreements; (E) current cash payment to the prepetition Term Lenders of scheduled principal amortization payments in the amounts and on the dates due in accordance with the Prepetition Loan Agreement (without giving effect to the acceleration of the Obligations); (F) payment of prepetition and postpetition reasonable fees and expenses of the Prepetition Agent's lead co-counsel, local counsel and financial advisor and a single legal counsel to each other Agent; and (G) confirmation of liens on all assets of Past Enterprises, Inc. ("Past Enterprises"), including, without limitation, all deposit accounts of Past Enterprises, in favor of the Prepetition Agent to secure the Prepetition Obligations.

(c) Automatic Stay. The Automatic Stay is modified and vacated to the extent necessary to permit the Prepetition Agent to exercise its rights and remedies following the written notice of the occurrence of an Event of Default (defined below) under this Interim Order, subject to SCI's right to challenge the occurrence of such Event of Default and seek non-consensual use of Cash Collateral.

(d) Drop Down Loans and CV PropCo Contributions.

(i) Drop Down Loans: The Drop Down Loans (defined below) are intercompany loans from SCI (as lender) to (x) Past Enterprises and (y) the non-debtor Unrestricted Subsidiaries and Joint Ventures named on Schedule 2 attached hereto (Past Enterprises and the entities set forth on Schedule 2 attached hereto are referred to herein as the "Drop Down Borrowers", which term, for the avoidance of doubt, shall not include any CMBS Debtors). All proceeds of Drop Down Loans received by Past Enterprises (as a Drop Down Borrower) shall be on-lent to the applicable non-debtor Guarantors set forth on Schedule 1 attached hereto, in each case, subject to the Budget. Except for Drop Down Loans to Past Enterprises, SCI shall not make any Drop Down Loans directly to non-debtor Guarantors set forth on Schedule 1.

(ii) CV PropCo Contributions: The CV PropCo Contributions (defined below) are cash equity contributions made by SCI to CV HoldCo, LLC, a wholly owned, non-debtor Subsidiary of SCI ("CV HoldCo"). CV HoldCo, in turn, will immediately contribute the proceeds of such intercompany advances as a cash equity contribution to its wholly owned subsidiary, CV PropCo, LLC ("CV PropCo").

(iii) Purpose: The proceeds of the Drop Down Loans shall be used by the Drop Down Borrowers for working capital and general corporate purposes and, in each case, subject to the Budget (it being understood and agreed that Past Enterprises shall on-lend the proceeds of all Drop Down Loans that it receives to the applicable non-debtor Guarantors set forth on Schedule 1 for their working capital and general corporate purposes and, in each case, subject to the Budget). The proceeds of the CV PropCo Contributions shall be used by CV PropCo to make regularly scheduled interest payments at the non-default rate on its Land Loan, and to pay its insurance premiums and property taxes, all of which payments shall be subject to the Budget (collectively, the "CV PropCo Payments").

(iv) Use of Cash Collateral: Each Drop Down Loan and each CV PropCo Contribution made by SCI shall constitute a use of Cash Collateral. As additional adequate protection for such use of Cash Collateral, each Drop Down Loan and each intercompany on-loan made by Past Enterprises to one or more of the non-debtor Guarantors set forth on Schedule 1 attached hereto shall be evidenced by promissory notes which shall be in form and substance satisfactory to the Prepetition Agent and be pledged and promptly delivered (together with endorsements in blank) to the Prepetition Agent and encumbered by the Adequate Protection Liens. The CV PropCo Contributions will be evidenced by the equity of CV HoldCo, LLC. All equity of CV HoldCo has been validly pledged by SCI to, and such pledge duly perfected by, the Prepetition Agent pursuant to the Prepetition Loan Documents (defined below).

(e) Nature and Amount of DIP Financing. Pursuant to a credit agreement, substantially in the form of Exhibit B attached to this Interim Order ("DIP Credit Agreement" and, collectively with any promissory notes executed by SCI in

connection with the DIP Credit Agreement, the "DIP Documents"), Vista Holdings, LLC, a wholly owned "unrestricted" subsidiary of SCI ("Vista") shall from time to time, subject to the terms hereof, lend to SCI up to $150,000,000 in cash on an unsecured and subordinated administrative priority basis under section 364(b) of the Bankruptcy Code[5]. SCI shall exclusively use money borrowed from Vista, prior to the use of any other cash maintained at the Debtors' or in any of their other Subsidiaries' accounts, to fund all disbursements permitted under the Budget, other than disbursements made in respect of the amounts set forth in the following line items of the Budget, which specific items may be paid by Past Enterprises:

(i) the "Operating Disbursements" line items in the Budget identified as: "Payroll and Taxes/Benefits," "Advertising/Marketing/Entertainment," "Gaming Fees and Taxes," "Maintenance/Utilities," "Food and Beverage," and "Other" and

(ii) the "Non-Operating Disbursements" line items in the Budget identified as: "Capital Expenditures," "Required Deposits" and "Other (Shell Gas Deposit)" (the line items identified in clauses (i) and (ii) being the "Excluded Line Items").

Subject to the last sentence hereof, Vista shall fund all disbursements set forth in the Budget (other than disbursements identified in the Excluded Line Items) by making unsecured and subordinated loans to SCI under the DIP Credit Agreement. SCI, in turn, shall use the proceeds of such loans to make Drop Down Loans, CV PropCo Contributions and such other disbursements as are permitted by the Budget. Notwithstanding anything herein or in the DIP Documents to the contrary, Vista shall fund all disbursements permitted by the Budget (other than the Excluded Line Items, which may be funded by Past Enterprises) at any time that Vista's cash balance is equal to or greater than $100,000,000 and, at any time that Vista's cash balance is equal to or less than $100,000,000, then Vista may make the Postpetition Financing available to SCI on a discretionary basis to fund disbursements set forth in the Budget and any such amounts not so funded by loans from Vista may be funded by loans from Past Enterprises to SCI in accordance with the terms of this Interim Order.

In addition to the foregoing relief, the Debtors request that the Court

(i) schedule, through this Interim Order, pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2) and 4001(d), the final hearing on this Motion (the "Final Hearing") on or before August 27, 2009 to consider entry of a final order in form and substance reasonably satisfactory to the Prepetition Agent and the prepetition Required Lenders (provided that any

---

[5] The Court is advised that matters related to financing and cash collateral use for the CMBS Debtors will be addressed in a separate motion.

final order that is substantially consistent with this Interim Order in the form in which this Interim Order was initially presented to the Court shall be subject to approval only by the Prepetition Agent) (the "Final Order") authorizing the use of Cash Collateral, granting of adequate protection to the Prepetition Agent for the benefit of the Prepetition Secured Parties, authorizing borrowings under and approving the terms of the Postpetition Financing, and authorizing SCI's making of Drop Down Loans and CV PropCo Contributions on a final basis as set forth herein; and

(ii) approve the Debtors' notice procedures with respect to the Final Hearing. The Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "Interim Hearing"); and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and all objections to entry of this Interim Order (the "Interim Order") having been resolved or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A. The Debtors duly commenced the Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 28, 2009 (the "Petition Date"), in the United States Bankruptcy Court for the District of Nevada (this "Court").

B. The Debtors intend to operate their businesses and manage their affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C. An official unsecured creditors committee has not yet been appointed in the Chapter 11 Cases.

D. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for this case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors to: (i) the Office of the United States Trustee for the District of Nevada, (ii) counsel to the Prepetition Agent, (iii) the Debtors' 30 largest unsecured creditors on a consolidated basis (including counsel if known), (iv) Vista, (v) the Guarantors, Unrestricted Subsidiaries (including CV HoldCo and CV PropCo) and Joint Ventures named on Schedules 1 and 2 hereto, (vi) the Nevada Gaming Commission, (vii) the CMBS Debtors, (viii) German American Capital Corporation and JPMorgan Chase Bank, as lenders to FCP PropCo and their counsel Sidley & Austin, and (ix) all parties requesting notices pursuant to Bankruptcy Rule 2002 (the "Notice Parties"), by telecopy, email, overnight courier and/or hand delivery. Under the circumstances, the Court concludes that such notice of the Interim Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Rules 2002 and 4001(b), (c) and (d) of the Federal Rules of Bankruptcy Procedure and the local rules of the Court, and that no further notice of, or hearing on, the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

**Prepetition Loan Documents**

F. SCI, as borrower, Deutsche Bank Trust Company Americas ("DBTCA"), as administrative agent (in such capacity and in its capacity as collateral agent under the Prepetition Loan Documents (defined below), together with its successors and assigns, the "Prepetition Agent") and a lender, the other lenders from time to time party thereto (together with DBTCA, the "Prepetition Lenders"), Deutsche Bank Securities, Inc. and J.P. Morgan Securities Inc., as joint lead arrangers and joint bookrunners, JPMorgan Chase Bank, N.A., as syndication agent, and Bank of Scotland plc, Bank of America, N.A. and Wachovia Bank, N.A., as co-documentation agents, are party to that certain Credit Agreement, dated as of November 7, 2007 (as amended, amended and restated, supplemented, or otherwise modified through the date hereof, the "Prepetition Loan Agreement"). The Prepetition Loan Agreement provided for (i) a $250,000,000 term loan facility (the "Term Loan Facility") and (ii) a $650,000,000 revolving credit facility (the "Revolving Credit Facility", and together with the Term Loan Facility, the "Prepetition Credit Facilities").

G. Certain non-debtor wholly-owned subsidiaries of SCI listed on Schedule 1 attached hereto (the "Guarantors" and together with SCI, the "Loan Parties", and collectively with the Holding Companies, the "Credit Parties") have irrevocably guaranteed on a joint and several basis all of the Prepetition Obligations (as defined below) owed by SCI pursuant to the Guaranty Agreement, dated as of November 7, 2007, made by the Guarantors in favor of the Prepetition Agent. The Guarantors are not liable for and have not guaranteed any other third party indebtedness issued by SCI.

H. SCI and certain of the Guarantors[6] have granted liens and security interests to the Prepetition Agent (on behalf of the secured parties named in the Prepetition Security Documents, the "Prepetition Secured Parties") as security for repayment of the Prepetition Obligations in (A) substantially all of their respective personal property, now owned or hereafter acquired and all products and proceeds thereof, pursuant to that certain (i) Security Agreement, (ii) Pledge Agreement, and (iii) Intellectual Property Security Agreement, each dated as of November 7, 2007, and certain other Collateral Documents executed and delivered from time to time and (B) certain parcels of real property pursuant to certain Mortgages (collectively, the "Loan Party Collateral").

I. In addition, each Holding Company has pledged to the Prepetition Agent (on behalf of the Prepetition Secured Parties) all of its equity interests in SCI and all products and proceeds thereof (together with the Loan Party Collateral, the "Prepetition Collateral") as security for the repayment of the Prepetition Obligations, pursuant to that certain Shareholder Pledge and Security Agreement, dated November 7, 2007 (and together with the Security Agreement, the Pledge Agreement, the Intellectual Property Security Agreement, the Mortgages, the other Collateral Documents and any other mortgages, collateral assignments, security agreement supplements, pledge agreement supplements, security agreements, pledge agreements, account control agreements or other agreements purporting to grant a lien on or a security

---

[6] Certain of the Guarantors, designated as "Immaterial Subsidiaries" on Schedule 1 attached hereto, guaranteed the Prepetition Obligations but did not grant liens on their assets to secure the Prepetition Obligations. In addition, Guarantors designated as "Native American Subsidiaries" on Schedule 1 granted liens on some but not all of their assets to secure the Prepetition Obligations, as provided in the Prepetition Security Documents.

interest in the Credit Parties' assets or properties as security for repayment of the Prepetition Obligations, delivered to the Prepetition Agent and/or the Prepetition Lenders from time to time under or in connection with the Prepetition Loan Agreement, the "Prepetition Security Documents", and collectively with the Prepetition Loan Agreement, the Forbearance Agreement (as defined below) and all other documents, agreements or instruments executed or delivered in connection therewith, or relating thereto, the "Prepetition Loan Documents").

**Forbearance Agreement**

J. On July 28, 2009, the Credit Parties, the Prepetition Agent and certain of the Prepetition Lenders entered into a Second Forbearance Agreement; and Second Amendment to the Credit Agreement (as it may hereafter be amended, supplemented or otherwise modified from time in accordance with the terms thereof, the "Forbearance Agreement")[7] pursuant to which the Prepetition Agent and the Prepetition Lenders have agreed (subject to the terms thereof) to (i) forbear from exercising their default-related rights, remedies, powers and privileges against the Guarantors, solely with respect to certain Specified Defaults (as defined in the Forbearance Agreement), and (ii) amend certain provisions of the Prepetition Loan Agreement. The Forbearance Agreement remains in full force and effect, enforceable on a postpetition basis by all parties thereto, pursuant to its terms.

**Stipulations as to Prepetition Credit Facilities**

K. Subject in each case to paragraph 13 hereto, the Debtors (for themselves and the other Credit Parties) admit, stipulate and agree that:

(i) Prepetition Loan Obligations. As of the Petition Date, SCI was indebted and liable to the Prepetition Agent and the Prepetition Lenders (except with respect to claims, counterclaims, offsets or defenses that the Credit Parties have specifically preserved against the Non-Funding Lenders pursuant to, and as such term is defined in, the Forbearance Agreement (the "Reserved Claims")) without objection, defense, counterclaim or offset of any kind under the Prepetition Loan Documents, (a) in the aggregate principal amount of not less than $246,250,000 with respect to the Term Loan Facility and $628,236,586.20 with respect to the

---

[7] Attached as Exhibit B to the Motion.

Revolving Loan Facility (which excludes the undrawn amount of issued Letters of Credit as of the Petition Date), plus accrued (both before and after the Petition Date) and unpaid interest thereon, and the undrawn aggregate amount of issued Letters of Credit as of the Petition Date of $10,184,203, and (b) for fees, expenses and all other Obligations and Secured Obligations (as defined in the Prepetition Loan Documents) whether incurred before or after the Petition Date, including any attorneys', accountants', consultants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents) (clauses (a) and (b), collectively, the "Prepetition Obligations"). As used herein, Prepetition Obligations shall also include Cash Management Obligations and amounts owed by the Credit Parties to counterparties under any Secured Hedge Agreement. As of the Petition Date, the value of the Prepetition Collateral exceeds the amount of the Prepetition Obligations.

(ii) Enforceability of Prepetition Obligations. The Prepetition Obligations constitute the legal, valid and binding obligations of the Credit Parties, enforceable against the applicable Credit Parties in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code with respect to the Debtors).

(iii) Enforceability of Prepetition Liens. The Prepetition Agent (on behalf of the Prepetition Secured Parties) holds perfected, valid, enforceable, and non-avoidable first-priority liens on and security interests in all of the Prepetition Collateral (the "Prepetition Liens"). The respective Prepetition Liens were granted by the Debtors and the other Credit Parties to the Prepetition Agent (on behalf of the Prepetition Secured Parties) for fair consideration and reasonably equivalent value, including the contemporaneous making of Loans and/or Commitments secured thereby.

(iv) No Offsets, Challenges, etc. Except with respect to the Reserved Claims, no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Obligations or the Prepetition Liens exist, and no portion of the Prepetition Obligations or the Prepetition Liens is subject to any contest, attack, obligation, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or any other claim,

cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. Except with respect to the Reserved Claims, the Debtors do not have, hereby forever release, and are forever barred from bringing any claims (including, without limitation, claims for subordination, recharacterization, avoidance or other similar claims), counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise, against the Prepetition Agent or any Prepetition Secured Party and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

(v) No Stay or Modification of Rights. Neither the commencement of the Chapter 11 Cases nor anything in this Interim Order, the Final Order (as defined below) or any other proceeding in the Chapter 11 Cases shall stay or otherwise limit, delay or modify any rights of the Prepetition Agent or Prepetition Lenders against the Guarantors or any collateral granted by the Guarantors; provided that the exercise of all such rights shall be subject to the Prepetition Lenders' agreement to forbear subject to the terms of, and to the extent provided in, the Forbearance Agreement. The Forbearance Agreement, including the amendments to the Prepetition Loan Agreement set forth therein, was entered into in contemplation of the Chapter 11 Cases as a necessary condition to the use of the Cash Collateral. The Prepetition Lenders have consented to the use of their Cash Collateral, and the Debtors have agreed to provide adequate protection as set forth in this Interim Order, in each case in reliance on the validity and enforceability of the Forbearance Agreement by all parties thereto on a postpetition basis in accordance with its terms. Without the Forbearance Agreement, the Debtors' businesses, property and assets, and those of their non-debtor subsidiaries and affiliates, would have dramatically deteriorated in value causing irreparable harm to the Debtors and their estates. The Forbearance Agreement is (x) legal, valid, binding, and enforceable on a postpetition basis against all of the parties thereto and (y) is not subject to any challenge or action of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

**Necessity for and Limitations on Use of Cash Collateral**

L. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d). Good cause has been shown for entry of this Interim Order. The terms herein of the use of Cash Collateral were proposed and negotiated in good faith, and are fair and reasonable. The terms of the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the steering committee of Prepetition Lenders and the Prepetition Agent and pursuant to sections 105, 361 and 363 of the Bankruptcy Code, each member of the steering committee of Prepetition Lenders and the Prepetition Agent is hereby found to have acted in "good faith" in connection with the negotiation and entry of this Interim Order.

M. The availability to the Debtors of sufficient working capital, liquidity and other financial accommodations are vital to their ability to continue their operations. The Debtors require use of their cash (which is generated primarily from the operation by the Guarantors and Unrestricted Subsidiaries of their casinos and related assets), including all Cash Collateral, to carry on the operation of their businesses and to administer and preserve the value of their assets, including the Prepetition Collateral. The Debtors have also requested authorization to obtain the Postpetition Financing (as defined below) from Vista to fund disbursements (other than disbursements identified in the Excluded Line Items, which may be funded from Past Enterprises) set forth in the Budget. Notwithstanding anything herein or in the DIP Documents to the contrary, Vista has committed to fund all disbursements permitted by the Budget (other than the Excluded Line Items, which may be funded by Past Enterprises) at any time that Vista's cash balance is equal to or greater than $100,000,000 and, thereafter, Past Enterprises may fund all disbursements set forth in the Budget and Vista may make the Postpetition Financing available to SCI on a discretionary basis to fund disbursements set forth in the Budget, in each case subject to the terms of this Interim Order.

N. The preservation and maintenance of the Debtors' businesses and their assets is necessary to maximize returns for all creditors, and is significant and necessary to a successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code. Absent the

Debtors' ability to use Cash Collateral and obtain the Postpetition Financing, in each case in accordance with the terms hereof, the continued operation of their businesses would not be possible, and serious and irreparable harm to the Debtors, their estates, and their creditors and equity holders would occur. Authorization to use Cash Collateral, and obtain the Postpetition Financing, is thus (i) critical to the Debtors' ability to reorganize pursuant to the Bankruptcy Code, (ii) in the best interests of the Debtors and their estates and (iii) necessary to avoid immediate and irreparable harm to the Debtors, their creditors, and their assets, businesses, goodwill, reputation and employees.

O. As more fully described in the Motion, prior to the commencement of the Chapter 11 Cases, the Loan Parties managed their cash through a central concentration account held in the name of SCI. SCI and each Guarantor issued checks and commenced electronic transfers drawn on zero balance accounts that were electronically tied to the central concentration account at SCI. In anticipation of the commencement of the Chapter 11 Cases, in cooperation with the Prepetition Agent, a second concentration account was established at Past Enterprises and the principal cash concentration function was transferred from SCI to Past Enterprises. Other than (i) certain intercompany obligations owed by Past Enterprises to other Loan Parties (the right to repayment of such obligations owed to the Loan Parties is pledged to the Prepetition Agent as part of the Prepetition Collateral), and (ii) the Obligations owing to the Prepetition Agent and the Prepetition Secured Parties pursuant to the Prepetition Loan Documents, Past Enterprises does not have any other Indebtedness or other liabilities. All property of Past Enterprises now owned or hereafter acquired and all products and proceeds thereof (including the new concentration account at Past Enterprises) is subject to valid, non-voidable and duly perfected liens in favor of the Prepetition Agent. During the pendency of the Chapter 11 Cases, all cash proceeds of operations of the Guarantors that are not retained at each Guarantor will be concentrated in the Past Enterprises' concentration account and will be subject to the liens of the Prepetition Agent. Past Enterprises will serve the treasury function for the Guarantors that was served by SCI prior to the Petition Date, and will fund disbursements required to be made by or for the account of the Guarantors. Without limiting Vista's

commitment to make loans to SCI to fund certain disbursements as set forth in this Interim Order, Past Enterprises may also from time to time transfer cash to SCI, to the extent available, in such amounts as SCI shall determine to be necessary (but in each case subject to the Budget) to pay administrative obligations of the Debtors during the pendency of the Chapter 11 Cases and to fund operating cash requirements of the Drop Down Borrowers and the CV PropCo Payments. Any intercompany amounts transferred or otherwise advanced from Past Enterprises to SCI or any other Guarantor shall be evidenced by promissory notes which shall be in form and substance satisfactory to the Prepetition Agent and shall be pledged and promptly delivered (together with endorsements in blank) to the Prepetition Agent and encumbered by the liens of the Prepetition Agent. The Debtors shall not permit Past Enterprises to make any loans, investments or any other cash disbursements except to the extent permitted by this Interim Order and the Budget and all such loans, investments or other cash disbursements shall be made to SCI or the non-debtor Guarantors set forth on Schedule 1 attached hereto. Loans made by Past Enterprises to SCI shall constitute unsecured, subordinated administrative priority post-petition financings made by Past Enterprises pursuant to Bankruptcy Code section 364(b).

P. Prior to the Petition Date, Past Enterprises granted liens and security interests in substantially all of its now owned or hereafter acquired property and all products and proceeds thereof, including, without limitation, all of its deposit accounts located at Bank of America, N.A., to the Prepetition Agent to secure repayment of the Prepetition Obligations and performance of the Prepetition Loan Documents. As additional adequate protection for the Prepetition Agent and the Prepetition Secured Parties, Past Enterprises has filed its written consent in support of the Motion and expressly agreed therein that the Court's Interim and Final Orders granting the Motion shall confirm that liens and security interests granted by Past Enterprises are valid, non-voidable and duly perfected prepetition liens in favor of the Prepetition Agent upon Past Enterprises' now owned or hereafter acquired property and all products and proceeds thereof as provided in the Prepetition Security Documents, including, without limitation, valid, enforceable, non-voidable duly perfected pre-petition liens on and security

interests in all deposit accounts of Past Enterprises (and all cash therein and all proceeds therein and rights thereto) that are maintained at Bank of America, N.A., as depository.

Q. Prior to the Petition Date, SCI centrally purchased a substantial amount of goods and services on behalf of the Drop Down Borrowers and Guarantors in order to realize the benefits of bulk or consolidated purchasing. During the pendency of the Chapter 11 Cases, SCI may continue to purchase certain goods and services on behalf of all Guarantors and the Drop Down Borrowers, while certain of these purchases are expected to be effected directly by Past Enterprises for the benefit of the Guarantors.

R. The "Budget" shall mean the certified 13-week consolidated cash flow forecast prepared by SCI and annexed hereto as Exhibit A, as such cash flow forecast may be amended or supplemented in accordance with the terms hereof. The Budget is a consolidated cash budget of the Credit Parties, Drop Down Borrowers and CV PropCo. Compliance with the Budget, subject to permitted variances set forth below, shall be determined based upon the consolidated reporting of the Credit Parties, Drop Down Borrowers and CV HoldCo. The Budget may only be amended or supplemented if the Prepetition Agent and the prepetition Required Lenders give their prior consent (which consent may be granted or withheld in their sole and absolute discretion) to a revised 13-week consolidated cash flow forecast (in the form of the Budget) proposed by the Debtors. The Debtors shall propose a revised 13-week consolidated cash flow forecast (in the form of the Budget) at least once during the four week period following the Petition Date and, thereafter, at least once during every four week period commencing from the date the Prepetition Agent and the prepetition Required Lenders consent to an amended or supplemented Budget; provided that if the Prepetition Agent and the prepetition Required Lenders do not consent to any such proposed revised 13-week consolidated cash flow forecast, the Prepetition Agent or its financial advisor shall notify (either orally or in writing) SCI of the elements of the rejected proposed revised 13-week consolidated cash flow forecast that were unacceptable to the prepetition Required Lenders and the Budget then in existence (without giving effect to any proposed revisions, amendments or supplements) shall remain in full force and effect and the Debtors may continue to use Cash Collateral in

accordance with such Budget until the last date covered thereby, but in no event beyond such date, provided that, the Debtors may, upon notice, seek non-consensual use of Cash Collateral and/or continued access to loans from Vista and use of the proceeds of such loans for ordinary course operations of the Guarantors and the Drop Down Borrowers on an emergency basis, and the Prepetition Agent and the Prepetition Secured Parties hereby reserve all of their rights to contest any such further use of Cash Collateral or access to Postpetition Financing from Vista.

S. The prepetition Required Lenders have consented to the Debtors' use of Cash Collateral from and after the Petition Date, and to the Postpetition Financing, but only on the terms provided herein. To the extent of the use by the Debtors of the Prepetition Secured Parties' Cash Collateral (on a dollar-for-dollar basis) and any diminution in value of the Prepetition Collateral, including, without limitation, resulting from the Carve Out (as defined below) and the use, sale or lease of the Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Secured Parties are entitled to and shall receive the following adequate protection (subject to the Carve Out defined below): (A) valid, binding, enforceable and perfected replacement liens on and security interests in (the "Adequate Protection Liens") all property and assets of the Debtors and all products and proceeds thereof, now or hereafter acquired (subject to certain exceptions set forth herein), pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, and (B) an allowed claim against the Debtors having priority over all other administrative claims now or hereafter asserted in the Chapter 11 Cases (the "Superpriority Claim") pursuant to section 507(b) of the Bankruptcy Code. As additional adequate protection, (x) the Prepetition Agent (for the benefit of the applicable Prepetition Secured Parties) shall receive (i) all interest and fees (including, without limitation, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued and unpaid as of the Petition Date in the amounts specified in the Prepetition Loan Agreement, the prepetition agreements with respect to the agency fees and Cash Management Obligations and the prepetition Secured Hedge Agreements (as applicable), all such amounts to be paid within

five Business Days of entry of this Interim Order; (ii) all interest and fees (including, without limitation, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued on and after the Petition Date in the amounts specified in the Prepetition Loan Agreement, the prepetition agreements with respect to the agency fees and Cash Management Obligations and the prepetition Secured Hedge Agreements (as applicable), all such amounts to be paid on the first Business Day of each calendar month following the Petition Date; (iii) scheduled principal amortization payments to the prepetition Term Lenders in the amounts and on the dates due in accordance with the Prepetition Loan Agreement (without giving effect to the acceleration of the Obligations) and (y) the Prepetition Agent shall receive payment of prepetition and postpetition reasonable fees and expenses of the Prepetition Agent's co-lead and local counsel and financial advisor as set forth herein and the Debtors shall pay the pre-petition and post petition reasonable fees and expenses of a single legal counsel for each other Agent as set forth herein; and (vi) continued financial reporting as set forth in, and in accordance with the terms of, the Prepetition Loan Agreement and the Forbearance Agreement.

**Unsecured Postpetition Financing Provided by Non-debtor Affiliate Vista Holdings, LLC and Drop Down Loans Made by the Debtors to the Guarantors and the other Drop Down Borrowers.**

T. Vista, a non-debtor Unrestricted Subsidiary of SCI, is capitalized with unrestricted cash on hand of approximately $194,000,000. Vista is prepared to lend from time to time up to an aggregate principal amount of $150,000,000 to SCI (the "Postpetition Financing") in accordance with the terms hereof and the DIP Credit Agreement. SCI shall, in turn, use the proceeds of the Postpetition Financing to provide the other Debtors, the Drop Down Borrowers and CV HoldCo with capital to satisfy disbursements permitted under the Budget. The DIP Credit Agreement provides that outstanding borrowings under the Postpetition Financing shall not exceed (i) an aggregate principal amount of $75,000,000 at any time following the entry of this Interim Order, but prior to the entry of the Final Order, and (ii) an aggregate principal

amount of $150,000,000 at any time following the entry of the Final Order. SCI needs immediate access to financing from Vista on an interim emergency basis because SCI does not have immediate access to sufficient Cash Collateral to satisfy the funding requirements of the other Debtors, the Drop Down Borrowers and CV PropCo. Vista shall fund all disbursements permitted by the Budget (other than the Excluded Line Items, which Excluded Line Items may be funded by Past Enterprises) by making Postpetition Financing available to SCI at any time that Vista's cash balance is equal to or greater than $100,000,000 and, after Vista's cash balance is reduced to $100,000,000, Vista may make the Postpetition Financing available to SCI on a discretionary basis to fund disbursements set forth in the Budget in the event cash flow generated by the Credit Parties is not adequate to fund all of the cash requirements of the Debtors, Drop Down Borrowers and CV PropCo and Past Enterprises shall be authorized to fund all disbursements permitted under the Budget, and otherwise subject to the terms of this Interim Order.

U. SCI has arranged to obtain the Postpetition Financing on a subordinated and unsecured administrative claim basis pursuant to section 364(b) of the Bankruptcy Code. Repayment of the Postpetition Financing is conditional on, and neither Vista nor Past Enterprises (with respect to loans by Past Enterprises to SCI) shall have any right to repayment, reimbursement or enforcement (including exercise of rights of offset, recoupment or otherwise) of any kind or nature, other than the prosecution of allowance (but not payment) of an unsecured administrative claim, and the Debtors shall not be authorized to make, or cause any of their Subsidiaries to make, any cash payment to Vista or Past Enterprises, on account of the Postpetition Financing or loans made by Past Enterprises to SCI (including, without limitation, on account of accrued interest or outstanding principal amounts) until all of the Prepetition Obligations are indefeasibly paid in full in cash, or otherwise refinanced or restructured under a plan of reorganization to which the requisite Prepetition Lenders have consented and all Superpriority Claims are paid in full in cash (collectively, "Acceptable Prepetition Treatment"). SCI and Vista shall enter into the DIP Credit Agreement in substantially the form attached hereto as Exhibit B to evidence the Postpetition Financing. The terms and conditions of the

Postpetition Financing shall be as set forth in the DIP Credit Agreement. The Debtors will not borrow, and will not permit their Subsidiaries and their respective Affiliates to borrow, from Vista to finance any uses of cash that are inconsistent with this Interim Order and the Budget. The Debtors shall not permit Vista to make any loans, other investments or any other cash distributions except to the extent permitted by this Interim Order and the Budget and all such loans, other investments or other cash distributions shall be made to SCI under the DIP Credit Agreement.

V. Subject to compliance with the Budget, SCI may from time to time make (i) unsecured loans to one or more of the Drop Down Borrowers (each, a "Drop Down Loan") and (ii) cash equity contributions in CV HoldCo which, in turn, will contribute all such proceeds that it receives to CV PropCo (each, a "CV PropCo Contribution") to make CV PropCo Payments. The Drop Down Loans and CV PropCo Contributions shall be made from cash on hand at SCI and/or from the proceeds of an advance under the Postpetition Financing. SCI is a holding company and substantially all assets are held by the Drop Down Borrowers and CV PropCo, therefore, it is in the best interest of the Debtors and their creditors that SCI be permitted to assure the ordinary course operation of the Drop Down Borrowers and CV PropCo. Each Drop Down Loan and each CV PropCo Contribution made by SCI shall constitute a use of Cash Collateral. As additional adequate protection for such use of Cash Collateral, each Drop Down Loan, each intercompany on-loan made by Past Enterprises to one or more of the non-debtor Guarantors set forth on Schedule 1 attached hereto and each intercompany loan made by Past Enterprises to SCI shall be evidenced by promissory notes which shall be in form and substance satisfactory to the Prepetition Agent and be pledged and promptly delivered to the Prepetition Agent (together with endorsements in blank) and encumbered by the Adequate Protection Liens and, with respect to promissory notes made in favor of non-debtor Loan Parties, the prepetition liens of the Prepetition Agent. Each loan from Past Enterprises to SCI shall be a subordinated unsecured loan that will constitute an expense of administration pursuant to Bankruptcy Code section 364(b). CV PropCo Contributions made in the form of equity shall be

evidenced by the previously pledged equity of CV HoldCo, which equity interests are subject to the valid and unavoidable liens of the Prepetition Agent.

W. Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. **Disposition**. The Motion is granted.

2. **Interim Period**. Subject to the terms and conditions of this Interim Order, the Debtors may use their cash, including any Cash Collateral, the cash from time to time maintained in a deposit account held by Past Enterprises and proceeds of loans from Vista made under the Postpetition Financing during the period (the "Interim Period") commencing from the Petition Date through and including (but not beyond) the date of termination of the use of Cash Collateral under paragraphs 14 and 15.

3. **Use of Cash Collateral**. Except as otherwise expressly provided in this Interim Order, Cash Collateral and any other cash maintained in a deposit account held by Past Enterprises or the proceeds of loans from Vista made under the Postpetition Financing may be used by the Debtors (a) during the Interim Period, (b) only for general corporate purposes and working capital requirements of the Debtors, and the Drop Down Borrowers (including loans made by Past Enterprises to non-debtor Guarantors) and for CV PropCo Payments to be made by CV PropCo, in each case subject to the Budget, (c) in respect of each disbursement line item in the Budget, in an amount not to exceed the amount specified for expenditure in such line item; provided, that (x) in any week during the Interim Period, (i) for any disbursement line item in the Budget during such week, the Debtors may make disbursements in excess of the amount set forth in the Budget for that particular disbursement line item so long as the percentage deviation for all disbursement line items during such week shall not exceed ten percent (10%), in the aggregate, of the amount set forth in the Budget for all disbursement line items for such week and (ii) for each of the "Payroll and Taxes/Benefits" and "Capital Expenditures" disbursement line items in the Budget during such week, the Debtors may make disbursements in excess of the amount set forth in the Budget for that particular disbursement line item so long as the percentage deviation

for such disbursement line item during such week shall not exceed fifteen percent (15%) of the amount set forth in the Budget for such disbursement line item for such week; provided, further, that in determining compliance with the preceding proviso the Debtors shall not be permitted to include any amounts set forth in the line item "Native American- Gun Lake" that were not disbursed in such or prior weeks and (y) any amount not expended in a line item in any week during the Interim Period may be added to the same line item in the Budget in the next succeeding week during the Interim Period and may continue to be rolled forward for the next succeeding three weeks if not expended prior thereto, (d) to make in accordance with the Budget payments in the ordinary course of business during any cure period provided in paragraph 15, including, without limitation, payments in respect of payroll and employee benefit obligations for the Debtors and the Drop Down Borrowers, (e) to make adequate protection payments as provided in this Interim Order and (f) to provide cash collateral for completion guaranties and current funding, including development expenses and advances for construction costs, in respect of ongoing capital projects, including without limitation, Indian gaming facilities currently under development by SCI, all as provided in the Budget. Notwithstanding anything herein to the contrary, neither the Debtors nor any other estate representatives (including, without limitation, the Committee or any trustee) shall use or be permitted to use any L/C Cash Collateral deposited or maintained in, or credited to, the L/C Cash Collateral Account (or any sub or investment accounts thereof) or any CMO Cash Collateral and the Carve-Out shall not be paid from the L/C Cash Collateral or the CMO Cash Collateral. Nothing set forth herein is intended to prohibit the Unrestricted Subsidiaries and Joint Ventures set forth on Schedule 2 attached hereto from incurring, assuming or suffering to exist any debt provided by a Person other than the Debtors, their Subsidiaries or their respective affiliates so long as the incurrence, assumption or existence of such debt is not prohibited by the Prepetition Credit Agreement or the Forbearance Agreement; provided that if any of the Unrestricted Subsidiaries and Joint Ventures set forth on Schedule 2 attached hereto incur, assume or suffer to exist such third party debt, then amounts set forth in the Budget that were available for use by such Unrestricted Subsidiaries and Joint Ventures shall be deemed eliminated to the extent the proceeds of the third party debt financing

are permitted to make the payments that were otherwise permitted under the Budget. The Debtors shall not permit Past Enterprises to make any loans, investments or any other cash disbursements other than to SCI or the non-debtor Guarantors, and in all cases, subject to the terms of this Interim Order.

4. **Unsecured Postpetition Financing**. Subject to the terms and conditions of this Interim Order, SCI is authorized to obtain the Postpetition Financing from Vista and intercompany loans from Past Enterprises on an unsecured basis, and in respect thereof to enter into and deliver to Vista the DIP Credit Agreement. Amounts outstanding under the Postpetition Financing provided by Vista shall not exceed (i) an aggregate principal amount of $75,000,000 at any time following the entry of this Interim Order, but prior to the entry of the Final Order, and (ii) an aggregate principal amount of $150,000,000 at any time following the entry of the Final Order. The terms and conditions of the Postpetition Financing shall be as set forth herein and in the DIP Credit Agreement. Vista, and in respect of its loans to SCI, Past Enterprises, are hereby granted an administrative expense claim pursuant to sections 364(b), 503(b)(1) and 507(a)(2) of the Bankruptcy Code to the extent of SCI's obligations from time to time outstanding under the DIP Credit Agreement and with respect to Past Enterprises, to the extent of the principal amount of intercompany loans made by Past Enterprises to SCI; provided, that neither Vista nor, with respect to its loans to SCI, Past Enterprises, shall have any right to repayment, reimbursement or enforcement of any kind or nature, other than the prosecution of allowance (but not payment) of an unsecured administrative claim, and the Debtors shall not be authorized to make, or cause any of their Subsidiaries to make, any cash payment to Vista or Past Enterprises, on account of the Postpetition Financing and any obligations under the DIP Credit Agreement and any intercompany loans made by Past Enterprises and any promissory notes evidencing such loans (including principal, interest and other amounts, which shall accrue) until, and subject to, the Acceptable Prepetition Treatment. The Debtors shall not borrow from Vista, and shall not use the proceeds of any borrowings, to finance any uses of cash that are inconsistent with this Interim Order or the Budget. The Debtors shall not permit Vista to make any loans, investments or any other cash disbursements (in each case other than to SCI) except to

the extent permitted by this Interim Order and the Budget. Any transfers from Past Enterprises to SCI will be evidenced by promissory notes on an unsecured, subordinated basis and shall constitute approved post petition financing on an administrative basis pursuant to Bankruptcy Code section 364(b).

5. **Carve-Out**. The Debtors are authorized to use Cash Collateral and any other cash to pay the following costs, fees and expenses (collectively, the "Carve-Out"): (i) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930; and (ii) costs, fees and expenses incurred by professionals retained pursuant to section 327 of the Bankruptcy Code by the Debtors and any Committee, which costs, fees and expenses in this clause (ii) were incurred and unpaid from and after the date of receipt by the Debtors of written notice from the Prepetition Agent of the occurrence of an Event of Default (as defined below), and only for so long as the Event of Default specified in such notice is continuing and only to the extent such costs, fees and expenses are allowed by the Court, in an aggregate amount not to exceed $100,000, plus (without duplication) all accrued and unpaid allowed costs, fees and expenses incurred by professionals retained by the Debtors and any Committee prior to the occurrence of such date. So long as no Event of Default has occurred and is continuing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable pursuant to sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and the same shall not reduce the Carve-Out. Nothing herein shall be construed to impair the ability of any party to object to the costs, fees or expenses described in the preceding sentence or in clauses (i) and (ii) above.

6. **Adequate Protection**. The Prepetition Agent has negotiated in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of the Credit Parties' businesses. The Prepetition Agent (on behalf of the Prepetition Secured Parties and in accordance with the Forbearance Agreement and the other Prepetition Loan Documents) has agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, for the Interim Period, subject to the terms and conditions set forth herein, including the protections

afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code. Pursuant and subject to sections 361, 363 and 364 of the Bankruptcy Code, as adequate protection for the use by the Debtors of the Prepetition Secured Parties' Cash Collateral (on a dollar-for-dollar basis) and any diminution in value of the Prepetition Collateral in which the Debtors have an interest, including, without limitation, resulting from the Carve-Out, the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code:

a. The Debtors shall pay to the Prepetition Agent, for (as applicable) the ratable benefit of the applicable Prepetition Secured Parties, all interest and fees (including, without limitation, commitment fees, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued and unpaid as of the Petition Date in the amounts specified in the Prepetition Loan Agreement, the prepetition agreements with respect to the agency fees and Cash Management Obligations and the prepetition Secured Hedge Agreements (as applicable), all such amounts to be paid within five Business Days of entry of this Interim Order;

b. The Debtors shall pay to the Prepetition Agent, for the ratable benefit of the applicable Prepetition Secured Parties (as applicable), all interest and fees (including, without limitation, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued on and after the Petition Date in cash at the applicable rate under the Prepetition Loan Agreement, the prepetition agreements with respect to the agency fees and Cash Management Obligations and the prepetition Secured Hedge Agreements (as applicable), on the first Business Day of each calendar month following the Petition Date. In consideration of such payments, SCI shall be entitled to continue

Eurodollar Loans or convert Base Rate Loans into Eurodollar Loans in accordance with the terms of the Prepetition Loan Agreement.

c. The Debtors shall pay, or cause the Guarantors to pay to the Administrative Agent (for the ratable benefit of the applicable Prepetition Lenders), scheduled principal amortization payments in the amounts and on the dates due in accordance with the Prepetition Loan Agreement (without giving effect to the acceleration of the Obligations).

d. The Debtors shall pay, or cause the Guarantors to pay, within five Business Days after receipt of an invoice (copies of which shall be delivered to the counsel to the Debtors, Committee and Office of the United States Trustee), all reasonable and documented (with redaction as necessary to protect privileged information or confidential information) fees and expenses of the Prepetition Agent's lead co-counsel, local counsel and financial advisor and a single counsel for each other Agent, regardless of whether such fees and expenses were incurred before or after the Petition Date. None of the fees, costs and expenses payable pursuant to this section 6(d) shall be subject to separate approval by this Court, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. In the event that, within five Business Days of receipt of an invoice counsel to the Debtors, Committee or Office of United States Trustee notify counsel for the Prepetition Agent of an objection to an invoice, and the parties are unable to resolve any dispute regarding the reasonableness of any such fees, costs and expense, the parties may bring such dispute to the Court for resolution; provided, however, that the only portion of the fees, costs and expenses that the Debtors may not pay are those that are the subject of the dispute regarding reasonableness until a resolution thereof in favor of the Prepetition Lenders.

e. SCI shall continue to provide the Prepetition Agent with financial and other reporting in compliance with the Prepetition Credit Facility and sections 4(d) and (e) of the Forbearance Agreement.

f. To the extent of any use of Cash Collateral (on a dollar for dollar basis) and any diminution in value of the Prepetition Collateral in which the Debtors have an interest, including, without limitation, diminution in value resulting from the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted valid, binding, enforceable and perfected senior replacement liens on and security interests in (the "Adequate Protection Liens") all property and assets of any kind and nature (but not including the Excluded Assets) in which a Debtor has an interest, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, causes of action, rights to payment, including tax refund claims, insurance proceeds and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral"); provided, however, that the Postpetition Collateral shall not include any claims or causes of action arising under chapter 5 of the Bankruptcy Code or any similar state law ("Avoidance Actions"), or, until entry of the Final Order, the proceeds thereof. Nothing set forth herein is intended to override or supersede any applicable state gaming rules or regulations that are applicable to any such grant of liens, and the effectiveness of any liens requiring approval under applicable state police powers shall be stayed pending receipt of such state law approvals. The Adequate Protection Liens shall have the following priorities:

(i) First Priority On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected, non-voidable first priority lien on, and security interest in, all Postpetition

Collateral, including all tangible and intangible assets (other than Excluded Assets) of the Debtors and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date.

(ii) Liens Junior To Certain Existing Liens. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected non-voidable junior lien on, and security interest in, all Postpetition Collateral, including all tangible and intangible assets (other than Excluded Assets) of the Debtors and all products and proceeds thereof, whether now existing or hereafter acquired, that is subject to (x) valid, perfected and unavoidable senior liens, including all Permitted Liens, in existence immediately prior to the Petition Date or (y) valid and unavoidable senior liens, including all Permitted Liens, in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which prepetition security interests and liens in favor of the Prepetition Agent are junior to such valid, perfected and unavoidable liens.

(iii) Priming. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected non-voidable priming lien on, and security interest in, all Postpetition Collateral, including all tangible and intangible assets (other than Excluded Assets) of the Debtors and all products and proceeds thereof, whether now existing or hereafter acquired; provided that such liens and security interests shall not prime (x) any valid, perfected and non-voidable liens and security interests in existence immediately prior to the Petition Date that are held by or granted to any person other than the Prepetition Agent or (y) valid and non-voidable liens and security interests in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Prepetition Agent.

(iv) Liens Senior To Certain Other Liens. The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is

avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

g. To the extent of any use of Cash Collateral (on a dollar-for-dollar basis) and any diminution in value of the Prepetition Collateral in which the Debtors have an interest, including, without limitation, diminution in value resulting from the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is granted Superpriority Claims senior to all other administrative expense claims and to all other claims, including administrative claims, arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except as set forth below in the immediately succeeding paragraph, which Superpriority Claims shall be payable from, and have recourse to, all of the Postpetition Collateral and proceeds thereof.

h. The Adequate Protection Liens and Superpriority Claims shall, in each case, (i) be senior and prior, and prime, the Prepetition Liens and the Prepetition Obligations, but junior and subject only to (x) the Carve-Out and (y) all other valid, enforceable, perfected and unavoidable liens on all of the Debtors' assets and property in existence as of the Petition Date, or duly perfected thereafter, under section 546(b) of the Bankruptcy Code and (ii) be effective as of the date of the entry of this Interim Order without any further action by the Debtors, the Prepetition Agent or the Prepetition Secured Parties and without the necessity of the execution, filing or recordation of any financing statements, security agreements, lien applications or other documents.

i. All of the Prepetition Secured Parties' Cash Collateral shall be deposited and maintained at all times in an account in the name of SCI or Past Enterprises which is subject to the "control" of the Prepetition Agent within the meaning of the Uniform Commercial Code, and not commingled with any funds upon which the Prepetition Agent does not have control, until disbursed in accordance with the Budget and this Interim Order. The liens and security interests granted by Past Enterprises prior to the Petition Date are hereby confirmed to be valid, binding and enforceable perfected prepetition liens and security interests upon all property of Past Enterprises as provided in the Prepetition Security Documents, including, without limitation, valid, binding and enforceable perfected liens on and security interests in all deposit accounts of Past Enterprises (and all proceeds therein and rights thereto) that are maintained at Bank of America, N.A. All loans funded by Vista under the DIP Credit Agreement shall be deposited into the concentration account at SCI prior to its further disbursement by SCI. The Debtors shall implement a cash management system reasonably acceptable to the Prepetition Agent. For avoidance of doubt, the Guarantors shall maintain cage cash and petty cash at their respective premises in accordance with customary practices and requirements of applicable gaming laws.

j. The Debtors hereby reaffirm, solely with respect to Indemnified Liabilities arising as a result of any issuance, renewal, replacement, modification, extension or continuation of any Letter of Credit that occurs from and after the Petition Date, the indemnification obligations in respect of such postpetition Indemnified Liabilities to the Prepetition Agent and the L/C Issuer that are set forth in section 10.05 of the Prepetition Loan Agreement as a postpetition indemnity. The Forbearance Agreement is confirmed to remain in full force and effect in all respects, enforceable by all parties thereto, pursuant to its terms.

7. **Intentionally Omitted**.

8. **No Prejudice**. Nothing contained herein shall prejudice the Prepetition Secured Parties or the Prepetition Agent with respect to any matter, including, without limitation,

relief from the automatic stay, appointment of a trustee or examiner, sale of any or all of the assets of the Debtors, the assumption or rejection of executory contracts, dismissal or conversion of the Chapter 11 Cases or requests for additional or different adequate protection.

9. **Limitation on Use of Cash Collateral and Proceeds of Postpetition Financing**. No proceeds of the Prepetition Collateral, the Postpetition Collateral, the Cash Collateral or any other cash maintained from time to time on deposit in an account held by Past Enterprises or constituting proceeds of a borrowing from Vista shall be used for the purpose of: (a) investigating, objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Prepetition Obligations or the Prepetition Liens (but not including any investigation related thereto which shall be subject to the limitations set forth below), or any other rights or interest of the Prepetition Agent or the Prepetition Secured Parties, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against the Prepetition Agent or the Prepetition Secured Parties, including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) preventing or hindering the Prepetition Agent's or the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral, Cash Collateral or the Postpetition Collateral; (c) seeking to modify any of the rights granted to the Prepetition Agent or the Prepetition Lenders hereunder; or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court and are permitted pursuant to the Budget. Notwithstanding the foregoing provisions of this paragraph 9 up to $50,000 of Cash Collateral or any other cash maintained from time to time at any of the Debtors, the other Loan Parties or Vista, in the aggregate, may be used to pay the allowed fees and expenses of professionals retained by the Committee incurred directly in connection with investigating, but not initiating or prosecuting, any claims or causes of action (a) against the Prepetition Agent or the Prepetition Secured Parties and (b) with respect to the amount, validity, extent, perfection, priority or enforceability of the Prepetition Liens or the Prepetition Obligations, solely, in each case, with respect to the Debtors.

10. **Limitation on Additional Liens**. The Debtors shall not, directly or indirectly, grant any new lien that is otherwise permitted by Prepetition Credit Agreement except in the ordinary course of SCI's prepetition business (provided that SCI shall in any event be permitted to create or incur Liens permitted under sections 7.01(e), (f) and (t) of the Prepetition Credit Agreement whether or not in the ordinary course of business SCI's prepetition business but subject in all respects to this Interim Order and the Budget). Except as provided in the prior sentence, the Debtors shall not be permitted to grant any liens (including, without limitation, liens with a priority to or pari passu with the Prepetition Liens, the Adequate Protection Liens, or any other liens granted to the Prepetition Agent (on behalf of the Prepetition Secured Parties) under this Interim Order, the Final Order or any Prepetition Loan Documents), or to provide any party with an administrative expense claim (including, without limitation, administrative expense claims having a priority to or being pari passu with the Superpriority Claims but excluding administrative expense claims arising by operation of law in connection with ordinary course transactions with postpetition vendors providing unsecured trade credit; provided that such administrative expense claims for such postpetition vendors shall be junior to the Superpriority Claims), without the prior written consent of the Prepetition Agent.

11. **Modification, Amendment, etc**. In the event that any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other court, no such modification, amendment or vacation shall affect the validity, enforceability, or priority of any lien, claim, right or obligation authorized or created hereby (including, without limitation, the Adequate Protection Liens and the Superpriority Claims.

12. **Good Faith**. Having been found to be consenting to the use of the Cash Collateral in good faith, the Prepetition Agent and the Prepetition Secured Parties shall, pursuant to Bankruptcy Code sections 105(a), 361, 363(m) and 364(e) be entitled to the full protections of this Interim Order as to the use, sale or lease of Prepetition Collateral, including use of Cash Collateral, permitted in reliance thereon, with respect to the claims and obligations arising under this Interim Order in the event that this Interim Order or any authorization or provision contained

herein is stayed, vacated, reversed or modified on appeal or otherwise. Any stay, vacation, reversal or modification of this Interim Order (or any provision hereof) shall not affect the Adequate Protection Liens or the Superpriority Claims, or the validity of any obligations to, or rights of, the Prepetition Agent or the Prepetition Secured Parties incurred or granted pursuant to this Interim Order. Notwithstanding any such stay, vacation, reversal or modification, all uses of Cash Collateral and obligations incurred and rights granted pursuant hereto prior to the effective date of such stay, vacation, reversal or modification shall be governed in all respects by the original provisions hereof, and the Prepetition Agent and the Prepetition Secured Parties shall be entitled to all the rights, privileges, benefits and remedies, including, without limitation, the security interests and priorities, granted herein with respect to such obligations and use of Cash Collateral.

13. **Binding Effect**. The stipulations and admissions contained in this Interim Order, including those set forth in recital paragraph K(i) through (v), shall be binding upon the Debtors, each other Credit Party, Vista, any subsidiary of the Debtors that may hereafter file for relief under chapter 11 of the Bankruptcy Code, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the estates of the Debtors). The stipulations and admissions contained in recital paragraph K(i) through (v), shall be binding upon all other parties-in-interest, including any Committee, unless any Committee or any other party-in-interest (other than the Debtors), duly commences an adversary proceeding (i) sixty (60) days following the date on which the Committee is first appointed or (ii) if no Committee is appointed within thirty days of the Petition Date, seventy-five (75) days following the Petition Date (collectively, (i) and (ii) shall be referred to as the "Investigation Period," and in the event that an adversary proceeding as described in this paragraph 13 duly is not commenced during the Investigation Period, shall be referred to as the "Investigation Period Termination Date"), (x) challenging the validity, enforceability, priority, perfection, characterization or amount of the Debtors' (and no other non debtor Credit Party's) Prepetition Obligations or Prepetition Liens or (y) asserting any claims or causes of action against any of the Prepetition Agent or Prepetition Secured Parties in their capacities as such. If

no such adversary proceeding is duly commenced during the Investigation Period, (i) the claims of the Prepetition Agent and Prepetition Secured Parties arising from the Debtors' Prepetition Obligations and the Prepetition Liens shall constitute allowed claims against each applicable Debtor and shall not be subject to any contest, objection, recoupment, counterclaim, defense, offset, subordination, recharacterization, avoidance, or other claim, challenge, or cause of action under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise and the Prepetition Liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to any objection, counterclaim, setoff, offset of any kind, subordination, or defense, and such liens are otherwise unavoidable; and (ii) the Prepetition Agent and Prepetition Secured Parties shall not be subject to any other or further claims, counterclaims, causes of action or lawsuits by any party-in-interest or any successor thereto. If any such adversary proceeding is duly commenced during the Investigation Period, the stipulations and admissions set forth in recital paragraph K(i) through (v) of this Interim Order shall nevertheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and on any other Person or entity, except if such stipulation or admission has been expressly challenged in an adversary proceeding duly commenced within the Investigation Period, in which event such exception shall apply only to the extent that a final, non-appealable order finds in favor of the challenging party. The stipulations and admissions contained in this Interim Order, including those set forth in recital paragraph K(i) through (v), shall inure to the benefit of the Prepetition Agent, the Prepetition Secured Parties, Vista, the Debtors, each other Credit Party and their respective successors and assigns. For avoidance of doubt, there shall be no release under this Interim Order of, and subject to applicable non-bankruptcy law no deadline under this Interim Order for any person to investigate or commence an action in respect of, the Reserved Claims, which are expressly preserved. Notwithstanding anything herein to the contrary, the Prepetition Agent may in its sole discretion extend the Investigation Period from time to time without further order of this Court.

14. **Intentionally Omitted**.

15. **Events of Default; Remedies**. The occurrence of any of the following shall constitute an event of default (each, an "Event of Default"):

a. An order of this Court shall be entered dismissing any of the Chapter 11 Cases, converting any of the Debtors' Chapter 11 Cases to ones under chapter 7 of the Bankruptcy Code, appointing a chapter 11 trustee in any of the Chapter 11 Cases, or any Debtor shall file a motion or other pleading seeking the dismissal of its Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise, or an order of this Court shall be entered appointing an examiner with expanded powers (provided that if any one or more of the Prepetition Secured Parties requested or affirmatively consented to or joined any request for such appointment, then such appointment shall not constitute an Event of Default hereunder);

b. An order of this Court shall be entered granting relief from the automatic stay under section 362 of the Bankruptcy Code that would permit a party in interest other than the Prepetition Agent to immediately exercise any rights or remedies or consummate a foreclosure or foreclosures upon any material asset or upon all or any material portion of the Prepetition Collateral or Postpetition Collateral;

c. An order of this Court or any other court having jurisdiction to do so shall be entered amending, supplementing, staying, vacating, reversing, revoking, rescinding or otherwise modifying this Interim Order or the Final Order (or any of the provisions thereof), without the express written consent of the Prepetition Agent;

d. An order of this Court (or any other court having jurisdiction to do so) shall be entered (x) granting any lien on or security interest (i) on property of the Debtors that is not permitted under the terms of the Prepetition Loan Documents and this Interim Order, (ii) in any property of the estate of a Debtor in favor of any party other than the Prepetition Agent (on behalf of the Prepetition Secured Parties), the holder of any Permitted Lien or FCP Propco, LLC (as to perfected prepetition liens held by FCP PropCo, LLC) or (y) granting a Bankruptcy Code section 364 superpriority administrative claim against the Debtors to any party in interest other than the Prepetition Agent or the Prepetition Secured Parties, the holder of any Permitted Lien or FCP

Propco, LLC (as to perfected prepetition liens held by FCP PropCo) in each case without the express written consent of the Prepetition Agent;

e. An order of this Court or any other court having jurisdiction to do so shall be entered that approves any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of any Prepetition Collateral or Postpetition Collateral, provided that (i) payments and deposits for the preservation of Prepetition Collateral or Postpetition Collateral made pursuant to customary first day motions concerning employee payroll and benefits, critical vendors, utilities and the like and (ii) payments and deposits made in respect of postpetition preservation of the Prepetition Collateral or Postpetition Collateral made in accordance with the Budget shall not result in the occurrence of an Event of Default hereunder;

f. This Interim Order shall cease to be in full force and effect and the Final Order shall not have been entered, be in full force and effect and not subject to any stay on or before the thirtieth (30th) day following the date of entry of this Interim Order, or the Final Order shall cease to be in full force and effect and unstayed;

g. The Debtors shall make any payment (including "adequate protection" payments) on or in respect of any prepetition indebtedness or prepetition obligations other than (i) to the Prepetition Secured Parties on account of the Prepetition Obligations under the Prepetition Loan Agreement, the other Prepetition Loan Documents and (to the extent applicable) the Secured Hedge Agreements and prepetition agreements relating to agency fees and the Cash Management Obligations, or (ii) as permitted under this Interim Order, orders of this Court approving other "first day motions" and "second day motions" or the Final Order;

h. Five (5) Business Days following delivery to counsel to the Debtors, any Committee and the United States Trustee of written notice from the Prepetition Agent of the Debtors' failure to comply with the terms of this Interim Order or the Final Order; provided that the failure to make any payment to the Prepetition Agent for its own

account or for the account of any Prepetition Secured Party within one Business Day of the date when due shall be an immediate Event of Default;

i. The cash expenditures of the Debtors, the Guarantors, the Drop Down Borrowers or Vista (inclusive of Drop Down Loans) exceed those permitted by the Budget (subject to the permitted expenditure variances) or this Interim Order without prior written consent of the Prepetition Agent and the prepetition Required Lenders, or there shall at any time be no approved Budget in full force and effect;

j. Except to the extent necessary to preserve and assert Reserved Claims, the Debtors shall seek to, or shall support (in any such case by way of, inter alia, any motion or other pleading filed with this Court or any other writing to another party in interest executed by or on behalf of the Debtors) any other person's motion to disallow or subordinate in whole or in part the Prepetition Agent's or any Prepetition Secured Party's claim in respect of the Prepetition Obligations or Superpriority Claims, or to challenge the validity, enforceability, perfection or priority of the liens in favor of the Prepetition Agent or the Prepetition Secured Parties (including, without limitation, any Prepetition Liens);

k. The Debtors shall file any motion seeking to obtain credit (other than the Postpetition Facility) from any party other than Vista or the Prepetition Agent and the Prepetition Lenders unless, in connection therewith, all of the Prepetition Obligations and the Superpriority Claims shall first be paid indefeasibly in full in cash (including the cash collateralization of any Letters of Credit);

l. The Debtors shall make any payment on or in respect of the Postpetition Facility, or Vista shall seek enforcement of any rights in respect thereof, before the Prepetition Obligations and the Superpriority Claims shall first be paid indefeasibly in full in cash (including the cash collateralization of any Letters of Credit);

m. (i) Five (5) Business Days following delivery to counsel to the Debtors, any Committee and the United States Trustee of written notice from the Prepetition Agent that the Debtors have filed a motion, pleading or proceeding which

could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Agent or the Prepetition Secured Parties or (ii) on the later of (a) the date upon which there is an order entered by a court with respect to a motion, pleading or proceeding brought by another party which results in such a material impairment, or (b) the date that is five (5) Business Days following delivery to the Debtors, any Committee and the United States Trustee of written notice from the Prepetition Agent that the such an order will be or has been entered;

n. The board of directors of SCI shall authorize a liquidation of the Credit Parties' business that is not reasonably expected to result in the payment in full of all of the Prepetition Obligations and the Superpriority Claims;

o. Any subsidiary of a Debtor which is a Loan Party files a chapter 11 petition in any court other than this Court, and, in the event of a filing in this Court, fails to become subject to and bound by this Interim Order or the Final Order (as applicable) within five Business Days of such filing, pursuant to an order of this Court in form and substance satisfactory to the Prepetition Agent;

p. The Debtors shall propose any plan of reorganization which fails to provide for an Acceptable Prepetition Treatment or solicit ballots for any such plan, or the Debtors shall take any action in support of such a plan;

q. The Debtors shall file any pleading seeking, or otherwise consenting to, or shall otherwise affirmatively act in support of, or affirmatively take any action to acquiesce in, any other person's motion as to, any of the matters set forth in paragraphs 15(a) through (h), (k), (l) and (n) above;

r. 11:59 p.m. (New York City time) on January 31, 2010, unless the Plan Effective Time (as defined in the Forbearance Agreement) has occurred at or prior to such time;

s. Any time after the entry of the initial order regarding FCP Propco's use of its cash collateral and the provision of adequate protection, FCP PropCo shall not have the right to use its cash collateral for more than 5 consecutive Business Days,

provided that if such termination occurs as a result of the rejection of the Master Lease, then such termination shall not constitute an Event of Default under this Interim Order; or

t. the earlier of (a) ten (10) days following the Plan Effective Time (as defined in the Forbearance Agreement) and (b) February 10, 2010, unless a plan of reorganization which provides for an Acceptable Plan Treatment shall have been consummated in accordance with the terms and conditions of such plan.

Upon the occurrence of an Event of Default, and at all times thereafter, the Prepetition Agent and the Prepetition Secured Parties may, in their absolute and sole discretion, exercise all rights and remedies and take all or any actions under the Prepetition Loan Documents and this Interim Order (including, without limitation, the termination of the Debtors' right to use Cash Collateral) without further modification of the automatic stay pursuant to section 362 of the Bankruptcy Code (which will be deemed to be modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application to this Court; provided that, notwithstanding the foregoing, until entry of the Final Order the automatic stay imposed by section 362 of the Bankruptcy Code shall not be deemed automatically modified to permit the Prepetition Agent and the Prepetition Secured Parties to exercise all rights and remedies with respect to the Prepetition and Postpetition Collateral other than with respect to terminating the right to use Cash Collateral (which, for the avoidance of doubt, shall be terminable upon the occurrence of an Event of Default). Notwithstanding the immediately preceding sentence, following the giving of a written notice by the Prepetition Agent of the occurrence of an Event of Default and the exercise of rights and remedies in connection therewith, the Debtors may, upon notice, seek non-consensual use of Cash Collateral and use of post petition financing from Vista or Past Enterprises on an emergency basis, and the Prepetition Agent and the Prepetition Secured Parties hereby reserve all of their rights to contest such further use of Cash Collateral or postpetition financing. Termination of the use of the Prepetition Collateral, including Cash Collateral, authorized herein shall not impair the continuing effectiveness and enforceability of all other provisions in this Interim Order. The

Prepetition Agent may make payments and other distributions to the Prepetition Secured Parties in connection with and as otherwise allowed by this Interim Order, and all of the indemnifications and similar provisions in favor of the Administrative Agent set forth in the Prepetition Loan Documents shall continue in full force and effect in respect of any actions taken by the Prepetition Agent in connection with or as otherwise allowed by this Interim Order. In no event shall any such action taken by the Prepetition Agent be deemed gross negligence or willful misconduct for the purposes of section 10.05 of the Prepetition Credit Agreement.

16. **Recording of Security Interests**. The Prepetition Agent is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder. Whether the Prepetition Agent shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Interim Order. A certified copy of this Interim Order may, in the discretion of the Prepetition Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

17. **Limitation on Charging Expenses Against Collateral**. Subject to and effective upon entry of a Final Order, no expenses of administration (whether incurred during the Chapter 11 Cases or any subsequent cases) incurred for the preservation or protection of the Prepetition Collateral or the Postpetition Collateral incurred while the Debtors are authorized to use such collateral under the Final Order shall be charged against or recovered from of the Prepetition Collateral or the Postpetition Collateral pursuant to Bankruptcy Code section 506(c)

or any similar principal of law or equity without the express prior written consent of the Prepetition Agent.

18. **No Release of Non-Debtors**. Nothing contained in this Interim Order shall be deemed to terminate, modify or release any obligations of any non-debtor third party liable to the Prepetition Agent and/or the Prepetition Secured Parties with respect to any Prepetition Obligations or otherwise.

19. **Objections**. Any party seeking to object to entry of an order approving the relief set forth in the Motion on a final basis must file a written objection (an "Objection"), stating with particularity the grounds therefor, with the Court, and serve such Objection on: (i) Debtors' counsel, Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attn: Paul Aronzon, Esq.; (ii) the Office of the United States Trustee; (iii) Vista Holdings, LLP, 1505 South Pavilion Center Drive, Las Vegas, NY 89135, Attn: Richard Haskins, (iv) counsel for the Prepetition Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn: Sandy Qusba, Esq. and Morris Massel, Esq., and McDonald Carano Wilson LLP, 100 W. Liberty Street, 10th Floor, Reno, NV 89501, Attn: Kaaran Thomas, Esq., so that it is received no later than __________ __, 2009 at 4:00 p.m., prevailing Eastern Time.

20. **Final Hearing**. The Final Hearing on the Motion and for entry of the Final Order in accordance therewith shall be held before the undersigned on ___________ __, 2009 at __:__ __.m., (prevailing Pacific Time).

21. **Findings of Fact, Conclusions of Law**. The findings of fact and conclusions of law of this Court pursuant to this Interim Order shall be deemed effective upon the entry of this Interim Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed such.

22. **Retention of Jurisdiction**. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Interim Order.

SUBMITTED BY:

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley, #1164
Laury Macauley, #11413
LEWIS AND ROCA LLP
50 W. Liberty Street, Ste. 410
Reno, NV 89501

Proposed Local Reorganization Counsel
For Debtors and Debtors in Possession

###

**Station Casinos, Inc.**
**Schedule 1 to Cash Collateral Order**
**Guarantors**

| Company | Legal Form | Ownership % | Designation |
|---|---|---|---|
| Boulder Station, Inc. | Corp | 100% | Restricted Sub |
| Charleston Station, LLC | LLC | 100% | Restricted Sub |
| Fiesta Station, Inc. | Corp | 100% | Restricted Sub |
| Gold Rush Station, LLC | LLC | 100% | Restricted Sub |
| Lake Mead Station, Inc. | Corp | 100% | Restricted Sub |
| Magic Star Station, LLC | LLC | 100% | Restricted Sub |
| Palace Station Hotel & Casino, Inc. | Corp | 100% | Restricted Sub |
| Past Enterprises, Inc. | Corp | 100% | Restricted Sub |
| Rancho Station, LLC | LLC | 100% | Restricted Sub |
| Santa Fe Station, Inc. | Corp | 100% | Restricted Sub |
| Station Holdings, Inc. | Corp | 100% | Restricted Sub |
| Sunset Station, Inc. | Corp | 100% | Restricted Sub |
| Texas Station, LLC | LLC | 100% | Restricted Sub |
| Tropicana Station, Inc. | Corp | 100% | Restricted Sub |
| | | | |
| Centerline Holdings, LLC | LLC | 100% | Immaterial Sub |
| LML Station, LLC | LLC | 100% | Immaterial Sub |
| Station Construction, LLC | LLC | 100% | Immaterial Sub |
| STN Aviation, Inc. | Corp | 100% | Immaterial Sub |
| | | | |
| Fresno Land Acquisitions, LLC | LLC | 100% | Native American Sub |
| SC Butte Development, LLC | LLC | 100% | Native American Sub |
| SC Butte Management, LLC | LLC | 100% | Native American Sub |
| SC Madera Development, LLC | LLC | 100% | Native American Sub |
| SC Madera Management, LLC | LLC | 100% | Native American Sub |
| SC Sonoma Development, LLC | LLC | 100% | Native American Sub |
| SC Sonoma Management, LLC | LLC | 100% | Native American Sub |
| Sonoma Land Holdings, LLC | LLC | 100% | Native American Sub |
| Station California, LLC | LLC | 100% | Native American Sub |
| Station Development, LLC | LLC | 100% | Native American Sub |
| | | | |

**Station Casinos, Inc.**
**Schedule 2 to Cash Collateral Order**
**Non-Guarantor Unrestricted Subsidiaries and Joint Ventures**

| Company | Legal Form | Ownership % | Designation |
|---|---|---|---|
| | | | |
| Aliante Station, LLC | LLC | 100% | Unrestricted Sub |
| Auburn Development, LLC | LLC | 100% | Unrestricted Sub |
| Durango Station, Inc. | Corp | 100% | Unrestricted Sub |
| Green Valley Station, Inc. | Corp | 100% | Unrestricted Sub |
| GV Ranch Station, Inc. | Corp | 100% | Unrestricted Sub |
| Inspirada Station, LLC | LLC | 100% | Unrestricted Sub |
| Northern NV Acquisitions, LLC | LLC | 100% | Unrestricted Sub |
| Reno Land Holdings, LLC | LLC | 100% | Unrestricted Sub |
| Palms Station, LLC | LLC | 100% | Unrestricted Sub |
| SC Durango Development, LLC | LLC | 100% | Unrestricted Sub |
| SC Michigan, LLC | LLC | 100% | Unrestricted Sub |
| SC Rancho Development, LLC | LLC | 100% | Unrestricted Sub |
| Sonoma Land Acquisition Company, LLC | LLC | 100% | Unrestricted Sub |
| Town Center Station, LLC | LLC | 100% | Unrestricted Sub |
| Tropicana Acquisitions, LLC | LLC | 100% | Unrestricted Sub |
| Your Move, Inc. | Corp | 75% | Unrestricted Sub |
| | | | |
| Aliante Holding, LLC | LLC | 50% | Joint Venture |
| Greens Café, LLC | LLC | 50% | Joint Venture |
| Town Center Amusements, Inc., a limited liability company | LLC | 50% | Joint Venture |
| Sunset GV, LLC | LLC | 50% | Joint Venture |
| Green Valley Ranch Gaming, LLC | LLC | 50% | Joint Venture |
| Rancho Road, LLC | LLC | 50% | Joint Venture |
| Durango Station Retail, LLC | LLC | 50% | Joint Venture |
| MPM Enterprises, LLC | LLC | 50% | Joint Venture |
| SCI/CE Rohnert Park, LLC | LLC | 50% | Joint Venture |
| | | | |