Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:     (213) 892-4000
Facsimile:     (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NORTHERN NV ACQUISITIONS, LLC<br><br>☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects Station Casinos, Inc.<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC | Chapter 11<br><br>Case No. BK-09-_____;<br>Jointly Administered<br><br>**MOTION FOR INTERIM AND FINAL ORDERS (i) ESTABLISHING PROCEDURES FOR RECONCILING VALID RECLAMATION CLAIMS, (ii) PROHIBITING THIRD PARTIES FROM INTERFERING WITH DELIVERY OF THE DEBTORS' GOODS, AND (iii) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SUPPLIERS AND VENDORS OF GOODS ENTITLED TO ADMINISTRATIVE PRIORITY UNDER 11 U.S.C. §§ 503(b)(9) AND 507(a)(2)**<br><br>Hearing Date:     July 30, 2009<br>Hearing Time:    1:30 p.m.<br>Place:               300 Booth Street<br>                         Reno, NV 89509 |

LA1:#6398880

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Station Casinos, Inc. ("SCI") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[1] in the above-captioned chapter 11 cases, hereby submit this motion (the "Motion") for interim and final orders (i) establishing procedures for reconciling valid reclamation claims, (ii) prohibiting third parties from interfering with delivery of the Debtors' goods, and (iii) authorizing the Debtors to pay certain prepetition claims of suppliers and vendors of goods entitled to administrative priority pursuant to sections 503(b)(9) and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and in support thereof respectfully represent as follows:

**LEGAL MEMORANDUM**

### I.    Background

1.    The Debtors commenced these chapter 11 cases on July 28, 2009 (the "Petition Date").  SCI and its non-debtor subsidiaries (collectively, the "Station Group") constitute a gaming entertainment enterprise that owns and operates under the "Station" and "Fiesta" brand names ten major hotels/casinos (two of which are 50% owned) and eight smaller casinos (three of which are 50% owned) in the Las Vegas metropolitan area.  The Station Group owns ten of the hotels/casinos' underlying real property in fee and leases the underlying real property for Texas Station Gambling Hall & Hotel ("Texas Station"), Wild Wild West Gambling Hall & Hotel ("Wild Wild West"), Barley's Casino & Brewing Company ("Barley's"), and The Greens Gaming and Dining ("The Greens").  Debtor FCP PropCo, LLC ("FCP PropCo") owns the underlying real estate for Palace Station Hotel & Casino ("Palace Station"), Sunset Station Hotel & Casino ("Sunset Station") and Red Rock Casino Resort Spa ("Red Rock").  FCP PropCo owns a portion of the underlying real property for Boulder Station Hotel & Casino ("Boulder Station") and also leases a portion of Boulder Station's underlying real property.  Station

---

[1]    The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

California, LLC ("Station California"), a non-debtor subsidiary of SCI, manages a casino for a Native American tribe.  As of July 17, 2009, the Station Group had approximately 13,174 employees, and the Debtors had approximately 663 employees.  The Station Group's growth strategy includes the master-planned expansions of its existing gaming facilities in Nevada, the development of gaming facilities on certain real estate that the Station Group now owns or is under contract to acquire in the Las Vegas valley and Reno, Nevada, the evaluation and pursuit of additional acquisition or development opportunities in Nevada and other gaming markets, and the pursuit of additional management agreements with Native American tribes.

2.      The Station Group owns and operates:  (i) Palace Station, (ii) Boulder Station, (iii) Texas Station, (iv) Sunset Station, (v) Santa Fe Station Hotel & Casino, (vi) Red Rock, (vii) Fiesta Rancho Casino Hotel, (viii) Fiesta Henderson Casino Hotel, (ix) Wild Wild West, (x) Wildfire Casino, (xi) Wildfire Casino – Boulder Highway, formerly known as Magic Star Casino, (xii) Gold Rush Casino, and (xiii) Lake Mead Casino.

3.      The Station Group also holds a 50% interest in the non-debtor entities that own and operate:  (i) Green Valley Ranch Resort Spa Casino ("Green Valley Ranch"), (ii) Aliante Station Casino & Hotel ("Aliante Station"), (iii) Barley's, (iv) The Greens, and (v) Wildfire Casino & Lanes, formerly known as Renata's Casino.

4.      Each of the Station Group's casinos caters primarily to local Las Vegas area residents.  The Station Group markets the eight "Station" casinos (including Green Valley Ranch, Red Rock and Aliante Station) together under the Station Casinos brand and the two "Fiesta" casinos under the Fiesta brand, offering convenience and choices to residents throughout the Las Vegas valley with its strategically located properties.  In addition, Station California manages Thunder Valley Casino in Northern California on behalf of the United Auburn Indian Community.

5.      As of June 30, 2009 and based on a general ledger book value, the Debtors owned assets valued in the aggregate in excess of approximately $5.7 billion and had debt and other liabilities of approximately $6.5 billion.

6.      SCI is a privately held company whose shares are held by Debtors Fertitta Partners LLC, FCP Holding, Inc. and FCP VoteCo, LLC.  FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC (collectively, the "CMBS Debtors"), as well as Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC and Tropicana Station, LLC, are all either direct or indirect wholly owned subsidiaries of SCI.  Certain of the CMBS Debtors issued a mortgage loan and related mezzanine financings in the aggregate principal amount of $2.475 billion (the "CMBS Loans").  The CMBS Loans are collateralized by substantially all fee and leasehold real property comprising Palace Station Hotel & Casino, Boulder Station Hotel & Casino, Sunset Station Hotel & Casino, and Red Rock.

7.      Filed concurrently herewith, and incorporated herein by reference, is the Omnibus Declaration of Thomas M. Friel in Support of the Debtors' Chapter 11 Petitions and First Day Motions, which contains more detail on the Debtors' assets, liabilities, equity ownership, business operations and business plans.

## II.      Jurisdiction and Venue

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III.      Relief Requested

9.      In the ordinary course of the Debtors' business, numerous vendors provide the Debtors with goods (the "Goods") that will be essential to the sustained operations of the Debtors both in the short term and during the reorganization period.  Although the Debtors have not received any Uniform Commercial Code Article 2-702 demands to date, they may receive such demands as these cases progress (each, a "Reclamation Demand").  It is critical for the Debtors to establish uniform procedures to evaluate valid reclamation claims to avoid costly and

distracting litigation in the critical period immediately after the Petition Date and ensure the delivery of Goods during any such evaluation.

10.     Additionally, if certain vendors (the "Priority Vendors"), with claims entitled to administrative priority under Bankruptcy Code sections 503(b)(9) and 507(a)(2) (the "Priority Vendor Claims"), are not paid in the ordinary course on account of their Priority Vendor Claims, such Priority Vendors are unlikely to provide the Debtors with postpetition trade credit and may refuse to continue providing the Debtors with Goods after the Petition Date. Because the Debtors are in the business of operating casino hospitality properties that rely on necessary deliveries from the Priority Vendors of Goods multiple times per week, any delay or disruption in the continuous flow of Goods to the Debtors could adversely affect the Debtors' business.

11.     By this Motion, the Debtors request:  (a) approval of procedures for reconciling valid reclamation claims; (b) a prohibition against interference with delivery of the Debtors' Goods; and (c) authorization of payment in the ordinary course of prepetition claims of suppliers and vendors entitled to administrative priority under Bankruptcy Code sections 503(b)(9) and 507(a)(2).

### IV.     Proposed Reclamation Procedures

12.     The Debtors propose the following procedures for processing and reconciling Reclamation Demands:

- Any seller of Goods asserting a claim for reclamation must satisfy all requirements entitling it to have a right of reclamation under section 546 of the Bankruptcy Code and shall send the Reclamation Demand to the Debtors at Station Casinos, Inc., 1505 South Pavilion Center Drive, Las Vegas, Nevada, 89135; Attention:  Matthew L. Heinhold.

- After review of all Reclamation Demands and no later than 270 days after entry of the order granting the relief requested herein, the Debtors will file a notice (the "Notice") and serve such Notice on the following parties (collectively, the "Notice Parties"):  (i) the Office of the United States Trustee for the District of Nevada; (ii) counsel to any official committee of unsecured creditors; (iii) the parties that have made the Reclamation Demands that are the subject of the Notice at the address indicated in such Reclamation Demand; and (iv) counsel to the agents to the Debtors' prepetition and postpetition secured lenders;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- The Notice will list those reclamation claims and amounts, if any, which the Debtors deem to be valid. In addition, the Notice will state the defenses that the Debtors choose to reserve, if any. Any party who wishes to object to the information set forth in the Notice must file and serve, no later than sixty (60) days after the Notice is filed (the "Objection Deadline"), an objection (the "Reclamation Notice Objection") which includes the following information: (i) a copy of the Reclamation Demand with evidence of the date mailed to the Debtors; (ii) the name of the Debtor entity that ordered the Goods that are the subject of the Reclamation Demand; (iii) copies of any purchase orders and invoices relating to the Goods that are the subject of the Reclamation Demand; (iv) any evidence demonstrating the date the Goods that are the subject of the Reclamation Demand were shipped, and the date such Goods were received by the Debtors; and (v) a statement describing with specificity why the Notice is incorrect with any legal basis for the objection. The Reclamation Notice Objection shall be served on the Notice Parties and on the Debtors' counsel at Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attention: Kathleen Heinsberg;

- Any Reclamation Demand that is included in the Notice and is not the subject of a Reclamation Notice Objection by the Objection Deadline shall be deemed a valid reclamation claim allowed by the Court at the amount set forth in the Notice;

- The Debtors are authorized to negotiate with all parties who have filed a Reclamation Notice Objection and adjust the value of the reclamation claim stated in the Notice to reach an agreement with such parties. In the event that the Debtors resolve a Reclamation Notice Objection, the Debtors shall prepare a notice of settlement (the "Settlement Notice"), file such notice with the Court and serve it on the Notice Parties. The Notice Parties shall have ten (10) days from the date that the Settlement Notice is filed to object to the Settlement Notice. If no objection is filed, the reclamation claim will be deemed a valid reclamation claim allowed by the Court at the amount set forth in the Settlement Notice; and

- No later than ninety (90) days following the Objection Deadline (or a later date provided both parties agree), the Debtors shall file a motion for Court determination of any reclamation claims subject to a pending Reclamation Notice Objection. The Debtors will request that the matter be set for hearing at the next regularly scheduled omnibus hearing in accordance with appropriate notice, unless another hearing date is agreed to by the parties or ordered by the Court.

### V.    Basis for Reclamation Procedures Relief

13.    Section 546(c)(1) of the Bankruptcy Code provides, in relevant part:

> [S]ubject to the prior rights of a holder of security interest in such goods or the proceeds thereof, the rights and powers of the trustee . . . are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within forty-five (45) days before the date of the commencement of a case under this title, but such a seller may not reclaim such goods unless such seller demands in writing reclamation of such goods — (A) no later than forty-five (45) days after the date of receipt of such goods by the debtor; or (B) not later than twenty (20) days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

11 U.S.C. § 546(c)(1).

14.    Section 546(c)(1) subordinates the rights of sellers of goods to the prior interests of secured parties. See 11 U.S.C. § 546(c) (providing that reclamation rights are "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof"). A secured lender who holds a floating lien on the debtor's property holds a secured interest in all of the debtor's inventory such that a reclaiming seller is entitled to a lien or administrative expense claim only to the extent that the value of the specific inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's inventory. See In re Advanced Mktg Servs., Inc., 360 B.R. 421, 426 (Bankr. D. Del. 2007); see also Allegiance Healthcare Corp. v. Primary Health Sys., Inc. (In re Primary Health Sys., Inc.), 258 B.R. 111, 117 (Bankr. D. Del. 2001) ("under state law, a reclaiming seller would not have been able to reclaim its goods if the goods were not worth more than the value of the floating lien, because the holder of the first lien would have asserted its rights and been entitled to all of the inventory.").

15.    The Debtors are party to certain credit facilities that are secured by, among other things, a floating lien on the inventory of the Debtors. Under the express language of section 546(c)(1), the interests of the lenders under such credit facilities are superior to any

reclamation claims. Thus, expending resources at this early stage to litigate reclamation claims, which may be valueless, would be a waste of the estates' resources. The Debtors' proposed procedures avoid such litigation and allow the sellers of reclamation Goods to establish the validity of their reclamation claims, the characterization and recovery of which will be determined at a later date.

16. Given the volume of inventory received daily by the Debtors, the Debtors anticipate that a number of sellers of Goods may make Reclamation Demands and otherwise seek to interfere with the sale of Goods delivered to the Debtors after receiving notice of the commencement of the chapter 11 cases. These Goods are essential to the Debtors' business and preservation of the estates. Furthermore, absent the establishment of an orderly reclamation process, the Debtors' management would be diverted from important operational issues to deal with the reclamation claimants.

17. Despite the language of section 546(c), "seldom if ever is property actually returned or reclaimed in a reorganization case in lieu of other available relief." In re Dana Corp., 367 B.R. 409, 414 (Bankr. S.D.N.Y. 2007) (quoting In re HRT Indus., Inc., 29 B.R. 861, 862 (Bankr. S.D.N.Y. 1983)). And although it may not be feasible for the Debtors to return shipments to sellers of Goods in response to the Reclamation Demands, it may be beneficial in some circumstances for the Debtors to honor a Reclamation Demand. Thus, the Debtors request that the Court authorize, but not direct, the Debtors to make available Goods for pick-up by any reclaiming seller (a) who timely demands in writing reclamation of Goods pursuant to section 546(c)(1), (b) whose Goods the Debtors have accepted for delivery, and (c) who properly identifies the Goods to be reclaimed. As to all other sellers of Goods, the Debtors request that the Court enjoin the reclamation claimants and other parties from seeking to reclaim or otherwise interfere with the delivery of Goods. Such relief will facilitate uninterrupted operations of the Debtors' business.

18. Furthermore, the Court has ample authority under section 105 of the Bankruptcy Code to grant the relief requested herein. Under the "necessity of payment" doctrine, first enunciated by the Supreme Court in Miltenberger v. Logansport, C. & S.W.R. Co.,

106 U.S. 286 (1882), a bankruptcy court may use its equitable powers under section 105 of the Bankruptcy Code to permit a debtor in possession to pay prepetition claims when payment is necessary to allow for the rehabilitation of the debtor or effectuate the debtor's bankruptcy goals. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (approving payment of prepetition wages due current employees where it is necessary to pay such claims in order to preserve and protect its business and ultimately reorganize and retain its currently working employees and maintain positive employee morale).  The Ninth Circuit Court of Appeals has acknowledged the doctrine of necessity, stating in dicta:  "[c]ases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation . . . ."  Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987).  Section 105 codifies the Bankruptcy Court's inherent equitable powers.  See, e.g., Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.), 885 F.2d 621, 625 (9th Cir. 1989) (section 105 endows the bankruptcy court with general equitable powers, where not inconsistent with more specific law).  The Debtors believe that the relief requested herein will substantially aid the successful reorganization of the Debtors' businesses.

19.     In approving relief similar to that which is requested herein, the court in In re Quality Stores concluded:

> [a]bsent such [reclamation] procedures, a 'free for all' might result . . . . Having no reclamation procedure is disadvantageous to a chapter 11 debtor, its creditors, and the court. Early in the case, the focus of the parties should be upon the content and propriety of first-day orders, approval of cash collateral agreements or postpetition financing, appointment of necessary insolvency professionals, and other matters of time-sensitive importance. The determination of the validity and priority of reclamation claims are issues that can normally be deferred until a later time during a chapter 11 case.

289 B.R. 324, 329 n.8 (Bankr. W.D. Mich. 2003).  Thus, the Debtors submit that the relief requested in the Motion is important to the Debtors' business and rehabilitation and is justified under section 105(a).

20. The Court has the authority to authorize the Debtors to negotiate with parties who filed a Reclamation Notice Objection to reach an agreement with such parties. Pursuant to rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), after notice and a hearing, the Court may approve a compromise or settlement between the Debtors and sellers of Goods who have filed a Reclamation Notice Objection.  See FED. R. BANKR. P. 9019(a).  Compromises are favored in bankruptcy because they expedite the settlement of claims and assist with the administration of the case.  See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) ("Compromises are 'a normal part of the process of reorganization'") (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106 (1939)).

## VI.   Proposed Priority Vendors Procedures

21. The Debtors also hereby request authorization to pay the Priority Vendor Claims, as determined by the Debtors in their sole discretion, in order to continue receiving the Goods provided by the Priority Vendors.  Subject to the terms set forth below, the Debtors propose to condition the payment of Priority Vendor Claims on the agreement of individual Priority Vendors to continue supplying Goods to the Debtors on the trade terms that such Priority Vendors provided Goods to the Debtors on a historical basis prior to the Petition Date (the "Customary Trade Terms"), or pursuant to such other favorable trade practices and programs that are agreed to by the Debtors.  The Debtors reserve the right to negotiate new trade terms with any Priority Vendor as a condition to payment of any Priority Vendor Claim.

22. To ensure that the Priority Vendors continue to deal with the Debtors on the Customary Trade Terms, the Debtors propose that a letter agreement (a "Trade Agreement") be sent to the Priority Vendors for execution, together with a copy of the Order granting this Motion.[2]

23. The Debtors propose that each Trade Agreement include, without limitation, the following terms:

---

[2] The Debtors' entry into a Trade Agreement shall not change the nature or priority of the underlying Priority Vendor Claims and shall not constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Priority Vendor.

- The amount of such Priority Vendor's estimated prepetition claim, after accounting for any setoffs and other credits and discounts thereto, shall be as mutually determined in good faith by the Priority Vendor and the Debtors (but such amount shall be used only for purposes of the Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

- The Priority Vendor's agreement to be bound by the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs), which were favorable to the Debtors and in effect between such Priority Vendor and the Debtors on a historical basis during the period within 120 days of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such Priority Vendor;

- The Priority Vendor's agreement to provide Goods and services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay the Priority Vendor in accordance with such terms;

- The Priority Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien regardless of the statute or other legal authority upon which such lien is asserted related in any way to any remaining prepetition amounts allegedly owed to the Priority Vendor by the Debtors arising from Goods or services provided to the Debtors prior to the Petition Date, and that, to the extent that the Priority Vendor has previously obtained such a lien, the Priority Vendor shall immediately take all necessary actions to release such lien;

- The Priority Vendor's acknowledgment that it has reviewed the terms and provisions of the Order and consents to be bound thereby;

- The Priority Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

- The Priority Vendor's agreement that if it has received payment of a prepetition claim but subsequently refuses to supply Goods to the Debtors on Customary Trade Terms, any payments received by the Priority Vendor on account of its Priority Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Priority Vendor, and that such Priority Vendor shall immediately repay to the Debtors any payments received on account of its Priority Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff or reclamation.[3]

---

[3]    Nothing in this Motion should be construed as a waiver by any of the Debtors of their rights to contest any claim of a Priority Vendor under applicable law.

24.      By this Motion, the Debtors seek only the authority to enter into Trade Agreements when the Debtors determine, in their sole discretion, that payment of such Priority Vendor Claims in the ordinary course is necessary and that such agreements are advisable.  The Debtors hereby seek authority to make payments in the ordinary course on account of Priority Vendor Claims, even in the absence of a Trade Agreement, if the Debtors determine, in their business judgment, that failure to pay the Priority Vendor Claims in the ordinary course is likely to result in irreparable harm to the Debtors' business operations and that they are not reasonably likely to be able to achieve a Trade Agreement with the relevant Priority Vendor.

25.      In the event a Priority Vendor refuses to supply Goods to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Priority Vendor Claim, or fails to comply with any Trade Agreement entered into between such Priority Vendor and the Debtors, then the Debtors hereby seek authority, in their discretion and without further order of the Court, to (a) declare that any Trade Agreement between the Debtors and such Priority Vendor is terminated, (b) declare that payments made to such Priority Vendor on account of its Priority Vendor Claims be deemed to have been in payment of then-outstanding (or subsequently accruing) postpetition claims of such Priority Vendor without further order of the Court or action by any person or entity, and (c) recover any payment made to such Priority Vendor on account of its Priority Vendor Claims to the extent that such payments exceeded the postpetition claims of such Priority Vendor, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense.  In sum, in the event a Trade Agreement is terminated or a Priority Vendor refuses to supply Goods to the Debtors on Customary Trade Terms (or such other terms as have been agreed by the parties) following receipt of payment on its Priority Vendor Claim, the Debtors seek authority to return the parties to the positions they held immediately prior to the entry of the Order approving this Motion with respect to all prepetition claims.  In addition, the Debtors reserve the right to seek damages or other appropriate remedies against any breaching Priority Vendor.

26.     The Debtors further propose that any Trade Agreement terminated as a result of a Priority Vendor's refusal to comply with the terms thereof may be reinstated if: (a) the underlying default under the Trade Agreement is fully cured by the Priority Vendor not later than five (5) business days following the Debtors' notification to the Priority Vendor of such a default; or (b) the Debtors, in their discretion, reach a favorable alternative agreement with the Priority Vendor.

**VII.     Basis for Priority Vendors Relief**

27.     Under section 503(b)(9), a claim shall be accorded administrative expense priority where such claim is for the value of any goods received by the debtor within twenty (20) days before the Petition Date if such goods were sold to the debtor in the ordinary course. See 11 U.S.C. § 503(b)(9); see also In re Brown & Cole Stores, LLC, 375 B.R. 873, 877 (B.A.P. 9th Cir. 2007). Furthermore, under section 507(a)(2), administrative expenses allowed under section 503(b) are granted priority status. See 11 U.S.C. § 507(a)(2). The prepetition vendor claims the Debtors seek to pay by this Motion are entitled to priority status under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code. The Debtors therefore must pay these claims in full to confirm a plan of reorganization. See 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to priority under section 507(a)(2)). Thus, granting the relief sought herein would only affect the timing, and not the amount or priority of, the claims of Priority Vendors. Therefore, the payment of prepetition Priority Vendor Claims will not prejudice the unsecured creditors of the Debtors.

28.     Although Priority Vendor Claims may not be required to be paid prior to confirmation of a Chapter 11 plan, nothing in the Bankruptcy Code prohibits (i) the Debtors from paying such claims sooner if they choose to do so, or (ii) this Court from exercising its discretion to authorize the postpetition payment of such obligations prior to confirmation of a chapter 11 plan. See, e.g., In re Verco Indus., 20 B.R. 664, 665 (B.A.P. 9th 1982) (explaining that the timing of the payment of an administrative expense allowed under § 503(b)(9) is within the discretion of the bankruptcy court); In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005) (same); HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002) (same). In

granting a request for similar relief, at least one court observed that, "arguably the debtor could pay its 503(b)(9) claimants without court approval." In re Dura Automotive Sys., Inc., Case No. 06-11202 (Bankr. D. Del. Oct. 31, 2006) (approving payment of 503(b)(9) claims as first day relief).

29.    As explained above, it is critical to the survival of the Debtors that they continue to receive the Goods from the Priority Vendors in the immediate future on an uninterrupted basis as well as throughout the reorganization process.  The Debtors believe that without the relief requested herein, many Priority Vendors may cease delivering Goods to the Debtors, which could have devastating consequences for the Debtors.  In addition, by reserving the right to require, as a condition to any payment to a Priority Vendor, that the Priority Vendor enter into a Trade Agreement by which it must agree to deal with the Debtors on Customary Trade Terms, the Debtors anticipate they will be able to enhance their liquidity during these chapter 11 cases to the benefit of their estates and creditors.

30.    In light of the foregoing, the Debtors believe that the relief requested in this Motion is appropriate and is in the best interests of the Debtors, their estates, and their creditors.

31.    The Debtors submit that, for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm and Rule 6003 of the Federal Rules of Bankruptcy Procedure has been satisfied.

32.    To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Rule 6004(a) and the ten-day stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

1

## VIII.   Conclusion

2          **WHEREFORE**, the Debtors respectfully request that the Court enter interim and

3    final orders substantially in the form attached hereto (i) establishing procedures for reconciling

4    valid reclamation claims, (ii) prohibiting third parties from interfering with delivery of the

5    Debtors' Goods, (iii) authorizing debtors to pay certain prepetition claims of suppliers and

6    vendors of Goods entitled to administrative priority pursuant to sections 503(b)(9) and 507(a)(2)

7    of the Bankruptcy Code, and (iv) granting such other relief as is just and proper.

8

9    Dated:  July 28, 2009                    Respectfully submitted,

10

11                                       By:    _____/s_____
                                               Paul S. Aronzon, CA State Bar #88781
12                                             Thomas R. Kreller, CA State Bar #161922
                                               MILBANK, TWEED, HADLEY & McCLOY LLP
13                                             601 South Figueroa Street, 30th Floor
                                               Los Angeles, California 90017
14
                                               Proposed Reorganization Counsel for
15                                             Debtors and Debtors in Possession

16                                             Bruce T. Beesley, #1164
                                               Laury Macauley, #11413
17                                             LEWIS AND ROCA LLP
                                               50 W. Liberty Street, Ste. 410
18                                             Reno, NV   89501
                                               bbeesley@lrlaw.com; lmacauley@lrlaw.com
19
                                               Proposed Local Reorganization Counsel
20                                             For Debtors and Debtors in Possession

21

22

23

24

25

26

27

28

# **Exhibit A**

LA1:#6398880

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:      (213) 892-4000
Facsimile:      (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:      (775) 823-2900
Facsimile:      (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

NORTHERN NV ACQUISITIONS, LLC

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects Station Casinos, Inc.
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-_____
Jointly Administered

**INTERIM ORDER (i) ESTABLISHING PROCEDURES FOR RECONCILING VALID RECLAMATION CLAIMS, (ii) PROHIBITING THIRD PARTIES FROM INTERFERING WITH DELIVERY OF THE DEBTORS' GOODS, AND (iii) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF SUPPLIERS AND VENDORS OF GOODS ENTITLED TO ADMINISTRATIVE PRIORITY UNDER 11 U.S.C. §§ 503(b)(9) AND 507(a)(2)**

Hearing Date:      July 30, 2009
Hearing Time:      1:30 p.m.

LA1:#6398880

Upon the motion, dated July 28, 2009 (the "<u>Motion</u>"),[1] of Station Casinos, Inc. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>" or "<u>Station</u>")[2] in the above-captioned chapter 11 cases, for an order (i) establishing procedures for reconciling valid reclamation claims, (ii) prohibiting third parties from interfering with delivery of the Debtors' Goods, and (iii) authorizing the Debtors to pay certain prepetition claims of suppliers and vendors of Goods entitled to administrative priority pursuant to sections 503(b)(9) and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"); and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of Station and its estate and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Motion is granted on an interim basis pending a final hearing thereon (the "<u>Final Hearing</u>") and entry of a superseding Final Order by this Court; and it is further

**ORDERED** that the following procedures are approved for processing and reconciling valid Reclamation Demands:

---

[1]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2]   The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

- Any seller of Goods asserting a claim for reclamation must satisfy all requirements entitling it to have a right of reclamation under section 546 of the Bankruptcy Code and shall send the Reclamation Demand to the Debtors at Station Casinos, Inc., 1505 South Pavilion Center Drive, Las Vegas, Nevada, 89135; Attention:  Matthew L. Heinhold;

- After review of all Reclamation Demands and no later than two hundred seventy (270) days after entry of the order granting the relief requested herein, the Debtors will file a notice (the "Notice") and serve such Notice on the following parties (collectively, the "Notice Parties"): (i) the Office of the United States Trustee for the District of Nevada; (ii) counsel to any official committee of unsecured creditors; (iii) the parties that have made the Reclamation Demands that are the subject of the Notice at the address indicated in such Reclamation Demand; and (iv) counsel to the Debtors' prepetition and postpetition secured lenders. The Notice will list those reclamation claims and amounts, if any, which the Debtors deem to be valid. In addition, the Notice will state the defenses that the Debtors choose to reserve, if any;

- Any party who wishes to object to the information set forth in the Notice must file and serve, no later than sixty (60) days after the Notice is filed (the "Objection Deadline"), an objection (the "Reclamation Notice Objection") including the following information:  (i) a copy of the Reclamation Demand with evidence of the date mailed to the Debtors; (ii) the name of the Debtor entity that ordered the Goods that are the subject of the Reclamation Demand; (iii) copies of any purchase orders and invoices relating to the Goods that are the subject of the Reclamation Demand; (iv) any evidence demonstrating the date the Goods that are the subject of the Reclamation Demand were shipped and the date such Goods were received by the Debtors; and (v) a statement describing with specificity why the Notice is incorrect with any legal basis for the objection.  The Reclamation Notice Objection shall be served on the Notice Parties and on the Debtors' counsel at Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attention:  Kathleen Heinsberg;

- Any Reclamation Demand that is included and allowed in the Notice and is not the subject of a Reclamation Notice Objection by the Objection Deadline, shall be deemed a valid reclamation claim allowed by the Court at the amount set forth in the Notice;

- The Debtors are authorized to negotiate with all parties who have filed a Reclamation Notice Objection and adjust the value of the reclamation claim stated in the Notice to reach an agreement with such parties. In the event that the Debtors resolve a Reclamation Notice Objection, the Debtors shall prepare a notice of settlement (the "Settlement Notice"),

file such notice with the Court and serve it on the Notice Parties. The Notice Parties shall have ten (10) days from the date that the Settlement Notice is filed to object to the Settlement Notice. If no objection is filed, the reclamation claim will be deemed a valid reclamation claim allowed by the Court at the amount set forth in the Settlement Notice; and

- No later than ninety (90) days following the Objection Deadline (or a later date provided both parties agree), the Debtors shall file a motion for Court determination of any reclamation claims subject to a pending Reclamation Notice Objection. The Debtors will request that the matter be set for hearing at the next regularly scheduled omnibus hearing in accordance with appropriate notice, unless another hearing date is agreed to by the parties or ordered by the Court; and it is further

**ORDERED** that all sellers of Goods asserting a right of reclamation are prohibited from seeking to reclaim or otherwise interfere with the delivery of Goods to the Debtors; and it is further

**ORDERED** that the Debtors are authorized, but not directed, in their sole discretion, to pay in the ordinary course the Priority Vendor Claims; and it is further

**ORDERED** that the Priority Vendors shall have administrative expense claims with priority under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code for those undisputed obligations arising from shipments of Goods delivered, received and accepted by the Debtors in the ordinary course of business within the twenty (20) days before the Petition Date; and it is further

**ORDERED** that the Debtors are authorized, but not directed, to pay, in the ordinary course, their undisputed obligations to Priority Vendors who have an administrative expense claim with priority under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code for those undisputed obligations arising from shipments of Goods delivered, received and accepted by the Debtors in the ordinary course of business within the twenty (20) days before the Petition Date; and it is further

**ORDERED** that the Debtors are authorized, but not directed, to undertake appropriate efforts to cause Priority Vendors to enter into agreements with the Debtors (the

"<u>Trade Agreements</u>") as a condition of payment of each such Priority Vendor's Priority Vendor Claims, including, but not limited to, the following terms:

- The amount of such Priority Vendor's estimated prepetition claim, after accounting for any setoffs and other credits and discounts thereto, shall be as mutually determined in good faith by the Priority Vendor and the Debtors (but such amount shall be used only for purposes of the Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

- The Priority Vendor's agreement to be bound by the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) which were favorable to the Debtors and in effect between such Priority Vendor and the Debtors on a historical basis during the period within one hundred twenty (120) days of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such Priority Vendor;

- The Priority Vendor's agreement to provide Goods and services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay the Priority Vendor in accordance with such terms;

- The Priority Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Priority Vendor by the Debtors arising from Goods or services provided to the Debtors prior to the Petition Date, and that, to the extent that the Priority Vendor has previously obtained such a lien, the Priority Vendor shall immediately take all necessary actions to release such lien;

- The Priority Vendor's acknowledgment that it has reviewed the terms and provisions of the Order and consents to be bound thereby;

- The Priority Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

- The Priority Vendor's agreement that if it has received payment of a prepetition claim but subsequently refuses to supply Goods to the Debtors on Customary Trade Terms, any payments received by the Priority Vendor on account of its Priority Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Priority Vendor, and that such Priority Vendor shall

immediately repay to the Debtors any payments received on account of its Priority Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff or reclamation; and it is further

**ORDERED** that the Debtors are authorized, in their discretion, to make payments on account of a Priority Vendor Claim, subject to the other limits set forth herein, even in the absence of a Trade Agreement if the Debtors determine, in their business judgment, that failure to pay such Priority Vendor Claim is likely to result in irreparable harm to the Debtors' business operations; provided, however, that in the absence of a Trade Agreement, prior to any such payment of a Priority Vendor Claim, the Debtor must (i) notify Deutsche Bank Trust Company Americas (the "Prepetition Agent") of the proposed payment, (ii) discuss the payment with the Prepetition Agent and (iii) obtain the Prepetition Agent's prior written consent; and it is further

**ORDERED** that if a Priority Vendor refuses to supply Goods to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Priority Vendor Claim (regardless of whether such Priority Vendor has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Priority Vendor and the Debtors, then the Debtors may, in their discretion and without further order of the Court, (a) declare that any Trade Agreement between the Debtors and such Priority Vendor is terminated, (b) declare that payments made to such Priority Vendors on account of its Priority Vendor Claims shall be deemed to have been in payment of then-outstanding or subsequently accruing postpetition claims of such Priority Vendor without further order of the Court or action by any person or entity, and (c) recover any payment made to such Priority Vendor on account of its Priority Vendor Claims to the extent that such payments exceeded the postpetition claims of such Priority Vendor, without giving effect to any rights of setoff, claims, provision of payment of reclamation on trust fund claims or other defense.  Under any such circumstances, such Priority Vendor shall immediately repay to the Debtors any payment made to it on account of its Priority Vendor Claims to the extent that such payments exceed the postpetition claims of such Priority Vendor then outstanding, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other

defense. Nothing herein shall constitute a waiver of the Debtors rights to seek damages or other appropriate remedies against any breaching Priority Vendor; and it is further

ORDERED that notwithstanding the foregoing, the Debtors may, in their sole discretion, reinstate a Trade Agreement if: (a) the underlying default under the Trade Agreement is fully cured by the Priority Vendor not later than five (5) business days following the Debtors' notification to the Priority Vendor of such default had occurred; or (b) the Debtors, in their discretion, reach a favorable alternative agreement with the Priority Vendor; and it is further

ORDERED that nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Priority Vendor Claim; and it is further

ORDERED that nothing contained in this order shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Priority Vendor or to require the Debtors to make any of the payments authorized herein; and it is further

ORDERED that the entry of this Order is conditional on the terms set forth herein. Any party in interest may object to the entry of this Order within ten (10) days after the date of entry of this Order, except that the United States Trustee shall have fifteen (15) days after the entry of this Order to object and the statutory committee of unsecured creditors shall have ten (10) days after its appointment to object (each, an "Objection"). If any such Objection is timely filed and not withdrawn before such hearing, the Objection shall be heard at the next regularly scheduled omnibus hearing date. At the hearing, the Court may vacate this Order, modify it or make it final. If no timely Objection is filed (or is filed and subsequently withdrawn), this Order shall become final at the conclusion of such objection period without further order of the Court. This Order shall remain in effect until further order of the Court, and the modification or vacation of this Order shall not impair any action taken pursuant to it prior to its modification or vacation; and it is further

ORDERED that no payment sought in the Motion shall be permissible unless such payment is (i) made pursuant to an Interim or Final Order, as applicable, and (ii) otherwise consistent with the limitations set forth in the Interim Order Pursuant to 11 U.S.C. §§ 105, 361,

362, 363, 364 and 552 and Fed. R. Bankr. P. Rule 4001(B), (C) and (D) (I) Authorizing the

Debtors to (A) Use Cash Collateral; (B) Obtain Unsecured, Subordinated Post-Petition

Financing; (C) Make Loans to Non-Debtor Subsidiaries, (II) Granting Adequate Protection to

Prepetition Secured Parties, (III) Granting Related Relief, and (IV) Scheduling Final Hearing and

the Budget (as defined therein); and it is further

    **ORDERED** that the Final Hearing is set for _____ at _____

(prevailing Pacific Standard Time); and it is further

    **ORDERED** that within _____ days of this Interim Order, the Debtors shall serve

this Interim Order upon the Master Service List pursuant to the Court's Order Establishing

Notice Procedures; and it is further

    **ORDERED** that, notwithstanding any provision in the Federal Rules of

Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the

implementation, enforcement or realization of the relief granted in this Interim Order, and the

Debtors may, in their discretion and without further delay, take any action and perform any act

authorized under this Interim Order; and it is further

    **ORDERED** that all time periods set forth in this Order shall be calculated in

accordance with Bankruptcy Rule 9006(a); and it is further

    **ORDERED** that to the extent that this Order is inconsistent with any prior order

or pleading with respect to the Motion in these cases, the terms of this Order shall govern; and it

is further

    **ORDERED** that the Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order; and it is further

1    **ORDERED** that notice of the Motion as provided therein shall be deemed good

2    and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) are hereby

3    waived.

4

5    SUBMITTED BY:

6    Paul S. Aronzon (CA State Bar No. 88781)
     Thomas R. Kreller (CA State Bar No. 161922)

7    MILBANK, TWEED, HADLEY & McCLOY LLP
     601 South Figueroa Street, 30th Floor

8    Los Angeles, California 90017

9    Proposed Reorganization Counsel for
     Debtors and Debtors in Possession

10
     Bruce T. Beesley (NV SBN 1164)

11   Laury Macauley (NV SBN 11413)
     LEWIS AND ROCA LLP

12   50 West Liberty Street, Suite 410
     Reno, Nevada 89501

13   bbeesley@lrlaw.com; lmacauley@lrlaw.com

14
     Proposed Local Reorganization Counsel for

15   Debtors and Debtors in Possession

16
                                           # # #
17

18

19

20

21

22

23

24

25

26

27

28

LA1:#6398880

# **Exhibit B**

1

2

3

4

5

6   Paul S. Aronzon (CA State Bar No. 88781)              Bruce T. Beesley (NV SBN 1164)
    Thomas R. Kreller (CA State Bar No. 161922)          Laury Macauley (NV SBN 11413)
7   MILBANK, TWEED, HADLEY & McCLOY LLP                  LEWIS AND ROCA LLP
    601 South Figueroa Street, 30th Floor               50 West Liberty Street, Suite 410
8   Los Angeles, California 90017                        Reno, Nevada 89501
    Telephone:    (213) 892-4000                         Telephone:    (775) 823-2900
9   Facsimile:    (213) 629-5063                         Facsimile:    (775) 823-2929
                                                         bbeesley@lrlaw.com; lmacauley@lrlaw.com
10  Proposed Reorganization Counsel for
    Debtors and Debtors in Possession                    Proposed Local Reorganization Counsel for
11                                                       Debtors and Debtors in Possession

12

13                        **UNITED STATES BANKRUPTCY COURT**
                                **DISTRICT OF NEVADA**

14

15   NORTHERN NV ACQUISITIONS, LLC            Chapter 11

16   ☐ Affects this Debtor
     ☒ Affects all Debtors                    Case No. BK-09-_____
17                                            Jointly Administered
     ☐ Affects Reno Land Holdings, LLC
18   ☐ Affects River Central, LLC             **FINAL ORDER (i) ESTABLISHING**
                                              **PROCEDURES FOR RECONCILING**
19   ☐ Affects Tropicana Station, LLC         **VALID RECLAMATION CLAIMS,**
     ☐ Affects FCP Holding, Inc.              **(ii) PROHIBITING THIRD PARTIES**
20   ☐ Affects FCP Voteco, LLC                **FROM INTERFERING WITH DELIVERY**
                                              **OF THE DEBTORS' GOODS, AND**
21   ☐ Affects Fertitta Partners LLC          **(iii) AUTHORIZING DEBTORS TO PAY**
     ☐ Affects Station Casinos, Inc.          **CERTAIN PREPETITION CLAIMS OF**
22   ☐ Affects FCP MezzCo Parent, LLC         **SUPPLIERS AND VENDORS OF GOODS**
                                              **ENTITLED TO ADMINISTRATIVE**
23   ☐ Affects FCP MezzCo Parent Sub, LLC     **PRIORITY UNDER 11 U.S.C. §§ 503(b)(9)**
     ☐ Affects FCP MezzCo Borrower VII, LLC   **AND 507(a)(2)**
24   ☐ Affects FCP MezzCo Borrower VI, LLC
25   ☐ Affects FCP MezzCo Borrower V, LLC
     ☐ Affects FCP MezzCo Borrower IV, LLC    Hearing Date:
26   ☐ Affects FCP MezzCo Borrower III, LLC   Hearing Time:
     ☐ Affects FCP MezzCo Borrower II, LLC
27   ☐ Affects FCP MezzCo Borrower I, LLC
     ☐ Affects FCP PropCo, LLC
28

Upon the motion, dated July 28, 2009 (the "Motion"),[1] of Station Casinos, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[2] in the above-captioned chapter 11 cases, for an order (i) establishing procedures for reconciling valid reclamation claims, (ii) prohibiting third parties from interfering with delivery of the Debtors' Goods, and (iii) authorizing the Debtors to pay certain prepetition claims of suppliers and vendors of Goods entitled to administrative priority pursuant to sections 503(b)(9) and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of Station and its estate and creditors; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED** that the Motion is granted in its entirety; and it is further

**ORDERED** that the following procedures are approved for processing and reconciling valid Reclamation Demands:

- Any seller of Goods asserting a claim for reclamation must satisfy all requirements entitling it to have a right of reclamation under section 546

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2]    The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

of the Bankruptcy Code and shall send the Reclamation Demand to the Debtors at Station Casinos, Inc., 1505 South Pavilion Center Drive, Las Vegas, Nevada, 89135; Attention:  Matthew L. Heinhold;

- After review of all Reclamation Demands and no later than two hundred seventy (270) days after entry of the order granting the relief requested herein, the Debtors will file a notice (the "Notice") and serve such Notice on the following parties (collectively, the "Notice Parties"): (i) the Office of the United States Trustee for the District of Nevada; (ii) counsel to any official committee of unsecured creditors; (iii) the parties that have made the Reclamation Demands that are the subject of the Notice at the address indicated in such Reclamation Demand; and (iv) counsel to the Debtors' prepetition and postpetition secured lenders. The Notice will list those reclamation claims and amounts, if any, which the Debtors deem to be valid. In addition, the Notice will state the defenses that the Debtors choose to reserve, if any;

- Any party who wishes to object to the information set forth in the Notice must file and serve, no later than sixty (60) days after the Notice is filed (the "Objection Deadline"), an objection (the "Reclamation Notice Objection") including the following information:  (i) a copy of the Reclamation Demand with evidence of the date mailed to the Debtors; (ii) the name of the Debtor entity that ordered the Goods that are the subject of the Reclamation Demand; (iii) copies of any purchase orders and invoices relating to the Goods that are the subject of the Reclamation Demand; (iv) any evidence demonstrating the date the Goods that are the subject of the Reclamation Demand were shipped and the date such Goods were received by the Debtors; and (v) a statement describing with specificity why the Notice is incorrect with any legal basis for the objection.  The Reclamation Notice Objection shall be served on the Notice Parties and on the Debtors' counsel at Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attention:  Kathleen Heinsberg;

- Any Reclamation Demand that is included and allowed in the Notice and is not the subject of a Reclamation Notice Objection by the Objection Deadline, shall be deemed a valid reclamation claim allowed by the Court at the amount set forth in the Notice;

- The Debtors are authorized to negotiate with all parties who have filed a Reclamation Notice Objection and adjust the value of the reclamation claim stated in the Notice to reach an agreement with such parties. In the event that the Debtors resolve a Reclamation Notice Objection, the Debtors shall prepare a notice of settlement (the "Settlement Notice"), file such notice with the Court and serve it on the Notice Parties. The Notice Parties shall have ten (10) days from the date that the Settlement Notice is filed to object to the Settlement Notice. If no objection is filed,

the reclamation claim will be deemed a valid reclamation claim allowed by the Court at the amount set forth in the Settlement Notice; and

- No later than ninety (90) days following the Objection Deadline (or a later date provided both parties agree), the Debtors shall file a motion for Court determination of any reclamation claims subject to a pending Reclamation Notice Objection. The Debtors will request that the matter be set for hearing at the next regularly scheduled omnibus hearing in accordance with appropriate notice, unless another hearing date is agreed to by the parties or ordered by the Court; and it is further

**ORDERED** that all sellers of Goods asserting a right of reclamation are prohibited from seeking to reclaim or otherwise interfere with the delivery of Goods to the Debtors; and it is further

**ORDERED** that the Debtors are authorized, but not directed, in their sole discretion, to pay in the ordinary course the Priority Vendor Claims; and it is further

**ORDERED** that the Priority Vendors shall have administrative expense claims with priority under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code for those undisputed obligations arising from shipments of Goods delivered, received and accepted by the Debtors in the ordinary course of business within the twenty (20) days before the Petition Date; and it is further

**ORDERED** that the Debtors are authorized, but not directed, to pay, in the ordinary course, their undisputed obligations to Priority Vendors who have an administrative expense claim with priority under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code for those undisputed obligations arising from shipments of Goods delivered, received and accepted by the Debtors in the ordinary course of business within the twenty (20) days before the Petition Date; and it is further

**ORDERED** that the Debtors are authorized, but not directed, to undertake appropriate efforts to cause Priority Vendors to enter into agreements with the Debtors (the "Trade Agreements") as a condition of payment of each such Priority Vendor's Priority Vendor Claims, including, but not limited to, the following terms:

- The amount of such Priority Vendor's estimated prepetition claim, after accounting for any setoffs and other credits and discounts thereto, shall be as mutually determined in good faith by the Priority Vendor and the Debtors (but such amount shall be used only for purposes of the Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

- The Priority Vendor's agreement to be bound by the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) which were favorable to the Debtors and in effect between such Priority Vendor and the Debtors on a historical basis during the period within one hundred twenty (120) days of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such Priority Vendor;

- The Priority Vendor's agreement to provide Goods and services to the Debtors based upon Customary Trade Terms, and the Debtors' agreement to pay the Priority Vendor in accordance with such terms;

- The Priority Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Priority Vendor by the Debtors arising from Goods or services provided to the Debtors prior to the Petition Date, and that, to the extent that the Priority Vendor has previously obtained such a lien, the Priority Vendor shall immediately take all necessary actions to release such lien;

- The Priority Vendor's acknowledgment that it has reviewed the terms and provisions of the Order and consents to be bound thereby;

- The Priority Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

- The Priority Vendor's agreement that if it has received payment of a prepetition claim but subsequently refuses to supply Goods to the Debtors on Customary Trade Terms, any payments received by the Priority Vendor on account of its Priority Vendor Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to such Priority Vendor, and that such Priority Vendor shall immediately repay to the Debtors any payments received on account of its Priority Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding, without the right of setoff or reclamation; and it is further

     **ORDERED** that the Debtors are authorized, in their discretion, to make payments on account of a Priority Vendor Claim, subject to the other limits set forth herein, even in the absence of a Trade Agreement if the Debtors determine, in their business judgment, that failure to pay such Priority Vendor Claim is likely to result in irreparable harm to the Debtors' business operations; provided, however, that in the absence of a Trade Agreement, prior to any such payment of a Priority Vendor Claim, the Debtor must (i) notify Deutsche Bank Trust Company Americas (the "Prepetition Agent") of the proposed payment, (ii) discuss the payment with the Prepetition Agent and (iii) obtain the Prepetition Agent's prior written consent; and it is further

     **ORDERED** that if a Priority Vendor refuses to supply Goods to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Priority Vendor Claim (regardless of whether such Priority Vendor has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Priority Vendor and the Debtors, then the Debtors may, in their discretion and without further order of the Court, (a) declare that any Trade Agreement between the Debtors and such Priority Vendor is terminated, (b) declare that payments made to such Priority Vendors on account of its Priority Vendor Claims shall be deemed to have been in payment of then-outstanding or subsequently accruing postpetition claims of such Priority Vendor without further order of the Court or action by any person or entity, and (c) recover any payment made to such Priority Vendor on account of its Priority Vendor Claims to the extent that such payments exceeded the postpetition claims of such Priority Vendor, without giving effect to any rights of setoff, claims, provision of payment of reclamation on trust fund claims or other defense.  Under any such circumstances, such Priority Vendor shall immediately repay to the Debtors any payment made to it on account of its Priority Vendor Claims to the extent that such payments exceed the postpetition claims of such Priority Vendor then outstanding, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or other defense.  Nothing herein shall constitute a waiver of the Debtors rights to seek damages or other appropriate remedies against any breaching Priority Vendor; and it is further

**ORDERED** that notwithstanding the foregoing, the Debtors may, in their sole discretion, reinstate a Trade Agreement if: (a) the underlying default under the Trade Agreement is fully cured by the Priority Vendor not later than five (5) business days following the Debtors' notification to the Priority Vendor of such default had occurred; or (b) the Debtors, in their discretion, reach a favorable alternative agreement with the Priority Vendor; and it is further

**ORDERED** that nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Priority Vendor Claim; and it is further

**ORDERED** that nothing contained in this order shall be deemed to constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement between the Debtors and a Priority Vendor or to require the Debtors to make any of the payments authorized herein; and it is further

**ORDERED** that the entry of this Order is conditional on the terms set forth herein. Any party in interest may object to the entry of this Order within ten (10) days after the date of entry of this Order, except that the United States Trustee shall have fifteen (15) days after the entry of this Order to object and the statutory committee of unsecured creditors shall have ten (10) days after its appointment to object (each, an "Objection"). If any such Objection is timely filed and not withdrawn before such hearing, the Objection shall be heard at the next regularly scheduled omnibus hearing date. At the hearing, the Court may vacate this Order, modify it or make it final. If no timely Objection is filed (or is filed and subsequently withdrawn), this Order shall become final at the conclusion of such objection period without further order of the Court. This Order shall remain in effect until further order of the Court, and the modification or vacation of this Order shall not impair any action taken pursuant to it prior to its modification or vacation; and it is further

**ORDERED** that no payment sought in the Motion shall be permissible unless such payment is (i) made pursuant to an Interim or Final Order, as applicable, and (ii) otherwise consistent with the limitations set forth in the Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 552 and Fed. R. Bankr. P. Rule 4001(B), (C) and (D) (I) Authorizing the Debtors to (A) Use Cash Collateral; (B) Obtain Unsecured, Subordinated Post-Petition

Financing; (C) Make Loans to Non-Debtor Subsidiaries, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Related Relief, and (IV) Scheduling Final Hearing and the Budget (as defined therein); and it is further

**ORDERED** that the Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion; and it is further

**ORDERED** that all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a); and it is further

**ORDERED** that to the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern; and it is further

**ORDERED** that the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order; and it is further

**ORDERED** that the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

1            **ORDERED** that notice of the Motion as provided therein shall be deemed good

2 and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) are hereby

3 waived.

4

5 SUBMITTED BY:

6 Paul S. Aronzon (CA State Bar No. 88781)
7 Thomas R. Kreller (CA State Bar No. 161922)
   MILBANK, TWEED, HADLEY & McCLOY LLP
8 601 South Figueroa Street, 30th Floor
   Los Angeles, California 90017
9

10 Proposed Reorganization Counsel for
   Debtors and Debtors in Possession

11 Bruce T. Beesley (NV SBN 1164)
12 Laury Macauley (NV SBN 11413)
   LEWIS AND ROCA LLP
13 50 West Liberty Street, Suite 410
   Reno, Nevada 89501
14 bbeesley@lrlaw.com; lmacauley@lrlaw.com

15 Proposed Local Reorganization Counsel for
16 Debtors and Debtors in Possession

17

18                                      # # #

19

20

21

22

23

24

25

26

27

28