Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:    (775) 823-2900
Facsimile:    (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>NORTHERN NV ACQUISITIONS, LLC<br><br>☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects Station Casinos, Inc.<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC | Chapter 11<br><br>Case No. BK-09-_____;<br>Jointly Administered<br><br>**MOTION PURSUANT TO U.S.C. §§ 105(a) AND 363(b) AND FED. R. BANKR. P. 6004(a) FOR INTERIM AND FINAL ORDERS (i) AUTHORIZING PAYMENT OF ALL PREPETITION OBLIGATIONS RELATED TO WORKERS' COMPENSATION, LIABILITY, PROPERTY AND OTHER INSURANCE PROGRAMS IN THE ORDINARY COURSE, AND (ii) INSTRUCTING BANKS TO HONOR, PROCESS AND PAY ANY PAYMENT REQUESTS RELATED TO THE FOREGOING**<br><br>Hearing Date:    July 30, 2009<br>Hearing Time:    1:30 p.m.<br>Place:    300 Booth Street<br>        Reno, NV 89509 |

LA1:#6398882

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Station Casinos, Inc. ("SCI") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[1] in the above-captioned chapter 11 cases, hereby move for interim and final orders, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 6004(a) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), (i) authorizing payment of all prepetition obligations related to workers' compensation, liability, property and other insurance programs in the ordinary course, and (ii) instructing the Banks (as defined below) to honor, process and pay all payment requests related to the foregoing and, in support thereof, represent as follows:

**LEGAL MEMORANDUM**

## I.    Background

1.    The Debtors commenced these chapter 11 cases on July 28, 2009 (the "Petition Date"). SCI and its non-debtor subsidiaries (collectively, the "Station Group") constitute a gaming entertainment enterprise that owns and operates under the "Station" and "Fiesta" brand names ten major hotels/casinos (two of which are 50% owned) and eight smaller casinos (three of which are 50% owned) in the Las Vegas metropolitan area. The Station Group owns ten of the hotels/casinos' underlying real property in fee and leases the underlying real property for Texas Station Gambling Hall & Hotel ("Texas Station"), Wild Wild West Gambling Hall & Hotel ("Wild Wild West"), Barley's Casino & Brewing Company ("Barley's"), and The Greens Gaming and Dining ("The Greens"). Debtor FCP PropCo, LLC ("FCP PropCo") owns the underlying real estate for Palace Station Hotel & Casino ("Palace Station"), Sunset Station Hotel & Casino ("Sunset Station") and Red Rock Casino Resort Spa ("Red Rock"). FCP PropCo

---

[1]    The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC, Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

owns a portion of the underlying real property for Boulder Station Hotel & Casino ("Boulder Station") and also leases a portion of Boulder Station's underlying real property.  Station California, LLC ("Station California"), a non-debtor subsidiary of SCI, manages a casino for a Native American tribe.  As of July 17, 2009, the Station Group had approximately 13,174 employees, and the Debtors had approximately 663 employees.  The Station Group's growth strategy includes the master-planned expansions of its existing gaming facilities in Nevada, the development of gaming facilities on certain real estate that the Station Group now owns or is under contract to acquire in the Las Vegas valley and Reno, Nevada, the evaluation and pursuit of additional acquisition or development opportunities in Nevada and other gaming markets, and the pursuit of additional management agreements with Native American tribes.

2.      The Station Group owns and operates:  (i) Palace Station, (ii) Boulder Station, (iii) Texas Station, (iv) Sunset Station, (v) Santa Fe Station Hotel & Casino, (vi) Red Rock, (vii) Fiesta Rancho Casino Hotel, (viii) Fiesta Henderson Casino Hotel, (ix) Wild Wild West, (x) Wildfire Casino, (xi) Wildfire Casino – Boulder Highway, formerly known as Magic Star Casino, (xii) Gold Rush Casino, and (xiii) Lake Mead Casino.

3.      The Station Group also holds a 50% interest in the non-debtor entities that own and operate:  (i) Green Valley Ranch Resort Spa Casino ("Green Valley Ranch"), (ii) Aliante Station Casino & Hotel ("Aliante Station"), (iii) Barley's, (iv) The Greens, and (v) Wildfire Casino & Lanes, formerly known as Renata's Casino.

4.      Each of the Station Group's casinos caters primarily to local Las Vegas area residents.  The Station Group markets the eight "Station" casinos (including Green Valley Ranch, Red Rock and Aliante Station) together under the Station Casinos brand and the two "Fiesta" casinos under the Fiesta brand, offering convenience and choices to residents throughout the Las Vegas valley with its strategically located properties.  In addition, Station California manages Thunder Valley Casino in Northern California on behalf of the United Auburn Indian Community.

5.      As of June 30, 2009 and based on a general ledger book value, the Debtors owned assets valued in the aggregate in excess of approximately $5.7 billion and had debt and other liabilities of approximately $6.5 billion.

6.      SCI is a privately held company whose shares are held by Debtors Fertitta Partners LLC, FCP Holding, Inc. and FCP VoteCo, LLC.  FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC (collectively, the "CMBS Debtors"), as well as Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC and Tropicana Station, LLC, are all either direct or indirect wholly owned subsidiaries of SCI.  Certain of the CMBS Debtors issued a mortgage loan and related mezzanine financings in the aggregate principal amount of $2.475 billion (the "CMBS Loans").  The CMBS Loans are collateralized by substantially all fee and leasehold real property comprising Palace Station Hotel & Casino, Boulder Station Hotel & Casino, Sunset Station Hotel & Casino, and Red Rock.

7.      Filed concurrently herewith, and incorporated herein by reference, is the Omnibus Declaration of Thomas M. Friel in Support of the Debtors' Chapter 11 Petitions and First Day Motions, which contains more detail on the Debtors' assets, liabilities, equity ownership, business operations and business plans.

## II.      Jurisdiction and Venue

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## III.      Relief Requested

9.      In connection with the operation of their businesses, the Debtors maintain workers' compensation, directors' and officers' liability, and various other liability, property, and automobile insurance programs (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers"), including, but not limited to, those

Insurance Programs and policies listed on Exhibit A attached hereto.[2]  As set forth below, the Insurance Programs include coverage for, among other things, liabilities and losses related to workers' compensation, breach of officers' and directors' duties, personal injury, operation of vehicles, and various other property-related and general liabilities.

10.     The insurance coverage included in the Insurance Program includes coverage for the benefit of the Debtors and SCI's non-debtor subsidiaries.  Generally, SCI will procure the insurance coverages of the Insurance Programs on behalf of itself and its debtor and non-debtor subsidiaries.  Prepetition, all costs associated with the Insurance Programs were paid by SCI.  The majority of the coverages benefit, and cover the risks of, the non-debtor subsidiaries.  Thus, the Debtors anticipate that, postpetition, all costs associated with the Insurance Programs (including coverages for the benefit of both the Debtors and SCI's non-debtor subsidiaries) will be paid by Past Enterprises, Inc., which is a wholly owned, non-debtor subsidiary of SCI.  The Debtors anticipate that, postpetition, cash flow generated by the non-debtor subsidiaries of SCI will generally be concentrated into an account held by Past Enterprises, Inc.  The Debtors do not intend to separate or allocate the cost of insurance coverages between SCI and its non-debtor subsidiaries because procuring all insurance coverages for the Station Group together creates certain, material cost savings, and separating the procurement process between the Debtors and the non-debtor subsidiaries would be onerous, expensive and impracticable.

11.     Pursuant to Bankruptcy Code sections 105(a) and 363(b) and Bankruptcy Rule 6004(a), the Debtors seek from the Court the entry of an order, in the form attached hereto as Exhibit C (the "Interim Order"), authorizing, but not requiring, the Debtors to continue to (i) pay all Prepetition Broker Amounts, all Prepetition Workers' Compensation Amounts, all Prepetition Liability Insurance Amounts, all Prepetition A&G Insurance Amounts, all Prepetition Property Insurance Amounts, all Prepetition D&O Insurance Amounts, all Prepetition

---

[2]     In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain several other insurance policies and programs with respect to employee benefits, including health, dental, disability, and life insurance.  These programs and policies are addressed in a separate motion filed contemporaneously herewith pertaining to the Debtors' employee wage policies and benefit programs.

Miscellaneous Amounts, and all Prepetition Financing Amounts (as each such term is defined below) (collectively, the "Prepetition Insurance Obligations"), pending entry of a final order in the form attached hereto as Exhibit D (the "Final Order") and (ii) procure Insurance Programs for the Station Group on the understanding that SCI's non-debtor subsidiaries will pay all costs associated with such Insurance Programs (including costs paid on behalf of the Debtors), pending entry of the Final Order. The Debtors further request that the Interim Order (i) instruct the Banks (as defined below) to honor, process and pay, to the extent funds are available in their accounts, any checks or wire transfer requests issued by the Debtors with respect to their Prepetition Insurance Obligations, pending entry of the Final Order, and (ii) set a final hearing (the "Final Hearing") on the relief requested herein.

### IV.    The Debtors' Insurance Programs

12.    Debtors employ an insurance broker, Cragin & Pike, Inc. (located in Las Vegas, Nevada) ("Cragin & Pike"), to assist with the procurement and negotiation of the terms of the Insurance Programs (other than D&O Programs, as defined below). Cragin & Pike earns a commission on each policy, which is part of the aggregate premium amount of each policy. The Debtors believe that, as of the Petition Date, no amounts are owed to Cragin & Pike in connection with their brokerage services. Nevertheless, the Debtors seek to be authorized, but not directed, to pay in the ordinary course of business any amounts owing to Cragin & Pike in connection with their brokerage services that are payable as of the Petition Date and that SCI's non-debtor subsidiaries fail to pay (the "Prepetition Broker Amounts"). Postpetition, the Debtors intend to continue to engage Cragin & Pike in a manner consistent with past practices.

13.    Under applicable law, the Debtors are required to maintain workers' compensation policies and programs to provide their employees with workers' compensation coverage for claims arising from or related to their employment with the Debtors (the "Workers' Compensation Program"). The current Workers' Compensation Program covers the period June 1, 2009 through May 31, 2010. The Workers' Compensation Program entails a $350,000 per occurrence deductible, and the premium payable for such coverage is approximately $153,112. The Workers' Compensation Program has a self-insured retention for the amount of

the $350,000 deductible.  In addition, the Debtors pay to the Nevada Division of Insurance a quarterly assessment for self-insured companies (based on the amounts due for 2008, the Debtors estimate each quarterly payment to be $22,526) and an annual assessment for an insolvency fund (based on the amounts due for 2008, the Debtors estimate this assessment to be $3,250).  York Claims Services (a division of York Insurance Services Group, Inc.) is the third-party administrator of the Workers' Compensation Program, and the Debtors estimate the amount of their fees to be $22,500 per month.  The Debtors believe that, as of the Petition Date, no amounts are owed in connection with the Workers' Compensation Program.  Nevertheless, the Debtors seek to be authorized, but not directed, to pay in the ordinary course of business any amounts owing in connection with the Workers' Compensation Program payable as of the Petition Date and that SCI's non-debtor subsidiaries fail to pay (the "<u>Prepetition Workers' Compensation Amounts</u>").  Postpetition, the Debtors intend to continue to maintain the Workers' Compensation Program in a manner consistent with past practices, except that the Debtors anticipate that SCI's non-Debtor subsidiaries will pay all costs associated with the program (including costs paid on behalf of the Debtors).

14.     The Debtors maintain general liability and third-party insurance that covers, among other things, personal injury, bodily injury, employee benefits, liquor liability, spa liability, terrorism liability, and fire damage legal liability (the "<u>Liability Insurance Programs</u>"), with coverage of up to aggregate annual liabilities of $864,000,000 ($303,000,000 per liability). The Liability Insurance Programs have a self-insured retention level of $250,000.00 per occurrence, but if claims exceed $250,000, the Liability Insurance Programs cover every dollar. The aggregate annual premiums for the Liability Insurance Programs coverage is approximately $1,892,152, and the current policy expires May 31, 2010.  The Debtors believe that, as of the Petition Date, no amounts are owed in connection with the Liability Insurance Programs. Nevertheless, the Debtors seek to be authorized, but not directed, to pay in the ordinary course of business any amounts owing in connection with the Liability Insurance Programs payable as of the Petition Date and that SCI's non-debtor subsidiaries fail to pay (the "<u>Prepetition Liability Insurance Amounts</u>").  Postpetition, the Debtors intend to continue to maintain the Liability

Insurance Programs in a manner consistent with past practices, except that the Debtors anticipate that SCI's non-debtor subsidiaries will pay all costs associated with the programs (including costs paid on behalf of the Debtors).

15.    The Debtors maintain automobile insurance that covers, among other things, costs arising from automobile accidents, robbery, civil responsibility and legal defense, and garage liability insurance (the "Automobile & Garage Insurance Programs").  The total aggregate annual premium paid by Debtors for automobile and garage insurance coverage is approximately $453,892, and each of the current policies expires May 31, 2010.  The Debtors believe that, as of the Petition Date, no amounts are owed in connection with the Automobile & Garage Insurance Programs.  Nevertheless, the Debtors seek to be authorized, but not directed, to pay in the ordinary course of business any amounts owing in connection with the Automobile & Garage Insurance Programs payable as of the Petition Date and that SCI's non-debtor subsidiaries fail to pay (the "Prepetition A&G Insurance Amounts").  Postpetition, the Debtors intend to continue to maintain the Automobile & Garage Insurance Programs in a manner consistent with past practices, except that the Debtors anticipate that SCI's non-debtor subsidiaries will pay all costs associated with the programs (including costs paid on behalf of the Debtors).

16.    The Debtors maintain property insurance that covers, among other things, the Debtors' property, business income and third party liability for theft, earthquake, floods, acts of terrorism, and incidents involving boilers and machinery (the "Property Insurance Programs").  The Property Insurance Programs have a total insured value of approximately $5,032,892,275 and provides coverage of up to $1,000,000,000 for any single property (except for the Red Rock property for which the coverage limit is $1,186,365,000) and up to $1,100,000,000 for any act of terrorism.  The aggregate annual premiums for the Property Insurance Programs coverage is approximately $3,661,594.  Each of the current policies expires May 31, 2010, except for a portion of the terrorism insurance, which expires November 5, 2009.  The Debtors believe that, as of the Petition Date, no amounts are owed in connection with the Property Insurance Programs.  Nevertheless, the Debtors seek to be authorized, but not directed, to pay in the

ordinary course of business any amounts owing in connection with the Property Insurance Programs payable as of the Petition Date and that SCI's non-debtor subsidiaries fail to pay (the "Prepetition Property Insurance Amounts").  Postpetition, the Debtors intend to continue to maintain the Property Insurance Programs in a manner consistent with past practices, except that the Debtors anticipate that SCI's non-debtor subsidiaries will pay all costs associated with the programs (including costs paid on behalf of the Debtors).

17.    As is common with large businesses similar to those of the Debtors, the Debtors maintain insurance coverage for all of their directors and officers that covers, among other things, defense costs, settlements, court awards and pre- and post-judgment interest arising from claims brought by third parties alleging an insured is liable for an error, misstatement, misleading statement, improper act, omission, neglect or breach of duty (the "D&O Programs"). The D&O Programs have a total limit of liability of $280 million and a self-insured retention of $500,000.  A portion of the constituent insurance policies making up the D&O Programs (which have aggregate annual premiums of $392,573) expire on December 20, 2009.  The remaining portion of the constituent insurance policies expire on July 1, 2013.  Debtors employ an insurance broker, Aon Risk Services, Inc. ("AON"), to assist with the procurement and negotiation of the terms of the D&O Programs.  AON earns a commission on each policy, which is part of the aggregate premium amount of each policy.  The Debtors believe that, as of the Petition Date, no amounts (including any amounts owed to AON) are owed in connection with the D&O Programs.  Nevertheless, the Debtors seek to be authorized, but not directed, to pay in the ordinary course of business any amounts owing in connection with the D&O Programs (including any amounts owed to AON) payable as of the Petition Date and that SCI's non-debtor subsidiaries fail to pay (the "Prepetition D&O Insurance Amounts").  Postpetition, the Debtors intend to continue to maintain the D&O Programs in a manner consistent with past practices, except that the Debtors anticipate that SCI's non-debtor subsidiaries will pay all costs associated with the programs (including costs paid on behalf of the Debtors).

18.    The Debtors maintain several other insurance policies that cover, among other things, crime, aircraft hull and liability, kidnap and ransom, and employed lawyers'

liability (the "<u>Miscellaneous Programs</u>").  The aggregate annual premium for the Miscellaneous

Programs coverage is approximately $271,331, and each of the current policies expires on

May 31, 2010, or later.[3]  The Debtors believe that, as of the Petition Date, no amounts are owed

in connection with Miscellaneous Programs.  Nevertheless, the Debtors seek to be authorized,

but not directed, to pay in the ordinary course of business any amounts owing in connection with

the Miscellaneous Programs payable as of the Petition Date and that SCI's non-debtor

subsidiaries fail to pay (the "<u>Prepetition Miscellaneous Amounts</u>").  Postpetition, the Debtors

intend to continue to maintain the Miscellaneous Programs in a manner consistent with past

practices, except that the Debtors anticipate that SCI's non-debtor subsidiaries will pay all costs

associated with the programs (including costs paid on behalf of the Debtors).

19.    In connection with the Insurance Programs, SCI has entered into financing

arrangements with First Funding Corp. and Zurich American Insurance Company to finance a

portion of its insurance premiums.  These arrangements allowed SCI to pay certain of its

insurance premiums in several installments over a period of time, instead of in a single, large

annual payment.  In connection with the financing arrangement with First Funding Corp., SCI

finances approximately $4,253,194 in premiums, paying a down payment of approximately

$880,041 plus nine monthly installments of approximately $383,041 (representing total financing

charges of approximately $74,217).  The final installment is schedule to be paid in March 2010.

In connection with the financing arrangement with Zurich Financial Services, SCI finances

approximately $1,720,892 in premiums, paying a down payment of approximately $430,229 plus

nine monthly installments of approximately $143,507 (representing total financing charges of

approximately $900).  The final installment is scheduled to be paid in March 2010.  Prepetition,

all costs associated with the aforementioned financing arrangements were paid by SCI.  As of the

Petition Date, eight installments of each of the aforementioned financing arrangements (with an

aggregate value of approximately $4,212,384) remain unpaid.  Postpetition, Debtors anticipate

that all costs and expenses associated with these financing arrangements  (including costs paid on

---

[3]    Each of the policies making up the Miscellaneous Programs expires on May 31, 2010 except for the aircraft
hull and liability policy (expires August 18, 2009).

behalf of the Debtors) will be paid by SCI's non-debtor subsidiaries.  Nevertheless, the Debtors

seek to be authorized, but not directed, to pay in the ordinary course of business any amounts

owing in connection with the aforementioned financing arrangements payable as of the Petition

Date and that SCI's non-debtor subsidiaries fail to pay (the "Prepetition Financing Amounts").

In other respects, the Debtors intend to maintain these financing arrangements postpetition in a

manner consistent with past practices.

20.     As part of the Debtors' cash management system, the Debtors maintain

bank accounts at certain domestic banks (the "Banks"), including, but not limited to, the Banks

listed on Exhibit B attached hereto.  The Debtors draw upon funds in their accounts at the Banks

to satisfy their obligations arising from the Insurance Programs.

### V.      Basis for Relief Requested

21.     The Court may authorize the Debtors to pay prepetition premiums to

maintain insurance coverage under section 105(a) of the Bankruptcy Code.  Section 105(a) of the

Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a); see also Am.

Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.), 885 F.2d 621, 625 (9th

Cir. 1989) (section 105 endows the bankruptcy court with general equitable powers, where not

inconsistent with more specific law).  A bankruptcy court may use its equitable powers under

section 105 of the Bankruptcy Code to permit a debtor in possession to pay prepetition claims

when payment is necessary to effectuate the Debtors' bankruptcy goals and essential to the

continued operation of the business.  See Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S.

286 (1882); Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th

Cir. 1987) ("Cases have permitted unequal treatment of pre-petition debts when necessary for

rehabilitation . . . ."); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (a

bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt

when such payment is needed to facilitate the rehabilitation of the debtor is not a novel

concept"); see also In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999) (holding that

section 105(a) "provides a statutory basis for the payment of prepetition claims" under the

necessity of payment doctrine and noting the Supreme Court, Third Circuit, and District of Nevada all accept the authority of the bankruptcy court "to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under 11 U.S.C. § 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor.").

22.     In addition, the Court may authorize the Debtors to pay prepetition premiums to maintain insurance coverage under section 363(b) of the Bankruptcy Code.  In particular, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and an hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Thus, under this section, a court may authorize a debtor to pay certain prepetition claims.  See In re Adams Apple, Inc., 829 F.2d at 1490 (recognizing that allowance of "unequal treatment of prepetition debts when necessary for rehabilitation . . ." is appropriate); see also Ionosphere Clubs, 98 B.R. at 175 (authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); In re UAL Corp., Case No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction).

23.     After the Petition Date, maintenance of  the Debtors' insurance coverage under the Insurance Programs is crucial.  Authority to pay any prepetition amounts that may be due and owing under the Insurance Programs – to the extent the Debtors determine in their discretion that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment of the coverage, benefits or proceeds provided under the Insurance Programs – is a necessary requirement in the context of the Debtors' continued operation of its businesses.  Continuation of such coverage is required under applicable law and is imperative to the protection and preservation of the Debtors' most valuable assets.

24.     In addition, the Debtors may need to renew or replace certain of their Insurance Programs in the upcoming months.  The nonpayment of any premiums, deductibles, or

related fees under one of the Insurance Programs could result in one or more of the Insurance Carriers increasing future insurance premiums, declining to renew insurance policies or refusing to enter into new insurance agreements with the Debtors in the future.  If the Insurance Programs lapse without renewal, the Debtors may be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest.

25.    Moreover, the Insurance Programs are vital to the Debtors' ongoing operations.  Pursuant to the terms of contracts and real property leases that the Debtors or their non-debtor affiliates are parties to, as well as the guidelines established by the Office of the United States Trustee, the Debtors are obligated to remain current with respect to the bulk of their primary Insurance Programs.  Additionally, the funding of the Workers' Compensation Program is a requirement under applicable law for the Debtors' ability to employ personnel for its businesses and operations.  The retention of qualified and dedicated senior management is also linked to the continued effectiveness of the D&O Programs.  Therefore, the continuation of the Insurance Programs and the payment of all prepetition and postpetition obligations arising under the Insurance Programs is essential to the Debtors' businesses and to preserve value for all parties in interest.

26.    To the extent that a check issued or a funds transfer requested prior to the Petition Date for payment of Prepetition Insurance Obligations has not cleared a particular Bank as of the Petition Date, the Debtors seek entry of an order (a) authorizing and directing the Banks to honor such checks and/or funds transfer requests, and (b) authorizing the Debtors to issue replacement checks, submit replacement funds transfer requests or provide other means of payment to the appropriate entities to the extent necessary to pay all outstanding Prepetition Insurance Obligations described in the Motion.

27.    The Debtors represent that each of these checks or transfers is or will be drawn on the Debtors' general disbursement accounts and can be readily identified as relating directly to payments under the Insurance Programs.  Accordingly, the Debtors believe that prepetition checks and transfers other than those relating to the Insurance Programs will not be honored inadvertently.

28.     The relief requested herein is not prejudicial to any party in interest and, in fact, only benefits the Debtors' estates and their creditors.  For this reason, and the supporting authority found in sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors respectfully request authority to pay, in the ordinary course, all Prepetition Insurance Obligations relating to the periods before and after the Petition Date.  The Debtors also seek the entry of an order authorizing the Banks to honor, process, and pay, to the extent funds are available in their accounts, any checks or wire transfer requests issued by the Debtors with respect to their Prepetition Insurance Obligations.

29.     To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume the same.  Accordingly, if the Court authorizes the payments described above, any such payment should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.

30.     Nothing in the Motion should be construed as impairing the Debtors' right to contest the amount or priority of any Prepetition Insurance Obligations that may be owed to the Insurance Carriers, and the Debtors expressly reserve all of their rights with respect thereto.

31.     The Debtors submit that, for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm, and Rule 6003 of the Federal Rules of Bankruptcy Procedure has been satisfied.

32.     To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Rule 6004(a) and the ten-day stay under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

LA1:#6398882

VI.    **Conclusion**

**WHEREFORE**, the Debtors respectfully request entry of interim and final orders substantially in the form attached hereto granting (i) the relief requested herein, and (ii) such other and further relief as the Court may deem just and proper.


Dated:  July 28, 2009                    Respectfully submitted,


By:    _____/s_____

Paul S. Aronzon, CA State Bar #88781
Thomas R. Kreller, CA State Bar #161922
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley, #1164
Laury Macauley, #11413
LEWIS AND ROCA LLP
50 W. Liberty Street, Ste. 410
Reno, NV   89501
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel
For Debtors and Debtors in Possession

# Exhibit A

| Insurance Program | Carrier | Policy # |
|---|---|---|
| **Workers' Compensation Program** | | |
| Excess Workers Compensation | Safety National Insurance Co. | SP2Z57NV |
| **Liability Insurance Programs** | | |
| General Liability | Zurich Insurance Co. | GLO3672979-07 |
| Excess Liability | Lexington Insurance | 6502391 |
| Umbrella/Excess Liability | NSU Hospitality | Cert. #2144 |
| **Automobile & Garage Insurance Programs** | | |
| Automobile | Zurich Insurance Co. | BAP3672980-07 |
| **Property Insurance Programs** | | |
| Property | St. Paul Travelers | KTK-CMB-545D866-7-09 |
| Property Excess (Red Rock Casino Resort & Spa) | CNA Insurance Co. | RMP2068172176 |
| Property Excess (Red Rock Casino Resort & Spa) | Great American Insurance Co. | CPP9-92-76-67-03 |
| Excess Property Terrorism | Lloyds of London | P08GT01380, P08GT01381 and P08GT01382 |
| **D&O Programs** | | |
| D&O | St. Paul Mercury Insurance Co. | EC09002142 |
| D&O – Excess | ACE American Insurance Co. | DOXG23646924 002 |
| D&O – Excess | Liberty Mutual Insurance Co. | DO4N752026001 |
| D&O – Excess | National Union Fire Insurance Co. of Pittsburgh | 014205390 |
| D&O – Excess | U.S. Specialty Insurance Co. | 14MGU08A18195 |
| D&O – Excess | XL Specialty Insurance Co. | ELU109041-08 |

| Insurance Program | Carrier | Policy # |
|---|---|---|
| D&O – Excess Run-Off | ACE American Insurance Co. | DOXG23652845 001 |
| D&O – Excess Run-Off | Allied World Assurance Company Ltd | C006930/001 |
| D&O – Excess Run-Off | Allied World Assurance Company Ltd | C006934/001 |
| D&O – Excess Run-Off | Chicago Underwriting Group, Inc. | CUG 31577 |
| D&O – Excess Run-Off | Endurance Specialty Insurance Co. | P007494001 |
| D&O – Excess Run-Off | Hudson Insurance Company | HN-0303-2080 |
| D&O – Excess Run-Off | Hudson Insurance Company | HN-0303-2081 |
| D&O – Excess Run-Off | Liberty International Underwriters | 073911-026 |
| D&O – Excess Run-Off | National Union Fire Insurance Co. of Pittsburgh | 007415813 |
| D&O – Excess Run-Off | National Union Fire Insurance Co. of Pittsburgh | 009669331 |
| D&O – Excess Run-Off | RSUI Indemnity | NHS624366 |
| D&O – Excess Run-Off | RSUI Indemnity | NHS624367 |
| D&O – Excess Run-Off | Twin City Fire Insurance Co. | 00 DA 0241219 07 |
| D&O – Excess Run-Off | Twin City Fire Insurance Co. | 00 DA 0241233 07 |
| D&O – Excess Run-Off | Westchester Fire Insurance Co. | DOX G23822313 001 |
| D&O – Excess Run-Off | XL Specialty Insurance Co. | ELU096682-07 |
| D&O – Excess Run-Off | XL Specialty Insurance Co. | ELU096685-07 |
| D&O – Excess Run-Off | Zurich American Insurance Co. | DOC 9036911-00 |
| D&O – Excess Run-Off | Zurich American Insurance Co. | DOC 9037161-00 |
| **Miscellaneous Programs** | | |
| Crime | Great American Insurance Co. | CAS 375-69-27 |
| Aircraft Hull and Liability | Federal Insurance Co. (through Starr Aviation) | 9957-0356-02 |
| Kidnap and Ransom | Chubb Group | 8169-6136 |
| Employed Lawyers' Liability | National Union Fire Insurance Co. of Pittsburgh, PA | 019333424 |

# Exhibit B

| Bank | Account Holder |
|------|----------------|
| Bank of America, N.A. | Station Casinos, Inc. |
| Bank of America, N.A. | Fertitta Partners, LLC |
| Bank of America, N.A. | FCP Holding, Inc. |
| Bank of America, N.A. | FCP VoteCo, LLC |

# **Exhibit C**

1

2

3

4

5

6

7    Paul S. Aronzon (CA State Bar No. 88781)              Bruce T. Beesley (NV SBN 1164)
     Thomas R. Kreller (CA State Bar No. 161922)          Laury Macauley (NV SBN 11413)
8    MILBANK, TWEED, HADLEY & McCLOY LLP                  LEWIS AND ROCA LLP
     601 South Figueroa Street, 30th Floor               50 West Liberty Street, Suite 410
9    Los Angeles, California 90017                        Reno, Nevada 89501
     Telephone:    (213) 892-4000                         Telephone:    (775) 823-2900
10   Facsimile:    (213) 629-5063                         Facsimile:    (775) 823-2929
                                                          bbeesley@lrlaw.com; lmacauley@lrlaw.com
11   Proposed Reorganization Counsel for
     Debtors and Debtors in Possession                    Proposed Local Reorganization Counsel for
                                                          Debtors and Debtors in Possession

12                        **UNITED STATES BANKRUPTCY COURT**
                               **DISTRICT OF NEVADA**
13

14   In re:                                               Chapter 11

15   NORTHERN NV ACQUISITIONS, LLC
                                                          Case No. BK-09-_____
16   ☐ Affects this Debtor                                Jointly Administered
     ☒ Affects all Debtors
17   ☐ Affects Reno Land Holdings, LLC                    **INTERIM ORDER PURSUANT TO U.S.C.**
                                                          **§§ 105(a) AND 363(b) AND FED. R.**
18   ☐ Affects River Central, LLC                         **BANKR. P. 6004(a) (i) AUTHORIZING**
     ☐ Affects Tropicana Station, LLC                     **PAYMENT OF ALL PREPETITION**
19   ☐ Affects FCP Holding, Inc.                          **OBLIGATIONS RELATED TO**
                                                          **WORKERS' COMPENSATION,**
20   ☐ Affects FCP Voteco, LLC                            **LIABILITY, PROPERTY AND OTHER**
     ☐ Affects Fertitta Partners LLC                      **INSURANCE PROGRAMS IN THE**
21   ☐ Affects Station Casinos, Inc.                      **ORDINARY COURSE, AND**
                                                          **(ii) INSTRUCTING BANKS TO HONOR,**
22   ☐ Affects FCP MezzCo Parent, LLC                     **PROCESS AND PAY ANY PAYMENT**
     ☐ Affects FCP MezzCo Parent Sub, LLC                 **REQUESTS RELATED TO THE**
23   ☐ Affects FCP MezzCo Borrower VII, LLC               **FOREGOING**
     ☐ Affects FCP MezzCo Borrower VI, LLC
24   ☐ Affects FCP MezzCo Borrower V, LLC
     ☐ Affects FCP MezzCo Borrower IV, LLC
25   ☐ Affects FCP MezzCo Borrower III, LLC               Hearing Date:    July 30, 2009
     ☐ Affects FCP MezzCo Borrower II, LLC                Hearing Time:    1:30 p.m.
26   ☐ Affects FCP MezzCo Borrower I, LLC
27   ☐ Affects FCP PropCo, LLC

28

Upon the motion, dated July 28, 2009 (the "Motion"),[1] of Station Casinos, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[2] in the above-captioned chapter 11 cases, for interim an final orders, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 6004(a) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), (i) authorizing payment of all prepetition obligations related to workers' compensation, liability, property and other insurance programs as set forth on Exhibit A annexed hereto, and (ii) instructing the Banks to honor, process and pay obligations related to all of the foregoing on an uninterrupted basis, consistent with their practices in effect prior to the commencement of the Debtors' chapter 11 cases, including the payment of all prepetition premiums, claims, deductibles, excess, administrative expenses and all other related charges or expenses incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases, all as more fully set forth in the Motion; and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2]     The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

1    **ORDERED** that the Motion is granted on an interim basis pending a final hearing

2    thereon (the "Final Hearing") and entry of a superseding Final Order by this Court; and it is

3    further

4    **ORDERED** that the Debtors are authorized, but not required, to pay all

5    Prepetition Insurance Obligations, as more fully described in the Motion, in the ordinary course

6    of the Debtors' businesses; and it is further

7    **ORDERED** that the Debtors are authorized, but not required, to continue to

8    procure Insurance Programs for all of the Station Group on the understanding that SCI's non-

9    debtor subsidiaries will pay all costs associated with such Insurance Programs (including costs

10    paid on behalf of the Debtors); and it is further

11    **ORDERED** that the Debtors' banks, including, but not limited to those set forth

12    on Exhibit B annexed hereto, are authorized and directed to process, honor and pay, to the extent

13    of funds on deposit, any and all prepetition checks, wire transfer requests or inter-company

14    transfer requests issued by the Debtors in respect of any Insurance Obligations, whether pre or

15    postpetition; and it is further

16    **ORDERED** that nothing in this Order or the Motion shall be construed as

17    prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims

18    against the Debtors in connection with or relating to the Workers' Compensation Program,

19    Liability Insurance Programs, Automobile & Garage Insurance Programs, Miscellaneous

20    Programs, D&O Programs, Property Insurance Programs or any other Insurance Program; and it

21    is further

22    **ORDERED** that to the extent any Insurance Program or related agreement is

23    deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither

24    this Order nor any payments made in accordance with this Order shall constitute the postpetition

25    assumption of those Insurance Programs or related agreements under section 365 of the

26    Bankruptcy Code; and it is further

27    **ORDERED** that no payment sought in the Motion shall be permissible unless

28    such payment is (i) made pursuant to an Interim or Final Order, as applicable, and (ii) otherwise

consistent with the limitations set forth in the Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 552 and Fed. R. Bankr. P. Rule 4001(B), (C) and (D) (I) Authorizing the Debtors to (A) Use Cash Collateral; (B) Obtain Unsecured, Subordinated Post-Petition Financing; (C) Make Loans to Non-Debtor Subsidiaries, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Related Relief, and (IV) Scheduling Final Hearing and the Budget (as defined therein); and it is further

**ORDERED** that the Final Hearing is set for _____ at _____ (prevailing Pacific Standard Time); and it is further

**ORDERED** that, notwithstanding any applicability of, among others, Bankruptcy Rules 6003 and 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that, notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Interim Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Interim Order; and it is further

**ORDERED** that within _____ days of this Interim Order, the Debtors shall serve this Interim Order upon the Master Service List pursuant to the Court's Order Establishing Notice Procedures; and it is further

1        **ORDERED** that notice of the Motion as provided therein shall be deemed good

2  and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) are hereby

3  waived.

4

5  SUBMITTED BY:

6  Paul S. Aronzon (CA State Bar No. 88781)

7  Thomas R. Kreller (CA State Bar No. 161922)
    MILBANK, TWEED, HADLEY & McCLOY LLP

8  601 South Figueroa Street, 30th Floor
    Los Angeles, California 90017

9

10  Proposed Reorganization Counsel for
    Debtors and Debtors in Possession

11

12  Bruce T. Beesley (NV SBN 1164)
    Laury Macauley (NV SBN 11413)

13  LEWIS AND ROCA LLP
    50 West Liberty Street, Suite 410

14  Reno, Nevada 89501
    bbeesley@lrlaw.com; lmacauley@lrlaw.com

15

16  Proposed Local Reorganization Counsel for
    Debtors and Debtors in Possession

                                                   # # #

# Exhibit A To Interim Order

| Insurance Program | Carrier | Policy # |
|---|---|---|
| **Workers' Compensation Program** | | |
| Excess Workers Compensation | Safety National Insurance Co. | SP2Z57NV |
| **Liability Insurance Programs** | | |
| General Liability | Zurich Insurance Co. | GLO3672979-07 |
| Excess Liability | Lexington Insurance | 6502391 |
| Umbrella/Excess Liability | NSU Hospitality | Cert. #2144 |
| **Automobile & Garage Insurance Programs** | | |
| Automobile | Zurich Insurance Co. | BAP3672980-07 |
| **Property Insurance Programs** | | |
| Property | St. Paul Travelers | KTK-CMB-545D866-7-09 |
| Property Excess (Red Rock Casino Resort & Spa) | CNA Insurance Co. | RMP2068172176 |
| Property Excess (Red Rock Casino Resort & Spa) | Great American Insurance Co. | CPP9-92-76-67-03 |
| Excess Property Terrorism | Lloyds of London | P08GT01380, P08GT01381 and P08GT01382 |
| **D&O Programs** | | |
| D&O | St. Paul Mercury Insurance Co. | EC09002142 |
| D&O – Excess | ACE American Insurance Co. | DOXG23646924 002 |
| D&O – Excess | Liberty Mutual Insurance Co. | DO4N752026001 |
| D&O – Excess | National Union Fire Insurance Co. of Pittsburgh | 014205390 |
| D&O – Excess | U.S. Specialty Insurance Co. | 14MGU08A18195 |
| D&O – Excess | XL Specialty Insurance Co. | ELU109041-08 |
| D&O – Excess Run-Off | ACE American Insurance Co. | DOXG23652845 001 |

| Insurance Program | Carrier | Policy # |
|---|---|---|
| D&O – Excess Run-Off | Allied World Assurance Company Ltd | C006930/001 |
| D&O – Excess Run-Off | Allied World Assurance Company Ltd | C006934/001 |
| D&O – Excess Run-Off | Chicago Underwriting Group, Inc. | CUG 31577 |
| D&O – Excess Run-Off | Endurance Specialty Insurance Co. | P007494001 |
| D&O – Excess Run-Off | Hudson Insurance Company | HN-0303-2080 |
| D&O – Excess Run-Off | Hudson Insurance Company | HN-0303-2081 |
| D&O – Excess Run-Off | Liberty International Underwriters | 073911-026 |
| D&O – Excess Run-Off | National Union Fire Insurance Co. of Pittsburgh | 007415813 |
| D&O – Excess Run-Off | National Union Fire Insurance Co. of Pittsburgh | 009669331 |
| D&O – Excess Run-Off | RSUI Indemnity | NHS624366 |
| D&O – Excess Run-Off | RSUI Indemnity | NHS624367 |
| D&O – Excess Run-Off | Twin City Fire Insurance Co. | 00 DA 0241219 07 |
| D&O – Excess Run-Off | Twin City Fire Insurance Co. | 00 DA 0241233 07 |
| D&O – Excess Run-Off | Westchester Fire Insurance Co. | DOX G23822313 001 |
| D&O – Excess Run-Off | XL Specialty Insurance Co. | ELU096682-07 |
| D&O – Excess Run-Off | XL Specialty Insurance Co. | ELU096685-07 |
| D&O – Excess Run-Off | Zurich American Insurance Co. | DOC 9036911-00 |
| D&O – Excess Run-Off | Zurich American Insurance Co. | DOC 9037161-00 |
| **Miscellaneous Programs** | | |
| Crime | Great American Insurance Co. | CAS 375-69-27 |
| Aircraft Hull and Liability | Federal Insurance Co. (through Starr Aviation) | 9957-0356-02 |
| Kidnap and Ransom | Chubb Group | 8169-6136 |
| Employed Lawyers' Liability | National Union Fire Insurance Co. of Pittsburgh, PA | 019333424 |

# **Exhibit B To Interim Order**

| Bank | Account Holder |
|---|---|
| Bank of America, N.A. | Station Casinos, Inc. |
| Bank of America, N.A. | Fertitta Partners, LLC |
| Bank of America, N.A. | FCP Holding, Inc. |
| Bank of America, N.A. | FCP VoteCo, LLC |

# **Exhibit D**

1

2

3

4

5

6

7

8

9

10

11

12

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:      (213) 892-4000
Facsimile:      (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:      (775) 823-2900
Facsimile:      (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re:

NORTHERN NV ACQUISITIONS, LLC

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects Station Casinos, Inc.
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-_____
Jointly Administered

**FINAL ORDER PURSUANT TO U.S.C. §§ 105(a) AND 363(b) AND FED. R. BANKR. P. 6004(a) (i) AUTHORIZING PAYMENT OF ALL PREPETITION OBLIGATIONS RELATED TO WORKERS' COMPENSATION, LIABILITY, PROPERTY AND OTHER INSURANCE PROGRAMS IN THE ORDINARY COURSE, AND (ii) INSTRUCTING BANKS TO HONOR, PROCESS AND PAY ANY PAYMENT REQUESTS RELATED TO THE FOREGOING**

Hearing Date:
Hearing Time:

LA1:#6398882

Upon the motion, dated July 28, 2009 (the "Motion"),[1] of Station Casinos, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[2] in the above-captioned chapter 11 cases, for interim and final orders, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 6004(a) of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), (i) authorizing payment of all prepetition obligations related to workers' compensation, liability, property and other insurance programs as set forth on Exhibit A annexed hereto, and (ii) instructing the Banks to honor, process and pay obligations related to all of the foregoing on an uninterrupted basis, consistent with their practices in effect prior to the commencement of the Debtors' chapter 11 cases, including the payment of all prepetition premiums, claims, deductibles, excess, administrative expenses and all other related charges or expenses incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases, all as more fully set forth in the Motion; and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is

**ORDERED** that the Motion is granted in its entirety; and it is further

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[2]    The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

1    **ORDERED** that the Debtors are authorized, but not required, to pay all

2  Prepetition Insurance Obligations, as more fully described in the Motion, in the ordinary course

3  of the Debtors' businesses; and it is further

4    **ORDERED** that the Debtors are authorized, but not required, to continue to

5  procure Insurance Programs for all of the Station Group on the understanding that SCI's non-

6  debtor subsidiaries will pay all costs associated with such Insurance Programs (including costs

7  paid on behalf of the Debtors); and it is further

8    **ORDERED** that the Debtors' banks, including, but not limited to those set forth

9  on <u>Exhibit B</u> annexed hereto, are authorized and directed to process, honor and pay, to the extent

10  of funds on deposit, any and all prepetition checks, wire transfer requests or inter-company

11  transfer requests issued by the Debtors in respect of any Prepetition Insurance Obligations; and it

12  is further

13    **ORDERED** that nothing in this Order or the Motion shall be construed as

14  prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims

15  against the Debtors in connection with or relating to the Workers' Compensation Program,

16  Liability Insurance Programs, Automobile & Garage Insurance Programs, Miscellaneous

17  Programs, D&O Programs, Property Insurance Programs or any other Insurance Program; and it

18  is further

19    **ORDERED** that to the extent any Insurance Program or related agreement is

20  deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither

21  this Order nor any payments made in accordance with this Order shall constitute the postpetition

22  assumption of those Insurance Programs or related agreements under section 365 of the

23  Bankruptcy Code; and it is further

24    **ORDERED** that no payment sought in the Motion shall be permissible unless

25  such payment is (i) made pursuant to an Interim or Final Order, as applicable, and (ii) otherwise

26  consistent with the limitations set forth in the Interim Order Pursuant to 11 U.S.C. §§ 105, 361,

27  362, 363, 364 and 552 and Fed. R. Bankr. P. Rule 4001(B), (C) and (D) (I) Authorizing the

28  Debtors to (A) Use Cash Collateral; (B) Obtain Unsecured, Subordinated Post-Petition

1  Financing; (C) Make Loans to Non-Debtor Subsidiaries, (II) Granting Adequate Protection to

2  Prepetition Secured Parties, (III) Granting Related Relief, and (IV) Scheduling Final Hearing and

3  the Budget (as defined therein); and it is further

4           **ORDERED** that all objections to the relief requested in the Motion have been

5  overruled; and it is further

6           **ORDERED** that, notwithstanding any applicability of, among others, Bankruptcy

7  Rules 6003 and 6004(h), the terms and conditions of this Order shall be immediately effective

8  and enforceable upon its entry; and it is further

9           **ORDERED** that notice of the Motion as provided therein shall be deemed good

10  and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) are hereby

11  waived.

12

13  SUBMITTED BY:

14  Paul S. Aronzon (CA State Bar No. 88781)

15  Thomas R. Kreller (CA State Bar No. 161922)
    MILBANK, TWEED, HADLEY & McCLOY LLP

16  601 South Figueroa Street, 30th Floor
    Los Angeles, California 90017

17

18  Proposed Reorganization Counsel for
    Debtors and Debtors in Possession

19

20  Bruce T. Beesley (NV SBN 1164)
    Laury Macauley (NV SBN 11413)

21  LEWIS AND ROCA LLP
    50 West Liberty Street, Suite 410

22  Reno, Nevada 89501
    bbeesley@lrlaw.com; lmacauley@lrlaw.com

23

24  Proposed Local Reorganization Counsel for
    Debtors and Debtors in Possession

25                                           # # #

26

27

28

# Exhibit A To Final Order

| Insurance Program | Carrier | Policy # |
|---|---|---|
| **Workers' Compensation Program** | | |
| Excess Workers Compensation | Safety National Insurance Co. | SP2Z57NV |
| **Liability Insurance Programs** | | |
| General Liability | Zurich Insurance Co. | GLO3672979-07 |
| Excess Liability | Lexington Insurance | 6502391 |
| Umbrella/Excess Liability | NSU Hospitality | Cert. #2144 |
| **Automobile & Garage Insurance Programs** | | |
| Automobile | Zurich Insurance Co. | BAP3672980-07 |
| **Property Insurance Programs** | | |
| Property | St. Paul Travelers | KTK-CMB-545D866-7-09 |
| Property Excess (Red Rock Casino Resort & Spa) | CNA Insurance Co. | RMP2068172176 |
| Property Excess (Red Rock Casino Resort & Spa) | Great American Insurance Co. | CPP9-92-76-67-03 |
| Excess Property Terrorism | Lloyds of London | P08GT01380, P08GT01381 and P08GT01382 |
| **D&O Programs** | | |
| D&O | St. Paul Mercury Insurance Co. | EC09002142 |
| D&O – Excess | ACE American Insurance Co. | DOXG23646924 002 |
| D&O – Excess | Liberty Mutual Insurance Co. | DO4N752026001 |
| D&O – Excess | National Union Fire Insurance Co. of Pittsburgh | 014205390 |
| D&O – Excess | U.S. Specialty Insurance Co. | 14MGU08A18195 |
| D&O – Excess | XL Specialty Insurance Co. | ELU109041-08 |
| D&O – Excess Run-Off | ACE American Insurance Co. | DOXG23652845 001 |

| Insurance Program | Carrier | Policy # |
|---|---|---|
| D&O – Excess Run-Off | Allied World Assurance Company Ltd | C006930/001 |
| D&O – Excess Run-Off | Allied World Assurance Company Ltd | C006934/001 |
| D&O – Excess Run-Off | Chicago Underwriting Group, Inc. | CUG 31577 |
| D&O – Excess Run-Off | Endurance Specialty Insurance Co. | P007494001 |
| D&O – Excess Run-Off | Hudson Insurance Company | HN-0303-2080 |
| D&O – Excess Run-Off | Hudson Insurance Company | HN-0303-2081 |
| D&O – Excess Run-Off | Liberty International Underwriters | 073911-026 |
| D&O – Excess Run-Off | National Union Fire Insurance Co. of Pittsburgh | 007415813 |
| D&O – Excess Run-Off | National Union Fire Insurance Co. of Pittsburgh | 009669331 |
| D&O – Excess Run-Off | RSUI Indemnity | NHS624366 |
| D&O – Excess Run-Off | RSUI Indemnity | NHS624367 |
| D&O – Excess Run-Off | Twin City Fire Insurance Co. | 00 DA 0241219 07 |
| D&O – Excess Run-Off | Twin City Fire Insurance Co. | 00 DA 0241233 07 |
| D&O – Excess Run-Off | Westchester Fire Insurance Co. | DOX G23822313 001 |
| D&O – Excess Run-Off | XL Specialty Insurance Co. | ELU096682-07 |
| D&O – Excess Run-Off | XL Specialty Insurance Co. | ELU096685-07 |
| D&O – Excess Run-Off | Zurich American Insurance Co. | DOC 9036911-00 |
| D&O – Excess Run-Off | Zurich American Insurance Co. | DOC 9037161-00 |
| **Miscellaneous Programs** | | |
| Crime | Great American Insurance Co. | CAS 375-69-27 |
| Aircraft Hull and Liability | Federal Insurance Co. (through Starr Aviation) | 9957-0356-02 |
| Kidnap and Ransom | Chubb Group | 8169-6136 |
| Employed Lawyers' Liability | National Union Fire Insurance Co. of Pittsburgh, PA | 019333424 |

# <u>Exhibit B to Final Order</u>

| Bank | Account Holder |
|------|----------------|
| Bank of America, N.A. | Station Casinos, Inc. |
| Bank of America, N.A. | Fertitta Partners, LLC |
| Bank of America, N.A. | FCP Holding, Inc. |
| Bank of America, N.A. | FCP VoteCo, LLC |