1  | Paul S. Aronzon (CA State Bar No. 88781)
   | Thomas R. Kreller (CA State Bar No. 161922)
2  | MILBANK, TWEED, HADLEY & McCLOY LLP
   | 601 South Figueroa Street, 30th Floor
3  | Los Angeles, California 90017
   | Telephone:     (213) 892-4000
4  | Facsimile:     (213) 629-5063

5  | Proposed Reorganization Counsel for
   | Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

NORTHERN NV ACQUISITIONS, LLC

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects Station Casinos, Inc.
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-_____;
Jointly Administered

**MOTION FOR ORDER PURSUANT
TO 11 U.S.C. §§ 105(a) AND 331, FED.
R. BANKR. P. 2016 AUTHORIZING
AND ESTABLISHING PROCEDURES
FOR INTERIM COMPENSATION
AND REIMBURSEMENT OF
EXPENSES OF PROFESSIONALS**

Hearing Date:     July 30, 2009
Hearing Time:     1:30 p.m.
Place:               300 Booth Street
                         Reno, NV 89509

LA1:#6398899

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Station Casinos, Inc. ("SCI") and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[1] in the above-captioned chapter 11 cases, hereby submit this motion (the "Motion") for interim and final orders pursuant to sections 105(a) and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), authorizing and establishing procedures for the interim compensation and reimbursement of expenses of professionals, and in support thereof respectfully represent:

**LEGAL MEMORANDUM**

**I.    Background**

1.    The Debtors commenced these chapter 11 cases on July 28, 2009 (the "Petition Date").  SCI and its non-debtor subsidiaries (collectively, the "Station Group") constitute a gaming entertainment enterprise that owns and operates under the "Station" and "Fiesta" brand names ten major hotels/casinos (two of which are 50% owned) and eight smaller casinos (three of which are 50% owned) in the Las Vegas metropolitan area. The Station Group owns ten of the hotels/casinos' underlying real property in fee and leases the underlying real property for Texas Station Gambling Hall & Hotel ("Texas Station"), Wild Wild West Gambling Hall & Hotel ("Wild Wild West"), Barley's Casino & Brewing Company ("Barley's"), and The Greens Gaming and Dining ("The Greens").  Debtor FCP PropCo, LLC ("FCP PropCo") owns the underlying real estate for Palace Station Hotel & Casino ("Palace Station"), Sunset Station Hotel & Casino ("Sunset Station") and Red Rock Casino Resort Spa ("Red Rock").  FCP PropCo owns a portion of the underlying real property for Boulder Station Hotel & Casino ("Boulder Station") and also leases a portion of Boulder Station's underlying real property.  Station

---

[1]    The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

California, LLC ("Station California"), a non-debtor subsidiary of SCI, manages a casino for a Native American tribe. As of July 17, 2009, the Station Group had approximately 13,174 employees, and the Debtors had approximately 663 employees. The Station Group's growth strategy includes the master-planned expansions of its existing gaming facilities in Nevada, the development of gaming facilities on certain real estate that the Station Group now owns or is under contract to acquire in the Las Vegas valley and Reno, Nevada, the evaluation and pursuit of additional acquisition or development opportunities in Nevada and other gaming markets, and the pursuit of additional management agreements with Native American tribes.

2.       The Station Group owns and operates: (i) Palace Station, (ii) Boulder Station, (iii) Texas Station, (iv) Sunset Station, (v) Santa Fe Station Hotel & Casino, (vi) Red Rock, (vii) Fiesta Rancho Casino Hotel, (viii) Fiesta Henderson Casino Hotel, (ix) Wild Wild West, (x) Wildfire Casino, (xi) Wildfire Casino – Boulder Highway, formerly known as Magic Star Casino, (xii) Gold Rush Casino, and (xiii) Lake Mead Casino.

3.       The Station Group also holds a 50% interest in the non-debtor entities that own and operate: (i) Green Valley Ranch Resort Spa Casino ("Green Valley Ranch"), (ii) Aliante Station Casino & Hotel ("Aliante Station"), (iii) Barley's, (iv) The Greens, and (v) Wildfire Casino & Lanes, formerly known as Renata's Casino.

4.       Each of the Station Group's casinos caters primarily to local Las Vegas area residents. The Station Group markets the eight "Station" casinos (including Green Valley Ranch, Red Rock and Aliante Station) together under the Station Casinos brand and the two "Fiesta" casinos under the Fiesta brand, offering convenience and choices to residents throughout the Las Vegas valley with its strategically located properties. In addition, Station California manages Thunder Valley Casino in Northern California on behalf of the United Auburn Indian Community.

5.       As of June 30, 2009 and based on a general ledger book value, the Debtors owned assets valued in the aggregate in excess of approximately $5.7 billion and had debt and other liabilities of approximately $6.5 billion.

6.     SCI is a privately held company whose shares are held by Debtors Fertitta Partners LLC, FCP Holding, Inc. and FCP VoteCo, LLC.  FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC (collectively, the "CMBS Debtors"), as well as Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC and Tropicana Station, LLC, are all either direct or indirect wholly owned subsidiaries of SCI.  Certain of the CMBS Debtors issued a mortgage loan and related mezzanine financings in the aggregate principal amount of $2.475 billion (the "CMBS Loans").  The CMBS Loans are collateralized by substantially all fee and leasehold real property comprising Palace Station Hotel & Casino, Boulder Station Hotel & Casino, Sunset Station Hotel & Casino, and Red Rock.

7.     Filed concurrently herewith, and incorporated herein by reference, is the Omnibus Declaration of Thomas M. Friel in Support of the Debtors' Chapter 11 Petitions and First Day Motions, which contains more detail on the Debtors' assets, liabilities, equity ownership, business operations and business plans.

## II.     Jurisdiction and Venue

8.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## III.     Relief Requested

9.     The Debtors intend to file applications to retain certain professionals including, among others, Milbank, Tweed, Hadley & McCloy LLP, as counsel to the Debtors; Lewis and Roca LLP, as Nevada counsel to the Debtors; Lazard Frères & Co. LLC, as financial advisors to the Debtors; Kurtzman Carson Consultants, LLC, as claims, notice and balloting agent; and Squire, Sanders, & Dempsey LLC as special counsel to the Special Litigation Committee of the Board of Directors of SCI.  The Debtors anticipate that, as these cases progress, they may need to retain other professionals in connection with their chapter 11 efforts.

In addition, one or more statutory committees (each a "Committee" and collectively, the "Committees") may be appointed in these cases. It is anticipated that the Committee would retain counsel, and possibly other professionals, to assist them in fulfilling their obligations in these cases.

10. By this Motion, the Debtors request entry of an interim order, in the form attached hereto (the "Interim Order"), pursuant to Bankruptcy Code sections 105(a) and 331 and Bankruptcy Rule 2016(a), (i) authorizing and establishing procedures for the compensation and reimbursement of court-appointed professionals (collectively, the "Professionals")[2] on a monthly basis, on terms comparable to the procedures established in other similar chapter 11 cases, pending entry of a final order in the form attached hereto (the "Final Order"), and (ii) setting a final hearing (the "Final Hearing") on the relief requested herein. The Interim Order will streamline the professional compensation process and enable the Court and all other parties to monitor more effectively the professional fees incurred in these chapter 11 cases.

### IV. Proposed Compensation And Reimbursement Procedures

11. The Debtors propose that, except as otherwise provided in an order of this Court authorizing the retention of a particular Professional, the Professionals be permitted to seek interim payment of compensation and reimbursement of expenses in accordance with the following procedures (collectively, the "Compensation Procedures"):

a. Subject to the specific terms below, on or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), each Professional may file an application (a "Monthly Fee Application") with the Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application by overnight mail on:

i. the Debtors, 1505 South Pavilion Center Drive, Las Vegas, Nevada, 89135 (Attn: Matthew L. Heinhold);

---

[2] In addition to this Motion, the Debtors have filed a motion (the "Ordinary Course Professionals Motion") for entry of an order authorizing the employment of professionals in the ordinary course of business ("Ordinary Course Professionals"). The Compensation Procedures (as defined below) are not intended to apply to Ordinary Course Professionals unless stated otherwise in the order granting the Ordinary Course Professional Motion.

ii.  Milbank, Tweed, Hadley & MᶜCloy LLP, 601 South Figueroa Street, 30ᵗʰ Floor, Los Angeles, California 90017  (Attn:  Kathleen Heinsberg);

iii.  Lewis and Roca LLP, 50 West Liberty Street, Suite 410, Reno, Nevada 89501 (Attn:  Bruce T. Beesley);

iv.  U.S. Trustee of the District of Nevada, 300 Booth Street, #2129, Reno, Nevada, 89509 (Attn:  Nicholas Strozza);

v.  Deutsche Bank Trust Company Americas, 60 Wall Street, 2nd Floor, New York, New York 10005 (Attn:  Christopher J. Young); and

vi.  counsel to any Committees appointed in the Debtors' chapter 11 cases

(each a "Notice Party" and collectively, the "Notice Parties").  Any Professional that fails to file a Monthly Fee Application for a particular month or months may subsequently submit a consolidated Monthly Fee Application for a particular month or months.  All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada (as amended, the "Local Rules").

b.  Each Notice Party will have twenty (20) days after service (or the next business day if such day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described in subparagraph (c) below.  If no objections are raised prior to the expiration of the Objection Deadline, the Professional submitting the Monthly Fee Application shall file a certificate of no objection with the Court, after which the Debtors shall be authorized to pay such Professional an amount equal to 80 percent of the fees and 100 percent of the expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment").  If an objection is properly filed, the Debtors shall be authorized to pay the Professional 80 percent of the fees and 100 percent of the expenses not subject to an objection (the "Actual Monthly Payment").  The first Monthly Fee Application submitted by each Professional shall cover the period from the Petition Date through and including October 22, 2009.

c.  If any Notice Party objects to a Professional's Monthly Fee Application, it must, on or before the expiration of the Objection Deadline, (i) file a written objection (an "Objection") with the Court and serve such Objection on such Professional and each other Notice Party so as to be received on or before the Objection Deadline.  Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis.  If the parties are unable to reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at

which time the Court will consider and dispose of the objection if requested by the parties.

d.  Beginning with the approximately three-month period beginning on the Petition Date and ending on October 22, 2009, and at each three-month period thereafter (the "Interim Fee Period"), each Professional shall file with the Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Applications, including any holdbacks, filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code.  The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Parties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules.  Objections, if any, to the Interim Fee Applications shall be filed and served upon the affected Professional and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

e.  The Debtors will request that the Court schedule a hearing on the Interim Fee Applications at least once every three months or at such other intervals as the Court deems appropriate.  If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

f.  Each Professional must file and serve its first Interim Fee Application on or before the 45th day following the end of the first Interim Fee Period.  The first Interim Fee Application shall cover fees and expenses incurred from the Petition Date through and including October 22, 2009.

g.  The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify a Professional from the future payment of compensation or reimbursement of expenses under the Compensation Procedures. Any Professional that fails to file a Monthly Fee Application or an Interim Fee Application when due or permitted will be ineligible to receive further interim payments of fees or expenses under the Compensation Procedures until such time as a Monthly Fee Application or Interim Fee Application is submitted by the Professional.  There will be no other penalties for failing to file a Monthly Fee Application or an Interim Fee Application in a timely manner.

h.  Neither (i) the payment of or the failure to pay, in whole or in part, monthly interim compensation and reimbursement of expenses under the Compensation Procedures nor (ii) the filing of or failure to file an Objection will bind any party in interest or the Court with respect to the final allowance of applications for compensation and reimbursement of expenses of Professionals.  All fees and expenses paid to Professionals under the Compensation Procedures are subject to disgorgement until final allowance by the Court.

12. The Debtors also request that each member of any Committee be permitted to submit statements of expenses (excluding third-party counsel expenses of individual Committee members) and supporting vouchers to the respective Committee's counsel, which counsel will collect and submit the Committee members' requests for reimbursement in accordance with the Compensation Procedures. Approval of these Compensation Procedures, however, will not authorize payment of such expenses to the extent that such authorization does not exist under the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, the Local Rules, or the practices of this Court. To the extent legal authorization does exist, the Debtors will include all payments made to Professionals in accordance with the Compensation Procedures in their monthly operating report, identifying the amount paid to each of the Professionals.

13. The Debtors further request that the Court limit service of Monthly Fee Applications, Interim Fee Applications and final fee applications (collectively, the "Applications") to the Notice Parties. The Debtors further request that all other parties that have filed a notice of appearance with the Clerk of the Court and requested notice of pleadings in the Chapter 11 Cases shall be entitled to receive only notice of hearings on the Applications (the "Hearing Notice"). Serving the Applications and the Hearing Notices in this manner will permit the parties most active in these cases to review and object to the Professionals' fees and will save unnecessary duplication and mailing expenses.

**V.    Basis for Relief**

14. The authority for establishing procedures for the interim compensation and reimbursement of expenses of professionals is found within section 331 of the Bankruptcy Code, which provides, in relevant part

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement

11 U.S.C. § 331.  Furthermore, section 105(a) of the Bankruptcy Code authorizes the Court to issue any order "that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

15.    The underlying purpose of section 331 of the Bankruptcy Code is to provide financial relief to court-appointed professionals engaged in protracted bankruptcy proceedings and cases, so that these professionals do not have to wait for what may be years before receiving compensation.  See In re Commercial Consortium of Ca., 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) (stating that the essential function of section 331 is to relieve counsel and other professionals the burden of "financing" lengthy bankruptcy proceedings).  Indeed, courts have commonly authorized more frequent payments in large cases in order to avoid undue delays in payment.  See In re Knudsen Corp., 84 Bankr. 668, 672 (B.A.P. 9th Cir. 1988).

16.    Courts in this district have regularly entered orders approving professional compensation procedures that provide for interim compensation and expense reimbursement on a monthly basis, such as those proposed herein.  See In re Lake at Las Vegas Joint Venture, LLC, Case No. 08-17814  (Bankr. D. Nev. Sep. 24, 2008); In re USA Commercial Mortgage Company, Case No. 06-10725 (Bankr. D. Nev. Aug. 29, 2006); In re Hawaiian Airlines, Inc., Case No. 03-00817 (Bankr. D. Haw. Mar. 24, 2003).

17.    The Debtors submit that the Compensation Procedures herein are appropriate and consistent with the interim procedures approved in the above-cited cases.  The implementation of the Compensation Procedures is validated by the size and complexity of the chapter 11 cases, and the Debtors' limited staff and resources.  The Debtors must hire Professionals to help assume the burdens of these cases and navigate the reorganization process.  The proposed Compensation Procedures streamline the professional compensation process for the Professionals and enables the Court and all other parties to effectively monitor the professional fees incurred in these chapter 11 cases.

18.    In addition, it is anticipated that several Professionals will be involved.  Absent streamlined compensation procedures, the professional fee application and review process could be exceptionally burdensome on the Debtors, the Professionals, the Court and

other parties.  By contrast, under the Compensation Procedures, the mechanism for payment of Professionals' fees will be simplified and will avoid unnecessary Court involvement.  For example, the Compensation Procedures will avoid the need for the Court to review Monthly Fee Applications before payments can be made to Professionals.

19.    In sum, the Compensation Procedures will (a) reduce substantially the burden imposed on the Court by avoiding the need for the immediate review of Monthly Fee Applications, (b) enable parties in interest to monitor more closely the costs of administration of these cases, (c) diminish undue financial burdens on the Professionals and avoid having Professionals fund the costs of the Debtors' reorganization or liquidation and (d) permit the Debtors to better predict and manage their monthly cash costs.

20.    Based on the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate and in the best interests of the Debtors and their estates and creditors.

### VII.    Conclusion

**WHEREFORE**, the Debtors respectfully request that this Court enter interim and final orders substantially in the form attached hereto, (i) authorizing and establishing procedures for the interim compensation and reimbursement of expenses of professionals, and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: July 28, 2009

Station Casinos, Inc.
(for itself and on behalf of its affiliated
Debtors and Debtors in Possession)


By:_____/s_____
        Thomas M. Friel
        Executive Vice President, Chief Accounting Officer,
        and Treasurer

# **Exhibit A**

LA1:#6398899

1

2

3

4

5

6   Paul S. Aronzon (CA State Bar No. 88781)
    Thomas R. Kreller (CA State Bar No. 161922)
7   MILBANK, TWEED, HADLEY & McCLOY LLP
    601 South Figueroa Street, 30th Floor
8   Los Angeles, California 90017
    Telephone:     (213) 892-4000
9   Facsimile:     (213) 629-5063

10  Proposed Reorganization Counsel for
    Debtors and Debtors in Possession

11

12

13

14  In re:

15  NORTHERN NV ACQUISITIONS, LLC

16  ☐ Affects this Debtor

17  ☒ Affects all Debtors
    ☐ Affects Reno Land Holdings, LLC
18  ☐ Affects River Central, LLC
    ☐ Affects Tropicana Station, LLC
19  ☐ Affects FCP Holding, Inc.
    ☐ Affects FCP Voteco, LLC
20  ☐ Affects Fertitta Partners LLC
21  ☐ Affects Station Casinos, Inc.
    ☐ Affects FCP MezzCo Parent, LLC
22  ☐ Affects FCP MezzCo Parent Sub, LLC
    ☐ Affects FCP MezzCo Borrower VII, LLC
23  ☐ Affects FCP MezzCo Borrower VI, LLC
24  ☐ Affects FCP MezzCo Borrower V, LLC
    ☐ Affects FCP MezzCo Borrower IV, LLC
25  ☐ Affects FCP MezzCo Borrower III, LLC
26  ☐ Affects FCP MezzCo Borrower II, LLC
    ☐ Affects FCP MezzCo Borrower I, LLC
27  ☐ Affects FCP PropCo, LLC
28

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

Chapter 11

Case No. BK-09-_____
Jointly Administered

**INTERIM ORDER PURSUANT TO
11 U.S.C. §§ 105(a) AND 331, FED. R.
BANKR. P. 2016 AUTHORIZING AND
ESTABLISHING PROCEDURES FOR
INTERIM COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF
PROFESSIONALS**

Hearing Date:     July 30, 2009
Hearing Time:     1:30 p.m.

Upon the application, dated July 28, 2009 (the "Application"),[1] of Station Casinos, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[2] in the above-captioned chapter 11 cases, for interim and final orders pursuant to sections 105(a) and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and rule 2016 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), authorizing and establishing procedures for the interim compensation and reimbursement of expenses of professionals, as more fully set forth in the Motion; and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED** that the Motion is granted on an interim basis pending a final hearing thereon (the "Final Hearing") and entry of a superseding Final Order by this Court; and it is further

**ORDERED** that except as otherwise provided in an order of the Court authorizing the retention of a particular professional, the professionals specifically retained

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

[2]    The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

pursuant to an order of the Court in these cases (collectively, the "Professionals") may seek

interim payment of compensation and reimbursement of expenses in accordance with the

following procedures (collectively, the "Compensation Procedures"):

a.  Subject to the specific terms below, on or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), each Professional may file an application (a "Monthly Fee Application") with the Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application by overnight mail on:

  i.   the Debtors, 1505 South Pavillion Center Drive, Las Vegas, Nevada, 89135 (Attn:  Matthew L. Heinhold);

  ii.  Milbank, Tweed, Hadley & M$^c$Cloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017 (Attn:  Kathleen Heinsberg);

  iii. Lewis and Roca LLP, 50 West Liberty Street, Suite 410, Reno, Nevada 89501 (Attn:  Bruce T. Beesley);

  iv.  U.S. Trustee of the District of Nevada, 300 Booth Street, #2129, Reno, Nevada, 89509 (Attn:  Nicholas Strozza);

  v.   Deutsche Bank Trust Company Americas, 60 Wall Street, 2nd Floor, New York, New York 10005 (Attn:  Christopher J. Young); and

  vi.  counsel to any Committees appointed in the Debtors' chapter 11 cases

(each a "Notice Party" and collectively, the "Notice Parties").  Any Professional that fails to file a Monthly Fee Application for a particular month or months may subsequently submit a consolidated Monthly Fee Application for a particular month or months.  All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules.

b.  Each Notice Party will have twenty (20) days after service (or the next business day if such day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described in subparagraph (c) below.  If no objections are raised prior to the expiration of the Objection Deadline, the Professional submitting the Monthly Fee Application shall file a certificate of no objection with the Court, after which the Debtors shall be authorized to pay such Professional an amount equal to 80 percent of the fees and 100 percent of the expenses requested in its Monthly Fee Application (the "Maximum

Monthly Payment"). If an objection is properly filed, the Debtors shall be authorized to pay the Professional 80 percent of the fees and 100 percent of the expenses not subject to an objection (the "Actual Monthly Payment"). The first Monthly Fee Application submitted by each Professional shall cover the period from the Petition Date through and including October 22, 2009.

c.  If any Notice Party objects to a Professional's Monthly Fee Application, it must, on or before the expiration of the Objection Deadline, (i) file a written objection (an "Objection") with the Court and serve the Objection on such Professional and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the objection if requested by the parties.

d.  Beginning with the approximately three-month period beginning on the Petition Date and ending on October 22, 2009, and at each three-month period thereafter (the "Interim Fee Period"), each Professional shall file with the Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Applications, including any holdbacks, filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Parties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon the affected Professional and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

e.  The Debtors will request that the Court schedule a hearing on the Interim Fee Applications at least once every three months or at such other intervals as the Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

f.  Each Professional must file and serve its first Interim Fee Application on or before the 45th day following the end of the first Interim Fee Period. The first

1
2    Interim Fee Application shall cover fees and expenses incurred from the Petition Date through and including October 22, 2009.

3        g.    The pendency of an Objection to payment of compensation or reimbursement
4             of expenses will not disqualify a Professional from the future payment of
             compensation or reimbursement of expenses under the Compensation
5             Procedures.  Any Professional that fails to file a Monthly Fee Application or
             an Interim Fee Application when due or permitted will be ineligible to receive
6             further interim payments of fees or expenses under the Compensation
             Procedures until such time as a Monthly Fee Application or Interim Fee
7             Application is submitted by the Professional.  There will be no other penalties
             for failing to file a Monthly Fee Application or an Interim Fee Application in
8             a timely manner.

9        h.    Neither (i) the payment of or the failure to pay, in whole or in part, monthly
             interim compensation and reimbursement of expenses under the
10            Compensation Procedures nor (ii) the filing of or failure to file an Objection
             will bind any party in interest or the Court with respect to the final allowance
11            of applications for compensation and reimbursement of expenses of
             Professionals.  All fees and expenses paid to Professionals under the
12            Compensation Procedures are subject to disgorgement until final allowance by
             the Court;
13

14   and it is further

15            **ORDERED** that each member of any Committee is permitted to submit

16   statements of expenses and supporting vouchers to the respective Committee's counsel, which

17   counsel will collect and submit the Committee members' requests for reimbursement in

18   accordance with the Compensation Procedures.  Approval of these Compensation Procedures,

19   however, does not authorize payment of such expenses to the extent that such authorization does

20   not exist under the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, the

21   Local Rules or the practices of this Court; and it is further

22            **ORDERED** that notice of Monthly Fee Applications, Interim Fee

23   Applications and final fee applications (collectively, the "Applications") shall be served

24   only on the Notice Parties and that all other parties that have filed a notice of appearance

25   with the Clerk of the Court and requested notice of pleadings in the Chapter 11 Cases

26   shall receive only notice of hearings on the Applications (the "Hearing Notice"); and it is

27   further

28

LA1:#6398899                                    -5-

**ORDERED** that the Debtors will include all payments made to Professionals in accordance with the Compensation Procedures in their monthly operating report, identifying the amount paid to each of the Professionals; and it is further

**ORDERED** that all time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a); and it is further

**ORDERED** that the Final Hearing is set for _____ at _____ (prevailing Pacific Standard Time); and it is further

**ORDERED** that, notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Interim Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Interim Order; and it is further

**ORDERED** that within _____ days of this Interim Order, the Debtors shall serve this Interim Order upon the Master Service List pursuant to the Court's Order Establishing Notice Procedures; and it is further

**ORDERED** that the terms and conditions of this order shall be immediately effective and enforceable upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation and/or interpretation of this Order; and it is further

**ORDERED** that notice of this Application as provided therein shall be deemed good and sufficient notice of the Application.

SUBMITTED BY:

Station Casinos, Inc.
(for itself and on behalf of its affiliated
Debtors and Debtors in Possession)

# # #

# **<u>Exhibit B</u>**

1

2

3

4

5

6   Paul S. Aronzon (CA State Bar No. 88781)                 Bruce T. Beesley (NV SBN 1164)
    Thomas R. Kreller (CA State Bar No. 161922)             Laury Macauley (NV SBN 11413)
7   MILBANK, TWEED, HADLEY & McCLOY LLP                     LEWIS AND ROCA LLP
    601 South Figueroa Street, 30th Floor                   50 West Liberty Street, Suite 410
8   Los Angeles, California 90017                           Reno, Nevada 89501
    Telephone:    (213) 892-4000                            Telephone:    (775) 823-2900
9   Facsimile:    (213) 629-5063                            Facsimile:    (775) 823-2929
                                                            bbeesley@lrlaw.com; lmacauley@lrlaw.com
10  Proposed Reorganization Counsel for
    Debtors and Debtors in Possession                       Proposed Local Reorganization Counsel for
11                                                          Debtors and Debtors in Possession

12
                          **UNITED STATES BANKRUPTCY COURT**
13                               **DISTRICT OF NEVADA**

14  In re:                                          Chapter 11

15  NORTHERN NV ACQUISITIONS, LLC                   Case No. BK-09-_____
                                                    Jointly Administered
16  ☐ Affects this Debtor
                                                    **FINAL ORDER PURSUANT TO 11 U.S.C.**
17  ☒ Affects all Debtors                           **§§ 105(a) AND 331, FED. R. BANKR. P.**
    ☐ Affects Reno Land Holdings, LLC               **2016 AUTHORIZING AND**
18  ☐ Affects River Central, LLC                    **ESTABLISHING PROCEDURES FOR**
                                                    **INTERIM COMPENSATION AND**
19  ☐ Affects Tropicana Station, LLC                **REIMBURSEMENT OF EXPENSES OF**
    ☐ Affects FCP Holding, Inc.                     **PROFESSIONALS**
20  ☐ Affects FCP Voteco, LLC
    ☐ Affects Fertitta Partners LLC
21  ☐ Affects Station Casinos, Inc.                 Hearing Date:
                                                    Hearing Time:
22  ☐ Affects FCP MezzCo Parent, LLC
    ☐ Affects FCP MezzCo Parent Sub, LLC
23  ☐ Affects FCP MezzCo Borrower VII, LLC
24  ☐ Affects FCP MezzCo Borrower VI, LLC
    ☐ Affects FCP MezzCo Borrower V, LLC
25  ☐ Affects FCP MezzCo Borrower IV, LLC
    ☐ Affects FCP MezzCo Borrower III, LLC
26  ☐ Affects FCP MezzCo Borrower II, LLC
    ☐ Affects FCP MezzCo Borrower I, LLC
27  ☐ Affects FCP PropCo, LLC
28

LA1:#6398899

1             Upon the application, dated July 28, 2009 (the "Application"),[1] of Station

2 Casinos, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors" or

3 "Station")[2] in the above-captioned chapter 11 cases, for interim and final orders pursuant to

4 sections 105(a) and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as

5 amended, the "Bankruptcy Code") and rule 2016 of the Federal Rules of Bankruptcy Procedure

6 (as amended, the "Bankruptcy Rules"), authorizing and establishing procedures for the interim

7 compensation and reimbursement of expenses of professionals, as more fully set forth in the

8 Motion; and upon consideration of the supporting declaration of Thomas M. Friel, sworn to on

9 July 24, 2009; and the Court having jurisdiction to consider the Motion and the relief requested

10 therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested

11 therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this

12 district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having

13 been provided; and it appearing that no other or further notice need be provided; and the Court

14 having determined that the relief sought in the Motion is in the best interests of the Debtors, their

15 creditors and all other parties in interest; and the Court having determined that the legal and

16 factual bases set forth in the Motion establish just cause for the relief granted herein; and upon

17 all the proceedings had before the Court and after due deliberation and sufficient cause appearing

18 therefor, it is hereby

19             **ORDERED** that the Motion is granted; and it is further

20             **ORDERED** that except as otherwise provided in an order of the Court

21 authorizing the retention of a particular professional, the professionals specifically retained

22 pursuant to an order of the Court in these cases (collectively, the "Professionals") may seek

23

24

---

25 [1]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

26 [2]      The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC,

27 River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC, Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV,

28 LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

interim payment of compensation and reimbursement of expenses in accordance with the

following procedures (collectively, the "Compensation Procedures"):

a. Subject to the specific terms below, on or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), each Professional may file an application (a "Monthly Fee Application") with the Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application by overnight mail on:

   i. the Debtors, 1505 South Pavillion Center Drive, Las Vegas, Nevada, 89135 (Attn: Matthew L. Heinhold);

   ii. Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017 (Attn: Kathleen Heinsberg);

   iii. Lewis and Roca LLP, 50 West Liberty Street, Suite 410, Reno, Nevada 89501 (Attn: Bruce T. Beesley);

   iv. U.S. Trustee of the District of Nevada, 300 Booth Street, #2129, Reno, Nevada, 89509 (Attn: Nicholas Strozza);

   v. Deutsche Bank Trust Company Americas, 60 Wall Street, 2nd Floor, New York, New York 10005 (Attn: Christopher J. Young); and

   vi. counsel to any Committees appointed in the Debtors' chapter 11 cases

(each a "Notice Party" and collectively, the "Notice Parties"). Any Professional that fails to file a Monthly Fee Application for a particular month or months may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules.

b. Each Notice Party will have twenty (20) days after service (or the next business day if such day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described in subparagraph (c) below. If no objections are raised prior to the expiration of the Objection Deadline, the Professional submitting the Monthly Fee Application shall file a certificate of no objection with the Court, after which the Debtors shall be authorized to pay such Professional an amount equal to 80 percent of the fees and 100 percent of the expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, the Debtors shall be authorized to pay the Professional 80 percent of the fees and 100 percent of

the expenses not subject to an objection (the "<u>Actual Monthly Payment</u>"). The first Monthly Fee Application submitted by each Professional shall cover the period from the Petition Date through and including October 22, 2009.

c.  If any Notice Party objects to a Professional's Monthly Fee Application, it must, on or before the expiration of the Objection Deadline, (i) file a written objection (an "<u>Objection</u>") with the Court and serve the Objection on such Professional and each other Notice Party the Objection so as to be received on or before the Objection Deadline.  Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis.  If the parties are unable to reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "<u>Incremental Amount</u>") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the objection if requested by the parties.

d.  Beginning with the approximately three-month period beginning on the Petition Date and ending on October 22, 2009, and at each three-month period thereafter (the "<u>Interim Fee Period</u>"), each Professional shall file with the Court and serve on the Notice parties an application (an "<u>Interim Fee Application</u>") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Applications, including any holdbacks, filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code.  The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Parties to file objections (the "<u>Additional Objections</u>") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules.  Objections, if any, to the Interim Fee Applications shall be filed and served upon the affected Professional and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

e.  The Debtors will request that the Court schedule a hearing on the Interim Fee Applications at least once every three months or at such other intervals as the Court deems appropriate.  If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

f.  Each Professional must file and serve its first Interim Fee Application on or before the 45th day following the end of the first Interim Fee Period.  The first Interim Fee Application shall cover fees and expenses incurred from the Petition Date through and including October 22, 2009.

g.  The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify a Professional from the future payment of compensation or reimbursement of expenses under the Compensation Procedures.  Any Professional that fails to file a Monthly Fee Application or an Interim Fee Application when due or permitted will be ineligible to receive further interim payments of fees or expenses under the Compensation Procedures until such time as a Monthly Fee Application or Interim Fee Application is submitted by the Professional.  There will be no other penalties for failing to file a Monthly Fee Application or an Interim Fee Application in a timely manner.

h.  Neither (i) the payment of or the failure to pay, in whole or in part, monthly interim compensation and reimbursement of expenses under the Compensation Procedures nor (ii) the filing of or failure to file an Objection will bind any party in interest or the Court with respect to the final allowance of applications for compensation and reimbursement of expenses of Professionals.  All fees and expenses paid to Professionals under the Compensation Procedures are subject to disgorgement until final allowance by the Court;

and it is further

**ORDERED** that each member of any Committee is permitted to submit statements of expenses and supporting vouchers to the respective Committee's counsel, which counsel will collect and submit the Committee members' requests for reimbursement in accordance with the Compensation Procedures.  Approval of these Compensation Procedures, however, does not authorize payment of such expenses to the extent that such authorization does not exist under the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, the Local Rules or the practices of this Court; and it is further

**ORDERED** that notice of Monthly Fee Applications, Interim Fee Applications and final fee applications (collectively, the "Applications") shall be served only on the Notice Parties and that all other parties that have filed a notice of appearance with the Clerk of the Court and requested notice of pleadings in the Chapter 11 Cases shall receive only notice of hearings on the Applications (the "Hearing Notice"); and it is further

1    **ORDERED** that the Debtors will include all payments made to Professionals in

2 accordance with the Compensation Procedures in their monthly operating report, identifying the

3 amount paid to each of the Professionals; and it is further

4    **ORDERED** that all objections to the relief requested in the Motion have been

5 overruled; and it is further

6    **ORDERED** that all time periods set forth in this Order shall be calculated

7 in accordance with Bankruptcy Rule 9006(a); and it is further

8    **ORDERED** that the Debtors are hereby authorized and empowered to take such

9 steps and perform such acts as may be necessary to implement and effectuate the terms of this

10 Order; and it is further

11    **ORDERED** that the terms and conditions of this order shall be immediately

12 effective and enforceable upon its entry; and it is further

13    **ORDERED** that this Court shall retain jurisdiction to hear and determine all

14 matters arising from the implementation and/or interpretation of this Order; and it is further

15    **ORDERED** that notice of this Application as provided therein shall be deemed

16 good and sufficient notice of the Application.

17

18 SUBMITTED BY:

19 Station Casinos, Inc.
(for itself and on behalf of its affiliated

20 Debtors and Debtors in Possession)

21                                        # # #

22

23

24

25

26

27

28