Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:    (775) 823-2900
Facsimile:    (775) 823-2929
bbeesley@lrlaw.com;
lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| STATION CASINOS, INC. | Case No. BK-09-52477 Jointly Administered BK-09-52470 through BK-09-52487 |
| ☒ Affects this Debtor | |
| ☐ Affects all Debtors | **SUPPLEMENTAL DECLARATION OF THOMAS M. FRIEL IN SUPPORT OF MOTION TO PERMIT DEBTORS TO HONOR AND ASSUME REIMBURSEMENT, INDEMNIFICATION AND RELATED OBLIGATIONS TO DIRECTORS AND OFFICERS, INCLUDING LIMITED MODIFICATION OF THE AUTOMATIC STAY TO THE EXTENT NECESSARY TO ACCESS DIRECTOR AND OFFICER INSURANCE** |
| ☐ Affects Reno Land Holdings, LLC | |
| ☐ Affects River Central, LLC | |
| ☐ Affects Tropicana Station, LLC | |
| ☐ Affects FCP Holding, Inc. | |
| ☐ Affects FCP Voteco, LLC | |
| ☐ Affects Fertitta Partners LLC | |
| ☐ Affects Northern NV Acquisitions, LLC | |
| ☐ Affects FCP MezzCo Parent, LLC | |
| ☐ Affects FCP MezzCo Parent Sub, LLC | Hearing Date:    September 2, 2009 Hearing Time:   9:30 a.m. Place:    300 Booth Street    Reno, NV 89509 |
| ☐ Affects FCP MezzCo Borrower VII, LLC | |
| ☐ Affects FCP MezzCo Borrower VI, LLC | |
| ☐ Affects FCP MezzCo Borrower V, LLC | |
| ☐ Affects FCP MezzCo Borrower IV, LLC | |
| ☐ Affects FCP MezzCo Borrower III, LLC | |
| ☐ Affects FCP MezzCo Borrower II, LLC | |
| ☐ Affects FCP MezzCo Borrower I, LLC | |
| ☐ Affects FCP PropCo, LLC | |

I, Thomas M. Friel, hereby declare under penalty of perjury:

I am the Executive Vice President, Chief Accounting Officer and Treasurer of Station Casinos, Inc. ("SCI"), a Nevada corporation.  In this capacity, I am familiar with the day-to-day business operations, assets and financial affairs of SCI and its affiliates, including all of SCI's affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[1] in the above-captioned chapter 11 cases.  I am also familiar with the organization and activities of SCI's board of directors.  I have been employed by SCI since July 6, 1999 and have held the above position since March 30, 2007.

1.      This declaration (the "Declaration") is being filed in support of the Motion for Order Pursuant to Sections 105(a), 362, 363, and 365 of the Bankruptcy Code to Permit Debtors to Honor and Assume Reimbursement, Indemnification and Related Obligations to Directors and Officers, Including Limited Modification of the Automatic Stay [Docket No. 11], filed on July 28, 2009 (the "Motion").  I am authorized by SCI to submit this Declaration in support of the Motion.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' senior management, my review of relevant documents or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

2.      The Debtors commenced these chapter 11 cases on July 28, 2009 (the "Petition Date").[2]  Pursuant to the Motion, filed on the Petition Date, SCI seeks authority under sections 105(a), 362, 363 and 365 of the Bankruptcy Code, to honor, and in the case of Dr. Nave's Reimbursement Agreement (each defined below) assume, their postpetition indemnification and

---

[1]     The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC,  Fertitta Partners LLC, Station Casinos, Inc., FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

[2]     Capitalized terms used in this Declaration and not defined herein have the same meanings ascribed to them in the "Omnibus Declaration of Thomas M. Friel in Support of the Debtors' Chapter 11 Petitions and First Day Motions" (the "First Day Declaration").

reimbursement obligations to their present and future directors in accordance with the Debtors'

charters, bylaws, board resolutions, policies and applicable law, including, but not limited to,

obligations to reimburse directors for professional fees and expenses incurred postpetition in

furtherance of their duties as directors, with such fees and expenses to be paid by SCI on a

current basis pursuant to the Bylaws, by application of such fees and expenses against retainers

advanced prepetition for such purpose or, with respect to Dr. Nave (defined below) in

accordance with the Reimbursement Agreement (defined below) (all such obligations,

collectively the "Director and Officer Postpetition Obligations").  In addition, by the Motion, the

Debtors seek authority of this Court (i) to assume that certain reimbursement agreement (the

"Reimbursement Agreement") between SCI and Dr. James E. Nave, DVM ("Dr. Nave"), the sole

independent director of SCI, as of the Petition Date, and (ii) to modify the automatic stay to the

extent necessary to permit each of the Debtors' directors and officers to access the Debtors'

directors and officers insurance policies (the "Policies") in the ordinary course of business.  This

Declaration is being submitted in response to questions propounded at the hearing on the Motion

on July 30, 2009 before the Honorable Judge Gregg Zive of the United States Bankruptcy Court

for the District of Nevada (the "First Day Hearing").

**SCI Board of Directors**

        3.     The size and composition of SCI's board of directors (the "Board") is governed

by (i) that certain Equityholders Agreement of SCI, Fertitta Colony Partners, LLC, Fertitta

Partners, and LLC, and the other parties thereto, dated as of November 27, 2007 (as amended as

of February 28, 2009 the "Equityholders Agreement") and (ii) the "Second Amended and

Restated Articles of Incorporation of Station Casinos, Inc." (the "Articles of Incorporation").

The Equityholders Agreement provides in pertinent part in Section 2.1(a)(i) as follows:  "one (1)

member of the Board of Directors shall be appointed as mutually agreed by the Named

Executive Officers [being the Fertittas] and the VoteCo Sponsor Member (the "Independent

Director")."  Thus, SCI's board of directors (the "Board") may be up to six (6) directors, three of

whom shall be appointed by Frank J. Fertitta III and Lorenzo J. Fertitta (the "Fertittas")  two of

whom shall be appointed by Thomas J. Barrack, Jr. ("Barrack") or such person as who may be

his successor as Chairman and Chief Executive Officer of FC Investor, LLC ("Colony"), and one of whom shall be appointed by mutual consent of the Fertittas and Colony as the "Independent Director." Dr. Nave is serving as the "Independent Director" required by the Equityholders Agreement.

4.    Currently, the Board consists of two directors appointed by the Fertittas (the Fertittas), two directors appointed by Barrack (Barrack and Jonathan H. Grunzweig (together with Barrack, the "Colony Directors") and the required "Independent Director" appointed jointly by the Fertittas and Colony (being Dr. Nave). Biographical information provided to me on behalf of each of these directors is set forth on Exhibits C through G, respectively.

5.    Dr. Nave has no ties to SCI or its affiliates other than in his capacity as a member of the Board and, as such, is the Board's sole independent director. Indeed, the Board has deemed that Dr. Nave is an "independent director" under the independence tests specified in Section 303A.02 of the New York Stock Exchange Listed Company Manual.

6.    The Colony Directors have engaged O'Melveny & Myers, LLP as their separate counsel. The Fertittas have engaged Munger Tolles & Olson, LLP as separate counsel. The remaining director, Dr. Nave, has engaged Skadden, Arps Slate Meagher & Flom, LLP ("Skadden") and Jones Vargas as his separate counsel.

**Potential Litigation**

7.    After SCI failed to pay interest due on its unsecured bond debt in March, 2009, an ad hoc committee of bondholders (the "Ad Hoc Committee") was formed and advised SCI that it represented at least [fifty] percent in amount of each issuance of unsecured bonds of SCI that is outstanding. Soon after its formation, members of the Ad Hoc Committee, through their counsel, advised SCI that they believed that the bondholders had legal claims against SCI and others available to them, and would so commence litigation, if negotiation to resolve the defaults failed and a bankruptcy case was filed. Counsel for the Ad Hoc Committee has regularly reiterated that, in the absence of a settlement acceptable to bondholders, any bankruptcy case would be highly contentious and that litigation was likely to be initiated by creditors against SCI and others.

8.      If commenced, this litigation (or any other litigation against SCI) may involve claims against SCI's directors.  Accordingly, among other relief requested, the Motion requests that SCI be authorized to perform its postpetition indemnification obligations to its directors in accordance with SCI's governing organizational documents as set forth below, and in addition to assume its Reimbursement Agreement with Dr. Nave.

**Indemnification of Officers and Directors**

9.      The Articles of Incorporation provide for certain rights of indemnification and reimbursement for directors and officers in Article IV.  A true, current and complete copy of Article IV of the Articles of Incorporation is attached as Exhibit A hereto.  Section 5 of Article IV, which describe these rights, states in pertinent part as follows:

> Section 5.  Payment of Expenses.  In addition to any other rights of indemnification permitted by the law of the State of Nevada as may be provided for the Corporation in its Amended and Restated Bylaws or by agreement, the expenses of officers and directors incurred in defending a civil or criminal action, suit or proceeding, involving alleged acts or omissions of such officer or directors in his or her capacity as an officer or director of the Corporation, must be paid, by the Corporation or through insurance purchased and maintained by the Corporation or through other financial arrangements made by the Corporation, as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he or she is not entitled to be indemnified by the Corporation.

10.     In addition, the Articles of Incorporation provide that the "liability of directors and officers of [SCI] shall be eliminated or limited to the fullest extent permitted by the [Nevada Revised Statutes]."  Articles of Incorporation Art. IV, § 4.

11.     SCI also enacted Amended and Restated Bylaws (the "Bylaws") on or about November 7, 2007, as amended as of February 28, 2009 by resolution of the Board of Directors. The Amended and Restated Bylaws include provision for indemnification of officers and directors of SCI in Article VIII.  A true, current and complete copy of Article VIII is attached as Exhibit B hereto.  Sections 8.1(a)(i) and 8.1(a)(ii), which describe the scope of the indemnification provided to all officers and directors, state in pertinent part as follows:

> (i)  For purposes of this Article, (A) "Indemnitee" shall mean each director or officer who was or is a party to, or is threatened to be made a party to, or is

otherwise involved in, any Proceeding (as hereinafter defined), by reason of the fact that he or she is or was a director or officer of the Corporation or is or was serving in any capacity at the request of the Corporation as a director, officer, employee, agent, partner, member, manager or fiduciary of, or in any other capacity for, another corporation or any partnership, joint venture, limited liability company, trust, or other enterprise; and (B) "Proceeding" shall mean any threatened, pending, or completed action, suit or proceeding (including, without limitation, an action, suit or proceeding by or in the right of the Corporation), whether civil, criminal, administrative, or investigative.

(ii)  Each Indemnitee shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Nevada law, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, taxes, penalties, and amounts paid or to be paid in settlement) reasonably incurred or suffered by the Indemnitee in connection with any Proceeding; provided that such Indemnitee either is not liable pursuant to NRS 78.138 or acted in good faith and in a manner such Indemnitee reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any Proceeding that is criminal in nature, had no reasonable cause to believe that his or her conduct was unlawful.  The termination of any Proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, does not, of itself, create a presumption that the Indemnitee is liable pursuant to NRS 78.138 or did not act in good faith and in a manner in which he or she reasonably believed to be in or not opposed to the best interests of the Corporation, or that, with respect to any criminal proceeding he or she had reasonable cause to believe that his or her conduct was unlawful…  The Corporation shall not indemnify an Indemnitee for any claim, issue or matter as to which the Indemnitee has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom, to be liable to the Corporation or for any amounts paid in settlement to the Corporation, unless and only to the extent that the court in which the Proceeding was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the Indemnitee is fairly and reasonably entitled to indemnity for such amounts as the court deems proper.  Except as so ordered by a court and for advancement of expenses pursuant to this Section, indemnification may not be made to or on behalf of an Indemnitee if a final adjudication establishes that his or her acts or omissions involved intentional misconduct, fraud or a knowing violation of law and was material to the cause of action.  Notwithstanding anything to the contrary contained in these Bylaws, no director or officer may be indemnified for expenses incurred in defending any threatened, pending, or completed action, suit or proceeding (including without limitation, an action, suit or proceeding by or in the right of the Corporation), whether civil, criminal, administrative or investigative, that such director or officer incurred in his or her capacity as a stockholder.

12.     The Bylaws provide in Article VIII that SCI's directors are entitled to

indemnification against all expense, liability and loss (including, without limitation, attorneys'

fees, judgments, fines, taxes, penalties, and amounts paid or to be paid in settlement) reasonably

incurred or suffered by the Indemnitee in connection with any "Proceeding" as defined in the Bylaws.  Prior to the commencement of its bankruptcy case, SCI did in fact reimburse all of the directors for legal fees incurred for individual counsel pursuant to its indemnification obligations. SCI has agreed to continue reimburse each of the directors against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, taxes, penalties, and amounts paid or to be paid in settlement) reasonably incurred or suffered, in light of this ongoing threat of litigation in the postpetition period.

**Reimbursement of Fees and Expenses Incurred by Directors**

13.    SCI has agreed through the above-described provisions of its Articles of Incorporation and Bylaws, and otherwise, to reimburse fees and expenses incurred by the Directors in connection with performing their obligations and executing their fiduciary duties as members of the Board during SCI's restructuring.

14.    In connection with Dr. Nave's retention of legal counsel, SCI entered into the Reimbursement Agreement, attached hereto as Exhibit H, to confirm SCI's agreement to reimburse the fees and expenses incurred by Dr. Nave with respect to such counsel.  As noted above, Dr. Nave has engaged Skadden and Jones Vargas.  As described in the Reimbursement Agreement, on or about June 19, 2009, SCI advanced retainers to these firms in the respective amounts of $500,000 and $250,000.  As Dr. Nave's counsel has incurred fees and expenses on his behalf prepetition against such retainers, SCI has replenished the retainers consistent with the Reimbursement Agreement.

15.    The Colony Directors also requested, and the Board agreed via unanimous written consent, to provide a prepetition retainer to the Colony Directors' counsel in the amount of $1,000,000.  This retainer is not subject to replenishment without further authorization of the Board.  In addition, with the agreement of SCI, the Colony Directors have engaged Chanin Capital Partners LLC ("Chanin") to provide financial advisory assistance to the Colony Directors' counsel in the course of rendering legal advice.  In connection with this engagement, SCI made a prepetition prepayment of fees and expenses to Chanin in the amount of $920,000. In connection with this engagement, SCI made a prepetition prepayment of fees and expenses to

Chanin in the amount of $920,000.  The payment of these expenses is separately required under Section 5.8(a) of the FCP Voteco, LLC operating agreement, which provides for the express reimbursement of its managers, directors, officers, agents and employees for any expense "arising out of their activities on behalf of the Company or in furtherance of the interests of the Company."  Further, Section 5.9 requires reimbursement for "all expenses incurred in connection with the operation of the Company's business."  Pursuant to these provisions and related provisions in the operating agreements and organizational documents of the debtor and non-debtor entities above SCI in the capital structure, SCI has historically reimbursed the Colony Directors and FC Investor for the fees of Willkie Farr & Gallagher, LLP ("Willkie"), which serves as a legal advisor to the Colony Directors and FC Investor.  Accordingly, SCI paid a prepetition retainer to Willkie in the amount of $500,000, of which the Colony Directors advise a portion remains available to satisfy Debtors' obligations under the relevant operating agreements.

16.    The Fertitta Directors, SCI and counsel for the Fertitta Directors have executed a fee agreement pursuant to which SCI agreed to pay fees and costs incurred by counsel to the Fertitta Directors.  No retainer was provided.

**Exercise of Business Judgment**

17.    In order to retain the services of Dr. Nave, it is essential that SCI continue to honor its obligations to him and to the other directors.  Among other things, SCI is of the opinion that, in light of the litigation threats that have already been made, it is in the best interest of the SCI estate that Dr. Nave and the other directors have access to legal advice and counsel with respect to the restructuring, and believe that such advice will benefit the SCI estate and its creditors.  Specifically, SCI believes that SCI will be unable to retain Dr. Nave without assuming the Reimbursement Agreement.  SCI believes that the incremental costs associated with assuming the Reimbursement Agreement and reimbursing its directors' legal fees and expenses are outweighed by the benefits that the Debtors will receive.

18.    Dr. Nave has expressed that he would not be willing to continue serving as a member of the board unless he has access to independent legal advice and counsel.  To that end,

SCI seeks authority to indemnify and reimburse its directors (including, with respect to Dr. Nave, by assumption of the Reimbursement Agreement) for reasonable fees and expenses incurred in the discharge of their duties and any litigation that may arise out of the performance of their duties as directors.  In sum, in light of the prior litigation threats, SCI has determined in the exercise of its business judgment that it is essential that each of the directors have independent legal counsel available with respect to the discharge of their duties to SCI with respect to the pending chapter 11 cases, SCI's restructuring efforts, and any litigation that may result, and that actions of all directors, including Dr. Nave, should be indemnified by SCI.

19.    SCI has concluded in its sound business judgment that it is in SCI's best interest that Dr. Nave and other directors remain available to provide critical decision-making with respect to SCI's restructuring efforts.  Especially because Dr. Nave has expressed that he will not serve as a director without legal advice and counsel, and SCI agrees that such advice and counsel is necessary, SCI finds that it is critical SCI be permitted to provide such counsel for Dr. Nave and the other directors, including, with respect to Dr. Nave, by assuming the Reimbursement Agreement.  In addition, in light of potential litigation that may arise during or as a result of these chapter 11 cases, all of the directors should be indemnified for any actions taken in furtherance of or preparation for SCI's reorganization, emergence from bankruptcy or general business activities and all of the directors must have access to legal counsel, the expense of which should be reimbursed by SCI.

20.    SCI's directors are being asked to make numerous business determinations that materially affect the rights of stakeholders.  The directors, should not be subjected to liability for their good faith decisions, and they have rightfully expressed an unwillingness to do so given the prior threats of litigation.  In particular, given his stature, experience and leadership abilities, not to mention his depth of experience with Station, the loss of Dr. Nave would seriously impede SCI's reorganization efforts.  Accordingly, SCI believes in its sound business judgment that it is in the best interest of SCI's estate to honor their obligations to indemnify and reimburse all of the directors as provided in Section 8.1 of the Bylaws, and, with respect to Dr. Nave, pursuant to the Reimbursement Agreement.

21.    I believe that the relief requested in the Motion is in the best interest of SCI, its creditors and all other parties in interest.

22.    Accordingly, I respectfully request that the Court grant all of the relief requested in the Motion and such other and further relief as may be just.

[Signature Appears on Following Page]

1      23.    I declare under penalty of perjury under the laws of the United States that the

2  foregoing is true and correct to the best of my knowledge, information and belief.

3

4  Dated: August 21, 2009
          Las Vegas, Nevada
5                                    By:    _____
6                                           Thomas M. Friel, Executive Vice President
                                            Chief Accounting Officer and Treasurer
7                                           Station Casinos, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT A**

2

Indemnification Provisions Of The Station Articles of Incorporation

3          Section 4.          Limitation of Personal Liability.  The liability of directors
and officers of the Corporation shall be eliminated or limited to the fullest extent permitted by

4      the NRS.  If the NRS are amended to further eliminate or limit or authorize corporate action to
further eliminate or limit the liability of directors or officers, the liability of directors and officers

5      of the Corporation shall be eliminated or limited to the fullest extent permitted by the NRS, as so
amended from time to time.

6
          Section 5.          Payment of Expenses.  In addition to any other rights of
7      indemnification permitted by the law of the State of Nevada as may be provided for by the
Corporation in its Amended and Restated Bylaws or by agreement, the expenses of officers and

8      directors incurred in defending a civil or criminal action, suit or proceeding, involving alleged
acts or omissions of such officer or director in his or her capacity as an officer or director of the

9      Corporation, must be paid, by the Corporation or through insurance purchased and maintained by
the Corporation or through other financial arrangements made by the Corporation, as they are

10    incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of
an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately

11    determined by a court of competent jurisdiction that he or she is not entitled to be indemnified by
the Corporation.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

Indemnification Provisions Of The Station Bylaws

ARTICLE VIII
INDEMNIFICATION

Section 8.1        Indemnification and Insurance.

(a)        Indemnification of Directors and Officers.

(i)        For purposes of this Article, (A) "Indemnitee" shall mean each director or officer who was or is a party to, or is threatened to be made a party to, or is otherwise involved in, any Proceeding (as hereinafter defined), by reason of the fact that he or she is or was a director or officer of the Corporation or is or was serving in any capacity at the request of the Corporation as a director, officer, employee, agent, partner, member, manager or fiduciary of, or in any other capacity for, another corporation or any partnership, joint venture, limited liability company, trust, or other enterprise; and (B) "Proceeding" shall mean any threatened, pending, or completed action, suit or proceeding (including, without limitation, an action, suit or proceeding by or in the right of the Corporation), whether civil, criminal, administrative, or investigative.

(ii)        Each Indemnitee shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Nevada law, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, taxes, penalties, and amounts paid or to be paid in settlement) reasonably incurred or suffered by the Indemnitee in connection with any Proceeding; provided that such Indemnitee either is not liable pursuant to NRS 78.138 or acted in good faith and in a manner such Indemnitee reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any Proceeding that is criminal in nature, had no reasonable cause to believe that his or her conduct was unlawful.  The termination of any Proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, does not, of itself, create a presumption that the Indemnitee is liable pursuant to NRS 78.138 or did not act in good faith and in a manner in which he or she reasonably believed to be in or not opposed to the best interests of the Corporation, or that, with respect to any criminal proceeding he or she had reasonable cause to believe that his or her conduct was unlawful.  The Corporation shall not indemnify an Indemnitee for any claim, issue or matter as to which the Indemnitee has been adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom, to be liable to the Corporation or for any amounts paid in settlement to the Corporation, unless and only to the extent that the court in which the Proceeding was brought or other court of competent jurisdiction determines upon application that in view of all the circumstances of the case, the Indemnitee is fairly and reasonably entitled to indemnity for such amounts as the court deems proper.  Except as so ordered by a court and for advancement of expenses pursuant to this Section, indemnification may not be made to or on behalf of an Indemnitee if a final adjudication establishes that his or her acts or omissions involved intentional misconduct, fraud or a knowing violation of law and was material to the cause of action.  Notwithstanding anything to the contrary contained in these Bylaws, no director or officer may be indemnified for expenses incurred in defending any threatened, pending, or completed action, suit or proceeding (including without limitation, an action, suit or proceeding

-7-

by or in the right of the Corporation), whether civil, criminal, administrative or investigative, that such director or officer incurred in his or her capacity as a stockholder.

(iii)    Indemnification pursuant to this Section 8.1 shall continue as to an Indemnitee who has ceased to be a director or officer of the Corporation or a director, officer, employee, agent, partner, member, manager or fiduciary of, or to serve in any other capacity for, another corporation or any partnership, joint venture, limited liability company, trust, or other enterprise and shall inure to the benefit of his or her heirs, executors and administrators.

(iv)    The expenses of Indemnitees must be paid by the Corporation or through insurance purchased and maintained by the Corporation or through other financial arrangements made by the Corporation, as they are incurred and in advance of the final disposition of the Proceeding, upon receipt of an undertaking by or on behalf of the Indemnitee to repay the amount if it is ultimately determined by a court of competent jurisdiction that he or she is not entitled to be indemnified by the Corporation.  To the extent that an Indemnitee is successful on the merits or otherwise in defense of any Proceeding, or in the defense of any claim, issue or matter therein, the Corporation shall indemnify him or her against expenses, including attorneys' fees, actually and reasonably incurred in by him or her in connection with the defense.

(b)    Indemnification of Employees and Other Persons.  The Corporation may, by action of its Board of Directors and to the extent provided in such action, indemnify employees and other persons as though they were Indemnitees.

(c)    Non-Exclusivity of Rights.  The rights to indemnification provided in this Article VIII shall not be exclusive of any other rights that any person may have or hereafter acquire under any statute, provision of the Articles of Incorporation or these Bylaws, agreement, vote of stockholders or directors, or otherwise.

(d)    Insurance.  The Corporation may purchase and maintain insurance or make other financial arrangements on behalf of any Indemnitee for any liability asserted against him or her and liability and expenses incurred by him or her in his or her capacity as a director, officer, employee, member, managing member or agent, or arising out of his or her status as such, whether or not the Corporation has the authority to indemnify him or her against such liability and expenses.

(e)    Other Financial Arrangements.  The other financial arrangements which may be made by the Corporation may include the following: (i) the creation of a trust fund; (ii) the establishment of a program of self-insurance; (iii) the securing of its obligation of indemnification by granting a security interest or other lien on any assets of the Corporation; and (iv) the establishment of a letter of credit, guarantee or surety.  No financial arrangement made pursuant to this subsection may provide protection for a person adjudged by a court of competent jurisdiction, after exhaustion of all appeals therefrom, to be liable for intentional misconduct, fraud, or a knowing violation of law, except with respect to advancement of expenses or indemnification ordered by a court.

(f)    Other Matters Relating to Insurance or Financial Arrangements.  Any insurance or other financial arrangement made on behalf of a person pursuant to this Section 8.1 may be provided by the Corporation or any other person approved by the Board of Directors,

-8-

even if all or part of the other person's stock or other securities is owned by the Corporation.  In the absence of fraud, (i) the decision of the Board of Directors as to the propriety of the terms and conditions of any insurance or other financial arrangement made pursuant to this Section 8.1 and the choice of the person to provide the insurance or other financial arrangement is conclusive and (ii) the insurance or other financial arrangement is not void or voidable and does not subject any director approving it to personal liability for his action; even if a director approving the insurance or other financial arrangement is a beneficiary of the insurance or other financial arrangement.

Section 8.2        Amendment.  The provisions of this Article VIII relating to indemnification shall constitute a contract between the Corporation and each of its directors and officers which may be modified as to any director or officer only with that person's consent or as specifically provided in this Section 8.2.  Notwithstanding any other provision of these Bylaws relating to their amendment generally, any repeal or amendment of this Article VIII which is adverse to any director or officer shall apply to such director or officer only on a prospective basis, and shall not limit the rights of an Indemnitee to indemnification with respect to any action or failure to act occurring prior to the time of such repeal or amendment.  Notwithstanding any other provision of these Bylaws (including, without limitation, Article X below), no repeal or amendment of these Bylaws shall affect any or all of this Article VIII so as to limit or reduce the indemnification in any manner unless adopted by (a) the unanimous vote of the directors of the Corporation then serving, or (b) by the stockholders as set forth in Article X hereof; provided that no such amendment shall have a retroactive effect inconsistent with the preceding sentence.

# EXHIBIT C

## BIOGRAPHY OF JAMES E. NAVE, DVM

Dr. Nave is one of five directors of SCI.  He has been a director of SCI for almost the entire period since March, 2001 and is presently the chairman of its Audit Committee.  In addition, he serves as the chairman of the Independent Committee that has been in the process of reviewing Station's leveraged buyout transaction consummated on November 7, 2007.  Dr. Nave is a highly qualified and sophisticated board member.  Specifically, he is highly respected nationwide for his leadership qualities and is a successful entrepreneur in his own right.  He is also a highly regarded and valued member of the community served by Station.

Dr. Nave is recognized as a leading expert in the field of veterinary medicine.  He founded the Tropicana Animal Hospital in Las Vegas, Nevada in 1974 and continues to practice actively today.  Throughout his career, Dr. Nave has built or acquired thirty-nine animal hospitals and owns and operates nineteen such hospitals at present.  Dr. Nave's hospitals currently employ approximately 428 employees and generate annual revenues in the tens of millions.  Dr. Nave is a former President of the American Veterinary Medical Association.  Dr. Nave was also the American Veterinary Medical Association's Globalization Liaison Agent for Education and Licensing until June of 2009, and is currently its Director of International Affairs.  Dr. Nave served as Chair of National Commission on Veterinary Economics Issues from 2001 to 2007, which commission was charged with raising the economic base of the profession.  He is a member and past president of the Nevada Veterinary Medical Association and the Western Veterinary Conference, as well as a member of the Clark County Veterinary Medical Association, the National Academy of Practitioners, the American Animal Hospital Association, and the Executive Board of the World Veterinary Association.  Dr. Nave was also the chairman of the University of Missouri, College of Veterinary Medicine Development Committee.

Dr. Nave has also held other prestigious leadership positions.  Prior to his veterinary career as a civilian, he was an officer in the Army Veterinary Corps.  He has served as a director of the Western Alliance Bancorporation and the Bank of Nevada since their establishment in 1995 and 1994, respectively.  He currently serves as a member of the Audit and Compensation Committees of Western Alliance Bancorporation, a publicly traded company.

Dr. Nave was appointed by the Governor of Nevada as a member of the Nevada State Athletic Commission (the "Commission") from 1988 to 1999 and served as its chairman from 1989 to 1992 and from 1994 to 1996.  The Commission regulates all contests or exhibitions of unarmed combat in the state of Nevada, including the licensure and supervision of promoters, boxers, mixed martial artists, kick boxers, seconds, ring officials, managers, and matchmakers.  In 1990, Dr. Nave was named Boxing Commissioner of the Year by the North American Boxing Federation and was five times named the World Boxing Council's Boxing Commissioner of the Year.  Dr. Nave's record as a strong independent-minded Commissioner is only one example demonstrating why he is uniquely qualified to serve as an independent director of SCI.

**EXHIBIT D**

**BIOGRAPHY OF THOMAS J. BARRACK, JR.**

Mr. Barrack, is the Founder, Chairman, and Chief Executive Officer of Colony Capital, LLC and as such, he provides overall strategic and investment direction and leadership to the Firm.

Prior to the formation of Colony, Mr. Barrack was a principal with the Robert M. Bass Group, the principal investment vehicle of the Fort Worth, Texas investor Robert M. Bass. Prior to joining RMBG, Mr. Barrack served as President of Oxford Development Ventures, Inc. and as a Senior Vice President of E.F. Hutton & Co. in New York. Prior to his tenure at Oxford, Mr. Barrack also served in the Reagan administration as Deputy Undersecretary of the Department of the Interior. In 1976, Mr. Barrack began his real estate investment career as President of Dunn International Corporation. He practiced international finance law until 1976.

Mr. Barrack received a B.A. in 1969 from the University of Southern California. He attended Law School at the University of San Diego and the University of Southern California, where he was an editor of the Law Review and received a J.D. from the University of San Diego in 1972.

**EXHIBIT E**

**BIOGRAPHY OF JONATHAN H. GRUNZWEIG**

Mr. Grunzweig, Principal and Chief Investment Officer of Colony Capital, LLC, has been based in Los Angeles since 1999, with the exception of a relocation to Colony's London office from September 2004 through December 2005. As CIO, Mr. Grunzweig oversees the sourcing, structuring, execution and management of all investments and divestments on a global basis.

Prior to joining Colony in 1999, Mr. Grunzweig was a Partner with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, where he specialized in corporate finance and mergers and acquisitions. Mr. Grunzweig also served as General Counsel for Colony's global investment program for several years, prior to relocating to London.

Mr. Grunzweig received his B.A. from Cornell University in 1985, where he was a member of Phi Beta Kappa. He received a J.D., Cum Laude, from Harvard Law School in 1988. Mr. Grunzweig has also been a periodic lecturer at the University of California at Berkeley's Haas School of Business on the subject of International Finance and Joint Ventures.

1

**EXHIBIT F**

2

**BIOGRAPHY OF FRANK J. FERTITTA III**

3

4

    Mr. Fertitta has served as Chairman of the Board of Station Casinos, Inc. since February

5

1993 and Chief Executive Officer since July 1992. Mr. Fertitta also served as President of
Station Casinos, Inc. from 1989 until July 2000. He has held senior management positions since

6

1985, when he was named General Manager of the Palace Station Hotel and Casino. He was
elected a director of Station Casinos, Inc. in 1986, at which time he was also appointed

7

Executive Vice President and Chief Operating Officer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT G

## BIOGRAPHY OF LORENZO J. FERTITTA

Mr. Fertitta was appointed Vice Chairman of the Board of Station Casinos, Inc. in December 2003. Mr. Fertitta also serves as the chief executive officer of Zuffa LLC. Mr. Fertitta has served as a director since 1991 and served as President of Station Casinos, Inc. from July 2000 to July 2008. From 1991 to 1993, he served as Vice President of Station Casinos, Inc. Mr. Fertitta served as President and Chief Executive Officer of Fertitta Enterprises, Inc. from June 1993 to July 2000, where he was responsible for managing an investment portfolio consisting of marketable securities and real property. Mr. Fertitta is currently a member of the Board of Directors of the Nevada Resort Association and serves as a director of the American Gaming Association. Mr. Fertitta served as a commissioner on the Nevada State Athletic Commission from November 1996 until July 2000.

1

**EXHIBIT H**

2

**REIMBURSEMENT AGREEMENT FOR DR. NAVE**

3

(See Attached)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[STATION LETTERHEAD]

As of June 3, 2009

James E. Nave, D.V.M.
2385 E. Tropicana Ave
Las Vegas, Nevada   89119

RE:    Reimbursement Agreement

Dear Dr. Nave:

   This letter agreement will confirm our understanding with respect to your engagement, in your capacity as a director of Station Casinos, Inc., a Nevada corporation (the "Company"), of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") and Jones Vargas in connection with a potential restructuring of the major credit obligations of the Company and related matters, including any litigation arising from or relating to such a restructuring (the "Engagement").

   In consideration of your service as a director of the Company, the Company agrees to promptly reimburse you for Skadden's and Jones Vargas' fees and expenses in connection with the Engagement.  Skadden's and Jones Vargas' fees and expenses will be as set forth in their respective engagement agreements with you.

   An initial payment to each of Skadden and Jones Vargas has been made as a retainer / on account payment for the reasonable fees, charges and disbursements incurred by Skadden and Jones Vargas on your behalf.  Promptly after receipt of each invoice from Skadden and Jones Vargas, the Company agrees to pay Skadden and Jones Vargas the amount of the invoice thereby replenishing previous retainers / on account payments made by the Company to Skadden or Jones Vargas.

   There shall be no third party beneficiaries to this letter agreement except for Skadden and Jones Vargas.  The Company acknowledges that each of Skadden and Jones Vargas has executed an engagement agreement with you which may include additional disclosures and understandings regarding the client relationships between you and Skadden and Jones Vargas and which may be subject to the attorney-client privilege.  Notwithstanding the provisions of this letter agreement, the Company acknowledges that Skadden's and Jones Vargas' duties and

James E. Nave, D.V.M.
As of June 3, 2009
Page 2

client relationships run solely to you pursuant to the terms of their engagement agreements with you.

       This letter agreement shall be governed by and interpreted in accordance with the laws of the State of Nevada without regard to its conflicts of laws principles.

       If this letter agreement is satisfactory, please sign a copy and return it to me.

STATION CASINOS, INC.

By: _____
      Name:
      Title:

AGREED AND ACCEPTED:

_____
JAMES E. NAVE, D.V.M.

cc: Skadden, Arps, Slate, Meagher & Flom LLP
    Attn: Rod A. Guerra
  Jones Vargas
    Attn: Jodi R. Goodheart