**Entered on Docket**
**September 09, 2009**

_____
**Hon. Gregg W. Zive**
**United States Bankruptcy Judge**

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:      (213) 892-4000
Facsimile:       (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:      (775) 823-2900
Facsimile:       (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:
STATION CASINOS, INC.

☒ Affects this Debtor
☐ Affects all Debtors
☐ Affects Northern NV Acquisitions, LLC
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☒ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-52477
Jointly Administered
BK 09-52470 through BK 09-52487

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 361, 362 AND 363 APPROVING STIPULATION FOR (i) ADEQUATE PROTECTION AND (ii) USE OF CASH COLLATERAL WITH RESPECT TO SECURED LOANS TO FCP PROPCO, LLC**

Hearing Date:      September 2, 2009
Hearing Time:      9:30 a.m.
Place:                  300 Booth Street
                           Reno, NV 89509

#4822-8188-5188v3

LA1 1623308v.1

1    Upon the motion, dated August 3, 2009 (the "Motion"),[1] of Station Casinos, Inc.

2    and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "Station")[2] in

3    the above-captioned chapter 11 cases, for interim and final orders pursuant to sections 361, 362

4    and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

5    "Bankruptcy Code"), (a) approving the Stipulation for (i) Adequate Protection and (ii) Use of

6    Cash Collateral With Respect to Secured Loans to FCP PropCo, LLC (the "Stipulation"), (b)

7    granting adequate protection to certain prepetition secured parties, (c) authorizing use of cash

8    collateral (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), (d) granting

9    related relief, and (e) scheduling a final hearing (the "Final Hearing") thereon; and upon

10    consideration of the supporting declaration of Thomas M. Friel, sworn to on July 24, 2009; and

11    the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

12    28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core

13    proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28

14    U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it

15    appearing that no other or further notice need be provided; and the Court having determined that

16    the relief sought in the Motion is in the best interests of the Debtors, their creditors and all other

17    parties in interest; and the Court having determined that the legal and factual bases set forth in

18    the Motion establish just cause for the relief granted herein; and upon all the proceedings had

19    before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby

20    **ORDERED** that the Motion is granted on a final basis; and it is further

21    **ORDERED** that the terms and conditions of the Stipulation attached hereto as

22    Exhibit 1 are approved and hereby so ordered and the mutual agreements contained therein are

23    duly effectuated; and it is further

---

24

25    [1]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

26    [2]    The Debtors in these chapter 11 cases are Station Casinos, Inc., Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC, Fertitta Partners LLC, FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower

27    VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC,

28    and FCP PropCo, LLC.

#4822-8188-5188v3                                               -2-

1        **ORDERED** that subject to the terms and conditions set forth in the Stipulation

2  and Budget, attached to the Stipulation as Exhibit A, Debtor FCP PropCo, LLC ("PropCo") is

3  authorized to use Cash Collateral on a final basis pursuant to Fed. R. Bankr. P. 4001(b) and LR

4  4001(b) until the earlier of (1) the expiration of the Budget, as approved in writing by the

5  Mortgage Lenders or (2) the occurrence of a Termination Event; and it is further

6        **ORDERED** that PropCo is authorized immediately to use Master Lease payments

7  as necessary to satisfy its ongoing obligations under the Mortgage Loan Agreement and to pay

8  its other operating expenses, subject to the terms and conditions set forth in the Stipulation and

9  Budget; and it is further

10        **ORDERED** that, notwithstanding any provision in the Federal Rules of

11  Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the

12  implementation of the relief granted in this Final Order; and it is further

13        **ORDERED** that within two (2) business days of the entry of this Final Order, the

14  Debtors shall serve this Final Order upon the Master Service List pursuant to the Court's Order

15  Establishing Notice Procedures; and it is further

16        **ORDERED** that this Court shall retain jurisdiction to hear and determine all

17  matters arising from the implementation and/or interpretation of this Final Order; and it is further

18

19

20

21

22

23

24

25

26

27

28

#4822-8188-5188v3

-3-

LA1 1623308v.1

1        **ORDERED** that notice of the Motion as provided therein shall be deemed good

2 and sufficient notice of the Motion.

3

4 SUBMITTED BY:

5

6 Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)

7 MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor

8 Los Angeles, California 90017

9 Proposed Reorganization Counsel for
Debtors and Debtors in Possession

10

11 Bruce T. Beesley, #1164
Laury Macauley, #11413

12 LEWIS AND ROCA LLP
50 W. Liberty Street, Ste. 410

13 Reno, NV 89501

14 Proposed Local Reorganization Counsel

15 For Debtors and Debtors in Possession

16

17                              # # #

18

19

20

21

22

23

24

25

26

27

28

#4822-8188-5188v3                   -4-

LA1 1623308v.1

# EXHIBIT 1

# EXHIBIT 1

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:      (213) 892-4000
Facsimile:      (213) 629-5063

Proposed Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:      (775) 823-2900
Facsimile:      (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

STATION CASINOS, INC.

☒ Affects this Debtor
☐ Affects all Debtors
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects Northern NV Acquisitions, LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☒ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-52477-GWZ;
Jointly Administered

**STIPULATION AND FINAL ORDER
FOR (i) ADEQUATE PROTECTION
AND (ii) USE OF CASH
COLLATERAL WITH RESPECT TO
SECURED LOANS TO FCP PROPCO,
LLC**

Hearing Date:      September 2, 2009
Hearing Time:      9:30 a.m.
Place:              300 Booth Street
                    Reno, NV 89509

#4849-2723-9172v7

1  TO THE HONORABLE GREGG W. ZIVE, UNITED STATES BANKRUPTCY JUDGE:

2        Station Casinos, Inc. ("SCI"), as a debtor and debtor-in-possession in the above-

3  captioned chapter 11 cases (the "Cases"), its indirect wholly owned subsidiary FCP PropCo,

4  LLC ("PropCo"), as a debtor and debtor in possession in the Cases, German American Capital

5  Corporation and JP Morgan Chase Bank, N.A. ("Mortgage Lenders") in their capacity as lenders

6  under the Mortgage Loan Agreement (defined below), and Deutsche Bank AG ("DB") as Swap

7  Counterparty to PropCo with respect to the Existing PropCo Swap expiring November, 2012 (the

8  "Swap"), hereby submit this final stipulation (the "Stipulation") pursuant to sections 361, 362

9  and 363 of title 11 of the United States Code, 11 U.S.C. §§ 361, 362 and 363 (as amended, the

10  "Bankruptcy Code"), for an order approving their agreement for the provision of adequate

11  protection in accordance with the terms of this Stipulation.

12        In support of the Stipulation, SCI, Propco, the Mortgage Lenders, the Collateral

13  Agent (as defined below), and DB (collectively the "Parties" and each individually a "Party")

14  acknowledge and agree that the following recitals are true, and further stipulate by and between

15  themselves as follows:

16  **RECITALS**

17        1.      SCI and PropCo (collectively, the "Debtors") commenced these chapter 11

18  cases on July 28, 2009 (the "Petition Date"). SCI and its non-debtor subsidiaries (collectively,

19  the "Station Group") constitute a gaming entertainment enterprise that owns and operates under

20  the "Station" and "Fiesta" brand names.

21        2.      The Station Group owns and operates: (i) Palace Station Hotel & Casino

22  ("Palace Station"), (ii) Boulder Station Hotel & Casino ("Boulder Station"), (iii) Texas Station

23  Gambling Hall & Hotel, (iv) Sunset Station Hotel & Casino ("Sunset Station"), (v) Santa Fe

24  Station Hotel & Casino, (vi) Red Rock Casino Resort Spa ("Red Rock"), (vii) Fiesta Rancho

25  Casino Hotel, (viii) Fiesta Henderson Casino Hotel, (ix) Wild Wild West Gambling Hall &

26  Hotel, (x) Wildfire Casino, (xi) Wildfire Casino – Boulder Highway, formerly known as Magic

27  Star Casino, (xii) Gold Rush Casino, and (xiii) Lake Mead Casino.

28

#4849-2723-9172v7                 2

3. Prior to the Petition Date, PropCo entered into that certain Amended and Restated Loan and Security Agreement, dated as of March 19, 2008 (the "Mortgage Loan Agreement"), with the Mortgage Lenders, pursuant to which the Mortgage Lenders made loans and other financial accommodations to PropCo.

4. PropCo, as landlord, and SCI, as tenant, entered into that certain Master Lease Agreement, dated as of November 7, 2007 and amended by that certain First Amendment to Master Lease dated as of March 19, 2008 (collectively, the "Master Lease"), under which SCI leases the four properties known as (i) Palace Station, (ii) Boulder Station, (iii) Sunset Station, and (iv) Red Rock (collectively, the "Leased Hotels") from PropCo. The Master Lease is a "triple net" lease under which taxes, insurance, capital expenditures, and other expenses (in each case as provided therein) are born by SCI. SCI pays rent to PropCo both in the form of cash payments to PropCo and cash payments to third parties on behalf of PropCo, all as required pursuant to the terms of the Master Lease, for the use of such properties. The Leased Hotels, the Master Lease, the rent due under the Master Lease, the cash collateral and certain other assets pledged under the Security Instruments, Security Documents or other Loan Documents (as such terms are defined in the Mortgage Loan Agreement) (collectively, the "Collateral"), are pledged to the Mortgage Lenders or to German American Capital Corporation, as the Collateral Agent for the Mortgage Lenders (the "Collateral Agent") to secure the obligations due under the Mortgage Loan Agreement.

5. Subject to the rights of the Official Committee of Unsecured Creditors (the "Committee"), the SCI Special Committee (defined below) or any Debtor that commences an action identified by the SCI Special Committee, as such rights are described in paragraph (m) herein below, the Collateral Agent has valid, perfected, and unavoidable first priority liens upon and security interests in the Collateral; provided, however, that neither the SCI Special Committee nor any Debtor may challenge the attachment or perfection of the liens and security interests in favor of the Mortgage Lenders or Collateral Agent in respect of the Collateral.

6.      As of the Petition Date, the principal amount of $1,800,000,000 (the "Mortgage Loan"), together with accrued and unpaid interest in an amount equal to $1,271,958.33, was outstanding under the Mortgage Loan Agreement.

7.      On August 7, 2009, the Bankruptcy Court entered its Interim Order Pursuant To 11 U.S.C. §§ 361, 362 And 363 Approving Stipulation For (i) Adequate Protection And (ii) Use Of Cash Collateral With Respect To Secured Loans To FCP Propco, LLC [Docket No. 61] (the "Interim Order").  In the Interim Order, the Bankruptcy Court approved the initial stipulation between SCI, Propco, the Mortgage Lenders, and DB pursuant to sections 361, 362 and 363 of title 11 of the Bankruptcy Code for an order approving their agreement for the provision of adequate protection. The final terms of that agreement are contained in this Stipulation.

8.      The Parties agree that it is in their mutual best interest that the status quo be maintained with respect to the Leased Hotels and the Master Lease, in accordance with the terms of this Stipulation.  To achieve that result, the Parties agree to the Stipulations set forth below.

## STIPULATION

WHEREFORE, SCI, PropCo, the Mortgage Lenders, and DB hereby stipulate by and among themselves, and request that the Court enter its order approving, the following:

a.  Prior to the entry of an order of the Bankruptcy Court approving assumption or rejection of the Master Lease, SCI shall timely pay all amounts due, including, without limitation, rent due under the Master Lease, property tax impound payments due under the Master Lease and Boulder Station ground rent impound payments due under the Master Lease, and timely perform all its other obligations under the Master Lease in accordance with its terms in full satisfaction of the requirements of sections 362(d)(3) and 365(d)(3) of the Bankruptcy Code, provided, however, that all amounts paid by SCI under the Master Lease in excess of the amounts necessary to make monthly debt service payments, property tax impound payments, Boulder Station ground rent impound payments and all other payments or impounds expressly

provided for and authorized in this stipulation, pursuant to the Budget ("Accumulating Cash Collateral") shall be swept on a monthly basis from the CMBS Bank Account into a newly established bank account of PropCo at HSBC Bank USA, N.A. (such new account the "CMBS ACC Account") and such Accumulating Cash Collateral shall not be disbursed from the CMBS ACC Account except upon further order of the Bankruptcy Court. The Collateral Agent is hereby granted a perfected first priority lien on and security interest and control agreement rights in the CMBS ACC Account and all cash or securities contained therein, as if such lien on and security interest and control agreement rights in the CMBS ACC Account were a prepetition lien and security interest and control agreement rights, without any further act of perfection by the Mortgage Lenders, provided, however, that such lien and security interest and control agreement rights shall be subject to the investigation by the Committee pursuant to paragraph (m) of this Stipulation to the same extent as the corresponding prepetition lien and security interest. Without limiting the generality of the foregoing, the deposit account control agreement heretofore entered into between HSBC Bank USA, N.A., the Collateral Agent and PropCo in respect of the CMBS Bank Account shall be deemed for all purposes to apply to the CMBS ACC Account without need for further action or additional writing by any party. The effectiveness of any subsequent order of the Court dismissing this bankruptcy case of PropCo for any reason whatsoever shall be subject to the prior transfer of all funds in the CMBS ACC Account to the CMBS Bank Account, which funds, upon transfer, shall be deemed to have been part of the CMBS Bank Account ab initio. The Committee shall receive from PropCo monthly statements for the CMBS ACC Account promptly after the same become available. In addition, SCI shall cause the Leased Facilities to be maintained and operated in accordance with the standards of the Master Lease and in accordance with historical practice.

b.  All Master Lease payments shall be made to the account to which such payments were made prior to the Petition Date, and shall be held in such account or another of

the "CMBS Mortgage Loan Accounts" described in that Interim Order Pursuant to 11 U.S.C. §§ 105(A), 345(B), 363(C) and 364 for Authorization to (I) Continue Cash Management System, (II) Maintain Existing Bank Accounts And Business Forms, And (III) Maintain Existing Investment Policy [Docket No. 22] until PropCo provides notice of a change in bank account information (any such account in which proceeds of Master Lease payments are held being a "CMBS Bank Account") (provided, however, that PropCo shall not change the CMBS Bank Account without (i) notice to the unsecured creditors committee (and for avoidance of doubt any such new CMBS Bank Account shall be subject to the sweep provisions in clause (a) above with respect to Accumulated Cash Collateral) and (ii) the consent of the Mortgage Lenders and the Mortgage Lenders shall be granted valid and fully perfected security interests and control rights with respect to any new CMBS Bank Account). Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, funds in the CMBS Bank Account or any new CMBS Bank Account be used only for: (i) a catch up payment of all unpaid prepetition interest and fees (including, without limitation, fees due under the Mortgage Loan Agreement and Loan Documents, the Swap and the Mortgage Lenders' professionals' fees, if any); (ii) the payment of non-default rate interest due under the Mortgage Loan Agreement, payable in accordance with the terms of the Mortgage Loan Agreement; (iii) monthly payments due (if any pursuant to the terms of the Swap agreements) under the Swap (which for avoidance of doubt shall not include any termination damages); (iv) all reasonable fees and expenses of the Mortgage Lenders to the extent due under the Mortgage Loan Agreement and Loan Documents, including professional fees of Sidley Austin LLP, Cadwalader Wickersham & Taft LLP and Lionel Sawyer & Collins LLP, counsel to the Mortgage Lenders, and Miller Buckfire & Co., financial advisor to the Mortgage Lenders, (v) Boulder Station ground rent due, paid from funds impounded for this purpose; (vi) property taxes due on the Leased Hotels paid from funds impounded for this purpose and any amounts that insure the Leased Hotels paid from impounds funded for this

purpose to the extent required under the Mortgage Loan Agreement; (vii) PropCo's

reasonable ordinary course expenses of operation consistent with prepetition practice

as permitted under the Mortgage Loan Agreement, including reasonable ordinary

course professional fees and expenses, business license fees, annual secretary of state

fees and other similar corporate expenses, (viii) compensation for, and reasonable

fees and expenses incurred by, PropCo's independent directors; (ix) PropCo's

expenses of reorganization, consisting of trustee fees, court costs, if any, and the

reasonable professional fees and costs of Milbank Tweed, Hadley & McCloy and

Lewis & Roca, as attorneys, Lazard as financial advisor, in accordance with an

allocation methodology to be agreed upon by the Mortgage Lenders and PropCo, and

the reasonable professional fees and costs of Gibson, Dunn & Crutcher, as special

counsel to PropCo, and FTI Consulting, as special advisors to PropCo, provided that

compensation for estate professionals shall (A) be subject to the Budget and (B) be

subject to payment and allowance pursuant to the Bankruptcy Code, as modified

pursuant to any entered order permitting interim compensation of estate professionals

(x) payment of expenses related to the CMBS Bank Account; and (xi) for no other

purpose.  Expenditures for items (vii) – (ix) shall be limited to the amounts set forth

in the "Budget" attached hereto as Exhibit A (as revised from time to time with the

prior written approval of the Mortgage Lenders), and shall not be made after the

earlier of (1) the expiration of the 13-week period set forth in the Budget or (2) a

Termination Event (as defined below), without the prior written consent of the

Mortgage Lenders or further order of the Court.  The Debtors shall provide the

Committee with copies of any proposed extension or revision to the Budget

concurrently with delivery of the same to the Mortgage Lenders and provide the

Committee with, promptly following request therefore a copy of the Budget including

reasonable detail with respect to all amounts contained therein (and in addition,

reasonable information with respect to amounts previously paid and/or to be paid to

professionals of the Mortgage Lenders).   The Debtors shall provide to the Committee

concurrently with delivery of the same to the Mortgage Lenders copies of all financial reports, notices, financial analyses, invoices or other documents relating to the Budget or otherwise required under the Mortgage Loan Agreement. Debtors shall provide the Committee with copies of invoices received from professionals employed by the Mortgage Lenders. All of the monthly payments received by PropCo shall, unless and until disbursed in accordance with the terms hereof, be deposited and maintained at all times in the CMBS Bank Account until all disbursements and impounds to be paid therefrom have been made, with all remaining Accumulated Cash Collateral being deposited into the CMBS ACC Account as set forth in sub-clause (a). To the extent the terms of the Mortgage Loan Agreement are inconsistent with the terms of this Stipulation, this Stipulation shall control and the banks maintaining the CMBS Mortgage Loan Accounts are hereby authorized, upon giving prior written notice to the Mortgage Lenders and PropCo of all such disbursements, to disburse funds at the direction of either the Mortgage Lenders or PropCo provided that the Party requesting withdrawals certifies to the applicable bank and to the other Parties to this Stipulation that such withdrawals are permitted under the terms of this Stipulation.

c.   Notwithstanding anything herein, nothing shall preclude the Committee from requesting that (i) any payments of fees or interest made pursuant to this Stipulation be recharacterized as principal payments under the Mortgage Loan Agreement in the event that the Mortgage Lenders are determined to be undersecured and (ii) subject to paragraph (m), any monthly payments due under the Swap be subject to recapture in the event such Swap is determined by final court order to be a fraudulent conveyance or subject to recharacterization, avoidance or equitable subordination.

d.   Without limiting the effect of clause (m) below, the rights of the Parties including the Committee as to the application of any payments to the Mortgage Loan Agreement from the CMBS Bank Accounts, and the rights of the Parties with respect to any claim for interest at the default rate or other premiums or penalties, are reserved.

e.   The liens and security interest of the Mortgage Lenders shall not be subject to priming, pari passu or subordinate liens, or other modification while this Stipulation, or as it may be amended from time to time, governs the consensual use of cash collateral, and PropCo shall not seek or obtain any post-petition financing or other indebtedness under section 364 of the Bankruptcy Code so long as PropCo is authorized to use cash collateral on a consensual basis pursuant to this Stipulation or as it may be amended from time to time.

f.   PropCo may not loan or otherwise transfer Cash Collateral to affiliates outside of the ordinary course of business and any transfers in the ordinary course of business shall be in accordance with the Budget.  For avoidance of doubt, absent further order of the Court, no payments shall be made by PropCo under this stipulation to or for the express benefit of any of the Other CMBS Debtors.[1]

g.   SCI and PropCo shall provide, in a timely manner, all reasonably requested, non-privileged information and opportunities for due diligence, access to personnel and property inspection rights as may be reasonably requested by the Mortgage Lenders or their representatives in accordance with the Mortgage Loan Agreement and shall otherwise comply with all reporting obligations under the Mortgage Loan Agreement, Loan Documents and the Master Lease.

h.   For so long as the monthly payments (if any) due from PropCo under the Swap are timely made and no Termination Event has occurred, DB shall not exercise its rights under such Swap, section 560 of the Bankruptcy Code, or otherwise, to terminate such Swap, and in the event such Swap is terminated or rejected, damages for termination shall be determined in accordance with section 562(a) of the Bankruptcy Code, which shall be deemed to include, so long as such damage claim is not duplicative, any periodic Swap payments not made prior to the giving of a Swap

---

[1]  The "Other CMBS Debtors" are, collectively, FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, and FCP MezzCo Borrower I, LLC.

Nonpayment Notice (defined below), one periodic Swap payment that is not made after delivery of a Swap Nonpayment Notice and the amount of any periodic Swap payments recovered from DB pursuant to the provisions of this Stipulation. The failure of DB to exercise its termination rights shall be without prejudice to the rights of DB under the Swap, including the right to terminate in the future upon the occurrence of a new early termination event under the Swap or a Termination Event under this Stipulation, which shall include any Swap Nonpayment Notice or any court order directing return or other recovery of periodic swap payments made after the Petition Date. PropCo may, in its sole and unilateral discretion in the exercise of its business judgment and at any time, upon five prior Business Days' notice, notify the applicable bank holding the CMBS Bank Account and the Mortgage Lenders that it chooses not to make any further payments on account of the Swap (a "Swap Nonpayment Notice"). Such election to terminate payment of amounts due under the Swap shall be an early termination event under the Swap, but shall not constitute, directly or indirectly, a Termination Event hereunder.

i.  Except as otherwise expressly provided herein, this Stipulation does not limit or affect the rights, remedies, or claims of any of the Parties hereto or of the Committee against the others under the provisions of the Bankruptcy Code, other applicable law or the Mortgage Loan Agreement, the Master Lease and related agreements, all of which are hereby expressly reserved. In particular, and without limiting the foregoing, PropCo expressly reserves the right to seek non-consensual use of cash collateral and/or debtor in possession financing on such notice as is permitted by the Bankruptcy Court and the Collateral Agent and the Mortgage Lenders hereby reserve all of their rights to contest such further use of cash collateral or debtor in possession financing. The Mortgage Lenders also expressly reserve the right to seek additional adequate protection, as well as payment of any difference between PropCo's obligations under the Mortgage Loan Agreement and the payments actually made

hereunder, provided that the disallowance thereof by the Court shall not be a
Termination Event.

j.   To the extent of the use of any cash collateral and for any diminution in the value of
the Mortgage Lenders' interests in the Collateral, the Collateral Agent shall receive,
on behalf of itself and the Mortgage Lenders, replacement security interests in and
liens upon all of the Collateral and all proceeds thereof, whether existing on the
Petition Date or acquired thereafter (including, without limitation, all proceeds (as
defined in the New York Uniform Commercial Code) on account of the Collateral),
and all assets of PropCo of the same nature and type as the Collateral whether
presently owned or hereafter acquired by PropCo, in each case to the same extent and
validity as the Mortgage Lenders' prepetition liens and security interests.  To the
extent that the Mortgage Lenders' pre-petition liens and security interests are not
successfully challenged, then the adequate protection liens shall not be subject to
challenge, but will nevertheless be limited in amount to the actual diminution of value
of the Collateral.

k.   This Stipulation will be binding upon (a) SCI, PropCo, and any trustee or examiner
that may be appointed in their Cases, or their respective successors and assigns, (b)
the Mortgage Lenders, DB and their respective successors and assigns, and (c) the
trustee in the event that the above-captioned cases are converted to cases under
Chapter 7 of the Bankruptcy Code and (d) all creditors and other parties in interest in
the Cases having notice of this Stipulation, including parties claiming derivatively
through the Debtors or their estates.

l.   PropCo's authority to use cash collateral pursuant to this Stipulation shall
automatically terminate upon (each a "Termination Event"): (i) if a Debtor files, or
files papers in support of, any motion or pleading (including a plan of reorganization)
seeking an order, or the entry of an order, authorizing (a) non-consensual use of cash
collateral or debtor in possession financing by PropCo, (b) reduction in the rent or
other cash amounts payable, or avoidance of payment by SCI of the full amount of

1    the rent due, under the Master Lease, (c) rejection or recharacterization of the Master

2    Lease, or (d) any claims or causes of action described in paragraph (m) below; (ii)

3    any deemed rejection of the Master Lease occurring by operation of Section 365 of

4    the Bankruptcy Code; (iii) consistent with (i) above, the filing by a Debtor of any

5    motion or pleading, or supporting papers, (including a plan of reorganization), or the

6    entry of an order, challenging or effecting the validity, priority, perfection and/or

7    amount of the Mortgage Lenders' liens or claims against PropCo or its assets,

8    including any adversary proceeding described in paragraph m hereof; (iv) SCI and

9    PropCo's failure to secure approval of this Stipulation in a form acceptable to the

10   Mortgage Lenders on or before September 4, 2009 and the entry of a final order in a

11   form acceptable to the Mortgage Lenders approving this Stipulation on or before

12   September 9, 2009; and (v) the failure of SCI or PropCo to fully comply with and

13   perform all terms, conditions and obligations contained in this Stipulation (including,

14   without limitation, performing all obligations under the Master Lease per the terms

15   thereof), after giving effect to any cure period provided in the Master Lease with

16   respect to any non-monetary defaults thereunder.

17   m.   The stipulations and admissions contained in this stipulation, including those set forth

18   in recital paragraph 5, shall be binding upon the Debtors party hereto, each other

19   Debtor and their respective successors and assigns (including any chapter 7 or chapter

20   11 trustee hereinafter appointed or elected for any of the estates of the Debtors).  The

21   stipulations and admissions contained in recital paragraph 5 shall be binding upon all

22   other parties-in-interest, including the Committee, the SCI Special Committee or any

23   Debtor prosecuting an action identified by the SCI Special Committee, unless the

24   Committee, the SCI Special Committee or any Debtor prosecuting an action

25   identified by the SCI Special Committee files an adversary proceeding on or before

26   the date that the first to occur of (x) ninety (90) days following the date of delivery to

27   the Committee of a copy (with redaction as necessary in the determination of SCI;

28   provided, however, that the Committee reserves all rights to object to any issues

regarding any such redaction) of the report of the special committee of the board of

directors of SCI (the "SCI Special Committee") with respect to potential claims of

SCI under chapter 5 of the Bankruptcy Code (11 U.S.C. §§ 501 - 562), together with

reasonable underlying documentation or (y) January 15, 2010 (such time period being

the "Investigation Period," and in the event that an adversary proceeding as described

in this paragraph (m) is not filed during the Investigation Period, such date shall be

referred to as the "Investigation Period Termination Date") (A) challenging the

validity, enforceability, priority, perfection, characterization or amount of the

Debtors' obligations, liens or security interests under the Loan Documents defined in

the Mortgage Loan Agreement or (B) asserting any claims or causes of action against

any of the Mortgage Lenders, the Collateral Agent or DB in their capacities as such.

The Committee reserves the right to apply to the Bankruptcy Court to extend the

Investigation Period. If no such adversary proceeding by the Committee, the SCI

Special Committee or a Debtor with respect to an action identified by the SCI Special

Committee, is commenced during the Investigation Period, (i) the claims of DB, the

Collateral Agent and the Mortgage Lenders under the Loan Documents defined in the

Mortgage Loan Agreement or the documents evidencing the Swap shall constitute

allowed claims against each applicable Debtor and shall not be subject to any contest,

objection, recoupment, counterclaim, defense, offset, subordination,

recharacterization, avoidance, or other claim, challenge, or cause of action under the

Bankruptcy Code, applicable non-bankruptcy law, or otherwise and the liens and

security interests provided for under the Loan Documents defined in the Mortgage

Loan Agreement shall be deemed legal, valid, binding, enforceable, duly perfected,

not subject to any objection, counterclaim, setoff, offset of any kind, subordination, or

defense, and such liens are otherwise unavoidable; and (ii) DB, the Collateral Agent

and the Mortgage Lenders shall not be subject to any other or further claims,

counterclaims, causes of action or lawsuits by any party-in-interest or any successor

thereto. If any such adversary proceeding is commenced during the Investigation

Period, the stipulations and admissions set forth in recital paragraph 5 shall nevertheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee and on any other Person or entity, except if such stipulation or admission has been expressly challenged in an adversary proceeding commenced within the Investigation Period, in which event such exception shall apply only to the extent that a final, non-appealable order finds in favor of the challenging party.   Nothing set forth in this stipulation shall prevent the Committee from at any time further objecting to the making by Debtor of monthly payments under the Swap.  Delivery of the report of the SCI Special Committee and any underlying documents to the Committee shall neither create nor wave any privilege that any person might have with respect to such report or underlying documents. Neither the SCI Special Committee nor any Debtor may challenge the attachment or perfection of the liens and security interests in favor of the Mortgage Lenders or Collateral Agent in respect of the Collateral.

n.  In the event that any or all of the provisions of this stipulation are hereafter modified, amended or vacated by a subsequent order of this or any other court, no such modification, amendment or vacation shall affect the validity, enforceability, or priority of any lien, claim, right or obligation authorized or created hereby (including, without limitation, the adequate protection liens.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

1    **WHEREFORE**, SCI, PropCo, the Mortgage Lenders, and DB, by their

2    signatures below, hereby so stipulate by and between themselves as set forth herein on the date

3    set forth below but effective as of the Petition Date, and respectfully request that the Court enter

4    its order approving and effectuating their mutual agreements set forth herein on a final basis.

5

6    September 4, 2009                    STATION CASINOS, INC.,

7                                         a Nevada Corporation,
                                         as Debtor and Debtor In Possession

8

9                                        By:  _____
                                              Name: Thomas M. Friel

10                                            Title: Executive Vice President

11                                       FCP PROPCO, LLC,

12                                       a Delaware limited liability company
                                         as Debtor and Debtor In Possession

13

14                                       By:  _____
                                              Name: Richard J. Haskins

15                                            Title: Manager

16

17                                       GERMAN AMERICAN CAPITAL
                                         CORPORATION

18

19                                       By:  _____

20                                            Name
                                              Title

21                                       By:  _____

22                                            Name
                                              Title

23

24                                       JP MORGAN CHASE BANK, N.A.

25

26                                       By:  _____

27                                            Name
                                              Title

28

Signature Page to Stipulated Order For FCP PropCo Cash Collateral

1    **WHEREFORE**, SCI, PropCo, the Mortgage Lenders, and DB, by their

2    signatures below, hereby so stipulate by and between themselves as set forth herein on the date

3    set forth below but effective as of the Petition Date, and respectfully request that the Court enter

4    its order approving and effectuating their mutual agreements set forth herein on a final basis.

5

6    September 4, 2009                    STATION CASINOS, INC.,
                                          a Nevada Corporation,
7                                         as Debtor and Debtor In Possession

8

9                                         By: _____
                                          Name: Thomas M. Friel
10                                        Title:   Executive Vice President

11                                        FCP PROPCO, LLC,
                                          a Delaware limited liability company
12                                        as Debtor and Debtor In Possession

13

14                                        By: _____
                                          Name: Richard J. Haskins
15                                        Title:   Manager

16                                        GERMAN AMERICAN CAPITAL
                                          CORPORATION
17

18

19                                        By: _____
                                          Name   Robert W. Pettinato
20                                        Title      Managing Director

21                                        By: _____
                                          Name  Kelly A. Carter
22                                        Title  Vice President

23

24                                        JP MORGAN CHASE BANK, N.A.

25

26                                        By: _____
                                          Name
27                                        Title

28

#4849-2723-9172v6                                    Signature Page to Stipulated Order For FCP PropCo Cash Collateral

**WHEREFORE**, SCI, PropCo, the Mortgage Lenders, and DB, by their

signatures below, hereby so stipulate by and between themselves as set forth herein on the date

set forth below but effective as of the Petition Date, and respectfully request that the Court enter

its order approving and effectuating their mutual agreements set forth herein on a final basis.


September 4, 2009                              STATION CASINOS, INC.,
                                              a Nevada Corporation,
                                              as Debtor and Debtor In Possession


                                              By:    _____
                                                     Name:  Thomas M. Friel
                                                     Title:   Executive Vice President

                                              FCP PROPCO, LLC,
                                              a Delaware limited liability company
                                              as Debtor and Debtor In Possession


                                              By:    _____
                                                     Name:  Richard J. Haskins
                                                     Title:   Manager

                                              GERMAN AMERICAN CAPITAL
                                              CORPORATION


                                              By:    _____
                                                     Name
                                                     Title


                                              By:    _____
                                                     Name
                                                     Title


                                              JP MORGAN CHASE BANK, N.A.

                                              By:    _____
                                                     Name  SCOTT B. DAUER
                                                     Title  EXECUTIVE DIRECTOR

1
2      Deutsche Bank AG ("DB")
3
4      By: _____
       Name      Steven Kessler
5      Title     Director
6      By: _____
       Name
7      Title     Travis McCullough
                  Director
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Dated: September 4, 2009          Respectfully submitted,

2

3                                      By:        /s/
                                          Paul S. Aronzon, CA State Bar #88781
4                                         Thomas R. Kreller, CA State Bar #161922
                                          MILBANK, TWEED, HADLEY & McCLOY LLP
5                                         601 South Figueroa Street, 30th Floor
                                          Los Angeles, California 90017
6                                         Reorganization Counsel for
                                          Debtors and Debtors in Possession
7
                                          Bruce T. Beesley, #1164
8                                         Laury Macauley, #11413
                                          LEWIS AND ROCA LLP
9                                         50 W. Liberty Street, Ste. 410
                                          Reno, NV  89501
10                                        bbeesley@lrlaw.com; lmacauley@lrlaw.com
                                          Local Reorganization Counsel
11                                        For Debtors and Debtors in Possession

12
     APPROVED AS TO FORM:
13

14   By:    /s/ Jeffrey E. Bjork
            Shalom L. Kohn
15          Jeffrey E. Bjork
            SIDLEY AUSTIN LLP
16          1 South Dearborn
            Chicago, Illinois  60603
17          skohn@sidley.com; jbjork@sidley.com

18
            Attorneys for the Deutsche Bank entities
19

20   APPROVED AS TO FORM:

21

22   By:    /s/Bonnie Steingart
            Bonnie Steingart
23          Marissa Soto
            Fried, Frank, Harris, Shriver & Jacobson LLP
24          One New York Plaza
            New York, New York  10004
25          Bonnie.Steingart@friedfrank.com

26
            Proposed Attorneys for the Unsecured Creditors' Committee
27

28

Signature Page to Stipulated Order For FCP PropCo Cash Collateral

#4849-2723-9172v7

**EXHIBIT A**

**EXHIBIT A**

Station Casinos, Inc. - 13-Week Cash Flow - Propose
($ in thousands)

Draft - For Discussion Purposes Only

| WEEK ENDING | Wk.1 7/31 | Wk.2 8/7 | Wk.3 8/14 | Wk.4 8/21 | Wk.5 8/28 | Wk.6 9/4 | Wk.7 9/11 | Wk.8 9/18 | Wk.9 9/25 | Wk.10 10/2 | Wk.11 10/9 | Wk.12 10/16 | Wk.13 10/23 | Total 13-Wks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPERATING CASH FLOW | | | | | | | | | | | | | | |
| 1.0 Operating Cash Receps | | | | | | | | | | | | | | |
| 1.1 Palace Station | | | | | | | | | | | | | | |
| 1.2 Boulder Station | | | | | | | | | | | | | | |
| 1.3 Texas Station | | | | | | | | | | | | | | |
| 1.4 Sunset Station | | | | | | | | | | | | | | |
| 1.5 Santa Fe Station | | | | | | | | | | | | | | |
| 1.6 Red Rock | | | | | | | | | | | | | | |
| 1.7 Fiesta Rancho | | | | | | | | | | | | | | |
| 1.8 Fiesta Henderson | | | | | | | | | | | | | | |
| 1.9 Other | | | | | | | | | | | | | | |
| 1.10 Total Property Deposits | | | | | | | | | | | | | | |
| 1.11 Change in Cage Cash | | | | | | | | | | | | | | |
| 1.12 Thunder Valley Management Fees | | | | | | | | | | | | | | |
| 1.13 Green Valley Ranch Management Fees | | | | | | | | | | | | | | |
| 1.14 Aliante Management Fees | | | | | | | | | | | | | | |
| 1.15 Other Management Fees | | | | | | | | | | | | | | |
| 1.16 Transfers from Unrestricted Sales | | | | | | | | | | | | | | |
| 1.17 Master Lease Rent | 64,347 | | 21,449 | | | | 21,449 | | | | | 21,449 | | 64,347 |
| 1.18 Total Operating Cash Receipts | 64,347 | | 21,449 | | | | 21,449 | | | | | 21,449 | | 64,347 |
| | | | | | | | | | | | | | | |
| 2.0 Operating Disbursements | | | | | | | | | | | | | | |
| 2.1 Payroll and Taxes/Benefits | | | | | | | | | | | | | | |
| 2.2 Advertising/Marketing/Entertainment | | | | | | | | | | | | | | |
| 2.3 Gaming Fees and Taxes | | | | | | | | | | | | | | |
| 2.4 Maintenance/Utilities | | | | | | | | | | | | | | |
| 2.5 Food and Beverage | | | | | | | | | | | | | | |
| 2.6 Other (Property Taxes and Insurance)* | 3,361 | | | | 233 | | | | 233 | | | 233 | | 4,120 |
| 2.7 Corporate Expenses/Development/Other | | | | | | | | | | | | | | |
| 2.9 Subtotal Operating Disbursements | 3,361 | | | | 233 | | | | 233 | | | 233 | | 4,120 |
| SUBTOTAL OPERATING CASH FLOW | 3,361 | | 21,449 | | 255 | | 21,449 | | 255 | | | 21,449 | 255 | 60,227 |
| | | | | | | | | | | | | | | |
| 3.0 Non-Operating Disbursements | | | | | | | | | | | | | | |
| 3.1 Debt Service/Payments | (3,361) | | (8,575) | | (255) | | (8,575) | | (255) | | | (8,295) | (255) | |
| 3.2 CMBS Real Est Payment | | | | | | | | | | | | | | |
| 3.3 Land Loan (Interest, Insurance, Taxes) | | | | | | | | | | | | | | |
| 3.4 Boulder Land Lease | (223) | | | | (223) | | | | (223) | | | (223) | | (902) |
| 3.5 Interest Payments | | | (8,575) | | | | (8,575) | | | | | (8,299) | | (25,450) |
| 3.6 Capital Expenditures | | | | | | | | | | | | | | |
| 3.7 Native American - Grtana | | | | | | | | | | | | | | |
| 3.8 Native American - Gun Lake | | | | | | | | | | | | | | |
| 3.9 Native American - Other | | | | | | | | | | | | | | |
| 3.10 Rancho Road Contributions | | | | | | | | | | | | | | |
| 3.11 GVR Contributions | | | | | | | | | | | | | | |
| 3.12 Aliante Contribution | | | | | | | | | | | | | | |
| 3.13 CMBS Capital Reserve | (1,200) | | | | | | (1,200) | | | | (1,200) | | | (3,600) |
| 3.14 Irrelevance Fee | | | | | | | | | | | | | | |
| 3.15 Deal Professional Fee | | | | | | | | | | | | | | |
| 3.16 Cash Management Fees | | | | | | | | | | | | | | |
| 3.17 Required Deposits | | | | | | | | | | | | | | |
| 3.18 Other (Independent Director Fee) | (22) | | | | (22) | | | | (22) | | | (22) | | (66) |
| 3.19 Total Non-Operating Disbursements | (1,445) | | (8,575) | | (245) | | (1,200) | | (245) | | (1,200) | | (235) | (30,018) |
| | | | | | | | | | | | | | | |
| 4.0 NET CASH FLOW | (4,806) | | 12,874 | | (490) | | 12,874 | | (490) | | (1,200) | 13,150 | (470) | 30,239 |
| | | | | | | | | | | | | | | |
| Beginning Period Cash | 42,525 | 37,719 | 37,719 | 50,593 | 50,593 | 50,095 | 48,895 | 48,895 | 61,768 | 61,768 | 61,270 | 60,070 | 60,070 | 42,525 |
| Change in True | | | | | | | | | | | | | | |
| Ending Period Cash | 37,719 | 37,719 | 50,593 | 50,593 | 50,095 | 48,895 | 61,768 | 61,768 | 61,270 | 60,070 | 60,070 | 73,220 | 72,744 | 72,744 |

* Paid from accumulated impound account proceeds.

07/31/2009 4:53 PM