Electronically Filed September 21, 2009

BRAD ERIC SCHELER (SBN BS-0397)
BONNIE STEINGART (SBN BS-8004)
**FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile:  (212) 859-4000
Email: brad.eric.scheler@friedfrank.com
         bonnie.steingart@friedfrank.com
*[Proposed]* Counsel for the Official Committee of Unsecured Creditors

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ANNE M. LORADITCH, ESQ.
Nevada Bar No. 8164
**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Pkwy, Ste 400 N
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile:   (702) 792-9002
Email:  axelrodb@gtlaw.com
         loraditcha@gtlaw.com
*[Proposed]* Nevada Counsel for the Official Committee of Unsecured Creditors

Greenberg Traurig, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| In re: | Chapter 11 |
|---|---|
| STATION CASINOS, INC. | Case Nos. BK-09-52470-GWZ through BK-09-52487-GWZ |
| ☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects Northern NV Acquisitions, LLC<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC | Jointly Administered under BK 09-52477<br><br>**APPLICATION FOR ORDER PURSUANT TO SECTIONS 328(a) AND 1103(a) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2014 AND LOCAL RULE 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC, AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS EFFECTIVE AS OF AUGUST 13, 2009**<br><br><u>OST REQUEST PENDING</u><br>Hearing Date:   September 30, 2009<br>Hearing Time:   10:00 a.m.<br>Place:              300 Booth Street<br>                      Reno, NV 89509 |

LV 418,924,058v1                                1

**TO THE HONORABLE GREGG W. ZIVE AND ALL PARTIES IN INTEREST:**

The Official Committee of Unsecured Creditors of Station Casinos, Inc. (the "Creditors' Committee") of Station Casinos, Inc., *et al.* (collectively, the "Debtors"),[1] hereby files this application (the "Application") for the entry of an order, pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Nevada (the "Local Rules") authorizing and approving the Creditors' Committee's retention and employment of Moelis & Company LLC ("Moelis") as financial advisor and investment banker, effective as of August 13, 2009. The facts and circumstances supporting this Application are set forth in the Verified Statement of Robert Flachs in Support of the Application, sworn to September 21, 2009 (the "Flachs Verified Statement"), filed concurrently herewith. In further support of this Application, the Creditors' Committee respectfully represents as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**INTRODUCTION AND BACKGROUND**

2. On July 28, 2009 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their businesses and manage their properties as debtors in possession, pursuant to Bankruptcy Code Sections 1107(a) and 1108. No trustee or examiner has been appointed in the above-captioned bankruptcy cases (the "Chapter 11 Cases").

///

///

---

[1] In addition to Station Casinos, Inc., the Debtors in these cases are as follows: Northern NV Acquisitions, LLC, Reno Land Holdings, LLC, River Central, LLC, Tropicana Station, LLC, FCP Holding, Inc., FCP Voteco, LLC, Fertitta Partners LLC, FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP MezzCo Borrower I, LLC, and FCP PropCo, LLC.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

3. On August 13, 2009, the Office of the United States Trustee for the District of Nevada (the "UST") appointed the following entities to Creditors' Committee: (i) Fidelity Management & Research Company ("Fidelity"), (ii) Law Debenture Trust Company of New York, (iii) Serengeti Asset Management, LP, and (iv) Western Asset Management Company.[2] On August 24, 2009, Fidelity was elected chair of the Creditors' Committee. On August 25, 2009, the UST appointed Wilmington Trust Company to the Creditors' Committee.

4. On August 13, 2009, the Creditors' Committee determined to retain, subject to the approval of this Court, Moelis to represent the Creditors' Committee as financial advisor and investment banker during the pendency of these Chapter 11 Cases. The retention of Moelis is requested to be effective as of August 13, 2009, as that is the date the Creditors' Committee first requested Moelis to render financial advisory services on behalf of the Creditors' Committee.

5. The Creditors' Committee submits that it is necessary to employ Moelis as financial advisor and investment banker in order to ensure that the interests of all of the Debtors' unsecured creditors are adequately represented in an efficient and effective manner. The Creditors' Committee believes that, in light of Moelis' involvement in corporate restructuring matters across multiple jurisdictions, Moelis is best suited to provide financial advisory services to the Creditors' Committee, and the Creditors' Committee will rely on Moelis in that regard. Moelis will work together with the Creditors' Committee's other professionals, including Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank") as primary bankruptcy counsel, Greenberg Traurig, LLP ("Greenberg Traurig") as local bankruptcy counsel and Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel") as special litigation counsel. Greenberg Traurig and Quinn Emanuel will assist Fried Frank where necessary in each phase of the work Fried Frank does on behalf of the Creditors' Committee. The Creditors' Committee has been assured that the services of Moelis will not be unnecessarily duplicative of the legal services to be provided by Fried Frank, Greenberg Traurig and Quinn Emanuel.

///

---

[2] On August 13, 2009, the UST also appointed Oaktree Capital Management, L.P. ("Oaktree") to the Creditors' Committee. However, Oaktree has since resigned from the Creditors' Committee.

**RELIEF REQUESTED**

6. By this Application, the Committee respectfully requests entry of an order authorizing the Creditors' Committee's retention of Moelis as its financial advisor and investment banker in these Chapter 11 Cases, pursuant to section 328(a) of the Bankruptcy Code, effective as of August 13, 2009.

7. An engagement letter between the Creditors' Committee and Moelis, dated as of August 13, 2009 (the "Engagement Letter"), is attached to the Flachs Verified Statement as Exhibit B thereto and is incorporated herein by reference. The Engagement Letter describes (a) the various services that Moelis anticipates performing for the Creditors' Committee in these Chapter 11 Cases (as described more fully herein); and (b) the terms and conditions of Moelis' proposed engagement by the Creditors' Committee.

8. The Creditors' Committee selected Moelis because of its excellent qualifications, knowledge of the Debtors and their assets, and its reasonable fee structure.

**MOELIS' QUALIFICATIONS**

9. The Creditors' Committee respectfully submits that the services of Moelis are necessary and appropriate to enable it to continue to evaluate the complex financial and economic issues that have and will continue to arise during the pendency of these Chapter 11 Cases and to assist the Creditors' Committee in fulfilling its fiduciary and statutory duties to the Debtors' unsecured creditors. The Creditors' Committee selected Moelis because of its professionals' expertise in providing financial advisory and investment banking services to debtors and creditors in restructuring and distressed situations.

10. Moelis is an investment banking firm, a registered broker-dealer with the United States Securities and Exchange Commission, and a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Holdings LLC, a privately owned company. Moelis' chief executive officer is Kenneth D. Moelis and the Recapitalization & Restructuring Group is co-headed by Thane W. Carlston and William Q. Derrough. Moelis currently has approximately 240 employees.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

11.     Moelis provides a broad range of corporate advisory services to its clients including, without limitation, financial advice and assistance regarding: (i) general corporate financial matters, (ii) mergers, acquisitions and divestitures, (iii) corporate restructurings, (iv) special committee assignments and (v) capital raising. Professionals at Moelis have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in Chapter 11 proceedings, specifically with respect to the gaming industry.

12.     Since Moelis' registration as a broker-dealer in 2007, it has provided advisory services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., Dubai World, Cannery Casino Resorts, LLC, Entravision Communications Corporation, Invitrogen Corporation, NBTY, Inc., WCI Steel, Inc., Westwood One, Inc. and Yahoo! Inc. In addition, Moelis' professionals provided restructuring advisory services in a number of Chapter 11 cases including, but not limited to: Adelphia Business Solutions, Inc., Atlas Air Worldwide Holdings Inc., Budget Group, Delphi Corporation, Exide Technologies, Federal-Mogul Corporation, ION Media Networks, Loral Space and Communications, TOUSA Inc., Bally Total Fitness, Aleris, Idearc, Tribune, Source Interlink, JG Wentworth, and Dayton Superior.[3]

13.     In light of the size and complexity of these Chapter 11 Cases, the Creditors' Committee requires the services of a seasoned and experienced financial advisor and investment banker to, among other things, assist the Creditors' Committee in (i) understanding the Debtors' businesses and operations, (ii) executing its fiduciary duties and (iii) maximizing the value of the Debtors' estates. The Creditors' Committee submits that the employment and retention of Moelis is in the best interests of the Creditors' Committee and its constituents.

## SERVICES TO BE PROVIDED BY MOELIS

14.     Moelis will render the following financial advisory and investment banking services to the Committee pursuant to the Engagement Letter (collectively, the "Financial Advisory and Investment Banking Services"):

///

---

[3] Includes assignments of Moelis professionals while employed at prior firms.

*LV 418,924,058v1*                                                    5

(a) become familiar with and analyze the business, business plan operations, assets, financial condition and prospects of the Debtors, to the extent Moelis deems appropriate;

(b) assist the Committee in reviewing reports or filings as required by the Bankruptcy Court or the Office of the United States Trustee, including, but not limited to, schedules of assets and liabilities, statements of financial affairs and monthly operating reports;

(c) advise the Committee on the current state of the restructuring and capital markets;

(d) review and analyze reporting regarding cash collateral and any debtor-in-possession financing arrangements and budgets;

(e) provide valuation analyses of the Company if requested, the form of which will be agreed upon by Moelis and the Committee, and provide expert testimony relating to any such valuation;

(f) assist and advise the Committee in examining and analyzing any potential or proposed strategy for a Restructuring Transaction, a liquidation, or otherwise, including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring Transaction;

(g) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring Transaction, including the value of the securities, if any, that may be issued under any plan of reorganization;

(h) represent the Committee in negotiations with the Debtors and third parties with respect to any of the foregoing; and

(i) render such other investment banking services as may from time to time be agreed upon by the Committee and Moelis, including, but not limited to, providing expert testimony, and investment banking support related to cash collateral usage or other Chapter 11 financing and exit financing, M&A and asset sale processes.

15. In light of Moelis' substantial expertise in all of these areas, the Creditors' Committee believes Moelis is well-qualified to perform these services and assist the Creditors' Creditors' Committee in these Chapter 11 Cases.

///

///

///

LV 418,924,058v1

6

## NO ADVERSE INTEREST, DISINTERESTEDNESS AND DISCLOSURE OF CONNECTIONS

16. Moelis has informed the Creditors' Committee that, except with respect to its proposed representation of the Creditors' Committee and as may be set forth herein and in the Flachs Verified Statement, Moelis:

(a) is not a creditor or insider of the Debtors;

(b) does not hold or represent an interest adverse to the Creditors' Committee or the Debtors;

(c) is a "disinterested person" as defined by section 101(14) and used in section 328(c) of the Bankruptcy Code;

(d) does not represent any other creditor, party in interest, or entity in these Chapter 11 Cases; and

(e) has no connection with the Creditors' Committee, the Debtors, their creditors, or other parties in interest in these Chapter 11 Cases, except as set forth in the Flachs Verified Statement.

## PAYMENT OF FEES AND EXPENSES AND OTHER TERMS OF THE ENGAGEMENT

17. The Creditors' Committee seeks approval of the fee structure described herein (the "Fee Structure") pursuant to Section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a Creditors' Committee appointed under Section 1102 of the Bankruptcy Code "with the court's approval, may employ or authorize the employment of a professional person under section 327 or section 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingency fee basis." 11 U.S.C. § 328(a).

18. The terms of Moelis' proposed compensation are fully set forth in the Engagement Letter, and the Creditors' Committee respectfully refers this Court to the Engagement Letter for a full recitation of its terms. In summary, pursuant to the terms and conditions of the Engagement Letter and subject to this Court's approval, Moelis' compensation will be: (i) a monthly fee of $200,000 (the "Monthly Fee"); and (ii) upon consummation of a Restructuring (as defined in the Engagement Letter), a restructuring fee (the "Restructuring Fee") in the amount of $3,000,000.

Greenberg Traurig, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

LV 418,924,058v1

7

1  Whether or not a Restructuring has taken place or will take place, Moelis shall earn and be paid the
2  Monthly Fee every month during the term of this engagement.

3      19.    The Fee Structure appropriately reflects the nature of the services to be provided by
4  Moelis and is consistent with the fee structures typically utilized by leading investment banks.
5  Moelis intends to apply for compensation of professional services rendered and reimbursement of
6  expenses incurred in connection with these cases, subject to Court approval and in compliance with
7  the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures
8  and orders of the Court, and consistent with the proposed compensation set forth in the Engagement
9  Letter.

10      20.    At this time, it is not possible to estimate the number of months that will be required
11  to perform the services contemplated by the Engagement Letter or the aggregate amount of the fees
12  payable pursuant to the Engagement Letter. Accordingly, it is not possible to estimate the total
13  compensation to be paid to Moelis under the Engagement Letter.

14      21.    In addition to any fees payable to Moelis hereunder, and regardless of whether or not
15  any transaction contemplated by the Engagement Letter is proposed or consummated, Moelis will
16  be entitled to reimbursement on a monthly basis for travel costs and other reasonable out-of-pocket
17  expenses, including all reasonable fees, disbursements and other charges of counsel retained by
18  Moelis, incurred in connection with, or arising out of Moelis' activities under or contemplated by
19  Moelis' engagement (the "Expenses").

20      22.    The fees and expense reimbursement provisions described above are consistent with
21  normal and customary billing practices for cases of this size and complexity which require the level
22  and scope of services outlined. Moelis and the Creditors' Committee also believe that the foregoing
23  compensation arrangements are both reasonable and market-based. Recently, similar fee structures
24  have been approved for Moelis in other large and complex cases. See In re Tribune Co., Case No.
25  08-13141 (KJC) (Bankr. D. Del. March 13, 2009); In re Pilgrim's Pride Corp., Case No. 08-45664-
26  DML-11 (Bankr. N.D. Tex. Feb. 6, 2009); In re Greektown Holdings, LLC, Case No. 08-53104
27  (WS) (Bankr. W.D. Mich. Oct. 15, 2008); In re TOUSA, Inc., Case No. 08-10928 (JKO) (Bankr.
28  S.D. Fla. Aug. 27, 2008).

LV 418,924,058v1        8

Greenberg Traurig, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

23. As indicated in the Flachs Verified Statement, Moelis' standard practice is to charge flat monthly fees plus a "transaction fee" that is payable upon consummation of a restructuring or other defined transaction. This is also the standard fee arrangement that is followed by other investment banking firms who provide restructuring services and is consistent with the fee arrangements that have been authorized in other chapter 11 bankruptcy cases in which Moelis and other leading investment banks have been retained.

24. Moelis will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases. Moelis and its professionals shall be excused from any requirement to maintain time records, as set forth in the Bankruptcy Code, Bankruptcy Rules and Local Rules or such orders of this Court or guidelines; provided, however, that, at the Court's request, Moelis shall instead present to the Court records (in summary format) that contain reasonably detailed descriptions of those services provided to the Creditors' Committee.

25. As set forth in the Flachs Verified Statement, Moelis has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

**INDEMNIFICATION**

26. The Engagement Letter provides that the Debtors will indemnify, hold harmless, exculpate and pay the out-of-pocket expenses of Moelis and its affiliates and their current or former directors, officers, partners, members, agents and employees and their respective successors and assigns (collectively, the "Indemnified Persons") under certain circumstances, as described more specifically in the provisions (the "Indemnification Provisions") that are attached as Annex B to and made a part of the Engagement Letter.

27. The Creditors' Committee and Moelis believe that the Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 bankruptcy proceedings. Other bankruptcy courts have approved and implemented similar indemnification arrangements for Moelis and other major investment banks in other large Chapter 11 cases. See, e.g., In re Tribune Co., Case No. 08-13141 (KJC) (Bankr. D.

Del. March 13, 2009); In re Pilgrim's Pride Corp., Case No. 08-45664-DML-11 (Bankr. N.D. Tex. Feb. 6, 2009); In re New Century TRS Holdings, Inc., Case No 07-10416 (Bankr. D. Del. April 26, 2007); In re Foamex Int'l, Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000).

28.    Investment bankers seek indemnification for a variety of reasons. If Moelis must respond to a subpoena and produce documents for discovery or a professional for a deposition, Moelis' counsel fees should be reimbursed. Moelis intends to rely (and is entitled to rely) on the accuracy and completeness of the financial information and other information to be provided by the Debtors and the Creditors' Committee. Moelis may also be involved in negotiations and transactions in which the Debtors and/or the Creditors' Committee direct that certain actions be taken. It is appropriate that Moelis be protected from liabilities that are attributable to acts, omissions or misstatements by other parties. Moelis therefore seeks indemnification for liabilities and losses that arise out of the inaccuracy of information provided by the Debtors and/or the Creditors' Committee, that otherwise are attributable to actions or omissions by the Debtors and the Creditors' Committee, or that do not involve an Indemnified Person's gross negligence or willful misconduct.

29.    Second, the performance of Moelis' responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. For example, Moelis may be called upon to provide advice as to the value of various assets or the values of bids submitted for the purchase of certain of the Debtors' assets. Moelis seeks indemnification and exculpation for such matters (excluding cases in which Moelis has acted with gross negligence or willful misconduct) in order to ensure that Moelis will be free to exercise its best professional judgment independently, and without fear of litigation from persons whose financial interests might be adversely affected by those judgments.

30.    The proposed indemnification provisions are also consistent with the standards that normally govern trustees and committees in chapter 11 bankruptcy cases. See In re Chicago Pacific Corp., 773 F.2d 909, 915 (7th Cir. 1985) (bankruptcy trustee can be personally liable only "for a

LV 418,924,058v1                                10

willful and deliberate violation of his fiduciary duties"); In re Hutchinson, 5 F.3d 750 (4th Cir. 1993) (collecting cases); 6 Collier on Bankruptcy §§ 704.04[1], 721.05[2][b] (15th ed. Rev. 2007). Members of creditors' committees, and their professionals, also are protected from liability in the absence of gross negligence. See In re PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000). In fact, in PWS Holding the Court of Appeals for the Third Circuit held that professionals similarly should be protected from liability in the absence of gross negligence. See 228 F.3d at 246.

31. The proposed indemnification provisions are also consistent with the rules that courts have consistently applied in "business judgment" cases. In those cases, courts consistently have found that a "negligence" standard is not useful in examining business decisions, because "inescapably there can be no available objective standard by which the correctness of every corporate decision may be measured, by the courts or otherwise." Auerbach v. Bennett, 47 N.Y.2d 619, 629-31, 419 N.Y.S.2d 920, 926-27, 393 N.E.2d 994, 1000-01 (1979). Instead, matters involving business judgment and advice should not be subject to review for anything short of "gross negligence." See, e.g., Cede & Co., 634 A.2d 345, 364 n 31, 366-7 (confirming that under Delaware law liability for breach of a director's duty of care should be predicated only on gross negligence); Smith v. Van Gorkom, 488 A.2d 858 (Del. 1982) (same). This is true not only in Delaware[4] but in other jurisdictions as well.[5] Finally, in the event an Indemnified Person acts with gross negligence or willful misconduct, the estate will be entitled to recover amounts paid pursuant to the Indemnification Provisions.

///

---

[4] See Sinclair Oil Corp. v. Levien, Del.Supr., 280 A.2d 717, 722 (1971), rev'g, Del.Ch., 261 A.2d 911 (1969) ("fraud or gross overreaching"); Getty Oil Co. v. Skelly Oil Co., Del.Supr., 267 A.2d 883, 887 (1970), rev'g, Del.Ch., 255 A.2d 717 (1969) ("gross and palpable overreaching"); Warshaw v. Calhoun, Del.Supr., 221 A.2d 487, 492-93 (1966) ("bad faith ... or a gross abuse of discretion"); Moskowitz v. Bantrell, Del.Supr., 190 A.2d 749, 750 (1963) ("fraud or gross abuse of discretion"); Penn Mart Realty Co. v. Becker, Del.Ch., 298 A.2d 349, 351 (1972) ("directors may breach their fiduciary duty ... by being grossly negligent"); Kors v. Carey, Del.Ch., 158 A.2d 136, 140 (1960) ("fraud, misconduct or abuse of discretion"); Allaun v. Consolidated Oil Co., Del.Ch., 147 A. 257, 261 (1929) ("reckless indifference to or a deliberate disregard of the stockholders"); Smith v. Van Gorkom, 488 A.2d 858, 873 (Del.1985) (re-affirming Aronson).

[5] See, e.g., Litton Indus., Inc. v. Hoch, 996 F.2d 1225 (9th Cir. 1993); Campbell v. Potash Corp. of Saskatchewan, Inc., 238 F.3d 792, 800 (6th Cir. 2001); In re Nuveen Fund Litig., 1996 WL 328001 at*3 (N.D. Ill. June 11, 1996); Gall v. Exxon Corp., 418 F. Supp. 508, 516 (S.D.N.Y. 1976) (grossly unsound); Whittaker Corp. v. Edgar, 535 F. Supp. 933, 950 (N.D. Ill. 1982) (gross abuse of discretion).

32.     For these reasons, indemnification agreements are common market practice, both inside and outside of bankruptcy cases, and it is the standard practice for firms like Moelis to obtain indemnities of the kind outlined in the Engagement Letter.

33.     For the foregoing reasons, the Creditors' Committee submits that the proposed indemnification provisions are appropriate and should be approved.

## PREPETITION PAYMENTS

34.     Prior to the Petition Date, Moelis received payment for fees and expenses totaling $1,309,033.64 from Station Casinos, Inc. for professional services rendered to the ad hoc committee of unsecured creditors prior to the filing of the petitions.

## NOTICE

35.     Notice of this Application has been provided to the Debtors, the UST and all parties who have filed a notice of appearance and request for service of pleadings in these Chapter 11 Cases. The Creditors' Committee respectfully submits that such notice is appropriate under the circumstances and that no other or further notice is necessary or required.

## NO PREVIOUS REQUEST

36.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, for all of the foregoing reasons, the Creditors' Committee respectfully requests that this Court enter an order (i) authorizing the Creditors' Committee to employ and retain Moelis as financial advisor and investment banker for the Creditors' Committee on the terms and conditions set forth herein, in the Flachs Verified Statement, and in the Engagement Letter, effective as of the Petition Date; and (ii) granting such other and further relief as may be just and proper.

DATED this 21st day of September 2009.

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By     */s/ Nathan Van Duzer*
NATHAN VAN DUZER for
FIDELITY MANAGEMENT & RESEARCH COMPANY,
Creditors' Committee Chair

*LV 418,924,058v1*

12

1 | Respectfully submitted by:

2 | **GREENBERG TRAURIG, LLP**

3 | By   */s/ Anne M. Loraditch*
    BRETT A. AXELROD (SBN 5859)
4 | ANNE M. LORADITCH (SBN 8164)
    3773 Howard Hughes Parkway, Suite 400 North
5 | Las Vegas, Nevada 89169
6 | Telephone: (702) 792-3773

7 |             -and-

8 | **FRIED, FRANK, HARRIS,
    SHRIVER & JACOBSON LLP**
9 | BRAD ERIC SCHELER (SBN BS-0397)
    BONNIE STEINGART (SBN BS-8004)
10 | One New York Plaza
     New York, NY 10004
11 | Telephone: (212) 859-8000

12 | *[Proposed]* Counsel for the Official Committee of Unsecured Creditors

*LV 418,924,058v1*

13