1

2

3

4

5

**Entered on Docket**
**October 13, 2009**

_____
Hon. Gregg W. Zive
United States Bankruptcy Judge

6  Paul S. Aronzon (CA State Bar No. 88781)
7  Thomas R. Kreller (CA State Bar No. 161922)
   MILBANK, TWEED, HADLEY & McCLOY LLP
8  601 South Figueroa Street, 30th Floor
   Los Angeles, California 90017
   Telephone:     (213) 892-4000
9  Facsimile:     (213) 629-5063

10 Proposed Reorganization Counsel for
   Debtors and Debtors in Possession

11

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Proposed Local Reorganization Counsel for
Debtors and Debtors in Possession

12

13

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

14  In re:

15  STATION CASINOS, INC.

16  ☐ Affects this Debtor
17  ☐ Affects all Debtors
    ☐ Affects Reno Land Holdings, LLC
18  ☐ Affects River Central, LLC
    ☐ Affects Tropicana Station, LLC
19  ☐ Affects FCP Holding, Inc.
20  ☐ Affects FCP Voteco, LLC
    ☐ Affects Fertitta Partners LLC
21  ☒ Affects Station Casinos, Inc.
22  ☐ Affects FCP MezzCo Parent, LLC
    ☐ Affects FCP MezzCo Parent Sub, LLC
23  ☐ Affects FCP MezzCo Borrower VII, LLC
24  ☐ Affects FCP MezzCo Borrower VI, LLC
    ☐ Affects FCP MezzCo Borrower V, LLC
25  ☐ Affects FCP MezzCo Borrower IV, LLC
26  ☐ Affects FCP MezzCo Borrower III, LLC
    ☐ Affects FCP MezzCo Borrower II, LLC
27  ☐ Affects FCP MezzCo Borrower I, LLC
28  ☐ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-52477-GWZ
Jointly Administered

**FINAL ORDER PURSUANT TO 11 U.S.C.
§§ 105, 361, 362, 363, 364 AND 552 AND
FED. R. BANKR. P. RULE 4001(b), (c)
AND (d) (I) AUTHORIZING THE
DEBTORS TO (A) USE CASH
COLLATERAL; (B) OBTAIN
UNSECURED, SUBORDINATED POST-
PETITION FINANCING; (C) MAKE
LOANS TO NON-DEBTOR
SUBSIDIARIES, (II) GRANTING
ADEQUATE PROTECTION TO
PREPETITION SECURED PARTIES,
AND (III) GRANTING RELATED
RELIEF**

Hearing Date:     September 30, 2009
Hearing Time:     10:00 a.m.

1    The motion, dated July 28, 2009 (the "Motion"), of Station Casinos, Inc.[1] ("SCI")

2   and its affiliated debtors and debtors in possession other than the CMBS Debtors[2] (collectively,

3   the "Debtors", which term as used herein, for the avoidance of doubt, shall not include the

4   CMBS Debtors) in the above-captioned chapter 11 cases (the "Chapter 11 Cases") requesting

5   entry of an interim and final order pursuant to sections 105, 361, 362, 363, 364 and 552 of title

6   11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and

7   Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeks, among

8   other things:

9           (a) Cash Collateral Use.[3]  SCI may use cash (which is generated primarily from
            the operation by the non-debtor Guarantors[4] and Unrestricted Subsidiaries of
10          their casinos and related assets), including all of the Prepetition Secured
            Parties' cash collateral (as defined in section 363 of the Bankruptcy Code, the
11          "Cash Collateral") and all products and proceeds thereof, now owned or
            hereafter acquired, in which the Prepetition Agent, on behalf of the Prepetition
12          Secured Parties, purports to have a lien or security interest, to satisfy the
            Debtors' and certain of their subsidiaries' ongoing general corporate and
13          working capital expenses, to pay operating costs and other expenses, subject
            to the terms of this Final Order granting the relief sought in the Motion (the
14          "Final Order"), including, without limitation, the Budget (defined below) and
            to make adequate protection payments to the Prepetition Agent.
15          Notwithstanding anything herein to the contrary, neither the Debtors nor any
            other estate representatives (including, without limitation, the Committee or
16          any trustee) shall use or be permitted to use any cash or Cash Equivalents

17

18  _____

19  [1]   The Debtors in these chapter 11 cases are Northern NV Acquisitions, LLC, Reno Land Holdings, LLC,
        River Central, LLC, Tropicana Station, LLC, SCI, FCP Holding, Inc. ("FCP Holding"), FCP Voteco LLC
20      ("FCP Voteco") and Fertitta Partners LLC ("Fertitta Partners", and together with FCP Holding and FCP
        Voteco, the "Holding Companies"), FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP
21      MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP
        MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP
22      MezzCo Borrower I, LLC and FCP PropCo, LLC.  Collectively, the Holding Companies own one hundred
        percent (100%) of the stock of SCI.

23  [2]   The "CMBS Debtors" are, collectively, FCP MezzCo Parent, LLC, FCP MezzCo Parent Sub, LLC, FCP
        MezzCo Borrower VII, LLC, FCP MezzCo Borrower VI, LLC, FCP MezzCo Borrower V, LLC, FCP
24      MezzCo Borrower IV, LLC, FCP MezzCo Borrower III, LLC, FCP MezzCo Borrower II, LLC, FCP
        MezzCo Borrower I, LLC, and FCP PropCo, LLC.  The CMBS Debtors did not join in making the Motion,
25      are not seeking any relief under the Motion and are not awarded any relief under this Final Order.

26  [3]   In the event of any conflict or inconsistency between the summaries provided in the introductory
        paragraphs of this Final Order, on the one hand, and the specific terms, conditions and provisions set forth
27      elsewhere in this Final Order, the specific terms, conditions and provisions of this Final Order shall prevail.

    [4]   Capitalized terms used but not defined herein have the meanings given them in the Motion, the Prepetition
28      Loan Agreement or, if not defined therein, the Forbearance Agreement (each as defined below).

#4819-3933-7988v2                                      -2-

022537-0163-11403-Active.11741358.7

deposited or maintained from time to time in the letter of credit cash collateral account (the "L/C Cash Collateral Account"; and the amounts deposited or maintained therein the "L/C Cash Collateral") established pursuant to the L/C Cash Collateral Agreement, and the term "Cash Collateral" as used herein shall not include the L/C Cash Collateral.  For the avoidance of doubt, cash or Cash Equivalents pledged to Bank of America, N.A. by Vista (as defined below), a non-debtor, wholly owned subsidiary of SCI, to secure the Cash Management Obligations of SCI and its Subsidiaries (the "CMO Cash Collateral") shall not be "Cash Collateral" as such term is used herein and nothing herein shall be deemed to authorize the Debtors, their Subsidiaries or any estate representative (including, without limitation, the Committee or any trustee) to use the CMO Cash Collateral.

(b) Adequate Protection.  The Prepetition Agent (for the benefit of the Prepetition Secured Parties) shall receive all of the following adequate protection in respect of the use, sale or lease of the Prepetition Collateral, including the use of Cash Collateral, the Carve-Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code: (A) replacement liens on all assets (other than "Excluded Assets" as defined in the prepetition Security Agreement) of the Debtors, whether now owned or hereafter acquired, and the products and proceeds thereof, pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code; (B) a superpriority claim against the Debtors pursuant to section 507(b) of the Bankruptcy Code; provided that the adequate protection liens and the superpriority adequate protection claims described under the preceding clauses (A) and (B) shall be limited to the extent of the diminution in value of the Prepetition Collateral as provided in the Bankruptcy Code; provided, further, that there shall be no limitation on the liens or claims that the Prepetition Agent shall have against any assets of the non-Debtor Credit Parties whether such assets are now or hereafter acquired, including all intercompany loans or other cash transfers now or hereafter made or received by such non-Debtor Credit Parties; (C) a catch up payment of all unpaid prepetition interest and fees (including, without limitation, Letter of Credit fees and agency fees); (D) current cash payment of all postpetition interest and fees (including, without limitation, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued under the Prepetition Loan Agreement or such other applicable prepetition agreements; (E) current cash payment to the prepetition Term Lenders of scheduled principal amortization payments in the amounts and on the dates due in accordance with the Prepetition Loan Agreement (without giving effect to the acceleration of the Obligations); (F) payment of prepetition and postpetition reasonable fees and expenses of the Prepetition Agent's lead co-counsel, local counsel and financial advisor and a single legal counsel to each other Agent; and (G) confirmation of liens on all assets of Past Enterprises, Inc. ("Past Enterprises"), including, without limitation, all deposit accounts of

Past Enterprises, in favor of the Prepetition Agent to secure the Prepetition Obligations.

(c) <u>Automatic Stay</u>. Subject to paragraph 15 of this Final Order, the Automatic Stay is modified and vacated to the extent necessary to permit the Prepetition Agent to exercise its rights and remedies following the written notice of the occurrence of an Event of Default (defined below) under this Final Order.

(d) <u>Drop Down Loans and CV PropCo Contributions</u>.

(i) <u>Drop Down Loans</u>: The Drop Down Loans (defined below) are intercompany loans from SCI (as lender) to (x) Past Enterprises and (y) the non-debtor Unrestricted Subsidiaries and Joint Ventures named on <u>Schedule 2</u> attached hereto (Past Enterprises and the entities set forth on <u>Schedule 2</u> attached hereto are referred to herein as the "<u>Drop Down Borrowers</u>", which term, for the avoidance of doubt, shall not include any CMBS Debtors). All proceeds of Drop Down Loans received by Past Enterprises (as a Drop Down Borrower) shall be on-lent to the applicable non-debtor Guarantors set forth on <u>Schedule 1</u> attached hereto, in each case, subject to the Budget. Except for Drop Down Loans to Past Enterprises, SCI shall not make any Drop Down Loans directly to non-debtor Guarantors set forth on <u>Schedule 1</u>.

(ii) <u>CV PropCo Contributions</u>: The CV PropCo Contributions (defined below) are cash equity contributions made by SCI to CV HoldCo, LLC, a wholly owned, non-debtor Subsidiary of SCI ("<u>CV HoldCo</u>"). CV HoldCo, in turn, will immediately contribute the proceeds of such intercompany advances as a cash equity contribution to its wholly owned subsidiary, CV PropCo, LLC ("<u>CV PropCo</u>").

(iii) <u>Purpose</u>: The proceeds of the Drop Down Loans shall be used by the Drop Down Borrowers for working capital and general corporate purposes and, in each case, subject to the Budget (it being understood and agreed that Past Enterprises shall on-lend the proceeds of all Drop Down Loans that it receives to the applicable non-debtor Guarantors set forth on <u>Schedule 1</u> for their working capital and general corporate purposes and, in each case, subject to the Budget). The proceeds of the CV PropCo Contributions shall be used by CV PropCo to make regularly scheduled interest payments at the non-default rate on its Land Loan, and to pay its insurance premiums and property taxes, all of which payments shall be subject to the Budget (collectively, the "<u>CV PropCo Payments</u>").

(iv) <u>Use of Cash Collateral</u>: Each Drop Down Loan and each CV PropCo Contribution made by SCI shall constitute a use of Cash Collateral. As additional adequate protection for such use of Cash Collateral, each Drop Down Loan and each intercompany on-loan made by Past Enterprises to one or more of the non-debtor Guarantors set forth on Schedule 1 attached hereto shall be evidenced by promissory notes which shall be in form and substance satisfactory

to the Prepetition Agent and be pledged and promptly delivered (together with endorsements in blank) to the Prepetition Agent and encumbered by the Adequate Protection Liens.  The CV PropCo Contributions will be evidenced by the equity of CV HoldCo, LLC.  All equity of CV HoldCo has been validly pledged by SCI to, and such pledge duly perfected by, the Prepetition Agent pursuant to the Prepetition Loan Documents (defined below).

(e)    Nature and Amount of DIP Financing.  Pursuant to a credit agreement, substantially in the form of Exhibit B attached to this Final Order ("DIP Credit Agreement" and, collectively with any promissory notes executed by SCI in connection with the DIP Credit Agreement, the "DIP Documents"), Vista Holdings, LLC, a wholly owned "unrestricted" subsidiary of SCI ("Vista") shall from time to time, subject to the terms hereof, lend to SCI up to $150,000,000 in cash on an unsecured and subordinated administrative priority basis under section 364(b) of the Bankruptcy Code[5].  SCI shall exclusively use money borrowed from Vista, prior to the use of any other cash maintained at the Debtors' or in any of their other Subsidiaries' accounts, to fund all disbursements permitted under the Budget, other than disbursements made in respect of the amounts set forth in the following line items of the Budget, which specific items may be paid by Past Enterprises:

(i)    the "Operating Disbursements" line items in the Budget identified as: "Payroll and Taxes/Benefits," "Advertising/Marketing/Entertainment," "Gaming Fees and Taxes," "Maintenance/Utilities," "Food and Beverage," and "Other" and

(ii)    the "Non-Operating Disbursements" line items in the Budget identified as: "Capital Expenditures," "Required Deposits" and "Other (Shell Gas Deposit)" (the line items identified in clauses (i) and (ii) being the "Excluded Line Items").

Subject to the last sentence hereof, Vista shall fund all disbursements set forth in the Budget (other than disbursements identified in the Excluded Line Items) by making unsecured and subordinated loans to SCI under the DIP Credit Agreement.  SCI, in turn, shall use the proceeds of such loans to make Drop Down Loans, CV PropCo Contributions and such other disbursements as are permitted by the Budget.  Notwithstanding anything herein or in the DIP Documents to the contrary, Vista shall fund all disbursements permitted by the Budget (other than the Excluded Line Items, which may be funded by Past Enterprises) at any time that Vista's cash balance is equal to or greater than $111,500,000 and, at any time that Vista's cash balance is equal to or less than $111,500,000, then Vista may make the Postpetition Financing available to SCI on a discretionary basis to fund disbursements set forth in the Budget and any such amounts not so funded by loans from Vista may be funded by loans from Past Enterprises to SCI in accordance with the terms of this Final Order.  Promptly

---

[5]    The Court is advised that matters related to financing and cash collateral use on a final basis for the CMBS Debtors will be addressed in a separate motion.

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

following entry of this Final Order, SCI shall borrow from Vista $11,500,000 and shall use such $11,500,000 exclusively to (i) repay Past Enterprises for any post-petition lending to SCI for the purpose of funding any Budgeted use of cash other than in respect of Excluded Line Items, and (ii) the remaining balance of such $11,500,000 borrowing shall be used by SCI to fund expenditures permitted under the Budget that do not constitute Excluded Line Items.

The Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the hearing before the Court on July 30, 2009 (the "Interim Hearing"), and the interim order granting the relief sought in the Motion having been entered by this Court on such date (the "Interim Order") and the notice requirements set forth in the Interim Order having been complied with and the final hearing on the Motion (the "Final Hearing") having been held by the Court on September 30, 2009; and upon consideration of the supporting and supplemental supporting declarations of Thomas M. Friel, sworn to on July 24, 2009, August 21, 2009 and August 24, 2009, respectively; and all objections and responses thereto having been considered; and all objections to entry of this Final Order having been resolved, withdrawn or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing and the Final Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor:

### THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.    The Debtors duly commenced the Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 28, 2009 (the "Petition Date"), in the United States Bankruptcy Court for the District of Nevada (this "Court").

B.    The Debtors intend to operate their businesses and manage their affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C.    An official unsecured creditors committee was appointed in the Chapter 11 Cases on August 13, 2009 (the "Committee").

#4819-3933-7988v2

-6-

D.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for this case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.     Under the circumstances, the Court concludes that the notice given by the Debtors of the Motion, the Interim Hearing and the Final Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Rules 2002 and 4001(b), (c) and (d) of the Federal Rules of Bankruptcy Procedure and the local rules of the Court, and that no further notice of, or hearing on, the relief sought at the Final Hearing and the relief granted herein is necessary or required.

**Prepetition Loan Documents**

F.     SCI, as borrower, Deutsche Bank Trust Company Americas ("DBTCA"), as administrative agent (in such capacity and in its capacity as collateral agent under the Prepetition Loan Documents (defined below), together with its successors and assigns, the "Prepetition Agent") and a lender, the other lenders from time to time party thereto (together with DBTCA, the "Prepetition Lenders"), Deutsche Bank Securities, Inc. and J.P. Morgan Securities Inc., as joint lead arrangers and joint bookrunners, JPMorgan Chase Bank, N.A., as syndication agent, and Bank of Scotland plc, Bank of America, N.A. and Wachovia Bank, N.A., as co-documentation agents, are party to that certain Credit Agreement, dated as of November 7, 2007 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "Prepetition Loan Agreement"). The Prepetition Loan Agreement provided for (i) a $250,000,000 term loan facility (the "Term Loan Facility") and (ii) a $650,000,000 revolving credit facility (the "Revolving Credit Facility", and together with the Term Loan Facility, the "Prepetition Credit Facilities").

G.     Certain non-debtor wholly-owned subsidiaries of SCI listed on Schedule 1 attached hereto (the "Guarantors" and together with SCI, the "Loan Parties", and collectively with the Holding Companies, the "Credit Parties") have irrevocably guaranteed on a joint and

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

several basis all of the Prepetition Obligations (as defined below) owed by SCI pursuant to the Guaranty Agreement, dated as of November 7, 2007, made by the Guarantors in favor of the Prepetition Agent. The Guarantors are not liable for and have not guaranteed any other third party indebtedness issued by SCI.

H.    SCI and certain of the Guarantors[6] have granted liens and security interests to the Prepetition Agent (on behalf of the secured parties named in the Prepetition Security Documents, the "<u>Prepetition Secured Parties</u>") as security for repayment of the Prepetition Obligations in (A) substantially all of their respective personal property, now owned or hereafter acquired and all products and proceeds thereof, pursuant to that certain (i) Security Agreement, (ii) Pledge Agreement, and (iii) Intellectual Property Security Agreement, each dated as of November 7, 2007, and certain other Collateral Documents executed and delivered from time to time and (B) certain parcels of real property pursuant to certain Mortgages (collectively, the "<u>Loan Party Collateral</u>").

I.    In addition, each Holding Company has pledged to the Prepetition Agent (on behalf of the Prepetition Secured Parties) all of its equity interests in SCI and all products and proceeds thereof (together with the Loan Party Collateral, the "<u>Prepetition Collateral</u>") as security for the repayment of the Prepetition Obligations, pursuant to that certain Shareholder Pledge and Security Agreement, dated November 7, 2007 (and together with the Security Agreement, the Pledge Agreement, the Intellectual Property Security Agreement, the Mortgages, the other Collateral Documents and any other mortgages, collateral assignments, security agreement supplements, pledge agreement supplements, security agreements, pledge agreements, account control agreements or other agreements purporting to grant a lien on or a security interest in the Credit Parties' assets or properties as security for repayment of the Prepetition Obligations, delivered to the Prepetition Agent and/or the Prepetition Lenders from time to time

---

[6] Certain of the Guarantors, designated as "Immaterial Subsidiaries" on <u>Schedule 1</u> attached hereto, guaranteed the Prepetition Obligations but did not grant liens on their assets to secure the Prepetition Obligations. In addition, Guarantors designated as "Native American Subsidiaries" on <u>Schedule 1</u> granted liens on some but not all of their assets to secure the Prepetition Obligations, as provided in the Prepetition Security Documents.

#4819-3933-7988v2

-8-

1  under or in connection with the Prepetition Loan Agreement, the "<u>Prepetition Security</u>

2  <u>Documents</u>", and collectively with the Prepetition Loan Agreement, the Forbearance Agreement

3  (as defined below) and all other documents, agreements or instruments executed or delivered in

4  connection therewith, or relating thereto, the "<u>Prepetition Loan Documents</u>").

5  **Forbearance Agreement**

6          J.      On July 28, 2009, the Credit Parties, the Prepetition Agent and certain of

7  the Prepetition Lenders entered into a Second Forbearance Agreement; and Second Amendment

8  to the Credit Agreement (as it may hereafter be amended, supplemented or otherwise modified

9  from time in accordance with the terms thereof, the "<u>Forbearance Agreement</u>")[7] pursuant to

10  which the Prepetition Agent and the Prepetition Lenders have agreed (subject to the terms

11  thereof) to (i) forbear from exercising their default-related rights, remedies, powers and

12  privileges against the Guarantors, solely with respect to certain Specified Defaults (as defined in

13  the Forbearance Agreement), and (ii) amend certain provisions of the Prepetition Loan

14  Agreement.  The Forbearance Agreement remains in full force and effect, enforceable on a

15  postpetition basis by all parties thereto, pursuant to its terms.

16  **<u>Stipulations as to Prepetition Credit Facilities</u>**

17          K.      Subject in each case to paragraph 13 hereto, the Debtors (for themselves

18  and the other Credit Parties) admit, stipulate and agree that:

19                (i)    <u>Prepetition Loan Obligations</u>.  As of the Petition Date, SCI was indebted

20  and liable to the Prepetition Agent and the Prepetition Lenders (except with respect to claims,

21  counterclaims, offsets or defenses that the Credit Parties have specifically preserved against the

22  Non-Funding Lenders pursuant to, and as such term is defined in, the Forbearance Agreement

23  (the "<u>Reserved Claims</u>")) without objection, defense, counterclaim or offset of any kind under

24  the Prepetition Loan Documents, (a) in the aggregate principal amount of not less than

25  $246,250,000 with respect to the Term Loan Facility and $628,236,586.20 with respect to the

26  Revolving Loan Facility (which excludes the undrawn amount of issued Letters of Credit as of

27

28  [7]    Attached as Exhibit B to the Motion.

the Petition Date), plus accrued (both before and after the Petition Date) and unpaid interest thereon, and the undrawn aggregate amount of issued Letters of Credit as of the Petition Date of $10,184,203, and (b) for fees, expenses and all other Obligations and Secured Obligations (as defined in the Prepetition Loan Documents) whether incurred before or after the Petition Date, including any attorneys', accountants', consultants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Prepetition Loan Documents) (clauses (a) and (b), collectively, the "Prepetition Obligations"). As used herein, Prepetition Obligations shall also include Cash Management Obligations and amounts owed by the Credit Parties to counterparties under any Secured Hedge Agreement. As of the Petition Date, the value of the Prepetition Collateral exceeds the amount of the Prepetition Obligations.

(ii)    Enforceability of Prepetition Obligations. The Prepetition Obligations constitute the legal, valid and binding obligations of the Credit Parties, enforceable against the applicable Credit Parties in accordance with the terms of the Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code with respect to the Debtors).

(iii)    Enforceability of Prepetition Liens. The Prepetition Agent (on behalf of the Prepetition Secured Parties) holds perfected, valid, enforceable, and non-avoidable first-priority liens on and security interests in all of the Prepetition Collateral (the "Prepetition Liens"). The respective Prepetition Liens were granted by the Debtors and the other Credit Parties to the Prepetition Agent (on behalf of the Prepetition Secured Parties) for fair consideration and reasonably equivalent value, including the contemporaneous making of Loans and/or Commitments secured thereby.

(iv)    No Offsets, Challenges, etc. Except with respect to the Reserved Claims, no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Obligations or the Prepetition Liens exist, and no portion of the Prepetition Obligations or the Prepetition Liens is subject to any contest, attack, obligation, recoupment, defense, counterclaim, offset, subordination, recharacterization, avoidance or any other claim,

1    cause of action or other challenge of any nature under the Bankruptcy Code, under applicable

2    non-bankruptcy law or otherwise.  Except with respect to the Reserved Claims, the Debtors do

3    not have, hereby forever release, and are forever barred from bringing any claims (including,

4    without limitation, claims for subordination, recharacterization, avoidance or other similar

5    claims), counterclaims, causes of action, defenses or setoff rights relating to the Prepetition

6    Obligations, whether arising under the Bankruptcy Code, under applicable non-bankruptcy law

7    or otherwise, against the Prepetition Agent or any Prepetition Secured Party and their respective

8    affiliates, subsidiaries, agents, officers, directors, employees and attorneys.

9                  (v)    <u>No Stay or Modification of Rights</u>.  Neither the commencement of the

10    Chapter 11 Cases nor anything in the Interim Order, this Final Order or any other proceeding in

11    the Chapter 11 Cases shall stay or otherwise limit, delay or modify any rights of the Prepetition

12    Agent or Prepetition Lenders against the Guarantors or any collateral granted by the Guarantors;

13    provided that the exercise of all such rights shall be subject to the Prepetition Lenders'

14    agreement to forbear subject to the terms of, and to the extent provided in, the Forbearance

15    Agreement.  The Forbearance Agreement, including the amendments to the Prepetition Loan

16    Agreement set forth therein, was entered into in contemplation of the Chapter 11 Cases as a

17    necessary condition to the use of the Cash Collateral.  The Prepetition Lenders have consented to

18    the use of their Cash Collateral, and the Debtors have agreed to provide adequate protection as

19    set forth in this Final Order, in each case in reliance on the validity and enforceability of the

20    Forbearance Agreement by all parties thereto on a postpetition basis in accordance with its terms.

21    Without the Forbearance Agreement, the Debtors' businesses, property and assets, and those of

22    their non-debtor subsidiaries and affiliates, would have dramatically deteriorated in value

23    causing irreparable harm to the Debtors and their estates.  The Forbearance Agreement is (x)

24    legal, valid, binding, and enforceable on a postpetition basis against all of the parties thereto and

25    (y) is not subject to any challenge or action of any kind or nature under the Bankruptcy Code,

26    under applicable non-bankruptcy law or otherwise.

27

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

## **Necessity for and Limitations on Use of Cash Collateral**

L.      The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  Good cause has been shown for entry of this Final Order.  The terms herein of the use of Cash Collateral were proposed and negotiated in good faith, and are fair and reasonable.  The terms of the use of Cash Collateral have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the steering committee of Prepetition Lenders, the Prepetition Agent and the Committee and pursuant to sections 105, 361 and 363 of the Bankruptcy Code, each member of the steering committee of Prepetition Lenders and the Prepetition Agent is hereby found to have acted in "good faith" in connection with the negotiation and entry of this Final Order.

M.      The availability to the Debtors of sufficient working capital, liquidity and other financial accommodations are vital to their ability to continue their operations.  The Debtors require use of their cash (which is generated primarily from the operation by the Guarantors and Unrestricted Subsidiaries of their casinos and related assets), including all Cash Collateral, to carry on the operation of their businesses and to administer and preserve the value of their assets, including the Prepetition Collateral.  The Debtors have also requested authorization to obtain the Postpetition Financing (as defined below) from Vista to fund disbursements (other than disbursements identified in the Excluded Line Items, which may be funded from Past Enterprises) set forth in the Budget.  Notwithstanding anything herein or in the DIP Documents to the contrary, Vista has committed to fund all disbursements permitted by the Budget (other than the Excluded Line Items, which may be funded by Past Enterprises) at any time that Vista's cash balance is equal to or greater than $111,500,000 and, thereafter, Past Enterprises may fund all disbursements set forth in the Budget and Vista may make the Postpetition Financing available to SCI on a discretionary basis to fund disbursements set forth in the Budget, in each case subject to the terms of this Final Order.  Promptly following entry of this Final Order, SCI shall borrow from Vista $11,500,000 and shall use such $11,500,000 exclusively to (i) repay Past Enterprises for any post-petition lending to SCI for the purpose of

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1   funding any Budgeted use of cash other than in respect of Excluded Line Items, and (ii) the

2   remaining balance of such $11,500,000 borrowing shall be used by SCI to fund expenditures

3   permitted under the Budget that do not constitute Excluded Line Items.

4          N.       The preservation and maintenance of the Debtors' businesses and their

5   assets is necessary to maximize returns for all creditors, and is significant and necessary to a

6   successful reorganization of the Debtors under chapter 11 of the Bankruptcy Code.  Absent the

7   Debtors' ability to use Cash Collateral and obtain the Postpetition Financing, in each case in

8   accordance with the terms hereof, the continued operation of their businesses would not be

9   possible, and serious and irreparable harm to the Debtors, their estates, and their creditors and

10  equity holders would occur.  Authorization to use Cash Collateral, and obtain the Postpetition

11  Financing, is thus (i) critical to the Debtors' ability to reorganize pursuant to the Bankruptcy

12  Code, (ii) in the best interests of the Debtors and their estates and (iii) necessary to avoid

13  immediate and irreparable harm to the Debtors, their creditors, and their assets, businesses,

14  goodwill, reputation and employees.

15         O.       As more fully described in the Motion, prior to the commencement of the

16  Chapter 11 Cases, the Loan Parties managed their cash through a central concentration account

17  held in the name of SCI.  SCI and each Guarantor issued checks and commenced electronic

18  transfers drawn on zero balance accounts that were electronically tied to the central

19  concentration account at SCI.  In anticipation of the commencement of the Chapter 11 Cases, in

20  cooperation with the Prepetition Agent, a second concentration account was established at Past

21  Enterprises and the principal cash concentration function was transferred from SCI to Past

22  Enterprises.  Other than (i) certain intercompany obligations owed by Past Enterprises to other

23  Loan Parties (the right to repayment of such obligations owed to the Loan Parties is pledged to

24  the Prepetition Agent as part of the Prepetition Collateral), and (ii) the Obligations owing to the

25  Prepetition Agent and the Prepetition Secured Parties pursuant to the Prepetition Loan

26  Documents, Past Enterprises does not have any other Indebtedness or other liabilities.  Subject to

27  paragraph 13, all property of Past Enterprises now owned or hereafter acquired and all products

28

#4819-3933-7988v2

-13-

022537-0163-11403-Active.11741358.7

1    and proceeds thereof (including the new concentration account at Past Enterprises) is subject to

2    valid, non-voidable and duly perfected liens in favor of the Prepetition Agent. During the

3    pendency of the Chapter 11 Cases, all cash proceeds of operations of the Guarantors that are not

4    retained at each Guarantor will be concentrated in the Past Enterprises' concentration account

5    and will be subject to the liens of the Prepetition Agent. Past Enterprises will serve the treasury

6    function for the Guarantors that was served by SCI prior to the Petition Date, and will fund

7    disbursements required to be made by or for the account of the Guarantors. Without limiting

8    Vista's commitment to make loans to SCI to fund certain disbursements as set forth in this Final

9    Order, Past Enterprises may also from time to time transfer cash to SCI, to the extent available,

10    in such amounts as SCI shall determine to be necessary (but in each case subject to the Budget)

11    to pay administrative obligations of the Debtors during the pendency of the Chapter 11 Cases

12    and to fund operating cash requirements of the Drop Down Borrowers and the CV PropCo

13    Payments. Any intercompany amounts transferred or otherwise advanced from Past Enterprises

14    to SCI or any other Guarantor shall be evidenced by promissory notes which shall be in form and

15    substance satisfactory to the Prepetition Agent and shall be pledged and promptly delivered

16    (together with endorsements in blank) to the Prepetition Agent and encumbered by the liens of

17    the Prepetition Agent. The Debtors shall not permit Past Enterprises to make any loans,

18    investments or any other cash disbursements except to the extent permitted by this Final Order

19    and the Budget and all such loans, investments or other cash disbursements shall be made to SCI

20    or the non-debtor Guarantors set forth on Schedule 1 attached hereto. Loans made by Past

21    Enterprises to SCI shall constitute unsecured, subordinated administrative priority post-petition

22    financings made by Past Enterprises pursuant to Bankruptcy Code section 364(b).

23             P.      Prior to the Petition Date, Past Enterprises granted liens and security

24    interests in substantially all of its now owned or hereafter acquired property and all products and

25    proceeds thereof, including, without limitation, all of its deposit accounts located at Bank of

26    America, N.A., to the Prepetition Agent to secure repayment of the Prepetition Obligations and

27    performance of the Prepetition Loan Documents. As additional adequate protection for the

28

#4819-3933-7988v2

-14-

022537-0163-11403-Active.11741358.7

1  Prepetition Agent and the Prepetition Secured Parties, Past Enterprises has filed its written

2  consent in support of the Motion and expressly agreed therein that the Court's Interim and Final

3  Orders granting the Motion shall confirm that liens and security interests granted by Past

4  Enterprises are valid, non-voidable and duly perfected prepetition liens in favor of the Prepetition

5  Agent upon Past Enterprises' now owned or hereafter acquired property and all products and

6  proceeds thereof as provided in the Prepetition Security Documents, including, without

7  limitation, valid, enforceable, non-voidable duly perfected pre-petition liens on and security

8  interests in all deposit accounts of Past Enterprises (and all cash therein and all proceeds therein

9  and rights thereto) that are maintained at Bank of America, N.A., as depository.

10             Q.     Prior to the Petition Date, SCI centrally purchased a substantial amount of

11  goods and services on behalf of the Drop Down Borrowers and Guarantors in order to realize the

12  benefits of bulk or consolidated purchasing.  During the pendency of the Chapter 11 Cases, SCI

13  may continue to purchase certain goods and services on behalf of all Guarantors and the Drop

14  Down Borrowers, while certain of these purchases are expected to be effected directly by Past

15  Enterprises for the benefit of the Guarantors.

16             R.     The "Budget" shall mean the certified 13-week consolidated cash flow

17  forecast prepared by SCI and annexed hereto as Exhibit A, as such cash flow forecast may be

18  amended or supplemented in accordance with the terms hereof.  The Budget is a consolidated

19  cash budget of the Credit Parties, Drop Down Borrowers and CV PropCo.  Compliance with the

20  Budget, subject to permitted variances set forth below, shall be determined based upon the

21  consolidated reporting of the Credit Parties, Drop Down Borrowers and  CV HoldCo.  The

22  Budget may only be amended or supplemented if the Prepetition Agent and the prepetition

23  Required Lenders give their prior consent (which consent may be granted or withheld in their

24  sole and absolute discretion) to a revised 13-week consolidated cash flow forecast (in the form of

25  the Budget) proposed by the Debtors.  The Debtors shall propose a revised 13-week consolidated

26  cash flow forecast (in the form of the Budget) at least once during the four week period

27  following the Petition Date and, thereafter, at least once during every four week period

28

#4819-3933-7988v2

-15-

022537-0163-11403-Active.11741358.7

1  commencing from the date the Prepetition Agent and the prepetition Required Lenders consent

2  to an amended or supplemented Budget; provided that if the Prepetition Agent and the

3  prepetition Required Lenders do not consent to any such proposed revised 13-week consolidated

4  cash flow forecast, the Prepetition Agent or its financial advisor shall notify (either orally or in

5  writing) SCI of the elements of the rejected proposed revised 13-week consolidated cash flow

6  forecast that were unacceptable to the prepetition Required Lenders and the Budget then in

7  existence (without giving effect to any proposed revisions, amendments or supplements) shall

8  remain in full force and effect and the Debtors may continue to use Cash Collateral in

9  accordance with such Budget until the last date covered thereby, but in no event beyond such

10  date, provided that the Debtors may, upon notice, seek non-consensual use of Cash Collateral

11  and/or continued access to loans from Vista and use of the proceeds of such loans for ordinary

12  course operations of the Guarantors and the Drop Down Borrowers on an emergency basis, and

13  the Prepetition Agent and the Prepetition Secured Parties hereby reserve all of their rights to

14  contest any such further use of Cash Collateral or access to Postpetition Financing from Vista.

15  The Debtors shall provide the Committee with copies of any proposed extension or revision to

16  the Budget concurrently with delivery of the same to the Prepetition Agent and provide the

17  Committee with, promptly following request thereof, a copy of the Budget including reasonable

18  detail with respect to all amounts contained therein (and, in addition, reasonable information

19  with respect to amounts previously paid and/or to be paid to professionals of the Prepetition

20  Agent).

21          S.      The prepetition Required Lenders have consented to the Debtors' use of

22  Cash Collateral from and after the Petition Date, and to the Postpetition Financing, but only on

23  the terms provided herein.  To the extent of the use by the Debtors of the Prepetition Secured

24  Parties' Cash Collateral (on a dollar-for-dollar basis) and any diminution in value of the

25  Prepetition Collateral, including, without limitation, resulting from the Carve Out (as defined

26  below) and the use, sale or lease of the Prepetition Collateral, and the imposition of the automatic

27  stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Secured Parties are entitled

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1   to and shall receive the following adequate protection (subject to the Carve Out defined below):

2   (A) valid, binding, enforceable and perfected replacement liens on and security interests in (the

3   "Adequate Protection Liens") all property and assets of the Debtors and all products and

4   proceeds thereof, now or hereafter acquired (subject to certain exceptions set forth herein),

5   pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, and the amount and

6   extent thereof to be limited to the amount of diminution in value of the Prepetition Collateral as

7   determined in accordance with the Bankruptcy Code, and (B) an allowed claim against the

8   Debtors having priority over all other administrative claims now or hereafter asserted in the

9   Chapter 11 Cases (the "Superpriority Claim") pursuant to section 507(b) of the Bankruptcy

10  Code, and the amount and extent thereof to be limited to the amount of diminution in value of

11  the Prepetition Collateral as determined in accordance with the Bankruptcy Code.  As additional

12  adequate protection: (x) the Prepetition Agent (for the benefit of the applicable Prepetition

13  Secured Parties) (i) received payment of all interest and fees (including, without limitation,

14  Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management

15  Obligations and Secured Hedge Agreements (and interest on the termination damages if such

16  Secured Hedge Agreements are terminated) and agency fees) accrued and unpaid as of the

17  Petition Date in the amounts specified in the Prepetition Loan Agreement, the prepetition

18  agreements with respect to the agency fees and Cash Management Obligations and the

19  prepetition Secured Hedge Agreements (as applicable) within five Business Days of entry of the

20  Interim Order, (ii) shall receive all interest and fees (including, without limitation, Letter of

21  Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations

22  and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge

23  Agreements are terminated) and agency fees) accrued on and after the Petition Date in the

24  amounts specified in the Prepetition Loan Agreement at the non-default rate, the prepetition

25  agreements with respect to the agency fees and Cash Management Obligations and the

26  prepetition Secured Hedge Agreements (as applicable), all such amounts to be paid on the first

27  Business Day of each calendar month following the Petition Date, and (iii) shall receive

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1   scheduled principal amortization payments to the prepetition Term Lenders in the amounts and

2   on the dates due in accordance with the Prepetition Loan Agreement (without giving effect to the

3   acceleration of the Obligations); and (y) the Prepetition Agent shall receive payment of

4   prepetition and postpetition reasonable fees and expenses of the Prepetition Agent's co-lead and

5   local counsel and financial advisor as set forth herein and the Debtors shall pay the pre-petition

6   and post petition reasonable fees and expenses of a single legal counsel for each other Agent and

7   the reasonable out-of-pocket expenses for each Agent as set forth herein; and (iii) continued

8   financial reporting as set forth in, and in accordance with the terms of, the Prepetition Loan

9   Agreement and the Forbearance Agreement.  The Debtors shall provide to the Committee

10  concurrently with delivery of the same to the Prepetition Agent copies of all financial reports,

11  notices, financial analyses or other documents required under the Prepetition Loan Agreement

12  and the Forbearance Agreement.

13  **Unsecured Postpetition Financing Provided by Non-debtor Affiliate Vista**
    **Holdings, LLC and Drop Down Loans Made by the Debtors to the Guarantors and the**
14  **other Drop Down Borrowers.**

15

16          T.      Vista, a non-debtor Unrestricted Subsidiary of SCI, is capitalized with

17  unrestricted cash on hand of approximately $194,000,000.  Vista is prepared to lend from time to

18  time up to an aggregate principal amount of $150,000,000 to SCI (the "Postpetition Financing")

19  in accordance with the terms hereof and the DIP Credit Agreement.  SCI shall, in turn, use the

20  proceeds of the Postpetition Financing  to provide the other Debtors, the Drop Down Borrowers

21  and CV HoldCo with capital to satisfy disbursements permitted under the Budget.  The DIP

22  Credit Agreement provides that outstanding borrowings under the Postpetition Financing shall

23  not exceed an aggregate principal amount of $150,000,000 at any time following the entry of the

24  Final Order.  SCI needs immediate access to financing from Vista on a final basis because SCI

25  does not have immediate access to sufficient Cash Collateral to satisfy the funding requirements

26  of the other Debtors, the Drop Down Borrowers and CV PropCo.   Vista shall fund all

27  disbursements permitted by the Budget (other than the Excluded Line Items, which Excluded

28

1    Line Items may be funded by Past Enterprises) by making Postpetition Financing available to

2    SCI at any time that Vista's cash balance is equal to or greater than $111,500,000 and, after

3    Vista's cash balance is reduced to $111,500,000, Vista may make the Postpetition Financing

4    available to SCI on a discretionary basis to fund disbursements set forth in the Budget in the

5    event cash flow generated by the Credit Parties is not adequate to fund all of the cash

6    requirements of the Debtors, Drop Down Borrowers and CV PropCo and Past Enterprises shall

7    be authorized to fund all disbursements permitted under the Budget, and otherwise subject to the

8    terms of this Final Order.  Promptly following entry of this Final Order, SCI shall borrow from

9    Vista $11,500,000 and shall use such $11,500,000 exclusively to (i) repay Past Enterprises for

10   any post-petition lending to SCI for the purpose of funding any Budgeted use of cash other than

11   in respect of Excluded Line Items, and (II) the remaining balance of such $11,500,000 borrowing

12   shall be used by SCI to fund expenditures permitted under the Budget that do not constitute

13   Excluded Line Items.

14            U.      SCI has arranged to obtain the Postpetition Financing on a subordinated

15   and unsecured administrative claim basis pursuant to section 364(b) of the Bankruptcy Code.

16   Repayment of the Postpetition Financing is conditional on, and neither Vista nor Past Enterprises

17   (with respect to loans by Past Enterprises to SCI) shall have any right to repayment,

18   reimbursement or enforcement (including exercise of rights of offset, recoupment or otherwise)

19   of any kind or nature, other than the prosecution of allowance (but not payment) of an unsecured

20   administrative claim, and the Debtors shall not be authorized to make, or cause any of their

21   Subsidiaries to make, any cash payment to Vista or Past Enterprises, on account of the

22   Postpetition Financing or loans made by Past Enterprises to SCI (including, without limitation,

23   on account of accrued interest or outstanding principal amounts) until all of the Prepetition

24   Obligations and Superpriority Claims are indefeasibly paid in full in cash, or otherwise

25   refinanced or restructured under a plan of reorganization to which the requisite Prepetition

26   Lenders have consented (collectively, "Acceptable Prepetition Treatment").  SCI and Vista have

27   entered into the DIP Credit Agreement in substantially the form attached hereto as Exhibit B to

28

#4819-3933-7988v2

-19-

1    evidence the Postpetition Financing.  The terms and conditions of the Postpetition Financing

2    shall be as set forth in the DIP Credit Agreement.  The Debtors will not borrow, and will not

3    permit their Subsidiaries and their respective Affiliates to borrow, from Vista to finance any uses

4    of cash that are inconsistent with this Final Order and the Budget.  The Debtors shall not permit

5    Vista to make any loans, other investments or any other cash distributions except to the extent

6    permitted by this Final Order and the Budget and all such loans, other investments or other cash

7    distributions shall be made to SCI under the DIP Credit Agreement.

8          V.        Subject to compliance with the Budget, SCI may from time to time  make

9    (i) unsecured loans to one or more of the Drop Down Borrowers (each, a "Drop Down Loan")

10   and (ii) cash equity contributions in CV HoldCo which, in turn, will contribute all such proceeds

11   that it receives to CV PropCo  (each, a "CV PropCo Contribution") to make CV PropCo

12   Payments.  The Drop Down Loans and CV PropCo Contributions shall be made from cash on

13   hand at SCI and/or from the proceeds of an advance under the Postpetition Financing.  SCI is a

14   holding company and substantially all assets are held by the Drop Down Borrowers and CV

15   PropCo, therefore, it is in the best interest of the Debtors and their creditors that SCI be

16   permitted to assure the ordinary course operation of the Drop Down Borrowers and CV PropCo.

17   Each Drop Down Loan and each CV PropCo Contribution made by SCI shall constitute a use of

18   Cash Collateral.  As additional adequate protection for such use of Cash Collateral, each Drop

19   Down Loan, each intercompany on-loan made by Past Enterprises to one or more of the non-

20   debtor Guarantors set forth on Schedule 1 attached hereto and each intercompany loan made by

21   Past Enterprises to SCI shall be evidenced by promissory notes which shall be in form and

22   substance satisfactory to the Prepetition Agent and be pledged and promptly delivered to the

23   Prepetition Agent (together with endorsements in blank) and encumbered by the Adequate

24   Protection Liens and, with respect to promissory notes made in favor of non-debtor Loan Parties,

25   the prepetition liens of the Prepetition Agent.  Each loan from Past Enterprises to SCI shall be a

26   subordinated unsecured loan that will constitute an expense of administration pursuant to

27   Bankruptcy Code section 364(b).  CV PropCo Contributions made in the form of equity shall be

28

#4819-3933-7988v2                                              -20-

022537-0163-11403-Active.11741358.7

1    evidenced by the previously pledged equity of CV HoldCo, which equity interests are subject to

2    the valid and unavoidable liens of the Prepetition Agent, subject to paragraph 13. There shall be

3    no limitation on the liens or claims that the Prepetition Agent shall have against any assets of the

4    non-Debtor Credit Parties whether such assets are now or hereafter acquired, including all

5    intercompany loans or other cash transfers now or hereafter made or received by such non-

6    Debtor Credit Parties.

7            W.     Based on the foregoing, and upon the record made before this Court at the

8    Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor;

9    **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

10            1.     **Disposition**. The Motion is granted and each objection thereto which has

11    not been consensually resolved or withdrawn is hereby overruled.

12            2.     **Interim Period**. Subject to the terms and conditions of this Final Order,

13    the Debtors may use their cash, including any Cash Collateral, the cash from time to time

14    maintained in a deposit account held by Past Enterprises and proceeds of loans from Vista made

15    under the Postpetition Financing during the period (the "Interim Period") commencing from the

16    Petition Date through and including (but not beyond) the date of termination of the use of Cash

17    Collateral under paragraphs 14 and 15.

18            3.     **Use of Cash Collateral**. Except as otherwise expressly provided in this

19    Final Order, Cash Collateral and any other cash maintained in a deposit account held by Past

20    Enterprises or the proceeds of loans from Vista made under the Postpetition Financing may be

21    used by the Debtors (a) during the Interim Period, (b) only for general corporate purposes and

22    working capital requirements of the Debtors, and the Drop Down Borrowers (including loans

23    made by Past Enterprises to non-debtor Guarantors) and for CV PropCo Payments to be made by

24    CV PropCo, in each case subject to the Budget, (c) in respect of each disbursement line item in

25    the Budget, in an amount not to exceed the amount specified for expenditure in such line item;

26    provided, that (x) in any week during the Interim Period, (i) for any disbursement line item in the

27    Budget during such week, the Debtors may make disbursements in excess of the amount set forth

28

in the Budget for that particular disbursement line item so long as the percentage deviation for all disbursement line items during such week shall not exceed ten percent (10%), in the aggregate, of the amount set forth in the Budget for all disbursement line items for such week and (ii) for each of the "Payroll and Taxes/Benefits" and "Capital Expenditures" disbursement line items in the Budget during such week, the Debtors may make disbursements in excess of the amount set forth in the Budget for that particular disbursement line item so long as the percentage deviation for such disbursement line item during such week shall not exceed fifteen percent (15%) of the amount set forth in the Budget for such disbursement line item for such week; provided, further, that in determining compliance with the preceding proviso the Debtors shall not be permitted to include any amounts set forth in the line item "Native American- Gun Lake" that were not disbursed in such or prior weeks and (y) any amount not expended in a line item in any week during the Interim Period may be added to the same line item in the Budget in the next succeeding week during the Interim Period and may continue to be available for use by the Debtors for the next succeeding three weeks if not expended prior thereto, (d) to make in accordance with the Budget payments in the ordinary course of business during any cure period provided in paragraph 15, including, without limitation, payments in respect of payroll and employee benefit obligations for the Debtors and the Drop Down Borrowers, (e) to make adequate protection payments as provided in this Final Order and (f) to provide cash collateral for completion guaranties and current funding, including development expenses and advances for construction costs, in respect of ongoing capital projects, including without limitation, Indian gaming facilities currently under development by SCI, all as provided in the Budget. Notwithstanding anything herein to the contrary, neither the Debtors nor any other estate representatives (including, without limitation, the Committee or any trustee) shall use or be permitted to use any L/C Cash Collateral deposited or maintained in, or credited to, the L/C Cash Collateral Account (or any sub or investment accounts thereof) or any CMO Cash Collateral and the Carve-Out shall not be paid from the L/C Cash Collateral or the CMO Cash Collateral. Nothing set forth herein is intended to prohibit the Unrestricted Subsidiaries and Joint Ventures

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

set forth on Schedule 2 attached hereto from incurring, assuming or suffering to exist any debt

provided by a Person other than the Debtors, their Subsidiaries or their respective affiliates so

long as the incurrence, assumption or existence of such debt is not prohibited by the Prepetition

Credit Agreement or the Forbearance Agreement; provided that if any of the Unrestricted

Subsidiaries and Joint Ventures set forth on Schedule 2 attached hereto incur, assume or suffer to

exist such third party debt, then amounts set forth in the Budget that were available for use by

such Unrestricted Subsidiaries and Joint Ventures shall be deemed eliminated to the extent the

proceeds of the third party debt financing are permitted to make the payments that were

otherwise permitted under the Budget. The Debtors shall not permit Past Enterprises to make

any loans, investments or any other cash disbursements other than to SCI or the non-debtor

Guarantors, and in all cases, subject to the terms of this Final Order.

4.     **Unsecured Postpetition Financing**. Subject to the terms and conditions

of this Final Order, SCI is authorized to obtain the Postpetition Financing from Vista and

intercompany loans from Past Enterprises on an unsecured basis, and in respect thereof to enter

into and deliver to Vista the DIP Credit Agreement. Amounts outstanding under the Postpetition

Financing provided by Vista shall not exceed an aggregate principal amount of $150,000,000 at

any time following the entry of this Final Order. The terms and conditions of the Postpetition

Financing shall be as set forth herein and in the DIP Credit Agreement. Vista, and in respect of

its loans to SCI, Past Enterprises, are hereby granted an administrative expense claim pursuant to

sections 364(b), 503(b)(1) and 507(a)(2) of the Bankruptcy Code to the extent of SCI's

obligations from time to time outstanding under the DIP Credit Agreement and with respect to

Past Enterprises, to the extent of the principal amount of intercompany loans made by Past

Enterprises to SCI; provided, that neither Vista nor, with respect to its loans to SCI, Past

Enterprises, shall have any right to repayment, reimbursement or enforcement of any kind or

nature, other than the prosecution of allowance (but not payment) of an unsecured administrative

claim, and the Debtors shall not be authorized to make, or cause any of their Subsidiaries to

make, any cash payment to Vista or Past Enterprises, on account of the Postpetition Financing

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

and any obligations under the DIP Credit Agreement and any intercompany loans made by Past Enterprises and any promissory notes evidencing such loans (including principal, interest and other amounts, which shall accrue) until, and subject to, the Acceptable Prepetition Treatment. The Debtors shall not borrow from Vista, and shall not use the proceeds of any borrowings, to finance any uses of cash that are inconsistent with this Final Order or the Budget. The Debtors shall not permit Vista to make any loans, investments or any other cash disbursements (in each case other than to SCI) except to the extent permitted by this Final Order and the Budget. Any transfers from Past Enterprises to SCI will be evidenced by promissory notes on an unsecured, subordinated basis and shall constitute approved post petition financing on an administrative basis pursuant to Bankruptcy Code section 364(b). Promptly following entry of this Final Order, SCI shall borrow from Vista $11,500,000 and shall use such $11,500,000 exclusively to (i) repay Past Enterprises for any post-petition lending to SCI for the purpose of funding any Budgeted use of cash other than in respect of Excluded Line Items, and (II) the remaining balance of such $11,500,000 borrowing shall be used by SCI to fund expenditures permitted under the Budget that do not constitute Excluded Line Items.

5.    **Carve-Out**. The Debtors are authorized to use Cash Collateral and any other cash to pay the following costs, fees and expenses (collectively, the "Carve-Out"): (i) the unpaid fees due and payable to the Clerk of the Court and the Office of the United States Trustee for the District of Nevada (the "U.S. Trustee") pursuant to 28 U.S.C. § 1930; and (ii) costs, fees and expenses incurred by professionals retained pursuant to sections 327 or 1103 of the Bankruptcy Code by the Debtors and any Committee, which costs, fees and expenses in this clause (ii) were incurred and unpaid from and after the date of receipt by the Debtors of written notice from the Prepetition Agent of the occurrence of an Event of Default (as defined below), and only for so long as the Event of Default specified in such notice is continuing and only to the extent such costs, fees and expenses are allowed by the Court, in an aggregate amount not to exceed $3,000,000, plus (without duplication) all accrued and unpaid allowed costs, fees and expenses incurred by professionals retained by the Debtors and any Committee prior to the

#4819-3933-7988v2

-24-

022537-0163-11403-Active.11741358.7

1    occurrence of such date. So long as no Event of Default has occurred and is continuing, the

2    Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and

3    payable pursuant to sections 330 and 331 of the Bankruptcy Code, as the same may be due and

4    payable, and the same shall not reduce the Carve-Out. Nothing herein shall be construed to

5    impair the ability of any party to object to the costs, fees or expenses described in the preceding

6    sentence or in clauses (i) and (ii) above.

7             6.    **Adequate Protection**. The Prepetition Agent has negotiated in good faith

8    regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund

9    the administration of the Debtors' estates and continued operation of the Credit Parties'

10   businesses. The Prepetition Agent (on behalf of the Prepetition Secured Parties and in

11   accordance with the Forbearance Agreement and the other Prepetition Loan Documents) has

12   agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, for

13   the Interim Period, subject to the terms and conditions set forth herein, including the protections

14   afforded a party acting in "good faith" under section 363(m) of the Bankruptcy Code. Pursuant

15   and subject to sections 361, 363 and 364 of the Bankruptcy Code, as adequate protection for the

16   use by the Debtors of the Prepetition Secured Parties' Cash Collateral (on a dollar-for-dollar

17   basis) and any diminution in value of the Prepetition Collateral in which the Debtors have an

18   interest, including, without limitation, resulting from the Carve-Out, the use, sale or lease of any

19   other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of

20   the Bankruptcy Code:

21            a.    The Debtors have paid to the Prepetition Agent, for (as applicable) the

22        ratable benefit of the applicable Prepetition Secured Parties, all interest and fees

23        (including, without limitation, commitment fees, Letter of Credit fees, regularly

24        scheduled amounts payable with respect to Cash Management Obligations and Secured

25        Hedge Agreements (and interest on the termination damages if such Secured Hedge

26        Agreements are terminated) and agency fees) accrued and unpaid as of the Petition Date

27        in the amounts (computed at the non-default rate) specified in the Prepetition Loan

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

Agreement, the prepetition agreements with respect to the agency fees and Cash Management Obligations and the prepetition Secured Hedge Agreements (as applicable), within five Business Days of entry of the Interim Order;

b.      The Debtors shall pay to the Prepetition Agent, for the ratable benefit of the applicable Prepetition Secured Parties (as applicable), all interest and fees (including, without limitation, Letter of Credit fees, regularly scheduled amounts payable with respect to Cash Management Obligations and Secured Hedge Agreements (and interest on the termination damages if such Secured Hedge Agreements are terminated) and agency fees) accrued on and after the Petition Date in cash at the non-default rate under the Prepetition Loan Agreement, the prepetition agreements with respect to the agency fees and Cash Management Obligations and the prepetition Secured Hedge Agreements (as applicable), on the first Business Day of each calendar month following the Petition Date.  In consideration of such payments, SCI shall be entitled to continue Eurodollar Loans or convert Base Rate Loans into Eurodollar Loans in accordance with the terms of the Prepetition Loan Agreement.

c.      The Debtors shall pay, or cause the Guarantors to pay to the Administrative Agent (for the ratable benefit of the applicable Prepetition Lenders), scheduled principal amortization payments in the amounts and on the dates due in accordance with the Prepetition Loan Agreement (without giving effect to the acceleration of the Obligations).

d.      The Debtors shall pay, or cause the Guarantors to pay, after the fifth Business Day but on or before the tenth Business Day following the receipt of an invoice (copies of which invoices shall be promptly delivered by the Debtors to counsel to the Committee and the U.S. Trustee with redaction as necessary to protect privileged information or confidential information), all reasonable and documented fees and expenses of the Prepetition Agent's lead co-counsel, local counsel and financial advisor and a single counsel for each other Agent, regardless of whether such fees and expenses

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

were incurred before or after the Petition Date and the reasonable out-of-pocket expenses for each Agent. None of the fees, costs and expenses payable pursuant to this section 6(d) shall be subject to separate approval by this Court, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto. In the event that, within five Business Days after receipt of an invoice counsel to the Debtors, Committee or U.S. Trustee notify counsel for the Prepetition Agent of an objection to an invoice of the Prepetition Agent or any other Agent, and the parties are unable to resolve any dispute regarding the reasonableness of any such fees, costs and expense, the parties may bring such dispute to the Court for resolution; provided, however, that the only portion of the fees, costs and expenses that the Debtors may not pay are those that are the subject of the dispute regarding reasonableness until a resolution thereof in favor of the Prepetition Agent or the other Agents, as the case may be.

e.      Subject to any defenses, claims, counterclaims or offsets of the Prepetition Agent and/or the Prepetition Secured Parties (including, without limitation, rights with respect to any proposed treatment of the Prepetition Obligations or any junior creditors under a plan of reorganization), to the extent any cash payments of interest, fees, costs and expenses made by the Debtors on account of the Prepetition Obligations are not allowed under section 506(b) of the Bankruptcy Code, and at the time of such disallowance there is outstanding principal owed under the Prepetition Credit Facilities, such payments authorized hereunder may be subject to recharacterization and applied as principal owed under the Prepetition Credit Facilities.

f.      SCI shall continue to provide the Prepetition Agent with financial and other reporting in compliance with the Prepetition Credit Facility and sections 4(d) and (e) of the Forbearance Agreement. The Debtors shall promptly provide the Committee with the financial and other reporting information as provided to the Prepetition Agent pursuant to the Prepetition Credit Facility and the Forbearance Agreement.

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

g.    To the extent of any diminution in value of the Prepetition Collateral in which the Debtors have an interest, including, without limitation, diminution in value resulting from the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted valid, binding, enforceable and perfected senior replacement liens on and security interests in (the "Adequate Protection Liens") all property and assets of any kind and nature (but not including the Excluded Assets) in which a Debtor has an interest, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, causes of action, rights to payment, including tax refund claims, insurance proceeds and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing together with the Prepetition Collateral, the "Postpetition Collateral"); provided, however, that the Postpetition Collateral shall not include any claims or causes of action arising under chapter 5 of the Bankruptcy Code or any similar state law ("Avoidance Actions"). Nothing set forth herein is intended to override or supersede any applicable state gaming rules or regulations that are applicable to any such grant of liens, and the effectiveness of any liens requiring approval under applicable state police powers shall be stayed pending receipt of such state law approvals. The Adequate Protection Liens shall be limited to the extent of the diminution in value of the Prepetition Collateral as provided in the Bankruptcy Code. The Adequate Protection Liens shall have the following priorities:

#4819-3933-7988v2

-28-

022537-0163-11403-Active.11741358.7

(i)    <u>First Priority On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected, non-voidable first priority lien on, and security interest in, all Postpetition Collateral, including all tangible and intangible assets (other than Excluded Assets) of the Debtors and all products and proceeds thereof, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date.

(ii)    <u>Liens Junior To Certain Existing Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected non-voidable junior lien on, and security interest in, all Postpetition Collateral, including all tangible and intangible assets (other than Excluded Assets) of the Debtors and all products and proceeds thereof, whether now existing or hereafter acquired, that is subject to (x) valid, perfected and unavoidable senior liens, including all Permitted Liens, in existence immediately prior to the Petition Date  or (y) valid and unavoidable senior liens, including all Permitted Liens, in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which prepetition security interests and liens in favor of the Prepetition Agent are junior to such valid, perfected and unavoidable liens.

(iii)    <u>Priming</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, fully perfected non-voidable priming lien on, and security interest in, all Postpetition Collateral, including all tangible and intangible assets (other than Excluded Assets) of the Debtors and all products and proceeds thereof, whether now existing or hereafter acquired; provided that such liens and security interests shall not prime (x) any valid, perfected and non-voidable liens and security interests in existence immediately prior to the Petition Date that are held by or granted to any person other than the Prepetition Agent or (y) valid and non-voidable liens and security interests in existence immediately prior to the Petition Date that are perfected after the Petition

Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Prepetition Agent.

(iv)    <u>Liens Senior To Certain Other Liens</u>.  The Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code unless such avoided lien was senior and superior to such Adequate Protection Lien (or related prepetition lien) prior to avoidance (it being the intention of the parties that avoidance and preservation of a lien, in and of itself, shall not impact the relative priority of such avoided lien and the Adequate Protection Liens or related prepetition lien) or (B) any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

h.    To the extent of any diminution in value of the Prepetition Collateral in which the Debtors have an interest, including, without limitation, diminution in value resulting from the use, sale or lease of any other Prepetition Collateral, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is granted Superpriority Claims pursuant to section 507(b) of the Bankruptcy Code senior to all other administrative expense claims and to all other claims, including administrative claims, arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except as set forth below in the immediately succeeding paragraph, which Superpriority Claims shall be payable from, and have recourse to, all of the Postpetition Collateral and proceeds thereof.  The superpriority adequate protection claims described in the preceding sentence shall be

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

limited to the extent of the diminution in value of the Prepetition Collateral as provided in the Bankruptcy Code.

i.    The Adequate Protection Liens shall, in each case, (i) be senior and prior, and prime, the Prepetition Liens and the Prepetition Obligations, but junior and subject only to (x) the Carve-Out and (y) all other valid, enforceable, perfected and unavoidable liens on all of the Debtors' assets and property in existence as of the Petition Date, or duly perfected thereafter, under section 546(b) of the Bankruptcy Code and (ii) have been effective as of the date of the entry of the Interim Order without any further action by the Debtors, the Prepetition Agent or the Prepetition Secured Parties and without the necessity of the execution, filing or recordation of any financing statements, security agreements, lien applications or other documents.

j.    All of the Prepetition Secured Parties' Cash Collateral shall be deposited and maintained at all times in an account in the name of SCI or Past Enterprises which is subject to the "control" of the Prepetition Agent within the meaning of the Uniform Commercial Code, and not commingled with any funds upon which the Prepetition Agent does not have control, until disbursed in accordance with the Budget and this Final Order.  Subject to paragraph 13, the liens and security interests granted by Past Enterprises prior to the Petition Date are hereby confirmed to be valid, binding and enforceable perfected prepetition liens and security interests upon all property of Past Enterprises as provided in the Prepetition Security Documents, including, without limitation, valid, binding and enforceable perfected liens on and security interests in all deposit accounts of Past Enterprises (and all proceeds therein and rights thereto) that are maintained at Bank of America, N.A.  All loans funded by Vista under the DIP Credit Agreement shall be deposited into the concentration account at SCI prior to its further disbursement by SCI.  The Debtors shall implement a cash management system reasonably acceptable to the Prepetition Agent.  For avoidance of doubt, the Guarantors

#4819-3933-7988v2

-31-

022537-0163-11403-Active.11741358.7

shall maintain cage cash and petty cash at their respective premises in accordance with customary practices and requirements of applicable gaming laws.

k.    The Debtors hereby reaffirm, solely with respect to Indemnified Liabilities arising as a result of any issuance, renewal, replacement, modification, extension or continuation of any Letter of Credit that occurs from and after the Petition Date, the indemnification obligations in respect of such postpetition Indemnified Liabilities to the Prepetition Agent and the L/C Issuer that are set forth in section 10.05 of the Prepetition Loan Agreement as a postpetition indemnity.  The Forbearance Agreement is confirmed to remain in full force and effect in all respects, enforceable by all parties thereto, pursuant to its terms.

7.    **Assets of non-Debtor Credit Parties**.  There shall be no limitation on the liens or claims that the Prepetition Agent has against any assets of the non-Debtor Credit Parties whether such assets are now or hereafter acquired, including all intercompany loans or other cash transfers now or hereafter made or received by such non-Debtor Credit Parties

8.    **No Prejudice**.  Nothing contained herein shall prejudice the Prepetition Secured Parties or the Prepetition Agent with respect to any matter, including, without limitation, relief from the automatic stay, appointment of a trustee or examiner, sale of any or all of the assets of the Debtors, the assumption or rejection of executory contracts, dismissal or conversion of the Chapter 11 Cases or requests for additional or different adequate protection.

9.    **Limitation on Use of Cash Collateral and Proceeds of Postpetition Financing**.  No proceeds of the Prepetition Collateral, the Postpetition Collateral, the Cash Collateral or any other cash maintained from time to time on deposit in an account held by Past Enterprises  or constituting proceeds of a borrowing from Vista shall be used for the purpose of: (a) investigating, objecting to, challenging or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority or enforceability of the Prepetition Obligations or the Prepetition Liens (but not including any investigation related thereto which shall be subject to the limitations set forth below), or any other rights or interest of the

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

Prepetition Agent or the Prepetition Secured Parties, including with respect to the Adequate Protection Liens, or in asserting any claims or causes of action against the Prepetition Agent or the Prepetition Secured Parties, including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) preventing or hindering the Prepetition Agent's or the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral, Cash Collateral or the Postpetition Collateral; (c) seeking to modify any of the rights granted to the Prepetition Agent or the Prepetition Lenders hereunder; or (d) paying any amount on account of any claims arising before the Petition Date unless such payments are approved by an order of this Court and are permitted pursuant to the Budget. Notwithstanding the foregoing provisions of this paragraph 9 up to $250,000 of Cash Collateral or any other cash maintained from time to time at any of the Debtors, the other Loan Parties or Vista, in the aggregate, may be used to pay the allowed fees and expenses of professionals retained by the Committee incurred directly in connection with investigating, but not initiating or prosecuting, any claims or causes of action (a) against the Prepetition Agent or the Prepetition Secured Parties and (b) with respect to the amount, validity, extent, perfection, priority or enforceability of the Prepetition Liens or the Prepetition Obligations, solely, in each case, with respect to the Debtors. For avoidance of doubt, the limitations on the fees and period of investigation provided do not apply to any investigation of the CMBS Debtors by the Committee or the SCI Special Committee (as defined in the final order regarding FCP Propco, LLC's use of its cash collateral) that is permitted pursuant to any order entered in the FCP PropCo, LLC Chapter 11 Case. To the extent that a Prepetition Lender or Agent is also a lender or agent to a CMBS Debtor, then the limitations with respect to investigating a Prepetition Lender or Agent shall apply only to such Prepetition Lender or Agent in its role as such, and shall not apply to any other position such Prepetition Lender or Agent may hold in respect of a CMBS Debtor.

10.     **Limitation on Additional Liens**.  The Debtors shall not, directly or indirectly, grant any new lien that is otherwise permitted by Prepetition Credit Agreement except

1   in the ordinary course of SCI's prepetition business (provided that SCI shall in any event be

2   permitted to create or incur Liens permitted under sections 7.01(e), (f) and (t) of the Prepetition

3   Credit Agreement whether or not in the ordinary course of business SCI's prepetition business

4   but subject in all respects to this Final Order and the Budget).  Except as provided in the prior

5   sentence, the Debtors shall not be permitted to grant any liens (including, without limitation,

6   liens with a priority senior to or pari passu with the Prepetition Liens, the Adequate Protection

7   Liens, or any other liens granted to the Prepetition Agent (on behalf of the Prepetition Secured

8   Parties) under this Final Order or any Prepetition Loan Documents), or to provide any party with

9   an administrative expense claim (including, without limitation, administrative expense claims

10  having a priority senior to or being pari passu with the Superpriority Claims but excluding

11  administrative expense claims arising by operation of law in connection with ordinary course

12  transactions with postpetition vendors providing unsecured trade credit; provided that such

13  administrative expense claims for such postpetition vendors shall be junior to the Superpriority

14  Claims), without the prior written consent of the Prepetition Agent.

15          11.     **Modification, Amendment, etc.**  In the event that any or all of the

16  provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order

17  of this or any other court, no such modification, amendment or vacation shall affect the validity,

18  enforceability, or priority of any lien, claim, right or obligation authorized or created hereby

19  (including, without limitation, the Adequate Protection Liens and the Superpriority Claims.

20          12.     **Good Faith.**  Having been found to be consenting to the use of the Cash

21  Collateral in good faith, the Prepetition Agent and the Prepetition Secured Parties shall, pursuant

22  to Bankruptcy Code sections 105(a), 361, 363(m) and 364(e) be entitled to the full protections of

23  this Final Order as to the use, sale or lease  of Prepetition Collateral, including use of Cash

24  Collateral, permitted in reliance thereon, with respect to the claims and obligations arising under

25  this Final Order in the event that this Final Order or any authorization or provision contained

26  herein is stayed, vacated, reversed or modified on appeal or otherwise.  Any stay, vacation,

27  reversal or modification of this Final Order (or any provision hereof) shall not affect the

28

022537-0163-11403-Active.11741358.7

1  Adequate Protection Liens or the Superpriority Claims, or the validity of any obligations to, or

2  rights of, the Prepetition Agent or the Prepetition Secured Parties incurred or granted pursuant to

3  this Final Order.  Notwithstanding any such stay, vacation, reversal or modification, all uses of

4  Cash Collateral and obligations incurred and rights granted pursuant hereto prior to the effective

5  date of such stay, vacation, reversal or modification shall be governed in all respects by the

6  original provisions hereof, and the Prepetition Agent and the Prepetition Secured Parties shall be

7  entitled to all the rights, privileges, benefits and remedies, including, without limitation, the

8  security interests and priorities, granted herein with respect to such obligations and use of Cash

9  Collateral.

10              13.    **Binding Effect**.  The stipulations, admissions, statements and conclusions

11  contained in this Final Order, including those set forth in recital paragraphs K(i) through K(v), O

12  and 6(j), shall be binding upon the Debtors, each other Credit Party, Vista, any subsidiary of the

13  Debtors that may hereafter file for relief under chapter 11 of the Bankruptcy Code, and their

14  respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter

15  appointed or elected for any of the estates of the Debtors).  Subject to the last sentence of this

16  paragraph 13, the stipulations, admissions, statements and conclusions contained in recital

17  paragraphs K(i) through K(v), O and 6(j), shall be binding upon all other parties-in-interest,

18  including any Committee, unless any Committee or any other party in interest (other than the

19  Debtors), duly commences an adversary proceeding one hundred and twenty (120) days

20  following the date on which the Committee is first appointed (such time period being the

21  "Investigation Period," and in the event that an adversary proceeding as described in this

22  paragraph 13 is not duly commenced during the Investigation Period, such date shall be referred

23  to as the "Investigation Period Termination Date") (A) challenging the validity, enforceability,

24  priority, perfection, characterization or amount of the Debtors' (and no other non debtor Credit

25  Party's) Prepetition Obligations or Prepetition Liens or (B) asserting any claims or causes of

26  action against any of the Prepetition Agent or Prepetition Secured Parties in their capacities as

27  such.  The Committee reserves the right to apply to the Bankruptcy Court to extend the

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

Investigation Period for cause.  Subject to the last sentence of this paragraph 13, if no such

adversary proceeding is duly commenced during the Investigation Period, (i) the claims of the

Prepetition Agent and Prepetition Secured Parties arising from the Debtors' Prepetition

Obligations and the Prepetition Liens shall constitute allowed claims against each applicable

Debtor and shall not be subject to any contest, objection, recoupment, counterclaim, defense,

offset, subordination, recharacterization, avoidance, or other claim, challenge, or cause of action

under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise and the Prepetition

Liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to any

objection, counterclaim, setoff, offset of any kind, subordination, or defense, and such liens are

otherwise unavoidable; and (ii) the Prepetition Agent and Prepetition Secured Parties shall not be

subject to any other or further claims, counterclaims, causes of action or lawsuits by any party-

in-interest or any successor thereto.  Subject to the last sentence of this paragraph 13, if any such

adversary proceeding or other appropriate proceeding is filed during the Investigation Period, the

stipulations, admissions, statements and conclusions set forth in recital paragraphs K(i) through

K(v), O and 6(j) of this Final Order shall nevertheless remain binding and preclusive (as

provided in the second sentence of this paragraph) on the Committee and on any other Person or

entity, except if such stipulation, admission, statement or conclusion has been expressly

challenged in an adversary proceeding or other appropriate proceeding filed within the

Investigation Period, in which event such exception shall apply only to the extent that a final,

non-appealable order finds in favor of the challenging party.  The stipulations, admissions,

statements and conclusions contained in this Final Order, including those set forth in recital

paragraphs K(i) through K(v), O and 6(j), shall inure to the benefit of the Prepetition Agent, the

Prepetition Secured Parties, Vista, the Debtors, each other Credit Party and their respective

successors and assigns.  For avoidance of doubt, there shall be no release under this Final Order

of, and subject to applicable non-bankruptcy law no deadline under this Final Order for any

person to investigate or commence an action in respect of, the Reserved Claims, which are

expressly preserved.  Notwithstanding anything herein to the contrary, (x) the Prepetition Agent

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1    may in its sole discretion extend the Investigation Period from time to time without further order

2    of this Court and (y) the stipulations, admissions, statements and conclusions of the Debtors

3    contained herein shall not be binding upon the Committee solely with respect to the Prepetition

4    Agent and Prepetition Secured Parties' (i) claims against any non-Debtor Credit Party and (ii)

5    liens against the assets of any non-Debtor Credit Party.

6            14.    **Intentionally Omitted**.

7            15.    **Events of Default; Remedies**.  The occurrence of any of the following

8    shall constitute an event of default (each, an "<u>Event of Default</u>"):

9            a.    An order of this Court shall be entered dismissing any of the Chapter

10    11 Cases, converting any of the Debtors' Chapter 11 Cases to ones under chapter 7 of the

11    Bankruptcy Code, appointing a chapter 11 trustee in any of the Chapter 11 Cases, or any

12    Debtor shall file a motion or other pleading seeking the dismissal of its Chapter 11 Case

13    under section 1112 of the Bankruptcy Code or otherwise, or an order of this Court shall

14    be entered appointing an examiner with expanded powers (provided that if any one or

15    more of the Prepetition Secured Parties requested or affirmatively consented to or joined

16    any request for such appointment, then such appointment shall not constitute an Event of

17    Default hereunder);

18            b.    An order of this Court shall be entered granting relief from the

19    automatic stay under section 362 of the Bankruptcy Code that would permit a party in

20    interest other than the Prepetition Agent to immediately exercise any rights or remedies

21    or consummate a foreclosure or foreclosures upon any material asset or upon all or any

22    material portion of the Prepetition Collateral or Postpetition Collateral;

23            c.    An order of this Court or any other court having jurisdiction to do so

24    shall be entered amending, supplementing, staying, vacating, reversing, revoking,

25    rescinding or otherwise modifying this Final Order (or any of the provisions thereof),

26    without the express written consent of the Prepetition Agent;

27

28

#4819-3933-7988v2

-37-

022537-0163-11403-Active.11741358.7

d.       An order of this Court (or any other court having jurisdiction to do so) shall be entered (x) granting any lien on or security interest (i) on property of the Debtors that is not permitted under the terms of the Prepetition Loan Documents and this Final Order, (ii) in any property of the estate of a Debtor in favor of any party other than the Prepetition Agent (on behalf of the Prepetition Secured Parties), the holder of any Permitted Lien or FCP Propco, LLC (as to perfected prepetition liens held by FCP PropCo, LLC) or (y) granting a Bankruptcy Code section 364 superpriority administrative claim against the Debtors to any party in interest other than the Prepetition Agent or the Prepetition Secured Parties, the holder of any Permitted Lien or FCP Propco, LLC (as to perfected prepetition liens held by FCP PropCo) in each case without the express written consent of the Prepetition Agent;

e.       An order of this Court or any other court having jurisdiction to do so shall be entered that approves any claims for recovery of amounts under section 506(c) of the Bankruptcy Code or otherwise arising from the preservation or disposition of any Prepetition Collateral or Postpetition Collateral, provided that (i) payments and deposits for the preservation of Prepetition Collateral or Postpetition Collateral made pursuant to customary first day motions concerning employee payroll and benefits, critical vendors, utilities and the like and (ii) payments and deposits made in respect of postpetition preservation of the Prepetition Collateral or Postpetition Collateral made in accordance with the Budget shall not result in the occurrence of an Event of Default hereunder;

f.       This Final Order shall cease to be in full force and effect and unstayed;

g.       The Debtors shall make any payment (including "adequate protection" payments) on or in respect of any prepetition indebtedness or prepetition obligations other than (i) to the Prepetition Secured Parties on account of the Prepetition Obligations under the Prepetition Loan Agreement, the other Prepetition Loan Documents and (to the extent applicable) the Secured Hedge Agreements and prepetition agreements relating to

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

agency fees and the Cash Management Obligations, or (ii) as permitted under this Final Order or orders of this Court approving "first day motions" and "second day motions";

h.       Five (5) Business Days following delivery to counsel to the Debtors, any Committee and the U.S. Trustee of written notice from the Prepetition Agent of the Debtors' failure to comply with the terms of the Interim Order or this Final Order; provided that the failure to make any payment to the Prepetition Agent for its own account or for the account of any Prepetition Secured Party within one (1) Business Day of the date when due shall be an immediate Event of Default;

i.       The cash expenditures of the Debtors, the Guarantors, the Drop Down Borrowers or Vista (inclusive of Drop Down Loans) exceed those permitted by the Budget (subject to the permitted expenditure variances) or this Final Order without prior written consent of the Prepetition Agent and the prepetition Required Lenders, or there shall at any time be no approved Budget in full force and effect;

j.       Except to the extent necessary to preserve and assert Reserved Claims, the Debtors shall seek to, or shall support (in any such case by way of, inter alia, any motion or other pleading filed with this Court or any other writing to another party in interest executed by or on behalf of the Debtors) any other person's motion to disallow or subordinate in whole or in part the Prepetition Agent's or any Prepetition Secured Party's claim in respect of the Prepetition Obligations or Superpriority Claims, or to challenge the validity, enforceability, perfection or priority of the liens in favor of the Prepetition Agent or the Prepetition Secured Parties (including, without limitation, any Prepetition Liens);

k.       The Debtors shall file any motion seeking to obtain credit (other than the Postpetition Facility) from any party other than Vista or the Prepetition Agent and the Prepetition Lenders unless, in connection therewith, all of the Prepetition Obligations and the Superpriority Claims shall first be paid indefeasibly in full in cash (including the cash collateralization of any Letters of Credit);

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1    l.    The Debtors shall make any payment on or in respect of the

2    Postpetition Facility, or Vista shall seek enforcement of any rights in respect thereof,

3    before the Prepetition Obligations and the Superpriority Claims shall first be paid

4    indefeasibly in full in cash (including the cash collateralization of any Letters of Credit);

5    m.    (i) Five (5) Business Days following delivery to counsel to the

6    Debtors, the Committee and the U.S. Trustee of written notice from the Prepetition Agent

7    that the Debtors have filed a motion, pleading or proceeding which could reasonably be

8    expected to result in a material impairment of the rights or interests of the Prepetition

9    Agent or the Prepetition Secured Parties or (ii) on the later of (a) the date upon which

10   there is an order entered by a court with respect to a motion, pleading or proceeding

11   brought by another party which results in such a material impairment, or (b) the date that

12   is five (5) Business Days following delivery to the Debtors, the Committee and the U.S.

13   Trustee of written notice from the Prepetition Agent that the such an order will be or has

14   been entered;

15   n.    The board of directors of SCI shall authorize a liquidation of the Credit

16   Parties' business that is not reasonably expected to result in the payment in full of all of

17   the Prepetition Obligations and the Superpriority Claims;

18   o.    Any subsidiary of a Debtor which is a Loan Party files a chapter 11

19   petition in any court other than this Court, and, in the event of a filing in this Court, fails

20   to become subject to and bound by this Final Order within five Business Days of such

21   filing, pursuant to an order of this Court in form and substance satisfactory to the

22   Prepetition Agent;

23   p.    The Debtors shall propose any plan of reorganization which fails to

24   provide for an Acceptable Prepetition Treatment or solicit ballots for any such plan, or

25   the Debtors shall take any action in support of such a plan;

26   q.    The Debtors shall file any pleading seeking, or otherwise consenting

27   to, or shall otherwise affirmatively act in support of, or affirmatively take any action to

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1   acquiesce in, any other person's motion as to, any of the matters set forth in paragraphs

2   15(a) through (h), (k), (l) and (n) above;

3           r.      11:59 p.m. (New York City time) on March 31, 2010, unless the Plan

4   Effective Time (as defined in the Forbearance Agreement) has occurred at or prior to

5   such time;

6           s.      Any time after the entry of the initial order regarding FCP Propco's

7   use of its cash collateral and the provision of adequate protection, FCP PropCo shall not

8   have the right to use its cash collateral for more than 5 consecutive Business Days,

9   provided that if such termination occurs as a result of (i) the rejection of the Master

10  Lease, (ii) a challenge of the liens of the lenders to FCP Propco or (iii) the Debtors failure

11  to make payments required under the Master Lease as a result of a Budget that does not

12  provide for such payments, then such termination shall not constitute an Event of Default

13  under this Final Order; or

14          t.      the earlier of (a) ten (10) days following the Plan Effective Time (as

15  defined in the Forbearance Agreement) and (b) April 10, 2010, unless a plan of

16  reorganization which provides for an Acceptable Plan Treatment shall have been

17  consummated in accordance with the terms and conditions of such plan.

18

19  Upon the occurrence of an Event of Default, the Prepetition Agent shall give written notice

20  thereof to counsel to the Debtors, the U.S. Trustee and the Committee.  Upon receipt of such

21  notice, the Debtors, the U.S. Trustee or the Committee may seek a determination of this Court as

22  to the sole question of whether an Event of Default has actually occurred.  Unless this Court has

23  within five Business Days following the giving of such default notice ruled that the Event of

24  Default identified in the notice did not occur, then on the sixth Business Day following the

25  giving of such notice and at all times thereafter, the Prepetition Agent and the Prepetition

26  Secured Parties may, in their absolute and sole discretion, exercise all rights and remedies and

27  take all or any actions under this Final Order (including, without limitation, the termination of

28

#4819-3933-7988v2

-41-

1    the Debtors' right to use Cash Collateral) without further modification of the automatic stay

2    pursuant to section 362 of the Bankruptcy Code (which will be deemed to be modified and

3    vacated to the extent necessary to permit such exercise of rights and remedies and the taking of

4    such actions) or further order of or application to this Court; provided that, notwithstanding the

5    foregoing, the automatic stay imposed by section 362 of the Bankruptcy Code shall not be

6    deemed automatically modified to permit the Prepetition Agent and the Prepetition Secured

7    Parties to exercise all rights and remedies under the Prepetition Loan Documents with respect to

8    the Prepetition and Postpetition Collateral of the Debtors (other than with respect to terminating

9    the right to use Cash Collateral (which, for the avoidance of doubt, shall be terminable upon the

10   occurrence of any Event of Default)) unless a payment or other material Event of Default has

11   occurred and is continuing (it being understood and agreed that the Debtors, U.S. Trustee and the

12   Committee may challenge the existence of a payment or other material Event of Default).

13   Unless the Court determines within five Business Days of delivery of a notice of material default

14   by the Prepetition Agent that a payment or other material Event of Default has not occurred and

15   is not continuing, the Prepetition Agent may exercise all of its rights and remedies under the

16   Prepetition Loan Documents with respect to the Debtors and their assets.  Notwithstanding the

17   immediately preceding sentence, following the giving of a written notice by the Prepetition

18   Agent of the occurrence of an Event of Default and the exercise of rights and remedies in

19   connection therewith, the Debtors may, upon notice, seek non-consensual use of Cash Collateral

20   and use of post petition financing from Vista or Past Enterprises on an emergency basis, and the

21   Prepetition Agent and the Prepetition Secured Parties hereby reserve all of their rights to contest

22   such further use of Cash Collateral or postpetition financing.  Termination of the use of the

23   Prepetition Collateral, including Cash Collateral, authorized herein shall not impair the

24   continuing effectiveness and enforceability of all other provisions in this Final Order. The

25   Prepetition Agent may make payments and other distributions to the Prepetition Secured Parties

26   in connection with and as otherwise allowed by this Final Order, and all of the indemnifications

27   and similar provisions in favor of the Administrative Agent set forth in the Prepetition Loan

28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1    Documents shall continue in full force and effect in respect of any actions taken by the

2    Prepetition Agent in connection with or as otherwise allowed by this Final Order.  In no event

3    shall any such action taken by the Prepetition Agent be deemed gross negligence or willful

4    misconduct for the purposes of section 10.05 of the Prepetition Credit Agreement.

5            16.      **Recording of Security Interests**.  The Prepetition Agent is hereby

6    authorized, but not required, to file or record financing statements, trademark filings, copyright

7    filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take possession

8    of or control over, or take any other action in order to validate and perfect the liens and security

9    interests granted to it hereunder.  Whether the Prepetition Agent shall, in its sole discretion,

10   choose to file such financing statements, trademark filings, copyright filings, mortgages, notices

11   of lien or similar instruments, or take possession of or control over, or otherwise confirm

12   perfection of the liens and security interests granted to it hereunder, such liens and security

13   interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to

14   challenge dispute or subordination, at the time and on the date of entry of the Interim Order.  A

15   certified copy of the Interim Order or this Final Order may, in the discretion of the Prepetition

16   Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such

17   financing statements, mortgages, notices of lien or similar instruments, and all filing offices are

18   hereby authorized to accept such certified copy of the Interim Order or this Final Order for filing

19   and recording.

20           17.      **Limitation on Charging Expenses Against Collateral**.  No expenses of

21   administration (whether incurred during the Chapter 11 Cases or any subsequent cases) incurred

22   for the preservation or protection of the Prepetition Collateral or the Postpetition Collateral

23   incurred while the Debtors are authorized to use Cash Collateral under this Final Order shall be

24   charged against or recovered from of the Prepetition Collateral or the Postpetition Collateral

25   pursuant to Bankruptcy Code section 506(c) or any similar principal of law or equity without the

26   express prior written consent of the Prepetition Agent.

27

28

#4819-3933-7988v2

-43-

022537-0163-11403-Active.11741358.7

18. **No Release of Non-Debtors**. Nothing contained in this Final Order shall be deemed to terminate, modify or release any obligations of any non-debtor third party liable to the Prepetition Agent and/or the Prepetition Secured Parties with respect to any Prepetition Obligations or otherwise.

19. **Objections Overruled**. Any objection which has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.

20. **Order Governs.** In the event of any inconsistency between the provisions of this Final Order and the DIP Credit Agreement, the provisions of this Final Order shall govern.

21. **Findings of Fact, Conclusions of Law**. The findings of fact and conclusions of law of this Court pursuant to this Final Order shall be deemed effective upon the date of entry of this Final Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed such.

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1    22.    **Retention of Jurisdiction**.  This Court shall, and hereby does, retain

2    jurisdiction with respect to all matters arising from or related to the implementation and

3    interpretation of this Final Order.

4    SUBMITTED BY:

5    Paul S. Aronzon (CA State Bar No. 88781)
     Thomas R. Kreller (CA State Bar No. 161922)
6    MILBANK, TWEED, HADLEY & McCLOY LLP
7    601 South Figueroa Street, 30th Floor
     Los Angeles, California 90017
8
9    Reorganization Counsel for
     Debtors and Debtors in Possession
10
11   Bruce T. Beesley, #1164
     Laury Macauley, #11413
12   LEWIS AND ROCA LLP
     50 W. Liberty Street, Ste. 410
13   Reno, NV 89501

14   Proposed Local Reorganization Counsel
     For Debtors and Debtors in Possession
15
16   Approved/Disapproved
17   Sallie B. Armstrong
18   DOWNEY BRAND LLP
     427 West Plumb Lane
19   Reno, NV  89509

20   Attorneys for the Independent Lenders

21

22                                        # # #

23

24

25

26

27

28
     -45-

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Station Casinos, Inc.**
**Schedule 1 to Cash Collateral Order**
**Guarantors**

| Company | Legal Form | Ownership % | Designation |
|---|---|---|---|
| Boulder Station, Inc. | Corp | 100% | Restricted Sub |
| Charleston Station, LLC | LLC | 100% | Restricted Sub |
| Fiesta Station, Inc. | Corp | 100% | Restricted Sub |
| Gold Rush Station, LLC | LLC | 100% | Restricted Sub |
| Lake Mead Station, Inc. | Corp | 100% | Restricted Sub |
| Magic Star Station, LLC | LLC | 100% | Restricted Sub |
| Palace Station Hotel & Casino, Inc. | Corp | 100% | Restricted Sub |
| Past Enterprises, Inc. | Corp | 100% | Restricted Sub |
| Rancho Station, LLC | LLC | 100% | Restricted Sub |
| Santa Fe Station, Inc. | Corp | 100% | Restricted Sub |
| Station Holdings, Inc. | Corp | 100% | Restricted Sub |
| Sunset Station, Inc. | Corp | 100% | Restricted Sub |
| Texas Station, LLC | LLC | 100% | Restricted Sub |
| Tropicana Station, Inc. | Corp | 100% | Restricted Sub |
| | | | |
| Centerline Holdings, LLC | LLC | 100% | Immaterial Sub |
| LML Station, LLC | LLC | 100% | Immaterial Sub |
| Station Construction, LLC | LLC | 100% | Immaterial Sub |
| STN Aviation, Inc. | Corp | 100% | Immaterial Sub |
| | | | |
| Fresno Land Acquisitions, LLC * | LLC | 100% | Native American Sub |
| SC Butte Development, LLC * | LLC | 100% | Native American Sub |
| SC Butte Management, LLC * | LLC | 100% | Native American Sub |
| SC Madera Development, LLC * | LLC | 100% | Native American Sub |
| SC Madera Management, LLC * | LLC | 100% | Native American Sub |
| SC Sonoma Development, LLC * | LLC | 100% | Native American Sub |
| SC Sonoma Management, LLC * | LLC | 100% | Native American Sub |
| Sonoma Land Holdings, LLC * | LLC | 100% | Native American Sub |
| Station California, LLC * | LLC | 100% | Native American Sub |
| Station Development, LLC * | LLC | 100% | Native American Sub |
| | | | |

*All transfers from SCI to a Native American Subsidiary shall be funded and administered for all purposes as if such Native American Subsidiary was a "Drop Down Borrower" listed on Schedule 2.

1

**Station Casinos, Inc.**
**Schedule 2 to Cash Collateral Order**
**Non-Guarantor Unrestricted Subsidiaries and Joint Ventures**

| Company | Legal Form | Ownership % | Designation |
|---|---|---|---|
| Aliante Station, LLC | LLC | 100% | Unrestricted Sub |
| Auburn Development, LLC | LLC | 100% | Unrestricted Sub |
| Durango Station, Inc. | Corp | 100% | Unrestricted Sub |
| Green Valley Station, Inc. | Corp | 100% | Unrestricted Sub |
| GV Ranch Station, Inc. | Corp | 100% | Unrestricted Sub |
| Inspirada Station, LLC | LLC | 100% | Unrestricted Sub |
| Northern NV Acquisitions, LLC | LLC | 100% | Unrestricted Sub |
| Reno Land Holdings, LLC | LLC | 100% | Unrestricted Sub |
| Palms Station, LLC | LLC | 100% | Unrestricted Sub |
| SC Durango Development, LLC | LLC | 100% | Unrestricted Sub |
| SC Michigan, LLC | LLC | 100% | Unrestricted Sub |
| SC Rancho Development, LLC | LLC | 100% | Unrestricted Sub |
| Sonoma Land Acquisition Company, LLC | LLC | 100% | Unrestricted Sub |
| Town Center Station, LLC | LLC | 100% | Unrestricted Sub |
| Tropicana Acquisitions, LLC | LLC | 100% | Unrestricted Sub |
| Your Move, Inc. | Corp | 75% | Unrestricted Sub |
|  |  |  |  |
| Aliante Holding, LLC | LLC | 50% | Joint Venture |
| Greens Café, LLC | LLC | 50% | Joint Venture |
| Town Center Amusements, Inc., a limited liability company | LLC | 50% | Joint Venture |
| Sunset GV, LLC | LLC | 50% | Joint Venture |
| Green Valley Ranch Gaming, LLC | LLC | 50% | Joint Venture |
| Rancho Road, LLC | LLC | 50% | Joint Venture |
| Durango Station Retail, LLC | LLC | 50% | Joint Venture |
| MPM Enterprises, LLC | LLC | 50% | Joint Venture |
| SCI/CE Rohnert Park, LLC | LLC | 50% | Joint Venture |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

#4819-3933-7988v2

022537-0163-11403-Active.11741358.7