Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:    (775) 823-2900
Facsimile:    (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

In re:

STATION CASINOS, INC.

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Northern NV Acquisitions, LLC
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-52477
Jointly Administered
BK 09-52470 through BK 09-52487

**COVER SHEET TO FIRST INTERIM FEE APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP FOR ENTRY OF AN ORDER FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JULY 28, 2009 UP TO AND THROUGH NOVEMBER 30, 2009 PURSUANT TO 11 U.S.C. §§ 105(a) AND 331 AND FED. R. BANKR. P. 2016**

Hearing Date:    February 25, 2010
Hearing Time:    10:00 a.m.
Place:    300 Booth Street
            Reno, NV 89509

#4830-9072-7941

| | | |
|---|---|---|
| 1 | Fee Application: | First Interim |
| 2 | Applicant: | Milbank, Tweed, Hadley & McCloy LLP |
| 3 | Time Period: | July 28, 2009 – November 30, 2009 |
| 4 | Capacity: | Reorganization counsel to Station Casinos Inc., et al. |
| 5 | Total Amount Requested: | $4,141,457.63 |
| 6 | Total Fees: | $3,985,219.75 |
| 7 | Number of Hours: | 5821.20 |
| 8 | Total Expenses: | $156,237.88 |
| 9 | Total Received: | $2,346,361.86 |
| 10 | Fees and Expenses Outstanding: | $1,845,464.73 |
| 11 | Blended Rate (Attorneys): | $724.78 |
| 12 | Previous Applications: | None |
| 13 | Summary by Billing Professional: | See Exhibit 2 |
| 14 | Summary of Expenses by Type: | See Exhibits 5 and 6 |
| 15 | Detailed Itemization of Services Rendered | See Exhibit 7 |

#4830-9072-7941

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:    (775) 823-2900
Facsimile:    (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Local Reorganization Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>STATION CASINOS, INC.<br><br>☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects Northern NV Acquisitions, LLC<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC | Chapter 11<br><br>Case No. BK-09-52477<br>Jointly Administered<br>BK 09-52470 through BK 09-52487<br><br>**FIRST INTERIM FEE APPLICATION OF MILBANK, TWEED, HADLEY & McCLOY LLP FOR ENTRY OF AN ORDER FOR ALLOWANCE OF FEES AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JULY 28, 2009 UP TO AND THROUGH NOVEMBER 30, 2009 PURSUANT TO 11 U.S.C. §§ 105(a) AND 331 AND FED. R. BANKR. P. 2016**<br><br>Hearing Date:    February 25, 2010<br>Hearing Time:    10:00 a.m.<br>Place:    300 Booth Street<br>        Reno, NV 89509 |

**TO THE HONORABLE GREGG W. ZIVE, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

By this application (the "First Interim Application"), Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), as reorganization counsel for the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), seeks entry of an order, *inter alia*: (i) awarding and allowing interim compensation to Milbank for services rendered and expenses incurred in its

#4830-9072-7941                                     -1-

representation of the Debtors during the period from July 28, 2009 to November 30, 2009 (the "First Interim Period"), in the total amount of $4,141,457.63, comprised of interim fees in the amount of $3,985,219.75 and expenses incurred in the amount of $156,237.88; (ii) authorizing the Debtors to pay Milbank the unpaid balance of interim fees in the amount of $1,845,464.73; and (iii) granting to the Debtors and Milbank any other relief that this Court deems necessary and appropriate. Milbank submits this First Interim Application pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016 Authorizing and Establishing Procedures for Interim Compensations and Reimbursement of Expenses of Professionals* [Docket No. 60] (the "Interim Fee Order") entered by this Court on August 7, 2009, Sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Bankruptcy Rule 2016, and the Guidelines for Reviewing Applications for Compensations & Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Fee Guidelines").  Filed contemporaneously herewith and in support of the First Interim Application, Milbank submits the declaration of Paul S. Aronzon (the "Aronzon Decl."), the statement of Richard Haskins (the "Haskins Stmt."), and each of the Exhibits annexed hereto and described more fully herein.  In support of the First Interim Application, Milbank represents as follows:

**I.    JURISDICTION AND RELIEF REQUESTED**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory basis for the relief requested herein is Sections 105(a) and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Bankruptcy Rule 2016 and the Fee Guidelines.

3. By this First Interim Application, Milbank requests entry of an order, (i) awarding and allowing interim compensation to Milbank for services rendered and expenses incurred during the First Interim Period in the total amount of $4,141,457.63; (ii) authorizing the Debtors to pay Milbank the unpaid balance of interim fees in the amount of $1,845,464.73; and (iii) granting to the Debtors and Milbank any other relief that this Court deems necessary and appropriate.

## II. BACKGROUND

4. On July 28, 2009 (the "Petition Date"), the Debtors commenced with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Pursuant to this Court's order, the Debtors' chapter 11 cases (the "Chapter 11 Cases") are being jointly administered for procedural purposes.

5. On August 13, 2009, the United States Trustee for the District of Nevada (the "US Trustee") appointed an Official Committee of Unsecured Creditors in the Debtors' Chapter 11 Cases (the "Committee").

A. Case Status

6. At this time, the Debtors have not filed a plan of reorganization or disclosure statement. Pursuant to this Court's *Order Pursuant To 11 USC 1121(d) Extending Exclusivity Periods Within Which Debtors May File A Plan of Reorganization and Solicit Acceptances Thereto* [Docket No. 703], the Debtors expect to file a plan of reorganization and disclosure statement on or before March 25, 2010. It is believed that the estate has sufficient funds to cover unpaid administrative expenses.

B. Milbank Retention

7. On August 13, 2009, the Debtors filed their *Application for an Order Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a), 2016(b) and 5002, and Local Rule 2014 Authorizing Employment and Retention of Milbank, Tweed, Hadley & McCloy LLP as Counsel for the Debtors* [Docket No. 110] (the "Milbank Application"). On September 18, 2009, this Court approved Milbank as the Debtors' reorganization counsel pursuant to the *Order Pursuant to 11 U.S.C. § 327(a), Fed. R. Bankr. P. 2014(a), 2016(b) and 5002, and Local Rule 2014 Authorizing Employment and Retention of Milbank, Tweed, Hadley & McCloy LLP as Counsel for the Debtors* [Docket No. 329] (the "Employment Order").

8. Milbank's nationally-recognized reorganization practice group is uniquely qualified to represent the Debtors in these Chapter 11 Cases. Having advised the Debtors prior to the Petition Date in connection with their restructuring efforts, including extensive discussions and

negotiations with all of the Debtors' major constituents, Milbank's professionals are well-acquainted with the Debtors' business operations and capital structure.

9. As set forth herein, the Milbank attorneys who have been principally responsible for rendering services to the Debtors have been Paul S. Aronzon, Thomas R. Kreller, Kenneth Baronsky, Gregory Evans, Linda Dakin-Grimm, David E. Isenberg, Fred Neufeld, Robert C. Shenfeld and Bria LaSalle Mertens. Other Milbank attorneys have rendered limited services on discrete matters from time to time, as necessary. In general, tasks have been allocated among Milbank's attorneys based upon the comparative expertise of a particular attorney in various aspects of these cases. Whenever feasible, work was allocated to attorneys with lower hourly rates. During the First Interim Period, Milbank strove to represent the Debtors as effectively and efficiently as possible.

10. The terms of the *Stipulation and Final Order For (i) Adequate Protection and (ii) Use of Cash Collateral With Respect to Secured Loans to FCP PropCo, LLC* [Docket No. 295] require payment for Milbank's services rendered and fees, costs, and expenses incurred on behalf of Debtor FCP PropCo, LLC ("PropCo") to be paid directly from PropCo. As a result, Milbank established a separate set of billing codes to correctly isolate PropCo's fees and expenses from those incurred on behalf of the other Debtors.

C. Billing History and Monthly Statements

11. In accordance with the terms of the Interim Fee Order, during the First Interim Fee Period Milbank filed monthly statements with the Court providing the information required by the Interim Fee Order detailing, for each particular month, the fees incurred by Milbank by category of services rendered and aggregate amount of fees and by category of expenses (each a "Monthly Statement"). Milbank has filed Monthly Statements for the Debtors (other than PropCo[1]) and for PropCo for each of the months of August 2009 (which included the Petition Date through August 31, 2009) [Docket No. 409], September 2009 [Docket No. 488], October 2009 [Docket No. 577], and November 2009 [Docket No. 719] (collectively, the "First Interim Fee Period Monthly Statements"). The First Interim Fee Period Monthly Statements were served on the Debtors, the US Trustee, counsel

---

[1] For purposes of clarity, the term "Debtor Ensemble" will be used to describe the Debtors other than PropCo.

#4830-9072-7941                         -4-

for the Committee, Lewis and Roca, LLP, and Deutsche Bank Trust Company Americas, the individuals and entities entitled to service and the opportunity to object provided in the Interim Fee Order (collectively, the "Notice Parties").

12. In addition to the filing and serving Monthly Statements, Milbank provided the Debtors with separate detailed billing statements to support the fees and expenses set forth in each Monthly Statement, separated into statements for the Debtor Ensemble and PropCo.

13. Neither the Debtors, nor any party in interest objected to any of the Monthly Statements. Accordingly, at the conclusion of each applicable objection period provided in the Interim Fee Order, Milbank filed "Certificates of No Objection" notifying all parties in interest of such fact [Docket Nos. 570, 680, and 789] (collectively, the "CNOs"). As set forth in, and in accordance with, the Interim Fee Order, upon filing the CNOs, Milbank was entitled to be paid, and was paid, by the Debtors eighty (80%) percent of the fees and one hundred (100%) percent of the expenses requested in the Monthly Statements in accordance with the Interim Fee Order. The monthly fees and expenses incurred, and payments received by Milbank during the First Interim Period are described in Exhibit 1.

### III. FIRST INTERIM FEE APPLICATION

14. Milbank seeks interim approval of the sum of $3,985,219.75 (100%) for actual, reasonable and necessary legal services rendered on behalf of the Debtors and $156,237.88 (100%) for reimbursement of its actual, reasonable and necessary expenses incurred in connection with rendering such services. The fees sought reflect an aggregate of 5,822 hours of attorney and paraprofessional time spent and recorded in performing services for the Debtors at a blended average hourly rate of $684.54 for both attorneys and paraprofessionals. The blended hourly rate for attorneys only is $724.78.

A. Payments Received

15. During the First Interim Period, Milbank received interim payments from the Debtor Ensemble for fees in the aggregate amount of $2,174,721.73 and payments from expenses in the aggregate amount of $171,640.13. Certain expenses relating to administrative support were inadvertently included in certain of the First Interim Fee Period Monthly Statements, and the balance currently owed to Milbank has been adjusted to reflect that error. At present, the Debtor Ensemble

1  November Monthly Statement and all of the PropCo First Interim Period Monthly Statements remain
2  outstanding. As a result, the balance owed to Milbank for services rendered during the First Interim
3  Period is $1,845,464.73

4  B.     Exhibits

5           16.     The following exhibits are annexed to this Application:

6           <u>Exhibit 1</u> contains a summary of the monthly fees and expenses incurred, and
7  payments received by Milbank during the First Interim Period.

8           <u>Exhibit 2</u> contains the billing rates for all Milbank professionals that rendered services
9  to the Debtors during the First Interim Period, and a summary of the hours billed and fees incurred on
10 behalf of the Debtors by each of those individuals during the First Interim Period.

11          <u>Exhibits 3</u> and <u>4</u> contain summaries of the total fees incurred for each of the activity
12 categories on a monthly basis for each activity category during the First Interim Period.

13          <u>Exhibits 5</u> and <u>6</u> contain a summary of the total expenses incurred on a monthly basis
14 for each expense category during the First Interim Period.

15          <u>Exhibit 7</u> contains copies of Milbank's monthly invoices, sorted by activity code
16 category, which describe in detail all services and expenses incurred by Milbank during the First
17 Interim Period.

18 D.     <u>Summary of Services Rendered</u>

19          17.     During the First Interim Period, Milbank represented the Debtors in all aspects
20 of these Chapter 11 Cases. The full scope of services rendered by Milbank is set forth in detail in the
21 billing reports attached hereto as <u>Exhibit 7</u> (the "<u>Billing Reports</u>"). The Billing Reports set forth a
22 chronological, detailed description of the services rendered by Milbank professionals for each of the
23 activity code categories described below. The summary of services rendered set forth herein is
24 intended as a general summary only and is not meant to be a detailed description of all work performed.
25 Additional details on the following specific tasks performed by Milbank may be gleaned from the
26 Billing Reports.

27          18.     It is Milbank's normal business practice to charge its clients in full for services
28 rendered and all actual and necessary out-of-pocket costs and expenses incurred by Milbank in

#4830-9072-7941                         -6-

providing those services. In the ordinary course of its business, Milbank maintains records of time expended by attorneys, legal assistants, case managers and case clerks in rendering services to its clients. Time records are made substantially contemporaneously with the rendition of these professional services and are prepared by the attorneys, legal assistants, case managers and case clerks who have rendered the services. In bankruptcy matters, time records are kept in 6 minute (.1 hour) increments.

19. In accordance with the Fee Guidelines and pursuant to its normal business practice in bankruptcy cases, Milbank classified all services performed for which compensation is being sought into separate and distinct activity code categories. Milbank attempted to place the services performed in the category that best relates to the service provided. However, because certain services may related to one or more categories, services that relate to one category may, in fact, be included in another category. The categorical summary of services rendered to the Debtors during the First Interim Period is set forth below.

(i) <u>Services Rendered to Debtors (other than PropCo.)</u>

(a) <u>Asset Disposition (40018-00200).</u> Milbank provided services related to the disposition of various estate assets, including a corporate aircraft.

(b) <u>Business Analysis and Operations (40018-00300)</u> Milbank worked closely with the Debtors as they entered the role of debtors in possession of their Chapter 11 estates. Milbank professionals expended time in this category reviewing documents provided by the Debtors relating to the multi-faceted aspects of their businesses. Milbank performed extensive analysis of the Debtors' capital structure as well as the structure of various financing ventures involving SCI's non-debtor subsidiaries to determine the extent to which they would be implicated in future restructuring efforts by and among the Debtors. Much of the focus of this analysis revolved around the restructuring and reevaluation of certain joint ventures to which SCI is a party.

(c) <u>Case Administration (40018-00400)</u>. Milbank attorneys expended considerable time and effort attending to the administrative aspects of the Debtors' cases. Among other things, Milbank (i) advised the Debtors in connection with the chapter 11 process and the associated duties and responsibilities attendant to chapter 11 debtors; (ii) participated in numerous teleconferences and

#4830-9072-7941 -7-

meetings concerning the administration of the Chapter 11 Cases; (iii) assisted the Debtors' management in interpreting and complying with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable statutes and guidelines, as well as with the consideration of and compliance with certain deadlines imposed by this Court or applicable authority. Milbank also oversaw and worked with Kurtzman Carson Consultants ("KCC"), the Debtors' notice, claims, and balloting agent in the Chapter 11 Cases, to coordinate the service of pleadings as well as notices of hearings and other documents requiring service. In addition, Milbank's paraprofessionals maintained an internal database of pleadings and other documents related to the Chapter 11 Cases. In the weeks following the Petition Date, Milbank professionals met internally on a regular basis to appropriately assign and discuss upcoming tasks and deadlines related to the Chapter 11 Cases. Milbank also oversaw the preparation and distribution of agendas for hearings held in the First Interim Period.

(d) Claims Administration (40018-00500). Milbank handled a series of claims-related issues regarding vendors. In addition, Milbank corresponded with KCC and the US Trustee regarding the procedures for submitting proofs of claim.

(e) Employee Benefits/Pensions (40018-00600). Milbank advised the Debtors on various issues relating to employee benefits and pensions. Tasks in this category include, but are not limited to, reviewing the Debtors' benefit and compensation plans, teleconferences regarding payments made from such plans, and preparation of supplemental pleadings regarding Court approval of prepetition wage claims for employees with salaries above the statutory cap.

(f) Fee/Employment Applications (40018-00700). Milbank prepared and submitted retention applications for the Firm and other Debtor professionals engaged in the Chapter 11 Cases. In addition, Milbank professionals advised the Debtors in connection with their obligations under the Interim Fee Order regarding payment of other retained and ordinary course professionals' monthly invoices as well as the invoices for parties' professionals under the applicable post-petition financing agreements. Milbank also assisted the Debtors with administering the retention questionnaires to various professionals used in the Debtors' ordinary course of business. Other tasks in this category include, but are not limited to, the review and preparation of First Interim Fee Period Monthly Statements, compilation and maintenance of a comprehensive chart detailing the requested payment for

all professionals in the Chapter 11 Cases, and the review of conflicts searches relating to Milbank's retention.

(g) <u>Fee/Employment Objections (40018-00800)</u>. Milbank conducted research on various issues specific to objections to certain retention applications filed in the Chapter 11 Cases. In addition, Milbank drafted and prosecuted successfully the *Objection to Application for an Order Pursuant to 11 U.S.C. Sec. 328 and 1103, FRBP 2014 and Local Rule 2014, Authorizing Employment and Retention of Sierra Consulting Group, LLC, as Consulting Expert* [Docket No. 533].

(h) <u>Financing (40018-00900)</u>. Milbank professionals performed numerous tasks related to the Debtors' DIP financing and use of cash collateral including, among other things, negotiations with lenders (the "<u>OpCo Lenders</u>" and the "<u>PropCo Lenders</u>") under the Debtors' two principal credit facilities, as well as drafting motions and stipulations to reflect the negotiated terms governing the Debtors' use of cash collateral. In furtherance thereof, Milbank attorneys attended and participated in numerous meetings, teleconferences and correspondence to, among other things, finalize the terms of a DIP credit agreement and an approved budget for SCI to follow throughout the first 13 weeks of the Chapter 11 Cases. In addition, Milbank spent considerable time responding to various objections raised by a subset of OpCo Lenders (the "<u>Independent Lenders</u>") regarding SCI's use of cash collateral. These activities included, among other things, drafting responsive pleadings, conducting legal research, preparing for hearings, and interacting with the Committee regarding the objection.

(i) <u>Litigation (40018-01000)</u>. Milbank professionals spent time responding to and propounding discovery requests in connection with various motions filed in the First Interim Period. These activities included, among other things, reviewing requested documents for privilege, creating a privilege opinion, review of documents produced through discovery, drafting memoranda regarding discovered documents, and coordinating the logistics related to document production. In connection with the receipt of various discovery requests, Milbank also corresponded with various parties with respect to confidentiality needs and the possibility of protective orders.

In addition, Milbank conducted careful review of the findings of the Special Litigation Committee of the Board of Directors of Station Casinos, Inc. (the "<u>Special Litigation Committee</u>") filed the *Report of Investigation by Special Litigation Committee of the Board of Directors of Station*

*Casinos, Inc.* (the "Investigation Report") (Docket No. 353) on September 22, 2009.  Milbank professionals conducted a careful review of the findings in the Investigation Report, as well as other documents related thereto.

   (j)  Meetings of Creditors (and Committee-Related Issues) (40018-01100).  Milbank spent time conferring with various creditor constituencies, including the Committee, developing and analyzing various strategies for approaching these Chapter 11 Cases.  Tasks preformed in this category include, but are not limited to, teleconference and email correspondence with the OpCo Lenders, PropCo Lenders, Independent Lenders and the Committee's counsel and other creditor representatives with respect to term sheets, proposed orders, motions, and other documents and responding to general inquiries from Creditors.

   (k)  Plan and Disclosure Statement (40018-01200).  Milbank spent considerable time holding meetings and teleconferences related to the formulation or the Debtors' plan of reorganization and disclosure statement.  Task performed in this category include, but are not limited to, reviewing documents prepared by various parties in interest and meetings with financial advisors, members of the Committee, the Special Litigation Committee to the SCI Board of Directors, and members of the Debtors' senior management.  Several term sheets and other supporting documentation were drafted, as well as draft forms of the plan of reorganization and disclosure statement.

   (l)  Tax Issues (40018-01400).  Milbank attorneys spent time analyzing various tax implications of any restructuring of the Debtors' businesses.  In addition to internal strategy meetings, Milbank corresponded frequently with the Debtors' tax professionals.

   (m)  Valuation (40018-01500).  Milbank billed time to this category in connection with its review of the valuation analysis prepared by Lazard, the Debtors' financial advisor.

   (n)  Non-Working Travel (40018-01600).  This category includes all of Milbank's non-working travel time, for which Milbank seeks compensation for one-half of its professionals' time.

   (o)  Automatic Stay Enforcement and Litigation (40018-01700).  Milbank advised the Debtors in connection with a relief from stay motion filed by Josh Lukevich, Cathy Scott and Julie St. Cyr, plaintiffs in a class action law suit against SCI and several non-debtor subsidiaries that is currently taking place in Nevada State Court.  Tasks performed in this category include, but are not limited to,

#4830-9072-7941  -10-

the review and analysis of the relief from stay motion and the drafting and prosecuting of an objection to such motion.

(p) Exclusivity Issues (40018-01800). Milbank performed work related to the extension of the Debtors' exclusivity periods. Milbank drafted and filed on October 23, 2009, the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 1121(d), Fed. R. Bankr. Procedure 9014 and Local Rule 9014 for an Order Extending the Debtors' Exclusive Periods Within Which to File a Plan of Reorganization and Solicit Acceptances Thereto* (the "Exclusivity Motion") [Docket No. 505]. Milbank analyzed and responded to several objections to the Exclusivity Motion. Milbank drafted and filed an omnibus reply to objections from the Independent Lenders, PropCo and Mezzanine Lenders and the Administrative Agent. Concurrently, Milbank drafted and filed a reply to Boyd Gaming Corporation's *Limited Opposition to Debtors' Motion to Extend Exclusivity, and Limited Joinder in Motions of Independent Lenders for an Examiner*.

(q) Real Property Issues (40018-01900). Milbank advised the Debtors with respect to certain real estate leases. Milbank analyzed and reviewed ongoing obligations under the leases and certain joint venture agreements. In connection with such obligations, Milbank drafted notices, consents and various other agreements. In addition, Milbank negotiated and drafted documents related to a water easement granted to the state of Nevada.

(r) Debtor In Possession Meetings and Communications (40018-00900). The time in this category consists primarily of Milbank's status conferences with the Debtors and Debtors' management and other key employees. These status conferences concerned the general strategy of the Chapter 11 Cases and the Debtors' various duties as debtors in possession.

(s) Corporate Matters (40018-02700). Milbank attorneys participated in numerous meetings with the Debtors' management and boards regarding case status and general business operations. Milbank attorneys advised the Debtors on various securities law issues and, when necessary, drafted SEC filings in order to keep the Debtors in compliance with SEC disclosure requirements.

(t) Executory Contracts or Leases (40018-02800). Milbank attorneys spent time addressing issues regarding certain executory contracts in connection with Debtors operations.

#4830-9072-7941                                    -11-

Milbank attorneys reviewed and analyzed relevant leases and related documents, and attended numerous telephonic conferences with the Debtors and certain lease counter-parties and their respective advisors. Milbank negotiated and drafted documents related to a sublease for the Yard House restaurant in the Red Rock Casino. Additionally, Milbank drafted and successfully prosecuted the *Motion Of Debtors Station Casinos, Inc. And FCP PropCo, LLC For Order Under 11 U.S.C. § 365(d)(4) Extending Time To Assume Or Reject Unexpired Leases Of Nonresidential Real Property* [Docket No. 508].

Milbank spent significant amount of time facilitating the *Master Lease Compromise Agreement between SCI and PropCo* (the "Compromise Agreement"). In October, SCI's Prepetition Lenders informed SCI that they would not approve a cash collateral budget that provided for rent payments under the Master Lease beginning in December of 2009. SCI, with Milbank as its counsel, entered into negotiations with PropCo., represented by two independent members of PropCo's board and separate counsel, Gibson, Dunn & Crutcher LLP. Though these extensive negotiations, SCI and PropCo came to an agreement whereby SCI received interim relief on rent payments and PropCo would be assured a controlled transition of services in connection with a future rejection of the Master Lease. Once the compromised was reached, Milbank drafted and filed on November 19, 2009, the *Joint Motion of Station Casino, Inc. and FCP PropCo, LLC Pursuant to 11 U.S.C. §§ 105(a), 363(b)(1), 365(d)(3) and 365(d)(4)(B)(ii) and Fed. R. Bankr. 9091 for Entry of An Order Approving Master Lease Compromise Agreement* (the "Compromise Motion") [Docket No. 587].

The Committee, the CMBS Lenders and the Independent Lenders all filed objections to the Compromise Motion (collectively, the "Compromise Motion Objections"). Milbank drafted and filed a reply to the Compromise Motion Objections. Milbank also assisted the Debtors in responding to requests for production of documents made in connection with Compromise Motion Objections.

(u)    File and Docket Maintenance and Calendar Review (40018-02900). Milbank monitored the docket in these Cases for pending motions and entered orders.

(v)    Court Hearings (40018-03000). Milbank attorneys, on behalf of the Debtors, prepared for and attended court hearings, including the first day hearing. To prepare for these hearings, Milbank attorneys, among other things, drafted, reviewed and analyzed relevant documents, including

#4830-9072-7941                                                -12-

correspondence and pleadings filed by other parties-in-interest, and conducted independent factual and legal research as necessary.

(w) <u>Intellectual Property (40018-03200)</u>. Milbank advised the Debtors with respect to certain patents and trademarks. Milbank analyzed and reviewed correspondence and other documents related to pending trademark applications. Milbank also drafted and provided Information Disclosure Statements to the United States Trademark and Patent Office.

(x) <u>Contesting Appointment of an Examiner (40018-03300)</u>. Due to the considerable amount of time and expense for counsel in responding to and opposing the issues surrounding the Independent Lenders' request for the appointment of an examiner (as amended, the "<u>Examiner Motion</u>") and Boyd Gaming's joinder to that motion (the "<u>Boyd Joinder</u>"), Milbank created an additional category of service. In connection with this category, Milbank reviewed and analyzed the Examiner Motion. Milbank also spent a considerable amount of time researching legal and factual issues in order to craft the Debtors' response. Milbank drafted and filed on September 25, 2009, the *Debtors' Opposition to the Amended Motion of the Independent Lenders to Station Casinos, Inc. for the Appointment of an Examiner* [Docket No. 392]. Milbank also spent a significant amount of time on discovery related to the Examiner Motion, including, but not limited to, drafting and serving discovery requests, reviewing documents for privilege, and negotiating resolution to discovery disputes.

(ii) <u>Services Rendered to Debtor FCP PropCo, LLC</u>

20. As described above, during First Interim Period, Milbank services were generally provided on behalf of all Debtors. However, certain services were provided specifically to Debtor PropCo. Accordingly, Milbank established a separate series of service categories so that work performed for PropCo could be separately identified as such. The First Interim Fee Period Monthly Statements have combined the totals for professional fees and expenses for both pools of service categories, however the exhibits provided to the Notice Parties (as defined in the Interim Compensation Order) delineated the work performed exclusively for PropCo. The categorical summary of expenses billed to the estate for services performed exclusively for PropCo during the First Interim Period is set forth below.

#4830-9072-7941                    -13-

1  (a) <u>Case Administration (40278-00400)</u>. Milbank corresponded with various parties regarding PropCo's schedules.

(b) <u>Claims Administration and Objections (40278-00500)</u>. Milbank corresponded with various parties regarding objections made by PropCo's lenders to the status of certain unsecured claims against PropCo.

(c) <u>Financing (40278-00900)</u>. Milbank's efforts with respect to PropCo financing primarily concerned PropCo's use of cash collateral. Milbank facilitated discussions between PropCo and the PropCo Lenders in order to reach a stipulated agreement regarding PropCo's use of cash collateral. This stipulation was submitted to the Court through the *Motion For Interim and Final Orders Pursuant to 11 U.S.C. §§ 361, 362, and 363 Approving Stipulation For (i) Adequate Protection and (ii) Use of Cash Collateral With Respect to Secured Loans to FCP PropCo, LLC* (the "<u>PropCo Stipulation Motion</u>") [Docket No. 32]. Following the filing of the PropCo Stipulation Motion, Milbank reviewed the Committee's objection thereto and the OpCo Lenders' subsequent response. Numerous teleconferences and discussions followed, again facilitated by Milbank, until accord was reached and a final order on the PropCo Stipulation Motion was entered [Docket No. 295].

(d) <u>Tax Issues (40278-01400)</u>. Milbank attorneys participated in conferences with PropCo and other advisors analyzing tax structuring issues implicated by reorganization.

(e) <u>Non-Working Travel (40278-01600)</u>. This category includes all of Milbank's non-working travel time, for which Milbank seeks compensation for one-half of its professionals' time.

(f) <u>Real Property Issues (40278-01900)</u>. Milbank advised PropCo with respect to certain real estate issues related to the Master Lease and CMBS Loan obligations. Milbank did not represent PropCo with regard to the Master Lease Compromise; the PropCo side of the negotiations was led by the Independent Directors of PropCo, represented by Gibson, Dunn & Crutcher as their separate counsel.

(g) <u>Corporate Matters (40278-02700)</u>. Milbank attorneys participated in numerous meetings with the PropCo management and PropCo's board of directors regarding case status and general business operations. Milbank attorneys also advised PropCo on corporate governance and securities law issues.

#4830-9072-7941                                    -14-

     (h)    <u>Executory Contracts or Leases (40278-02800)</u>. Milbank attorneys advised PropCo on the treatment of certain executory contracts.

     (i)    <u>Court Hearings (40278-03000)</u>. Milbank attorneys, on behalf of the PropCo, prepared for and attended the hearing on PropCo's cash collateral motion.

### IV.    SUMMARY OF COSTS AND EXPENSES

21.    Milbank maintains records of all actual and necessary out-of-pocket expenses incurred and typically charged in connection with rendering professional services to its clients in the ordinary course of its business practice. As is typical of Milbank's practice when representing debtors in possession, Milbank has reduced to cost or not charged certain of these out-of-pocket expenses to the estate to ensure the reasonableness of Milbank's expense request. Milbank charges its clients for photocopying done in-house at the rate of $0.20 per page; copying done by outside services is charged at cost. Milbank charges its clients for in-house printing at the rate of $0.10 per page. Milbank charges its clients for document retrieval services, computer research and other specialized searches and services, such as messengers and library retrievals, at cost. Milbank normally charges its clients for word processing services rendered by a specialized operator and by the secretary assigned to each lawyer. Milbank also charges for the use of its computer system based on the amount of time utilized to prepare documents. However, no such charges are included in this First Interim Application. Milbank is seeking reimbursement for postage and telephone calls at cost.

22.    A chart setting forth, by category, the actual and necessary expenses billed to the estate by Milbank for the services rendered is set forth in <u>Exhibits 5</u> and <u>6</u>.

### V.    REQUEST FOR AWARD AND ALLOWANCE OF COMPENSATION

23.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation. *See* 11 U.S.C. § 331. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(l). Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded… the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The congressional policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. See In re NuCorp Energy, Inc., 764 F.2d 655, 658 (9th Cir. 1985) ("Section 330 of the Bankruptcy Reform Act was intended to overrule the judicially fashioned doctrine of 'economy of the estate' and to ensure adequate compensation for bankruptcy attorneys…."); In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts") (citation and internal quotation marks omitted)..

24. Milbank respectfully submits that the compensation sought herein is not unusual given the magnitude and complexity of these Chapter 11 Cases and the time dedicated to the representation of Committee. Such compensation is commensurate with fees Milbank has been awarded in other bankruptcy cases, as well as with fees charged by other attorneys of comparable experience and reputation.

25. Milbank charges customary hourly rates for the time expended by its attorneys and paraprofessionals and Milbank's fee is not outcome dependent. Pursuant to sections 330 and 331 of the Bankruptcy Code, all fees sought by professionals retained under section 327 or 1103 of the

Bankruptcy Code are contingent pending final approval by the Court, and are subject to adjustment by the Court depending upon the services rendered and the results obtained.

26. Milbank has a sophisticated and nationally recognized financial restructuring practice. Milbank's extensive experience enabled it to perform the services described herein competently and expeditiously, providing substantial value to the estates in excess of the total amount of this First Interim Application. The professional services rendered by Milbank required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and action by the interested parties in the Chapter 11 Cases could be addressed with skill and dispatch. It is respectfully submitted that the services rendered by the Milbank professionals were performed efficiently, effectively and economically.

27. The total time spent by Milbank attorneys during the period covered by this First Interim Application was 5822 hours, which services have a value of $3,985,219.75. As shown by this First Interim Application and supporting exhibits, Milbank spent its time economically and without unnecessary duplication of time, and the work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

28. Attorneys at Milbank have not incurred and will not incur expenses for luxury accommodations, deluxe meals or air travel in excess of coach faires. Throughout the First Interim Period, Milbank has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

29. To the best of Milbank's knowledge, this First Interim Application complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, any guidelines promulgated by the US Trustee, the Local Bankruptcy Rules of the United States Bankruptcy Court of the District of Nevada (the "Local Bankruptcy Rules"), and the orders of this Court including the Interim Compensation Order.

### VI.    CONCLUSION

30. For the reasons set forth above and pursuant to Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016, Local Bankruptcy Rule 2016, the U.S. Trustee Guidelines and the standards adopted by courts in awarding attorneys' fees and costs, Milbank submits that the fees for

services rendered and costs and expenses incurred during the First Interim Period in the total amount of $4,141,457.63 are reasonable and should be allowed on an interim basis and paid in full. Accordingly, Milbank seeks an order authorizing and directing the Debtors to immediately pay to Milbank $1,845,464.73.

31. No agreement or understanding of any kind or nature exists between Milbank and any other person or entity for the sharing, division, or payment of any portion of the compensation awarded to Milbank for services rendered or expenses incurred in connection with Milbank's services in these Chapter 11 Cases, except as among the partners, associates and employees of Milbank.

WHEREFORE, Milbank respectfully requests that this Court enter an order:

1. Approving, awarding and allowing the total fees of $3,985,219.75 in fees and costs of $156,237.88, for a total amount of $4,141,457.63 for the First Interim Period;

2. Authorizing and directing the Debtors to pay Milbank the approved amounts; and

3. Granting such other and further relief as the Court deems just and proper.

Dated: January 14, 2010			Respectfully submitted,

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By:  _____/s/ Paul S. Aronzon_____

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017

Reorganization Counsel for
Debtors and Debtors in Possession

#4830-9072-7941

-18-