| | |
|---|---|
| Paul S. Aronzon (CA State Bar No. 88781) | Bruce T. Beesley (NV SBN 1164) |
| Thomas R. Kreller (CA State Bar No. 161922) | Laury Macauley (NV SBN 11413) |
| MILBANK, TWEED, HADLEY & McCLOY LLP | LEWIS AND ROCA LLP |
| 601 South Figueroa Street, 30th Floor | 50 West Liberty Street, Suite 410 |
| Los Angeles, California 90017 | Reno, Nevada 89501 |
| Telephone:    (213) 892-4000 | Telephone:    (775) 823-2900 |
| Facsimile:    (213) 629-5063 | Facsimile:    (775) 823-2929 |
| | bbeesley@lrlaw.com; lmacauley@lrlaw.com |
| Reorganization Counsel for | |
| Debtors and Debtors in Possession | Local Reorganization Counsel for |
| | Debtors and Debtors in Possession |

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| STATION CASINOS, INC. | Case No. BK-09-52477 |
| ☐ Affects this Debtor | Jointly Administered |
| ☒ Affects all Debtors | BK 09-52470 through BK 09-52487 |
| ☐ Affects Northern NV Acquisitions, LLC | **DECLARATION OF DANIEL** |
| ☐ Affects Reno Land Holdings, LLC | **ARONSON IN SUPPORT OF** |
| ☐ Affects River Central, LLC | **DEBTORS' MOTION FOR ENTRY OF** |
| ☐ Affects Tropicana Station, LLC | **ORDER ESTABLISHING BIDDING** |
| ☐ Affects FCP Holding, Inc. | **PROCEDURES AND DEADLINES** |
| ☐ Affects FCP Voteco, LLC | **RELATING TO SALE PROCESS FOR** |
| ☐ Affects Fertitta Partners LLC | **SUBSTANTIALLY ALL OF THE** |
| ☐ Affects FCP MezzCo Parent, LLC | **ASSETS OF STATION CASINOS, INC.** |
| ☐ Affects FCP MezzCo Parent Sub, LLC | **AND CERTAIN "OPCO"** |
| ☐ Affects FCP MezzCo Borrower VII, LLC | **SUBSIDIARIES** |
| ☐ Affects FCP MezzCo Borrower VI, LLC | |
| ☐ Affects FCP MezzCo Borrower V, LLC | Hearing Date:    May 5, 2010 |
| ☐ Affects FCP MezzCo Borrower IV, LLC | Hearing Time:    10:00 a.m. |
| ☐ Affects FCP MezzCo Borrower III, LLC | Place:    300 Booth Street |
| ☐ Affects FCP MezzCo Borrower II, LLC | Reno, NV 89509 |
| ☐ Affects FCP MezzCo Borrower I, LLC | |
| ☐ Affects FCP PropCo, LLC | |

Daniel Aronson, being duly sworn according to law, upon his oath, deposes and says:

      1.    I am a Managing Director of Lazard Frères & Co. LLC ("Lazard"), which has its principal office at 30 Rockefeller Plaza, New York, New York 10020.

      2.    I am authorized on behalf of Lazard to submit this declaration (the "Declaration") in support of the *Debtors' Motion for Entry of Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station*

#4848-3715-7381    1

*Casinos, Inc. and Certain "Opco" Subsidiaries*, dated April 7, 2010 (the "Motion")[1] filed by debtor and debtor in possession Station Casino, Inc. ("SCI") and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases").

3.      Unless otherwise stated, all facts and circumstances set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Lazard team, discussions with Debtors' senior management, my review of relevant documents or my opinion based upon my experience and knowledge of the financial restructuring. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4.      Lazard is the US operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard, together with its predecessors and affiliates, has been advising clients around the world for over 150 years. Lazard has dedicated professionals who provide restructuring services to its clients. The current managing directors, directors, vice presidents and associates of Lazard have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in Chapter 11 proceedings and with sales of assets under section 363 of the Bankruptcy Code. Lazard and its principals have been involved as advisor to debtor, creditor and equity constituencies and government agencies in many reorganization cases. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

5.      As the Court is aware, Lazard was retained to represent the Debtors as financial advisor and investment banker in the Chapter 11 Cases. *See Order, Pursuant to 11 U.S.C. §§ 327(a) and 328(a), and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Lazard Frères & Co LLC as Financial Advisor and Investment Bankers for the Debtors* entered on September 18, 2009 [Docket No. 326]. As Court-retained financial advisor and investment banker to the Debtors, Lazard has provided the Debtors with various restructuring advisory services in the Chapter 11 Cases including, but not limited to: (a) reviewing and

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion or in the Bidding Procedures annexed as Exhibit 1 to the Motion, as applicable.

#4848-3715-7381

2

1  analyzing the Debtors' business, operations and financial projections; (b) evaluating the Debtors'
2  potential debt capacity in light of its projected cash flows; (c) assisting in the determination of a
3  range of values for the Debtors' businesses on a going concern basis and in preparing financial
4  information for inclusion in the Debtors' disclosure statement; (d) advising the Debtors on
5  strategies for restructuring the Debtors' business and maximizing recovery to the Debtors'
6  creditors and equity interest holders; (e) rendering financial advice to the Debtors and
7  participating in meetings or negotiations with major stakeholders and other appropriate parties;
8  (f) assisting the Debtors and Debtors' counsel in evaluating the benefits of a sale of, and the
9  decision to sell, the Opco Assets and formulating the Bidding Procedures and the Bidding
10 Process; and (g) providing the Debtors with other financial restructuring advice.

11        6.    I am one of the principal managing directors at Lazard providing services
12 to the Debtors. By virtue of such role, I am familiar with the business operations, assets and
13 financial affairs of the Debtors and, in particular, with the Debtors' decision to sell all or
14 substantially all of the assets of SCI and certain of its "Opco" debtor and non-debtor wholly-
15 owned subsidiaries – as more fully described in the Motion and the Exhibit annexed thereto
16 (collectively, the "Opco Assets"). I actively participated, along with Debtors' counsel and the
17 other members of Lazard, in the formulation of the Bidding Procedures and Bidding Process
18 which are the subject of the Motion. Furthermore, after the Bidding Procedures are approved by
19 this Court, as part of its services to the Debtors, Lazard will, together with the Debtors and
20 Debtors' counsel conduct the Sale of the Opco Assets.

21        7.    Pursuant to the Bidding Procedures, the Opco Group will offer for sale all
22 or substantially all of the Opco Assets. The Propco Assets, including the Excluded Assets, will
23 not be included in the Sale. The Excluded Assets consist entirely of assets that are to be
24 transferred to Propco or New Propco under the Joint Plan and/or pursuant to the Master Lease
25 Compromise Agreement and all amendments thereto approved by the Bankruptcy Court.

26        8.    As advisors to the Debtors, Lazard believes that the Debtors' estates will
27 realize maximum value for the Opco Assets through an arms' length Sale of all or substantially
28 all of the Opco Assets to a third-party buyer. Moreover, based on publicly reported statements

#4848-3715-7381                3

that have been made by potential third-party purchasers,[2] Lazard believes that the sale to a single buyer of all or substantially all of the Opco Assets is a likely possible outcome of the proposed Bidding Process. However, in recognition of the fact that other third-parties may prefer to acquire only a portion or portions of the Opco Assets, Lazard has worked with the Debtors to ensure that the Bidding Procedures allow the Debtors to entertain, in their discretion: (i) bids for all or any portion or portions of the Opco Assets; and (ii) Joint Bids for all, substantially all or portions of the Opco Assets.[3]

9. As a result of this flexibility, Lazard believes that the Bidding Procedures will provide <u>all</u> potentially interested third parties with ample opportunity to formulate bids for the Opco Assets and will facilitate the solicitation, submission and evaluation of significant bids for the Opco Assets in a manner that will maximize the value of the Opco Assets for the Debtors' estates. In addition, as the Court is aware, the Debtors have been engaged in restructuring discussions of one form or another for nearly fifteen months. During that time, the Debtors and their advisors have received inquiries from several potential purchasers of Opco Assets. As part of the Bidding Procedures, the Debtors and their advisors intend to contact all such parties to advise them of the potential opportunity to acquire some or all of the Opco Assets at this time. In addition, if the Court approves the Bidding Procedures, the Debtors will promptly publish notice of the Bidding Procedures in The Wall Street Journal and The Las Vegas Review-Journal.

---

[2] On March 25, 2010, in a public statement to the national news media, representatives for Boyd Gaming Corporation stated "We remain interested in acquiring <u>all of Station's assets</u> and continue to believe that Boyd Gaming is in the best position to offer maximum value to Station's creditors, and to protect the interests of its employees, customers and the Las Vegas community." Oskar Garcia, Article, *Station Proposes Selling 14 Casinos Through Court*, Associated Press, Mar. 25, 2010 (emphasis added). On the same date, in a similarly public statement, representatives of Fertitta Gaming stated (in reference to the Opco Assets) "Frank and Lorenzo Fertitta remain keenly interested in these properties and Fertitta Gaming would like to aggressively pursue the acquisition of these assets." Anthony Palazzo, Article, *Station Owners Propose to Keep Stake in Four Casinos*, Business Week, Mar. 25, 2010. Frank Fertitta III is the Chairman of the Board and Chief Executive Officer of SCI and Lorenzo Fertitta is the former President of SCI. Both Frank Fertitta III and Lorenzo Fertitta are also members of SCI's Board of Directors.

[3] As is described in greater detail in the Bidding Procedures, in the event that any casino property is sold separately (or as part of a group that consists of less than all of the Opco Assets), all customer data for customers whose primary casino play is at that property ("<u>Primary Customer Data</u>") shall be sold to the Successful Bidder for that property on an exclusive basis. Were the Bidding Procedures to provide otherwise, Lazard and the Debtors believe that a potential buyer would be disincented to pay a fair price for an individual casino property.

#4848-3715-7381       4

10. Lazard also believes that the Bidding Procedures constitute a reasonable and effective method of maximizing a return on the Opco Assets though a competitive, fair and open sale process. Among other things, the Bidding Procedures:

- fully describe the Opco Assets to be auctioned, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Opco Assets, the manner in which bidders and bids become Qualified Bidders and Qualified Bids, respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction, the ultimate selection of the Successful Bidder, and the Bankruptcy Court's approval thereof, among other aspects of the Auction process;

- make clear that the Opco Assets will be sold "as is" free and clear of all claims, liens, interests and encumbrances;

- specify that they will be conducted by the Debtors simultaneous to, and in furtherance of, the solicitation and confirmation of the Joint Plan; and

- make clear that the Debtors, after consultation with Lazard and their legal advisors: (a) may waive any requirements for a Potential Bidder to become a Qualified Bidder; (b) may waive any requirements for a bid to become a Qualified Bid; (c) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (d) may reject, at any time, any bid that it deems to be: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or any other orders applicable to one or more Debtors, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtors, their estates, and stakeholders as determined by the Debtors; (e) may impose additional terms and conditions and otherwise modify the Bidding Procedures at any time; (f) withdraw from sale any Opco Assets at any time and make subsequent attempts to market the same; and (g) reject all bids.

11. Based on the foregoing facts and based on my experience participating in and conducting sales of assets pursuant to section 363 of the Bankruptcy Code and/or in conjunction with confirmation of a plan, I believe, under the circumstances present in the Chapter 11 Cases and the current economic climate, that the Bidding Procedures will facilitate the solicitation, submission and evaluation of significant bids for the Opco Assets and that the Bidding Procedures constitute a reasonable and effective method of maximizing a return on the Opco Assets though a competitive sale process.

#4848-3715-7381                                     5

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of April, 2010, in New York, New York.

By: _____
Daniel Aronson

#4848-3715-7381

6