Electronically Filed on May 3, 2010

BRAD ERIC SCHELER (SBN BS-0397)
BONNIE STEINGART (SBN BS-8004)
**FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Email: brad.eric.scheler@friedfrank.com
        bonnie.steingart@friedfrank.com
Counsel for the Official Committee
of Unsecured Creditors

BRETT A. AXELROD, ESQ.
NEVADA BAR NO. 5859
ANNE M. LORADITCH, ESQ.
NEVADA BAR NO. 8164
**FOX ROTHSCHILD, LLP**
3773 Howard Hughes Parkway
Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: Baxelrod@foxrothschild.com
        Aloraditch@foxrothschild.com
Counsel for the Official Committee
of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

STATION CASINOS, INC.

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Northern NV Acquisitions, LLC
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC

Chapter 11

Case Nos.  BK-N-09-52470-GWZ
through BK-N-09-52487-GWZ

Jointly Administered Under
BK-N-09-52477-GWZ

**SUPPLEMENTAL OBJECTION OF
THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO THE
DEBTORS' (I) REVISED SECOND
AMENDED AND RESTATED MASTER
LEASE COMPROMISE AGREEMENT
and (II) MOTION FOR ENTRY OF
ORDER ESTABLISHING BIDDING
PROCEDURES AND DEADLINES
RELATING TO SALE PROCESS FOR
SUBSTANTIALLY ALL OF THE
ASSETS OF STATION CASINOS, INC.
AND CERTAIN "OPCO"
SUBSIDIARIES**

Hearing Date:    May 4, 2010
Hearing Time:    1:00 p.m.
Place:           300 Booth Street
                 Reno, Nevada 89509

**TO THE HONORABLE GREGG W. ZIVE AND ALL PARTIES IN INTEREST:**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases of the above-captioned debtors and debtors in possession, including Station Casinos, Inc. ("SCI") and FCP PropCo, LLC ("PropCo" and with SCI, collectively, the "Debtors"), hereby respectfully submits this supplemental objection (the "Supplemental Objection") to the Debtors' *Notice of Submission of Revised Second Amended and Restated Master Lease Compromise Agreement In Connection with the Joint Motion of Station Casinos, Inc. and FCP PropCo, LLC Pursuant to 11 U.S.C. §§ 105(a), 363(b)(1), 365(d)(3) and 365(d)(4)(B)(ii) and Fed. R. Bankr. P. 9019 for Entry of an Order Approving Second Amendment to Amended and Restated Master Lease Compromise Agreement* [Docket No. 1215] (the "Revised SMLCA"), and the Debtors' *Notice of Submission of Revised Motion For Entry Of Order Establishing Bidding Procedures And Deadlines Relating To Sale Process For Substantially All Of The Assets Of Station Casinos, Inc. And Certain "Opco" Subsidiaries* [Docket No. 12] (the "Revised Bid Procedures", together with the Revised SMLCA, the "Revised Motions"). This Supplemental Objection is supported by the Supplemental Declaration of Bonnie Steingart (the "Steingart Supplement") and the Request to Judicial Notice in Support of Supplemental Objection (the "RJN") filed concurrently herewith.

**SUPPLEMENTAL OBJECTION**

This Supplemental Objection addresses the material changes made to the Second Master Lease Compromise Agreement and the Bidding Procedures in the Debtors' Revised Motions as well as information obtained in ongoing discovery.

**A.    Revisions to the Second Master Lease Compromise Agreement Expand Its Problematic Provisions**

       **(1)    If Approved, Revised SMLCA Would Order the Automatic Divestiture of SCI Assets upon a "Transfer Event", without Court oversight and review.**

1.    In addition to the PropCo Support Agreement, the Revised SMLCA now incorporates the OpCo Support Agreement as well. As a result, there are a number of "Transition

VG1 37172v1 05/03/10

1    Events" and "Transfer Events" that are completely unrelated to the payment of rent and the other

2    obligations in the original Master Lease.  Thus, if the Court grants the Debtors' motion to approve

3    the Revised SMLCA, regardless of whether this Court approves a disclosure statement or

4    creditors vote or a plan is confirmed, the PropCo Lenders and Frank J. Fertitta and Lorenzo

5    Fertitta (the "Fertittas") will be able to obtain the transition services and Excluded Assets that

6    they covet.

7            2.       Under the Revised SMLCA, the transfer of the all of the assets contained in Annex

8    1 can occur upon a new event added to the Revised SMLCA, a "Transfer Event."  Revised

9    SMLCA at ¶ M(iv)(1)–(3).  Such "Transfer Events" include: (i) "a person other than the proposed

10   purchaser under the Joint Plan is selected by SCI as the successful bidder . . .," (ii) "the SCI

11   prepetition lender voting class under the Joint Plan does not accept the Joint Plan and such Joint

12   Plan is not confirmed pursuant to section 1129(b) of the Bankruptcy Code," and (iii) if (y) the

13   Joint Plan is not confirmed and (z) any OpCo Lender "that is a party to a support agreement with

14   SCI breaches a material obligations under such agreement and such breach is the primary case of

15   the Bankruptcy Court not entering an order approving (a) this Compromise, (b) the bidding

16   procedures for SCI assets being proposed concurrently herewith, (c) the Debtors' motion to

17   extend exclusivity, or (d) confirmation of the Joint Plan."  See Revised SMLCA at ¶ M(iv).

18           3.       The disposition of SCI's assets should only occur through an auction process that

19   allows for all of SCI's assets to be put up for auction.  Just as the concept of excluding assets

20   from an auction is misplaced, so too is the automatic transfer of such assets outside of an auction

21   process or a plan process where creditors can cast their vote on whether such a distribution should

22   take place.  Such a provision, which could only have been included in the Revised SMLCA to

23   deprive SCI of the full value of its estates, is an impermissible mechanism to transfer assets and

24   must not be countenanced by this Court.

25           4.       To the extent that the Debtors continue to advance the meritless arguments that

26   there is some alleged "benefit" to SCI because the asset transfers contemplated by the Master

27   Lease will avoid litigation over the ownership of certain of these assets, such concern is easily

28   addressed.  [Debtors' Reply to Objections re: Debtors' Motion for Approval of Second Amended

VG1 37172v1 05/03/10

and Restated Master Lease Compromise Agreement, [Docket No. 1323] at pgs.5-7].  Regardless of alleged "ownership" disputes, this argument fails for the obvious reason that through a section 363 sale, such assets can be sold free and clear of liens, abrogating the need for ownerships of the assets to be determined.

**(2)    "New" Asset Transfers or Excluded Assets**

5.    As if the very concept of excluding assets from SCI's auction is not troublesome enough, the Revised Motions incredibly keep adding assets to the list including, among others,

- Item 14. Wild Wild West trademarks and land.  Under the Revised SMLCA, SCI is giving up all of its assets of Tropicana Station, Inc. and the "Wild Wild West Assemblage" to CV PropCo.  This has no connection with the Master Lease or any other definitive legal document or obligation that the Debtors have disclosed and is a distribution that should either be done pursuant to a market-test auction or through a plan of reorganization.  The Committee suspects that the Fertittas and the PropCo Lenders desire the entirety of the Wild Wild West land assemblage for two reasons – one, a portion is subject to the so-called "land loan," whose lenders are, of course, the PropCo Lenders, and the PropCo lenders can now have the entirety of the assemblage subject to their interests; and two, while land values in Las Vegas still remain low (though it appears that there has been some positive growth in the last six months), the Wild Wild West assemblage has terrific long-term potential, given its size, location, and entitlements.  Indeed, on information and belief, the assemblage is part of "Project V" or the Vista project, which the Debtors have continued to invest time and energy into postpetition.

- Item 8 – Primary Customer Database.  Although customer lists are known to be extremely valuable casino assets, the Revised SMLCA, if approved, would require SCI to give its customer lists to PropCo which would then become a competitor for the "locals market" to PropCo or Fertitta-PropCo for inadequate consideration.

- 4 -

- Item 15. Net Working Capital.  While the original SMLCA filed on April 7, 2010 (the "Original SMLCA") [Docket No. 1179] provided that PropCo would purchase accounts receivable and deposits at "a purchase price" to be determined, under the Revised SMLCA, PropCo is now receiving them, net of liabilities.

- Item 17. Purchase Price.  Under the Original SMLCA, the purchase price of the transfers in Annex 1 would be at a mutually agreed upon value and form of consideration or, if there was no mutual agreement, as determined by the Bankruptcy Court.  Under the Revised SMLCA, however, if PropCo receives the assets of Annex 1, the price will be $35 million.  The only support for such figure, although even at the lowest point of that range, is the Alvarez & Marsal LLC report filed on April 28, 2010 (the "A&M Report") and conducted by the OpCo Lenders.  Notwithstanding such assertions, the A&M Report does not include in its valuation all of the assets that would be purchased by the $35 million price set forth in Revised SMLCA.

- In the reply papers, the Debtors and the PropCo Lenders appear to suggest that the trademarks associated with the four casinos operated on the PropCo land are of de minimis value.  As demonstrated in the exhibits attached to the RJN, SCI owns such trademarks, has repeatedly sought to protect its substantial investment, and the substantial value of such investment, in the trademarks associated with those four casinos.  Such efforts have occurred postpetition, and have been supported by a declaration of Mr. Haskins – a PropCo director.

- GV Ranch Station Inc.

- Aliante Station LLC.

**(3)      The Texas Station Put Should Not Be Included in the Revised SMLCA**

6.      In the Revised SMLCA, the Debtors added a provision that states that the Texas Station landlord, who are the Fertittas' parents, would release an alleged "put" right under the

- 5 -

VG1 37172v1 05/03/10

Texas Station lease but only if the Joint Plan is confirmed and becomes effective (envisioning that the Fertitta/PropCo entity is the successful bidder for SCI's assets at auction). [Revised SMLCA, at ¶ M(x)]. However, paragraph M(x) states that if the Fertitta/PropCo entity is not the successful bidder for SCI's assets, the price of settling the Texas Station Put option will be fixed at $75 million, payable at closing of the SCI sale.

7.    There is no written agreement concerning the "put" right, including in the April 19, 2010 filings. The Texas Station Put was not mentioned in any motions or declarations filed on April 7, 2010. It is not mentioned in the proposed plan and disclosure statement filed in March. It is not even mentioned in the first-day declaration of Mr. Friel filed last year (which otherwise describes the lease arrangement). While touted as a really great deal for any potential third party purchaser, this "great deal" need not be reached at this point. Third party purchasers can resolve the issue of the Texas Station Put in a myriad of ways. At least one option to address the Texas Station Put is to have Texas Station file for bankruptcy, where such a provision would be unenforceable and can be addressed through the bankruptcy process.[1]  Indeed, many lessors, when faced with a tenant in bankruptcy and an out-of-market lease, will renegotiate with the tenant so they can continue to have a stream of income rather than have no payments made on the lease.

**B.    The Revised Bidding Procedures Should Be Modified so that a Fair Auction Can Take Place**

8.    In order to provide for an auction process that can maximize value for SCI's estates, the Committee has prepared a markup of the Revised Bidding Procedures, attached as Exhibit A to the Steingart Declaration. While the Committee's primary objections to the Bidding Procedures were described in its prior objection, the central themes of the attached mark-up include (i) providing for a Sales Examiner to ensure a fair auction process, (ii) not excluding any of SCI's assets from the auction, and (iii) ensuring that adequate time exists for potential bidders

---

[1]    The Declaration of Richard Haskins contemplates that additional chapter 11 filings may occur. *See Declaration of Richard J. Haskins in Support of Debtors' (a) Motion for Entry of Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries; and (b) Reply to Objections Re: Debtors' Motion for Approval of Second Amended and Restated Master Lease Compromise Amendment,* at ¶ 16 [Docket No. 1325].

VG1 37172v1 05/03/10

1    to submit their letters of intent.  **Just to be clear, the Committee has no qualms with the**

2    **Stalking Horse Bid, just with the embedded necessary depressing effect the Excluded Assets**

3    **component has on a real contest for the assets.**

4        9.    The replies filed by the Debtors and the lenders seem to trump up all sorts of

5    excuses about the auction, including why excluding assets from the auction will make for a

6    smoother auction process, why Boyd's actions are nefarious at best, how the potential

7    involvement of strategic bidders will or will not be affected, and so forth.  But all of these

8    arguments fall flat given the very nature of a competitive auction process, where each bidder

9    comes into the auction room with its own set of strategies and goals for the auction.  Such

10   contested and active bidding process can only be viewed positively by this Court.

11   **C.    Insider Conflicts Remain Despite the Debtors' Protestations to the Contrary**

12       10.   The fact that the Debtors believe that they have been able to "deftly ensure that

13   conflicts of interest are avoided" in reaching their deal turns well-established principles of

14   corporate governance on its head. [Docket No. 1322, ¶35.]  Discovery has confirmed that

15   individuals on both sides of OpCo and PropCo were actively involved in the process and did not,

16   in fact, recuse themselves.  Richard Haskins testified at his deposition that Frank J. Fertitta III and

17   Lorenzo Fertitta voted for the Debtors to enter into the SMLCA and the Bidding Procedures in

18   spite of the fact that their Stalking Horse Bid and agreements with respect to New PropCo with

19   the Mortgage Lenders were significant elements of both agreements.  Haskins Deposition Tr. at

20   14:18-18:2; 107:6-110:24 (Apr. 27, 2010).  The inherent contradiction in the Fertittas' actively

21   voting on the Debtors' actions, on the one hand, and benefiting from the "compromise" reached,

22   on the other, is just the tip of the iceberg when it comes to how these cases are fraught with

23   insider conflicts, and highlights how the Fertittas are on every side of the deal.  Indeed, despite

24   the testimony of Mr. Haskins, who is an officer of SCI and a director of PropCo, that he was not

25   conflicted, another PropCo board member testified that Haskins was present at PropCo board

26   meetings when the Revised SMLCA and the Bidding Procedures were discussed and even voted

27   affirmatively as a director of PropCo on both matters while, during the same period, he was

28   negotiating such matters as an officer of SCI.  Compare Haskins Deposition Tr. at 132:2-133-1

- 7 -

VG1 37172v1 05/03/10

1  ("Once we started on the road of a Master Lease Compromise, I . . . effectively recused myself on

2  the PropCo side"),[2] <u>with</u> Robert Kors Deposition Tr. at 94:7-97:5 (Apr. 30, 2010) (Mr. Kors

3  testified that Mr. Haskins was present and participated at the PropCo board meeting to consider

4  the Revised SMLCA and voted for it as a PropCo director).[3]  All this just serves to highlight how

5  the independence of SCI must be questioned at every turn.

6    Accordingly, for the foregoing reasons, the Committee respectfully requests that the Court

7  deny the Revised Motions and grant such other relief it deems appropriate.

8    DATED this 3rd day of May 2010.

9            Respectfully submitted,

10            **FRIED, FRANK, HARRIS,**
          **SHRIVER & JACOBSON LLP**

11

12            By  *s/ Bonnie Steingart*
            BRAD ERIC SCHELER (SBN BS-0397)
            BONNIE STEINGART (SBN BS-8004)

13              One New York Plaza
            New York, New York 10004

14              Telephone: (212) 859-8000

15

16            **FOX ROTHSCHILD LLP**
          BRETT A. AXELROD (SBN 5859)

17            ANNE M. LORADITCH (SBN 8164)
          3800 Howard Hughes Parkway, Suite 500

18            Las Vegas, Nevada 89169
          Telephone: (702) 262-6899

19

20              -and-

21            **QUINN EMANUEL URQUART**
          **& SULLIVAN, LLP**

22            ERIC D. WINSTON (SBN 202407)
          JEANINE M. ZALDUENDO (SBN 243374)

23            865 South Figueroa Street, 10th Floor
          Los Angeles, California 90017

24            Telephone:  (213) 443-3000

25            *Counsel for the Official Committee*

26            *of Unsecured Creditors*

27  _____

[2] Excerpts from the deposition of Richard Haskins are attached hereto as <u>Exhibit B</u> to the Steingart Declaration.

28  [3] Excerpts from the deposition of Robert Kors are attached hereto as <u>Exhibit C</u> to the Steingart Declaration.

VG1 37172v1 05/03/10