| | |
|---|---|
| Paul S. Aronzon (CA State Bar No. 88781) | Bruce T. Beesley (NV SBN 1164) |
| Thomas R. Kreller (CA State Bar No. 161922) | Laury Macauley (NV SBN 11413) |
| MILBANK, TWEED, HADLEY & McCLOY LLP | LEWIS AND ROCA LLP |
| 601 South Figueroa Street, 30th Floor | 50 West Liberty Street, Suite 410 |
| Los Angeles, California 90017 | Reno, Nevada 89501 |
| Telephone:    (213) 892-4000 | Telephone:    (775) 823-2900 |
| Facsimile:    (213) 629-5063 | Facsimile:    (775) 823-2929 |
| | bbeesley@lrlaw.com; lmacauley@lrlaw.com |
| Reorganization Counsel for | |
| Debtors and Debtors in Possession | Local Reorganization Counsel for |
| | Debtors and Debtors in Possession |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. BK-09-52477 |
| STATION CASINOS, INC. | Jointly Administered |
| | BK 09-52470 through BK 09-52487 |
| ☐ Affects this Debtor | |
| ☒ Affects all Debtors | **DEBTORS' MOTION PURSUANT TO** |
| ☐ Affects Northern NV Acquisitions, LLC | **11 U.S.C. §§ 1125, 1126 AND 1128 AND** |
| ☐ Affects Reno Land Holdings, LLC | **FED. R. BANKR. P. RULES 2002, 3016,** |
| ☐ Affects River Central, LLC | **3017, 3018, AND 3020 FOR AN ORDER:** |
| ☐ Affects Tropicana Station, LLC | **(A) APPROVING DISCLOSURE** |
| ☐ Affects FCP Holding, Inc. | **STATEMENT; (B) ESTABLISHING** |
| ☐ Affects FCP Voteco, LLC | **VOTING RECORD DATE, VOTING** |
| ☐ Affects Fertitta Partners LLC | **DEADLINE AND OTHER DATES; (C)** |
| ☐ Affects FCP MezzCo Parent, LLC | **APPROVING PROCEDURES FOR** |
| ☐ Affects FCP MezzCo Parent Sub, LLC | **SOLICITING, RECEIVING AND** |
| ☐ Affects FCP MezzCo Borrower VII, LLC | **TABULATING VOTES ON JOINT** |
| ☐ Affects FCP MezzCo Borrower VI, LLC | **PLAN AND FOR FILING OBJECTIONS** |
| ☐ Affects FCP MezzCo Borrower V, LLC | **TO JOINT PLAN; (D) SETTING** |
| ☐ Affects FCP MezzCo Borrower IV, LLC | **CONFIRMATION HEARING AND** |
| ☐ Affects FCP MezzCo Borrower III, LLC | **RELATED DEADLINES; AND (E)** |
| ☐ Affects FCP MezzCo Borrower II, LLC | **APPROVING FORMS OF NOTICES** |
| ☐ Affects FCP MezzCo Borrower I, LLC | **AND BALLOTS** |
| ☐ Affects FCP PropCo, LLC | |
| | Hearing Date:    June 10, 2010 |
| | Hearing Time:    10:00 a.m. |
| | Place:    300 Booth Street |
| | Reno, NV 89509 |

TO THE HONORABLE GREGG W. ZIVE, UNITED STATES BANKRUPTCY JUDGE, THE

UNITED STATES TRUSTEE AND ALL PARTIES IN INTEREST:

Station Casinos, Inc. ("SCI") together with its affiliated debtors and debtors in

possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby submit

this motion (the "Motion"), for entry of an order pursuant to sections 1125, 1126, and 1128 of

title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and

#4816-4952-5765

Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules or Fed. R. Bankr. P"), *inter alia*:

    (i)    approving the *Disclosure Statement to Accompany Joint Chapter 11 Plan of Reorganization for Station Casinos, Inc. and Its Affiliated Debtors (Dated March 24, 2010),* including all schedules and exhibits thereto (as the same may be amended, modified or supplemented prior to the hearing on the Motion, collectively, the "Disclosure Statement");[1]

    (ii)    establishing a voting record date for determining the holders of claims and interests entitled to vote on the *Joint Chapter 11 Plan of Reorganization for Station Casinos, Inc. and Its Affiliated Debtors (Dated March 24, 2010)* (as the same may be amended, modified or supplemented from time to time, collectively, (the "Joint Plan");

    (iii)  approving procedures for the solicitation of votes on and the filing of objections to the Joint Plan; and

    (iv)  approving the form and manner of notices of the hearing to consider confirmation of the Joint Plan (the "Confirmation Hearing") and of non-voting status.

## I.    Jurisdiction and Venue

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    Background

2.    On July 28, 2009 (the "Petition Date"), the Debtors commenced with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Pursuant to this Court's order, the Chapter 11 Cases are being jointly administered for procedural purposes.

3.    On March 24, 2010, the Debtors filed the original version of the Disclosure Statement (without exhibits or schedules) [Docket No. 1130]. On March 24, 2010, the Debtors also filed the original Joint Plan [Docket No. 1131]. The Debtors anticipate and have advised the

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Disclosure Statement.

#4816-4952-5765

Court that they intend to amended both the Disclosure Statement and the Joint Plan to reflect recent developments and agreements with certain major constituents in the Chapter 11 Cases. The Debtors will seek approval of the Disclosure Statement as so amended.

4.    Details regarding the Joint Plan, as well as the Debtors' business operations and actions post-petition, are set forth in detail in the Disclosure Statement and will not, for purposes of this Motion, be recounted herein.  A general description of Debtors' pre-petition businesses and operations as well the reasons for the commencement of these Chapter 11 Cases is fully set forth in the *Omnibus Declaration of Thomas M. Friel in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 19], which is incorporated herein by reference.

5.    As set forth in the Disclosure Statement, and in accordance with sections 1122 and 1123 of the Bankruptcy Code, the Plan contemplates classifying Holders of Claims and Equity Interests into various Classes for all purposes, including with respect to voting on the Joint Plan.  Debtors are proposing to solicit votes to accept or reject the Joint Plan from Holders of Claims or Equity Interests in the Voting Classes (defined below) and proposing not to solicit votes from Holders of Claims or Equity Interests in the Non-Voting Classes (defined below).

### III.    Relief Requested

6.    Debtors seek entry of an order (the "Disclosure Statement Order") pursuant to sections 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020 and Local Rule 9014, among other things:

(i)    approving the Disclosure Statement as containing "adequate information" as such term is defined in section 1125 of the Bankruptcy Code;

(ii)    establishing a voting record date for determining the holders of claims and interests entitled to vote on the Plan;

(iii)    approving procedures for the solicitation of votes, including:

(a)    approving solicitation packages and procedures for distribution thereof;
(b)    approving forms of ballots;
(c)    approving notices to Non-Voting Classes under the Plan;
(d)    establishing a voting deadline for the receipt of ballots; and
(e)    approving procedures for vote tabulation; and

(iv)    approving the form and manner of notice of the Confirmation Hearing and related deadlines.

#4816-4952-5765                                      -3-

1

### IV.   Legal Basis For Approving Relief Requested

2

**A.    The Disclosure Statement Contains Adequate Information and Should Be Approved under Section 1125 of the Bankruptcy Code.**

3

4       7.      Pursuant to section 1125 of the Bankruptcy Code, the proponent of a plan must

5   provide holders of impaired claims with "adequate information" regarding such plan when

6   soliciting votes to accept or reject such plan.  Section 1125(a)(l) of the Bankruptcy Code

7   provides:

8               "[A]dequate information" means information of a kind, and in
                sufficient detail, as far as is reasonably practicable in light of the
9               nature and history of the debtor and the condition of the debtor's
                books and records, including a discussion of the potential material
10              Federal tax consequences of the plans to the debtor, any successor
                to the debtor, and a hypothetical investor typical of the holders of
11              claims or interests in the case, that would enable such a
                hypothetical investor of the relevant class to make an informed
12              judgment about the plan . . . .

13  11 U.S.C. § 1125(a)(l) (2006).

14      8.      A proponent's disclosure statement must, as a whole, provide information that is

15  reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on

16  the plan.  *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir.

17  2003).  The adequacy of a disclosure statement "is to be determined on a case-specific basis

18  under a flexible standard that can promote the policy of Chapter 11 towards fair settlement

19  through a negotiation process between informed interested parties."  *In re Copy Crafters*

20  *Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988); *see also In re Lisanti Foods, Inc.*,

21  329 B.R. 491, 507 (D.N.J. 2005) ("Precisely what constitutes adequate information in any

22  particular instance will develop on a case-by-case basis.").

23      9.      A bankruptcy court has broad discretion in examining and approving the

24  adequacy of the information contained in a disclosure statement.  *See Texas Extrusion Corp. v.*

25  *Lockheed Corp.* (*In re Texas Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988).  Congress

26  granted courts discretion in order to facilitate effective reorganization of a debtor in the broad

27  range of businesses in which chapter 11 debtors engage and the broad range of circumstances

28  that accompany chapter 11 cases.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at pp. 408-09

(1977) ("In reorganization cases, there is frequently great uncertainty.  Therefore, the need for flexibility is greatest.").  Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.  *See, e.g., In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).  The court may decide what is appropriate in each case and under the circumstances.  *See In re Ferretti*, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (cautioning that "no one list of categories will apply in every case").

10.     The Debtors submit that the Disclosure Statement contains all or substantially all of the information typically determined to be "adequate" as required by section 1125 of the Bankruptcy Code.  Specifically, the Disclosure Statement contains information including, but not limited to:  (a) the terms of the Plan and the distributions to be made thereunder, including, but not limited to, the proposed auction of the Opco Assets; (b) the operation of Debtors' businesses pre- and post-petition; (c) a liquidation analysis; (d) the sources of information provided; (e) summary information regarding claims asserted against Debtors' estates; (f) Debtors' outstanding indebtedness; (g) significant events leading to the filing of the Chapter 11 Cases; (h) risk factors attendant to the Joint Plan; (i) tax consequences of the Joint Plan; (j) details regarding releases and injunctions and to whom such releases and injunctions will be granted; and (k) appropriate disclaimers.  In addition to the types of information typically required, the Disclosure Statement provides an overview of key Bankruptcy Code concepts, including allowance, impairment, and classification, as well as the requirements for confirmation.

11.     The Disclosure Statement, like the Joint Plan, clearly delineates the classes of claims and interest in each of the Debtors and provides adequate information for the holders of claims and interests in such classes to understand their proposed treatment under the Plan. Despite the complex nature of the Debtors' businesses and the operation of the Debtors' non-debtor subsidiaries and affiliates, the Debtors have undertaken considerable efforts to make the descriptions of the Plan and its impact on creditors and equity interest holders set forth in the Disclosure Statement compliant with the rigors of section 1125 of the Bankruptcy Code.  A

review of the Disclosure Statement makes evident that such efforts have resulted in the disclosure of adequate information appropriate for both the "ordinary" creditor and the sophisticated equity interest holders and major stakeholders.

12.    It bears mentioning that the major stakeholders and equity interest holders in these Chapter 11 Cases are among the world's most sophisticated financial lending institutions, hedge funds and private equity firms.  Most of such stakeholders, together with their counsel and/or financial advisors, were involved pre-petition in the negotiation, creation and documentation of the secured and unsecured major lender and noteholder claims against the Debtors that are being addressed, restructured and resolved in the Plan.  Such stakeholders were involved in the Debtors' lengthy pre-petition efforts to consensually restructure their businesses.  Post-petition, such stakeholders took an active role in reviewing the administration of the Debtors' estates, including, but not limited to, the negotiation of and consent to various stipulations and orders authorizing the use of the lenders' cash collateral and active roles in the contested compromises to the Master Lease, as well as in the extensive negotiation and drafting leading up to the filing of the Plan and of the Disclosure Statement.  Accordingly, given the Debtors' major stakeholders and equity interest holders' facility with and intimate knowledge of the Debtors' operations and of the terms and impact of the Plan, as to those groups, the Disclosure Statement is certainly "adequate."

13.    Further, both the UCC and the Dissident Lenders – likely objectors to the Motion – are also comprised of groups of highly sophisticated financial institutions and indenture trustees represented by counsel with extensive experience in bankruptcy matters, and who have been involved intensively in the Chapter 11 Cases.  Accordingly, given such groups' facility with and intimate knowledge of the Debtors' operations and of the terms and impact of the Joint Plan, as to those groups, the Disclosure Statement is also certainly "adequate."

**B.    Establishing Voting Record Date.**

**(i)    <u>Voting Record Date</u>**

14.    Bankruptcy Rule 3018(a) provides that the "date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a

hearing" is the record date for determining the "holders of stocks, bonds, debentures, notes and other securities" entitled to receive ballots and materials necessary for voting on the plan as specified in Bankruptcy Rule 3017(d).

15.     As the Court is aware, the Debtors have two series of notes, the Senior Notes, and the Subordinated Notes (together the "Securities").  In order to compile a list of holders of the Securities as of a certain date, each bank, brokerage firm, or the agent thereof as the entity through which the Beneficial Holders (defined below) hold the Securities (collectively, the "Intermediary Record Owners") needs advance notice of the date that will serve as the record date.  Due to the possibly large number of holders of the Securities, compiling such a list for purposes of notice and/or solicitation may take considerable time and require coordination with the Voting and Claims Agent.  In order for the relevant materials to be fully and properly disseminated to the holders of the Securities, Debtors request the Court to order all banks, brokerages, transfer agents and clearinghouses that have been identified as current record holders of the Securities to disseminate the appropriate solicitation package and/or notice to such holders and cooperate with the Debtors and the Voting and Claims Agent with respect to the solicitation process.  To ensure that the Debtors have sufficient time to provide proper notice of and distribute the Solicitation Packages (as defined below), the Debtors request that the record date with respect to holders of the Securities occur a number of days prior to the Disclosure Statement Hearing.  Specifically, the Debtors request that this Court exercise its authority under Bankruptcy Rule 3017(d) to fix June 3, 2010 (the "Securities Voting Record Date"), which is seven (7) days before the Disclosure Statement Hearing, as the voting record date with respect to the Securities.

16.     With respect to all other Claims, the Debtors request that this Court fix the date of the hearing on this Motion, June 10, 2010, as the record date (the "Non-Securities Voting Record Date" and together with the Securities Voting Record Date, each a "Voting Record Date") in accordance with Bankruptcy Rule 3018(a)

17.     With respect to any transferred claim or equity interest, Debtors further propose that the transferee will be entitled to receive Solicitation Packages and cast a Ballot on account of

1   the transferred claim or equity interest only if: (a) all actions necessary to effect the transfer of

2   the claim or equity interest pursuant to Bankruptcy Rule 3001(e) have been completed by the

3   Voting Record Date; or (b) the transferee files, no later than the Voting Record Date, (i) the

4   documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn

5   statement of the transferor supporting the validity of the transfer.  Each transferee shall be treated

6   as a single creditor for purposes of the numerosity requirements in Section 1126(c) of the

7   Bankruptcy Code and the other procedures set forth in this Motion.

8   **C.      The Proposed Solicitation Procedures Should Be Approved.**

9          **(i)      <u>Distribution of Solicitation Packages and Notices</u>**

10                 (a)      <u>Voting Classes</u>

11          18.      Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders

12   of claims and equity interests for the purpose of soliciting their votes and providing adequate

13   notice of the hearing on confirmation of a plan of reorganization.  Specifically, Bankruptcy Rule

14   3017(d) provides, in relevant part:

> Upon approval of a disclosure statement, -- except to the extent
> that the court orders otherwise with respect to one or more
> unimpaired classes of creditors or equity security holders -- the
> debtor in possession, trustee, proponent of the plan, or clerk as the
> court orders shall mail to all creditors and equity security holders,
> and in a chapter 11 reorganization case shall transmit to the United
> States trustee,
>
>> (a) the plan or a court-approved summary of the plan;
>>
>> (b) the disclosure statement approved by the court;
>>
>> (c) notice of the time within which acceptances and rejections of
>>     the plan may be filed; and
>>
>> (d) any other information as the court may direct, including any
>>     court opinion approving the disclosure statement or a court-
>>     approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the
> hearing on confirmation shall be mailed to all creditors and equity
> security holders in accordance with Rule 2002(b), and a form of
> ballot conforming to the appropriate Official Form shall be mailed
> to creditors and equity security holders entitled to vote on the plan.

27   Fed. R. Bankr. P. 3017(d).

28

(b)    Impaired Classes Entitled to Vote

19.    Under the Plan, holders of allowed claims and interests in the following Classes are impaired and entitled to vote to accept or reject the Plan: P.2, S.2, S.3, S.7, M4.1, M3.1, M2.1, and M1.1 (collectively the "Voting Classes").  Debtors propose to distribute, on or before the fifth business day after entry of the Disclosure Statement Order (the "Solicitation Date") to each holder of an allowed claim or interest in the Voting Classes, a solicitation package (each, a "Solicitation Package") consisting of a CD-ROM containing copies of the following:

(i)    the notice, in substantially the form of Exhibit 1 attached hereto (the "Confirmation Hearing Notice");

(ii)    the Disclosure Statement (including the Joint Plan and Disclosure Statement Order (without exhibits)); and

(iii)    a ballot to accept or reject the Plan, in substantially the form of the appropriate ballot corresponding to the Class under the Plan of the claimant or interest holder's claim or interest, as the case may be, set forth in Exhibits 3 to 5 attached hereto (each, a "Ballot").  Examples of which are

The Solicitation Package will also include a labeled return envelope.  Debtors propose to distribute the Solicitation Packages to the holders of allowed claims in Voting Classes as of the Record Voting Date at the addresses in the Debtors' claims register.

(c)    Non-Voting Classes

(x)    Unimpaired – Deemed to Accept

20.    The Holders of Claims or Interests in the following Classes (collectively, the "Non-Voting Accepting Classes") are unimpaired and are deemed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code: NA.1, NA.2, P.1, S.1, RL.1, RL.2, RC.1, RC.2, and TS.1 and TS.2.

(y)    No-Distribution – Deemed to Reject

21.    The holders of Claims or Interests in the following Classes (collectively, the "Non-Voting Rejecting Classes" and together with the Non-Voting Accepting Classes, the "Non-Voting Classes") are receiving no distributions under the Plan, and are impaired and deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code: FHI.1, FH1.2, FHI.3, FH.4, FHI.5; FHI.6, FP.1, FP.2, FP.3, FP.4, FP.5; FP.6, VC.1, VC.2, VC.3, VC.4, VC.5; VC.6, P.3,

1   P.4, P.5, P.6; MP.1, MP.2, MP.3; MS.1, MS.2, MS.3; M7.1, M7.2, M7.3; M6.1, M6.2, M6.3;

2   M5.1, M5.2, M5.3; M5.4, M4.2, M4.3, M4.4.; M3.2, M3.3, M3.4; M2.2, M2.3, M2.4; M1.2,

3   M1.3, M1.4; S.9, and S.10.

4       22.    To avoid duplication and reduce expenses, Debtors propose that, consistent with

5   sections 1126(f) and (g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), Solicitation

6   Packages for holders of Claims against or Interests in the Non-Voting Classes *will not include a*

7   *Ballot*.  The Solicitation Packages for such Holders of Claims and Equity Interests will include

8   only a Notice of Non-Voting Status, substantially in the form of Exhibit 2 annexed hereto (the

9   "Notice of Non-Voting Status").  The Notice of Non-Voting Status identifies all of the Classes

10  that are presumed to accept or presumed to reject the Plan and sets forth the manner in which a

11  copy of the Plan and Disclosure Statement may be obtained.  Debtors submits that the proposed

12  notice and service procedures to the Non-Voting Classes are fair and reasonable, are designed to

13  provide creditors and equity holders with adequate notice and should be approved.

14              (d)    Other Interested Parties

15      23.    Debtors proposes to mail, on the Solicitation Date, a copy of the Confirmation

16  Hearing Notice, together with the Disclosure Statement, to: (i) the Office of the United States

17  Trustee for the District of Nevada, (ii) the District Director of the Internal Revenue Service,

18  (iii) the Office of the United States Attorney for the District of Nevada, (iv) the Securities and

19  Exchange Commission (the "SEC"), (v) counsel to the Committee, (vi) representatives of the

20  Nevada Gaming Commission; (vii) National Indian Gaming Commission and (viii) all parties

21  having filed requests for notices in this case pursuant to Bankruptcy Rule 2002.

22          **(ii)    Duties of Voting and Claims Agent**

23      24.    Pursuant to an order of the Bankruptcy Court entered on August 10, 2009 [Docket

24  No. 77], Debtors were authorized to retain Kurtzman Carlson Consultants as their notice, claims

25  and solicitation agent (the "Voting and Claims Agent") to, among other tasks and

26  responsibilities, assist Debtors with the solicitation and voting process in the Chapter 11 Cases.

27  Accordingly, the Voting and Claims Agent will assist Debtors in, among other things, (a)

28  mailing Confirmation Hearing Notices to Holders of Claims and Equity Interests in the Non-

#4816-4952-5765                                    -10-

Voting Classes and other non-voting parties entitled to notice, (b) mailing Solicitation Packages to Holders of Claims and Equity Interests in Voting Clauses, (c) soliciting votes on the Plan, (d) receiving, tabulating, and reporting on ballots cast for or against the Plan, (e) responding to inquiries from creditors and stakeholders relating to the Plan, the Disclosure Statement, the Ballots and matters related thereto, including, without limitation, the procedures and requirements for voting to accept or reject the Plan and objecting to the Plan and (f) if necessary, contacting creditors regarding the Plan and issues regarding their Ballots.

**D.      Forms of Ballots – Unsecured Creditors.**

25.      Bankruptcy Rule 3017(d) requires Debtors to mail a form of ballot, which substantially conforms to Official Form No. 14, only to "creditors and equity security holders entitled to vote on the plan."  Fed. R. Bankr. P. 3017(d).  Debtors proposes to distribute a Ballot to each creditor and interest holder in the Voting Classes.  The Ballots are based on Official Form No. 14 and comply with Bankruptcy Rule 3018(c) but have been modified to address the particular aspects of the Chapter 11 Cases and to include certain additional information that Debtors believe is relevant and appropriate for each such class of claims and interests.  Forms of Ballot to Holders of allowed Claims in the Voting Classes are annexed hereto as <u>Exhibits 3 – 5</u>.  Such forms are examples of the Ballots that will be distributed.  Upon approval by this Court, the Voting and Claims Agent will create a distinct Ballot for each Voting Class based on the form annexed as <u>Exhibits 3 – 5</u> identifying the Class.  In addition, the Voting and Claims Agent will bar code each Ballot to correspond to the Holder of a Claim or Interest in a Voting Class.  Thus, each holder in a Voting Class will receive an individualized Ballot.

**E.      Forms of Ballots to Holders of Securities and Approval of Certain Transmittal Procedures in Connection with such Ballots.**

26.      <u>Transmittal to Record Holders</u>.  Bankruptcy Rule 3017(e) provides that "the court shall consider [at the disclosure statement hearing] the procedures for transmitting the documents and information required by [Rule 3017(d)] to beneficial holders of stock, bonds, debentures, notes and other securities, determine the adequacy of the procedures, and enter any orders as the court deems appropriate."

27.     Because of the complexity and difficulty associated with reaching Beneficial Holders, many of whom hold their securities in brokerage accounts and through several layers of ownership, the Debtors propose that materials be sent in a manner customary in the securities industry to ensure that the Beneficial Holders will receive the Solicitation Package.  Debtors propose to transmit the Solicitation Packages to holders of the Senior Notes and Subordinated Notes by mailing or causing to be mailed such materials by the Solicitation Date to the Registered Record Owners (as defined below) and the Intermediary Record Owners (as defined below).  In addition, Master Ballots will be distributed to the Intermediary Record Owners in accordance with customary procedures in the securities industry.

28.     Labels for Record Holders.  To facilitate the mailing of ballots and notices, the Debtors request that the Court order each of the trustees and transfer agents, for the Securities  to provide the Voting and Claims Agent with an electronic file containing the names, addresses, and holdings of each of the respective owners that hold the Securities in their own name (the "Registered Record Owners") or Intermediary Record Owners of the Securities as of the Securities Voting Record Date or, if they are unable to provide an electronic file, two sets of pressure-sensitive labels and a list containing the same information within seven (7) days after the Securities Voting Record Date, *i.e.*, the Disclosure Hearing Date.

29.     Dissemination of Ballots and Notices to Beneficial Holders.  In conjunction with the mailing of ballots and notices, additional steps are necessary to ensure the beneficial holders of the Senior Notes and the Subordinated Notes (the "Beneficial Holders") receive Solicitation Packages and have an opportunity to vote.  Thus, the Debtors propose that the Court order the Intermediary Record Owners to distribute Solicitation Packages and notices to the respective Beneficial Holders of the Senior Notes and of the Subordinated Notes, as applicable, within three (3) business days of receiving the Solicitation Packages and notices.

30.     Voting by Beneficial Holders.  The Debtors request that the Court authorize two options for Intermediary Record Owners to obtain the votes of the Beneficial Holders and order each such entity to follow one of these two options.  First, use of a Master Ballot.  The Intermediary Record Owners may forward the Solicitation Package to the Beneficial Holders of

the Senior Notes or the Subordinated Notes, as applicable, for voting.  Under this option, the Intermediary Record Owners must summarize the individual votes of their Beneficial Holders on a Master Ballot.  The Intermediary Record Owners shall then date and return the Master Ballot to the Voting and Claims Agent prior to the Voting Deadline.  Alternatively, the Intermediary Record Owner may "pre-validate" a Beneficial Holders Ballot (a "Pre-validated Ballot") by signing that ballot and by indicating the following on that Ballot:  (a) the Intermediary Record Owner; (b) the principal amount of Senior Notes or Subordinated Notes (as applicable) owned by the applicable Beneficial Holder; (c) and the appropriate account numbers through which the Beneficial Holder's holdings are derived.  The Intermediary Record Owner shall then forward the Solicitation Package, including the Pre-validated Ballot and a return envelope addressed to the Voting and Claims Agent, to the Beneficial Holder for voting by such Beneficial Holder.

31.    Debtors shall serve a copy of the Disclosure Statement Order on the indenture trustee(s), the agent(s) and each Intermediary Record Owner identified by the Debtors and the Voting and Claims Agent as an entity through which Beneficial Holders hold any of the Securities.  The Debtors submit that this procedure adequately recognizes the complex structure of the securities industry, enables the Debtors to transmit materials to the Intermediary Record Owners and Beneficial Holders of the Securities, and affords such persons a fair and reasonable notice and opportunity to vote, as applicable.

**F.    Establishing Voting Deadline for Receipt of Ballots.**

32.    Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or equity security interests may accept or reject a plan.  Debtors propose that in order to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed and delivered to the Voting and Claims Agent so that it is actually received by the Voting and Claims Agent no later than 4:00 p.m. (prevailing Pacific Time) on the date that is twenty-one (21) days after the Solicitation Date (the "Voting Deadline").  Debtors submits that such solicitation period is a sufficient period within which creditors and interest holders can make an informed decision whether to accept or reject the Plan.

**G.    Approval of Procedures for Vote Tabulation.**

33.    For purposes of voting on the Plan, with respect to creditors, Debtors proposes that the amount of a Claim used to tabulate acceptance or rejection of the Plan should be, as applicable:

(a)    The claim listed in a Debtor's schedule of liabilities, provided that (i) such claim is not scheduled as contingent, unliquidated, undetermined or disputed and (ii) no proof of claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law).

(b)    The noncontingent and liquidated amount specified in a proof of claim timely filed with the Court or the Voting and Claims Agent (or otherwise deemed timely filed by the Court under applicable law) to the extent the proof of claim is not the subject of an objection (or, if such claim has been resolved pursuant to a stipulation or order).

(c)    The amount allowed pursuant to the Plan.

(d)    The amount temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), provided that a motion is brought, notice is provided and a hearing is held prior to the Confirmation Hearing, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

(e)    With respect to ballots cast by alleged creditors who have timely filed proofs of claim in wholly unliquidated, unknown or uncertain amounts that are not the subject of an objection filed before the commencement of the Confirmation Hearing, such ballots shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, and – solely for voting purposes – such claims shall be deemed to be asserted in the amount of $1.00.

34.    _Votes Counted_.  Except as otherwise provided herein, Debtors propose that any Ballot that (i) is timely received, (ii) contains sufficient information to permit identification of the claimant or interest holder and (iii) is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.

35.    _Votes Not Counted_.  Debtors further propose that the following Ballots _not_ be counted or considered for any purpose in determining whether the Plan has been accepted or rejected: (i) any Ballot received after the Voting Deadline, unless Debtors granted an extension of the Voting Deadline with respect to such Ballot, (ii) any Ballot that is illegible in any material respect or contains insufficient information to permit the identification of the claimant or the claim amount, (iii) any Ballot cast by a person or entity that does not hold a claim in a class that

is entitled to vote to accept or reject the Plan, (iv) any unsigned Ballot, (v) any Ballot transmitted to the Voting and Claims Agent (including by facsimile or e-mail) that does not contain an original signature, and (vi) any properly executed, timely received Ballot that partially rejects and partially accepts the Plan or that does not clearly indicate an acceptance or rejection of the Plan. Debtors requests that the Voting and Claims Agent be authorized to, in its discretion, contact voters directly by telephone, writing or e-mail to attempt to cure any defects in the Ballots and be authorized to so cure any defects with the consent of the Debtors.

36. <u>Last Ballot Counted</u>. Notwithstanding Bankruptcy Rule 3018(a), Debtors propose that whenever a creditor or interest holder casts more than one Ballot voting the same claim or interest before the Voting Deadline, the <u>last</u> Ballot <u>received</u> before the Voting Deadline be deemed to reflect the voter's intent and thus to supersede any prior Ballots, without prejudice to Debtors' right to object to the validity of such last Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the penultimate Ballot for all purposes. This procedure of counting the last, valid Ballot is consistent with practice under various state and federal corporate and securities laws. Moreover, it will spare the Court and Debtors the time and expense of responding to motions brought pursuant to Bankruptcy Rule 3018(a) attempting to show cause for changing votes.

37. <u>No Vote-Splitting; Effect</u>. Debtors propose that creditors or interest holders must vote all of their Claims within a particular Class under the Plan together either to accept or to reject the Plan and may not split their vote(s) within a particular Class, and that any properly executed, timely received Ballot that partially rejects and partially accepts the Plan not be counted as a vote to accept or reject the Plan.

38. <u>Withdrawal of Ballots</u>. Debtors propose to permit any claimant or interest holder who has delivered a valid Ballot for the acceptance or rejection of the Plan to withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting and Claims Agent at any time prior to the Voting Deadline to be valid. A notice of withdrawal should (a) contain a description of the claim or interest to which it relates and, in the case of a claim, the aggregate amount represented by such claim as allowed for voting purposes, (b) be signed by the

1    withdrawing party in the same manner as the Ballot being withdrawn, (c) contain a certification

2    that the withdrawing party owns the claim or interest and possesses the right to withdraw the

3    vote sought to be withdrawn, and (d) be received by the Voting and Claims Agent prior to the

4    Voting Deadline.

5        39.    <u>Absence of Votes in a Class</u>.  Debtors request that if no votes to accept or reject

6    the Plan are received with respect to a particular Class, such Class be deemed to have voted to

7    accept the Plan.  *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir. 1988) (holding

8    non-voting, non-objecting judgment lien creditor who was only member of class was deemed to

9    have accepted plan of reorganization).

10    **H.    Setting Confirmation Hearing and Establishing Notice and Objection
          Procedures Regarding Confirmation of Plan.**

11

12        40.    Bankruptcy Rule 3017(c) provides:

13        [o]n or before approval of the disclosure statement, the court shall
          fix a time within which the holders of claims and interests may

14        accept or reject the plan and may fix a date for the hearing on
          confirmation.

15

16    Fed. R. Bankr. P. 3017(c).  Bankruptcy Rules 2002(b) and (d) require, *unless otherwise*

17    *shortened by the Court*, not less than twenty-eight (28) days' notice by mail to all creditors and

18    equity security holders of the time fixed for filing objections to, and the hearing to consider

19    confirmation of, a Plan.

20        **(i)    Setting the Confirmation Hearing for July 15 and 16, 2010**

21        41.    Debtors request that the Court use its discretion to shorten the twenty-eight day

22    notice period of Bankruptcy Rules 2002(b) and (d) and set the Confirmation Hearing for and

23    held on July 15 and 16, 2010.  This Court has the discretion and authority to set such date under

24    Fed. R. Bankr. P. 3017(c).  Further, the Debtors request that the Confirmation Hearing may, with

25    the Court's consent, be continued from time to time by the Court or Debtors without further

26    notice other than adjournments announced in open Court or as indicated in any notice of agenda

27    of matters scheduled for hearing filed with the Court.

28

#4816-4952-5765

**(ii)    Objection Deadline – 14 days prior to Confirmation Hearing**

42.    Pursuant to Bankruptcy Rule 3020(b)(l), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bank. P. 3020(b)(l). Debtors requests that the Court direct that objections to confirmation of the Plan, if any, must (i) be in writing, (ii) state the name and address of the objecting party and the amount and nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection, and (iv) be filed, together with proof of service, with the Court, and (v) be served so that they are actually received by: (a) Station Casinos, Inc., 1505 South Pavilion Center Drive, Las Vegas, Nevada 89135; Attention: Richard Haskins, (b) Milbank, Tweed, Hadley & M$^c$Cloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, California 90017, Attention: Paul S. Aronzon, Esq. and Thomas R. Kreller, Esq., counsel for Debtors, (c) Lewis & Roca LLP, 50 West Liberty Street, Suite 410, Reno, Nevada 89501; Attention: Bruce Beesley, Esq., counsel for Debtors, (d) the Office of the United States Trustee for the District of Nevada, C. Clifton Young Federal Bldg., 300 Booth Street, Rm. 2129, Reno, Nevada 89509; Attention: Bill Cossitt, Esq., (e) Fried Frank Harris Shriver & Jacobson, One New York Plaza, New York, New York 10004; Attention: Bonnie Steingart, Esq. and Marissa Soto, Esq., counsel to the Official Committee of Unsecured Creditors, (f) Fox Rothschild LLP, 3773 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169; Attention: Anne Loraditch, Esq., counsel to the Official Committee of Unsecured Creditors, (g) Simpson Thacher & Bartlett, 425 Lexington Avenue, New York, New York 10017; Attention: Sandeep Qusba, Esq. and Jason Friedman, Esq., counsel to the prepetition agent; and (h) Sidley Austin, One South Dearborn, Chicago, Illinois 60603, Attention: Jeffrey Bjork, Esq. and Larry Nyhan, Esq., *no later than 4:00 p.m.* (prevailing Pacific Time) on the date that is not less than fourteen (14) days prior to the Confirmation Hearing.

43.    The proposed timing for service of objections, if any, will afford Debtors and other parties in interest sufficient time to consider any objections and file any replies (in accordance with the following paragraph) while leaving the Court sufficient time to consider any such objections and replies before the Confirmation Hearing.

#4816-4952-5765

-17-

### (iii) Reply by Debtors to be Filed 2 Days Prior to the Confirmation Hearing and Request for Waiver of Local Rule 9014(e)(1)

44.     Debtors request that the Court set a date that is two business days prior to the Confirmation Hearing for a Reply to any objection to Plan Confirmation – July 13, 2010.  The Debtors request pursuant to Local Rule 9014(d)(3)(C) that the Court waive the Debtors' obligation under Local Rule 9014(d)(2) to file the reply 7 days prior to the Confirmation Hearing.  The requested extension of the deadline to file a reply will allow the Debtors additional time to negotiate, if possible, consensual resolutions to objections to the Joint Plan.

45.     In addition, Debtors submit that if there are objections to confirmation of the Joint Plan, it will assist the Court and may expedite the Confirmation Hearing if Debtors are authorized to file a single reply to all such objections.  Accordingly, Debtors requests that the Court dispense with the procedural requirement that Debtors file a separate motion for authority to file a reply in excess of the 15-page limit and authorize the Debtors to file and serve a single reply to all such objections.  The Debtors further request that the Court, in accordance with Local Rule 9006 waive Local Rule 9014(e)(1) and authorize the Debtors to file a reply in excess of 15 pages.

### (iv) Chart of Proposed Dates and Deadlines

46.     Debtors submit that the proposed schedule for the Confirmation Hearing is in compliance with the Bankruptcy Rules and the Local Rules and will enable Debtors to pursue consummation of the Plan in a timely fashion.  A chart of the proposed dates and deadlines for the confirmation process set forth in the Motion is as follows:

| Event | Date/Deadline |
|---|---|
| Deadline for objections to Disclosure Statement | May 27 |
| Deadline to file reply to objections to Disclosure Statement | June 3 |
| Securities Voting Record Date | June 3 |
| Disclosure Statement Hearing | June 10 |
| Non-Securities Voting Record Date | June 10 |
| Deadline for Agents to deliver Holder information to Voting and Claims Agent | TBD |
| Entry of Order Approving Disclosure Statement | [June 11] |
| Solicitation Date | Fifth business day after entry of Disclosure Statement Order [est. June 16] |

| Event | Date/Deadline |
|---|---|
| Deadline for Intermediaries to send Solicitation Packages to Beneficial Holders | Within 3 business days of receipt |
| Deadline to Publish Notice of Confirmation Hearing | Solicitation Date [June 16] |
| Voting Deadline | [July 1] |
| Deadline for objection to confirmation of Joint Plan | 14 days prior to Confirmation Hearing [July 1] |
| Deadline to File Plan Supplements and Exhibits | [TBD] |
| Deadline to file single reply to objections to confirmation of Joint Plan | 2 business days before Confirmation Hearing [July 13] |
| Confirmation Hearing | [July 15 and 16] |

I.     **Establishing Procedures for Notices of Confirmation Hearing and Non-Voting Status.**

47.     In accordance with Bankruptcy Rules 2002 and 3017(d), Debtors propose to distribute a copy of the Confirmation Hearing Notice to all creditors and interest holders.

48.     The Confirmation Hearing Notice (Exhibit 1) sets forth (i) the Voting Deadline, (ii) the time fixed for filing objections to confirmation of the Plan, (iii) the time, date and place for the Confirmation Hearing, (iv) the manner in which copies of the Joint Plan and Proposed Disclosure Statement may be obtained, and (v) highlights the releases and the injunction provisions of the Joint Plan in accordance with Bankruptcy Rule 2002(c)(3).

49.     The Notice of Non-Voting Status (Exhibit 2) sets forth (i) a notice of unimpaired or impaired status, as applicable, (ii) the time fixed for filing objections to confirmation of the Joint Plan, (iii) the time, date and place for the Confirmation Hearing, and (iv) the manner in which copies of the Joint Plan and Disclosure Statement may be obtained, and (v) highlights the releases and the injunction provisions of the Joint Plan in accordance with Bankruptcy Rule 2002(c)(3).  Such notices will be sent on or before the Solicitation Date, which is at least twenty days prior to the proposed deadline to file objections to confirmation of the Joint Plan.

50.     Bankruptcy Rule 2002(1) provides that the Court may authorize notice by publication where it determines that notice by mail is impracticable or that it is otherwise desirable to provide supplemental notice.  Fed. R. Bankr. P. 2002(1).  In addition to mailing the Confirmation Hearing Notice, Debtors proposes to publish the Confirmation Hearing Notice, as is without alteration, once in the Wall Street Journal and the Las Vegas Sun by the Solicitation

Date.  Debtors believes that service and publication of the Confirmation Hearing Notice as described herein is appropriate and sufficient notice under the Bankruptcy Rules and the circumstances of these cases.

**J.      Additional Process and Procedure**

51.      Non-substantive Changes.  The Debtors request authority to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Non-Voting Status Notice and related documents without further order of the Court, including without limitation changes to correct typographical and grammatical errors, insert dates and to make conforming changes among the Disclosure Statement, the Plan, the Ballots, the Non-Voting Status Notice and any other materials in the Solicitation Package prior to mailing.

52.      Copies and Review of Documents.  Copies of the Plan and Disclosure Statement (including after the Exhibit Filing Date, the Plan Supplement) and all pleadings and orders of the Bankruptcy Court are publicly available, for a fee via PACER at: http://wwwdeb.uscourts.gov, or free of charge from the Voting and Claims Agent at http://www.kccllc.net/stationcasinos. Such documents and pleadings may also be obtained by writing to the Voting and Claims Agent.

**WHEREFORE,** Debtors respectfully requests the Motion be granted and an order, substantially in the form annexed hereto as Exhibit 6, approving the Disclosure Statement be entered, together with such other relief as is just and proper.

1    Dated: May 13, 2010      Respectfully submitted,

2

3                         By:        */s/ Thomas R. Kreller*
                                Paul S. Aronzon, CA SBN 88781

4                              Thomas R. Kreller, CA SBN 161922
                             Robert C. Shenfeld CA SBN 228181

5                              MILBANK, TWEED, HADLEY & McCLOY LLP
                             601 South Figueroa Street, 30th Floor

6                              Los Angeles, California 90017

7                              Reorganization Counsel for
                             Debtors and Debtors in Possession

8

9                              Bruce T. Beesley, NV SBN 1164
                             Laury Macauley, NV SBN 11413
                             LEWIS AND ROCA LLP

10                             50 W. Liberty Street, Ste. 410
                            Reno, NV   89501

11                             bbeesley@lrlaw.com; lmacauley@lrlaw.com

12                             Local Reorganization Counsel
                            For Debtors and Debtors in Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28