**Entered on Docket**
**June 04, 2010**

_____
**Hon. Gregg W. Zive**
**United States Bankruptcy Judge**

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:     (213) 892-4000
Facsimile:     (213) 629-5063

Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

In re:

STATION CASINOS, INC.

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Northern NV Acquisitions, LLC
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC

Chapter 11

Case No. BK-09-52477
Jointly Administered
BK 09-52470 through BK 09-52487

**ORDER ESTABLISHING BIDDING PROCEDURES AND DEADLINES RELATING TO SALE PROCESS FOR SUBSTANTIALLY ALL OF THE ASSETS OF STATION CASINOS INC. AND CERTAIN "OPCO" SUBSIDIARIES**

Hearing Date:     May 27 and 28, 2010
Place:             300 Booth Street
                   Reno, NV 89509

#4823-7512-9606

1

Upon *Debtors' Motion for Entry of Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries*, dated April 7, 2010 (the "Motion");[1] and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby.

B.      Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

C.      Venue for this case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Under the circumstances, the Court concludes that the notice given by the Debtors of the Motion and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Fed. R. Bankr. P. Rules 2002 and 4001(b), (c) and (d) and the Local Rules of the Court, and that no further notice of, or hearing on, the relief sought in the Motion and the relief granted herein is necessary or required.

E.      Based on the foregoing, and upon the record made before this Court at the hearing on the Motion (including the oral findings of fact and conclusions of law announced by the Court on May 28, 2010), and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted.

2.      All objections to the Motion that have not been withdrawn, waived, or settled and all reservations of rights included therein, are overruled on the merits.

---

[1]    Capitalized terms not otherwise defined herein have the meanings assigned to them in the Motion.

#4823-7512-9606

2

1         3.     The Bidding Procedures set forth in <u>Exhibit 1</u> annexed hereto and

2    incorporated herein by reference in their entirety are approved and shall be effective and binding

3    on all parties as if such Bidding Procedures were set forth in this Order.

4         4.     The Opco Debtors are authorized to conduct the Auction in accordance

5    with the provisions of the Bidding Procedures.

6         5.     The Bidding Procedures Notice annexed hereto as <u>Exhibit 2</u> is approved as

7    adequate and appropriate under the circumstances and the Debtors are directed and authorized to

8    serve the Bidding Procedures Notice within 5 business days of the date this Order is entered.

9         6.     The Debtors designated as "OpCo Sellers" on Schedule 1 of the Bidding

10    Procedures are authorized to execute the Asset Purchase Agreement described in paragraph D(1)

11    of the Bidding Procedures; <u>provided, however</u>, that (a)  such authorization and execution shall

12    not impose any liability or obligation on the part of any Debtor, other than the expense

13    reimbursement provided for in Section 8.3 of the Asset Purchase Agreement, unless and until the

14    Court has entered the Confirmation Order, and (b) this Order shall be without prejudice to the

15    rights of any party in interest to object to the Debtors' consummation of the transactions

16    contemplated by the Asset Purchase Agreement**.**

17         7.     This Court shall retain jurisdiction to hear and determine all matters

18    arising from the implementation and/or interpretation of this Order and the Bidding Procedures.

19

20

21

22

23

24

25

26

27

28

#4823-7512-9606

3

1    SUBMITTED BY:

2    Paul S. Aronzon (CA State Bar No. 88781)
3    Thomas R. Kreller (CA State Bar No. 161922)
     MILBANK, TWEED, HADLEY & McCLOY LLP
4    601 South Figueroa Street, 30th Floor
     Los Angeles, California 90017
5
     Reorganization Counsel for
6    Debtors and Debtors in Possession

7
     Bruce T. Beesley, #1164
8    Laury Macauley, #11413
     LEWIS AND ROCA LLP
9    50 W. Liberty Street, Ste. 410
     Reno, NV 89501
10
     Local Reorganization Counsel
11   For Debtors and Debtors in Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPROVED/~~DISAPPROVED~~

INDEPENDENT LENDERS

By _____/s/ Eric D. Goldberg_____

APPROVED/~~DISAPPROVED~~

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By_____/s/ Bonnie Steingart_____

APPROVED/~~DISAPPROVED~~

PROPCO LENDERS

By _____/s/ Larry J. Nyhan_____

APPROVED/~~DISAPPROVED~~

OPCO LENDERS

By _____/s/ Sandeep Qusba_____

APPROVED/DISAPPROVED

OFFICE OF THE UNITED STATES
TRUSTEE

By

_____

# # #

APPROVED/DISAPPROVED

INDEPENDENT LENDERS

By
_____

APPROVED/DISAPPROVED

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By_____

APPROVED/DISAPPROVED

PROPCO LENDERS

By
_____

APPROVED/DISAPPROVED

OPCO LENDERS

By
_____

APPROVED/~~DISAPPROVED~~

OFFICE OF THE UNITED STATES
TRUSTEE

By _____

_____

**WILLIAM B. COSSITT**
Trial Attorney for Acting United States
Trustee Sara L. Kistler                    # # #

# Exhibit 1

# Exhibit 1

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

## BIDDING PROCEDURES IN CONNECTION WITH OPCO DEBTORS' SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF STATION CASINOS INC. AND CERTAIN OF ITS DEBTOR AND NON-DEBTOR OPCO SUBSIDIARIES

A.    Preliminary Statements

1.    Set forth below are the bidding procedures (the "Bidding Procedures") to be employed by Station Casinos, Inc. ("SCI") in the chapter 11 cases (jointly administered) pending in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") under case number 09-52477-GWZ (the "Chapter 11 Cases") with respect to the proposed sale of substantially all of the assets (collectively, the "Sale") of SCI and certain of its debtor subsidiaries (collectively, the "Opco Debtor Subsidiaries" and together with SCI, the "Opco Debtors"[1]) and its non-debtor subsidiaries (collectively, the "Opco Non-Debtor Subsidiaries") (collectively, the "Opco Properties") specified on Schedule 1 annexed hereto (the Opco Debtor Subsidiaries and the Opco Non-Debtor Subsidiaries together, the "Opco Subsidiaries" and the Opco Subsidiaries together with SCI, the "Opco Group").

2.    The Opco Properties do not include any of the following:

(a)    Any assets of FCP Propco LLC ("Propco") (collectively the "Propco Properties"), any equity in or assets of any subsidiary of SCI that directly or indirectly owns the equity of Propco (collectively, the "Propco Equity Interests"), or any assets encumbered by liens in favor of Propco (excluding any assets not located on a Propco Property and on which Propco's lien attaches to only an undivided percentage interest in, and less than 100% of, such assets) (collectively, the "Propco Collateral"). The Propco Properties, the Propco Equity Interests and the Propco Collateral are referred to collectively herein as the "Existing Propco Assets."

(b)    Any of SCI's assets specified on Schedule 2 annexed hereto (collectively, the "SCI Retained Assets").

(c)    Any of the assets specified on Schedule 3 annexed hereto (collectively, the "New Propco Purchased Assets") as more fully defined herein.

The Existing Propco Assets, the SCI Retained Assets and the New Propco Purchased Assets are referred to collectively herein as the "Excluded Assets." None of the Excluded Assets will be the subject of the Sale to any party other than the Stalking Horse Bidder, unless for any reason Propco (or its designee) does not purchase the New Propco

---

[1]  The Opco Debtors, together with Propco (as defined below) and certain other debtors in the Chapter 11 Cases, collectively, the "Debtors".

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Purchased Assets under and pursuant to the Amended Compromise Agreement (as defined below).

3.      The Sale is being conducted and shall be consummated pursuant to and in conjunction with confirmation of Debtors' *Joint Chapter 11 Plan of Reorganization for Station Casinos, Inc. and its Affiliated Debtors (Dated March 24, 2010)* [Docket No. 1131-1] as modified from time to time (the "Joint Plan"). FG Opco Acquisitions LLC is an entity owned in whole or in part by Fertitta Gaming LLC ("FG") and the institutions that are Propco's mortgage lenders (the "Propco Lenders") and is referred to herein as the "Stalking Horse Bidder."

4.      As used in these Bidding Procedures, the term "Consultation Parties" shall mean: the Administrative Agent under the Opco Loan Agreement (the "Opco Agent"), the steering committee of lenders under the Opco Loan Agreement (the "Opco Lender Steering Committee") and the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee"). In the event any Consultation Party objects to any decisions made or actions taken by or on behalf of the Opco Debtors hereunder, the Opco Debtors agree to provide such Consultation Party with a reasonable opportunity to raise such objection with the Bankruptcy Court and to consent to shortened notice in order to permit a prompt resolution of any such objection.

B.      Bidding Process

1.      The Bidding Procedures set forth herein describe, among other things, the Opco Properties available for Sale, the manner in which Potential Bidders may gain access to or continue to have access to due diligence materials concerning the Opco Properties, the manner in which Potential Bidders and bids may become Qualified Bidders and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").

2.      In the event of any dispute regarding the interpretation or application of these Bidding Procedures or the Bidding Process, the Bankruptcy Court will have exclusive jurisdiction to hear and resolve such dispute and the Opco Debtors consent to shortened notice to permit prompt resolution of such dispute.

3.      The Bidding Process will be conducted by the Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, and in consultation with the Consultation Parties, simultaneous with, and in furtherance of, the solicitation and confirmation of the Joint Plan (it being understood that the Joint Plan shall be further modified to incorporate the Successful Bidder and the terms of the Successful Bid (as defined below)). For all purposes under these Bidding Procedures, Dr. James Nave shall have the sole and exclusive authority to act on behalf of the Opco Debtors and to direct the actions of other representatives or advisors of the Opco Debtors. The approval of any Sale pursuant to these Bidding Procedures will be contingent upon confirmation of the

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Joint Plan and shall be consummated solely through the Joint Plan.  In addition, the closing of any Sale may involve additional intermediate steps or transactions to facilitate consummation of such Sale, including additional chapter 11 filings and/or mergers or other corporate transactions of subsidiaries of the Debtors and such other actions or transactions necessary to implement the Joint Plan.

C.    Assets To Be Sold

1.    The Opco Group is offering for sale all or substantially all of the Opco Properties *other than* the Excluded Assets.  The Excluded Assets will not be included in the Sale.  In addition, certain intellectual property assets of the Opco Group will be included in the assets to be sold, but the sale of those assets to any purchaser other than the Stalking Horse Bidder will be subject to a license to New Propco pursuant to a license agreement, the form of which will be provided to Potential Bidders not later than 7 days prior to the LOI Submission Date (as defined below).

2.    The Excluded Assets consist of assets that either:  (a) are Existing Propco Assets; (b) are assets that are to be transferred to Propco or New Propco (*i.e.*, the New Propco Purchased Assets) under the Joint Plan and/or pursuant to the Master Lease Compromise Agreement and all amendments thereto approved by the Bankruptcy Court, which amendments shall be in form and substance reasonably satisfactory to the Required Consenting Lenders (as such term is defined in the Restructuring Support Agreement, dated as of April 15, 2010 (as amended, supplemented or otherwise modified from time to time, the "Opco Support Agreement"), by and among the lenders under the Opco Loan Agreement (as defined below) from time to time party thereto, SCI, the Opco Debtor Subsidiaries and Opco Non-Debtor Subsidiaries and affiliates party thereto, FG, and Frank J. Fertitta III and Lorenzo J. Fertitta, as primary equity investors in FG (it being understood and agreed that the Opco Debtors shall not be, and shall not be deemed to be, parties to the Opco Support Agreement)) (the "Amended Compromise Agreement"); or (c) are assets owned and to be retained by SCI (*i.e.*, the SCI Retained Assets).

3.    The New Propco Purchased Assets are included in the Stalking Horse Bid.  If the Stalking Horse Bid is selected as the Successful Bid and that transaction closes, then the New Propco Purchased Assets shall be purchased by the Stalking Horse Bidder as part of that transaction.

4.    If the Stalking Horse Bid is <u>not</u> the Successful Bid, then (a) the New Propco Purchased Assets shall be sold to Propco as provided for in the Joint Plan and/or the Amended Compromise Agreement, and (b) the Successful Bid will not include any of the Excluded Assets except any Unsold New Propco Purchased Assets (defined below), but it will include the cash proceeds (the "Cash Proceeds") received by the Opco Group from Propco or its designee in consideration of the New Propco Purchased Assets, which proceeds shall be subject to the liens of the Opco Agent until the closing of the Successful Bid.  As provided in the Amended Compromise Agreement, the Cash Proceeds shall be equal to $35,000,000 for the New Propco Purchased Assets (even if

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Propco purchases less than all of the New Propco Purchased Assets), subject to adjustments as specified in the Amended Compromise Agreement.

5.      If the Stalking Horse Bid is <u>not</u> the Successful Bid and for any reason Propco does not purchase any of the New Propco Purchased Assets under and pursuant to the terms of the Joint Plan and/or the Amended Compromise Agreement, then the Successful Bid will include the New Propco Purchased Assets *in lieu of* the Cash Proceeds for those assets that otherwise would have been paid to the Opco Group under the Amended Compromise Agreement and the New Propco Purchased Assets shall remain subject to the liens of the Opco Agent until the closing of the Successful Bid.

6.      If the Stalking Horse Bid is <u>not</u> the Successful Bid and Propco purchases some, but not all, of the New Propco Purchased Assets (those assets <u>not</u> purchased by Propco, the "<u>Unsold New Propco Purchased Assets</u>") under and pursuant to the terms of the Joint Plan and/or the Amended Compromise Agreement, then the Successful Bid will include the Unsold New Propco Purchased Assets *in addition to* the Cash Proceeds received by the Opco Group from Propco or its designee in consideration of the New Propco Purchased Assets, which proceeds and Unsold New Propco Purchased Assets shall be subject to the liens of the Opco Agent until the closing of the Successful Bid.

D.      <u>The Stalking Horse Bid</u>

1.      SCI, the Opco Debtor Subsidiaries and the Opco Non-Debtor Subsidiaries and affiliates party thereto, have entered into the Asset Purchase Agreement (the "<u>APA</u>") with the Stalking Horse Bidder [Docket No. 1526].  The Stalking Horse Bidder is deemed a Qualified Bidder and the bid submitted by the Stalking Horse Bidder in the amount of $772,000,000 (on the terms described in the APA) (the "<u>Stalking Horse Bid</u>") is deemed to be a Qualified Bid, <u>provided</u> that the Stalking Horse Bid will terminate in accordance with its terms if the Stalking Horse Bid is not the Successful Bid or the Alternate Bid (as defined below).  The Stalking Horse Bidder shall also be deemed a party in interest in the Chapter 11 Cases with respect to all matters concerning the Sale and the conduct of, and determinations made at, the Auction.

E.      <u>Bids for Individual Assets and Joint Bids</u>

1.      The Opco Debtors believe that the Opco Debtors' estates will realize maximum value for the Opco Properties through an arms' length Sale of all or substantially all of the Opco Properties.  However, the Opco Debtors recognize that certain Potential Bidders may desire to acquire only a portion or portions of the Opco Properties.  Accordingly, the Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, will entertain, in consultation with the Consultation Parties: (i) bids for all or any portion or portions of the Opco Properties; and (ii) Joint Bids for all or substantially all or portions of the Opco Properties.

2.      Each casino property to be sold may be sold separately.  All primary customer data ("<u>Primary Customer Data</u>") relating to a Primary Customer (to be

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

determined for each casino in the same manner as Propco Primary Customers are to be determined for the Propco casinos as set forth in Item #21 in Schedule 3 annexed hereto) for each casino property shall be sold to the Successful Bidder for the applicable casino property on an exclusive basis and, as a result, only the buyer of a casino property can use such Primary Customer Data post-closing of the Sale.  No Debtor or member of the Opco Group (if such entity is not sold to the Successful Bidder for the applicable casino property) shall be entitled to use any Primary Customer Data related to any casino property post-closing of the Sale that (i) is sold in connection with the Sale, or (ii) is part of the Existing Propco Assets or the New Propco Purchased Assets.

3.     Upon consummation of the Sale, the participants in a Joint Bid may decide to divide the Opco Properties amongst themselves and operate certain Opco Properties separately from others. In order to operate such stand-alone businesses, the ultimate buyers of the Opco Properties may need to resolve certain interdependencies among the various Opco Properties (the "Interdependencies"), including, without limitation, certain issues relating to the use of intellectual property or the provision of transition services by and between joint bidders. The Opco Debtors shall not be required to undertake any obligation to resolve any Interdependencies among the various Opco Properties.

4.     After submission of an LOI (as defined below) and without limiting the terms set forth under the heading "Creditor Negotiations," any unauthorized contacts between one or more Potential Bidders or Qualified Bidders without the prior written consent of Dr. James Nave, on behalf of the Opco Debtors, are hereby strictly prohibited and may result in disqualification from participation in the Bidding Process and any Auction that may occur, as determined by Dr. James Nave, on behalf of the Opco Debtors, in consultation with the Consultation Parties.  Notwithstanding the foregoing, the Opco Debtors and/or the Consultation Parties shall have the right to contact parties who have expressed an interest in acquiring only a portion of the Opco Properties or in providing only a portion of the financing necessary to purchase the Opco Properties for the purpose of having discussions with respect to financing proposals and/or responding to other inquiries; provided, that the Consultation Parties shall provide the Opco Debtors' advisors advance notice of such discussions that is reasonable under the circumstances and provide the Opco Debtors' advisors the opportunity to participate in such discussions to the extent reasonable under the circumstances (it being understood that the Consultation Parties shall not initiate contact with parties who have not expressed an interest in acquiring all or a portion of the Opco Properties).

F.     Creditor Negotiations

1.     Notwithstanding anything herein to the contrary and so long as it is reasonably practicable, a Potential Bidder that desires at any time to contact (whether in person or telephonically) the Committee, the Opco Agent, any member of the Opco Lender Steering Committee or the Propco Lenders or their respective advisors to discuss the terms of any bid made or to be made, such Potential Bidder shall coordinate such contact through the Opco Debtors' advisors (who shall promptly act on such request to facilitate such contact).

*In re Station Casinos, Inc., et al.,*
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

G.  <u>Sale "As Is"</u>

1.      The Sale of the Opco Properties will be on an "as is" basis and without surviving representations or warranties or indemnities of any kind, nature, or description by the Opco Debtors, their agents, or estates.

H.  <u>Free Of Any And All Claims And Interests</u>

1.      Except as may be agreed to by a Successful Bidder and subject to the terms of any order of the Bankruptcy Court authorizing and approving the Sale of the Opco Properties to the Successful Bidder, which may be the order confirming the Joint Plan (the "<u>Confirmation Order</u>"), all of the rights, title and interests of the Opco Group in and to the Opco Properties, or any portion thereof, to be acquired as part of the Sale will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "<u>Claims and Interests</u>") as permitted by, and pursuant to, sections 105(a), 363, 365, 1123 and 1129 of the Bankruptcy Code, with such Claims and Interests attaching to the net proceeds of the sale of such Opco Properties, subject to the Opco Debtors' right to challenge the validity of such Claims and Interests (except to the extent such Claims and Interests were previously acknowledged by the Opco Debtors pursuant to an order of, or stipulation approved by, the Bankruptcy Court).

I.  <u>Publication Notice</u>

1.      As soon as reasonably practicable after entry of an order by the Bankruptcy Court approving these Bidding Procedures (the "<u>Bidding Procedures Order</u>"), but in any event no more than five (5) days after the entry of such Order, the Debtors shall publish a notice of these Bidding Procedures approved by Bankruptcy Court (the "<u>Bidding Procedures Notice</u>") in The Wall Street Journal (National Edition), The Las Vegas Review-Journal and The Financial Times (International Edition).

J.  <u>Confidentiality Agreement(s)</u>

1.      Unless a Potential Bidder has heretofore executed a confidentiality agreement with SCI appropriate for purposes of participating in the Bidding Procedures, each Potential Bidder must execute and deliver a confidentiality agreement in form and substance reasonably satisfactory to SCI (the "<u>Confidentiality Agreement</u>").

K.  <u>Participation Requirements; Deadlines</u>

1.      Unless otherwise ordered by the Bankruptcy Court for cause shown or otherwise consented to by the Opco Group after consultation with the Consultation Parties, in order to participate in the Bidding Process, each bidder (each a "<u>Potential Bidder</u>") must deliver to the Opco Debtors (copies of which the Opco Debtors promptly shall deliver to the Consultation Parties):

6

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

(a)     an executed Confidentiality Agreement (to be delivered prior to the distribution of any confidential information by the Opco Debtors to a Potential Bidder) which shall inure to the benefit of any purchaser of the Opco Properties (in the event that the Potential Bidder has already entered into a confidentiality agreement with the Opco Debtors, it must provide a statement agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Opco Properties and waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise prohibit disclosures regarding the Potential Bidder to the Consultation Parties);

(b)     current audited financial statements and latest unaudited financial statements of the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of acquiring the Opco Properties, current audited financial statements and latest unaudited financial statements of the equity holders or sponsors of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow the Opco Debtors and the Consultation Parties to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Sale; and

(c)     a preliminary (non-binding) written proposal letter of intent ("LOI") containing all of the following:

   a.   the identification of the specific Opco Properties that the Potential Bidder seeks to acquire,

   b.   the purchase price range for such Opco Properties (including liabilities to be assumed by the Potential Bidder) and form of consideration (including material terms of any "take back" debt (*i.e.*, seller financing));

   c.   any material assets and liabilities expected to be excluded;

   d.   the structure (including, without limitation, in the case of each potential Joint Bid, the structure of such Joint Bid) and financing of the Sale (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance and a description for funding post-acquisition working capital for the target);

   e.   any anticipated third-party (including from the Potential Bidder's existing creditors) corporate, stockholder, internal or regulatory approvals (including, but not limited to, Nevada Control Board, National Indian Gaming Commission or other regulatory or other consents or approvals required to close the Sale);

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

    f.   the anticipated time-frame and any anticipated impediments for

        i.   completing due diligence;

        ii.   obtaining each of the applicable approvals referred to in the preceding clause (e);

        iii.  negotiating definitive agreements; and

        iv.  consummating the Sale.

2.    Notwithstanding anything herein to the contrary, including without limitation the foregoing requirements set forth in section K.1 above, upon termination of the Opco Support Agreement, Opco Agent, on behalf of the Opco Lenders (as defined below), or the Opco Agent's designee shall be deemed a Potential Bidder.

3.    The Opco Agent and the Opco Lender Steering Committee, in consultation with the Opco Debtors, shall provide bidders with proposed terms for any "take back" debt (*i.e.*, seller financing) that may be issued to the lenders under the Opco Loan Agreement (the "<u>Opco Lenders</u>") in connection with the Sale.

4.    The LOI and the material identified in Section K.1 above with respect to each Potential Bidder shall be received by the Opco Debtors no later than June 30, 2010 (the "<u>LOI Submission Date</u>").  The Opco Debtors shall promptly distribute any such materials received to the advisors for the Consultation Parties.

5.    A "Qualified Bidder" shall mean a Potential Bidder (or in the case of a Joint Bid, all of the Potential Bidders participating in such Joint Bid, which shall be collectively considered a single Potential Bidder):

    (a)   that delivers the documents described in section K.1 above;

    (b)   whose financial information and/or credit quality support, or enhancement, demonstrate to the Opco Debtors' satisfaction, after consultation with the Consultation Parties, the financial capability of the Potential Bidder to consummate the Sale;

    (c)   that has submitted a reasonably competitive and realistic LOI;

    (d)   that has executed a Confidentiality Agreement; and

    (e)   that the Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, and in consultation with the Consultation Parties, determine is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale.  For the avoidance of any doubt, in the case of a proposed Joint Bid, the Potential Bidders participating in such Joint Bid shall together constitute a single

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Qualified Bidder if the Opco Debtors, in consultation with the Consultation Parties, determine that, as a group, the Potential Bidders qualify as a Qualified Bidder.

6.       Notwithstanding anything herein to the contrary, including without limitation, the requirements set forth in section K.5 above and section N.1 below, upon termination of the Opco Support Agreement, the Opco Agent, on behalf of the Opco Lenders, or the Opco Agent's designee shall be deemed a Qualified Bidder, and any bid submitted by the Opco Agent or its designee on behalf of the Opco Lenders in respect of all or a portion of the Opco Properties shall be deemed a Qualified Bid.  The Opco Agent, on behalf of the Opco Lenders, or its designee, shall be permitted, in their sole discretion, at any time after the termination of the Opco Support Agreement, to credit bid up to the full amount of the claims under the Opco Loan Agreement in respect of all or a portion of the Opco Properties.  Issues pertaining to credit bid rights with respect to any Unsold New Propco Purchased Assets will be addressed pursuant to further order of the Bankruptcy Court.

7.       As promptly as practicable after a Potential Bidder delivers all of the materials required by Section K.1 above, the Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, will determine, after consultation with the Consultation Parties, and will notify the Potential Bidder, if such Potential Bidder either by itself or, in the case of a proposed Joint Bid, in conjunction with other bidders participating in such Joint Bid, is a Qualified Bidder. At the same time that the Opco Debtors notify the Potential Bidder that it is a Qualified Bidder, the Opco Debtors will allow the Qualified Bidder to continue to conduct due diligence as provided in the following section with respect to the Opco Properties.

L.       <u>Due Diligence</u>

1.       The Opco Debtors shall, subject to competitive and other business considerations and their rights hereunder regarding the conduct of the Auction (as defined below), afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a Confidentiality Agreement with the Opco Debtors such due diligence access to materials and information relating to the Opco Properties and related liabilities as the Opco Debtors reasonably deem appropriate, after consultation with the Consultation Parties.

2.       Due diligence access shall include management presentations as scheduled by the Opco Debtors, access to electronic data rooms, property tours, and other matters which a Qualified Bidder or other person seeking to become a Qualified Bidder may reasonably request and as to which the Opco Debtors, in their reasonable business judgment, agree after consultation with the Consultation Parties and subject to competitive or other business considerations and their rights hereunder regarding the conduct of the Auction. The Opco Debtors may, in their discretion, coordinate diligence efforts such that multiple parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

3.      Neither the Opco Debtors nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Opco Properties to any person other than to Qualified Bidders and any other person seeking to become a Qualified Bidder that has executed a Confidentiality Agreement with the Opco Debtors.

4.      The Opco Debtors make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the definitive sale agreements with any Successful Bidder (defined below) executed and delivered by Opco Debtors.

M.      <u>Notices</u>

1.      A Qualified Bidder that desires to make a bid must deliver written copies of its bid materials to the following parties:

(a)      Station Casinos, Inc., Attn:  Dr. James Nave, c/o Skadden, Arps, Slate, Meagher & Flom LLP, Attn: Rodrigo Guerra and Van Durrer, 300 South Grand Avenue, Los Angeles, CA 90071-3137, Facsimile:  (213) 687-5600; with a copy to Richard J. Haskins, General Counsel, 1505 South Pavilion Center Drive, Las Vegas, NV 89135, Facsimile:  (702) 495-3310;

(b)      Debtors' counsel: Milbank Tweed Hadley & McCloy, Attn: Kenneth J. Baronsky and Paul S. Aronzon, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017-5735, Facsimile:  (213) 629-5063;

(c)      Debtors' financial advisors: Lazard Frères & Co., Attn: Simon Furie, 1999 Avenue of the Stars #1140, Los Angeles, CA 90067-4618, Facsimile: (310) 601-3401;

(d)      Counsel to the Opco Agent:  Simpson Thacher & Bartlett LLP, Attn: Sandy Qusba, 425 Lexington Avenue, New York, NY 10017, Facsimile: (212) 455-2502;

(e)      Financial advisor to the Opco Agent:  The Blackstone Group, Attn: Michael Genereux, 345 Park Avenue, New York, NY 10154, Facsimile: (212) 583-5707;

(f)      Counsel to the Committee:  Fried, Frank, Shriver, Harris & Jacobson LLP, Attn: Brad E. Scheler, One New York Plaza, New York, NY 10004, Facsimile: (212) 859-4000; and

(g)      Financial advisor to the Committee:  Moelis & Company LLC, Attn: Robert J. Flachs, 1999 Avenue of the Stars, Suite 1900, Los Angeles, CA 90067, Facsimile: (310) 443-8700.

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

N.     Qualified Bid

1.     A bid, including a Joint Bid, will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, and complies with all of the following (a "Qualified Bid"):

(a)     it (x) states that the applicable Qualified Bidder offers to purchase all, substantially all, or a specified portion of the Opco Properties and acknowledges that all Primary Customer Data relating to a Primary Customer (as defined in Schedule 3 annexed hereto) shall be sold to the Successful Bidder for each casino property on an exclusive basis and, as a result, only the buyer or a transferee of a casino property can use such Primary Customer Data post-closing, and (y) describes any material modifications to the terms set forth in the Potential Bidder's LOI that have occurred between the submission of the LOI and the Bid Deadline (as defined below);

(b)     it includes a letter stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Alternate Bidder, its Qualified Bid shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, 180 days from the entry of the Confirmation Order, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

(c)     it includes a duly authorized and executed purchase agreement with, in the case of a Qualified Bid that is not a Joint Bid, a blacklined copy marked to show all changes from the form of the APA executed by the Stalking Horse Bidder, in each case with such executed purchase agreement to be in form acceptable to the Opco Debtors, after consultation with the Consultation Parties, including the net purchase price for the subject Opco Properties at least equal to the value of the Stalking Horse Bid ($772,000,000) plus the initial overbid requirement of $17,500,000 (set forth in section R.1(f) hereof), for an overall net purchase price of $789,500,000) (the "Purchase Price"), together with all exhibits and schedules thereto, and, to the extent required by the terms and conditions of such bid, any ancillary agreements as described in the purchase agreement with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements, including with respect to any "take-back" debt to be issued to the Opco Lenders).

The New Propco Purchased Assets are included in the Stalking Horse Bid. If the Stalking Horse Bidder is selected as the Successful Bidder and the transaction closes, then the Stalking Horse Bidder shall acquire both the

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Opco Properties and the New Propco Purchased Assets as part of that transaction.

If the Stalking Horse Bidder is <u>not</u> the Successful Bidder, then (a) the New Propco Purchased Assets shall be sold to Propco or its designee as provided for in, and pursuant to the terms of, the Joint Plan and/or the Amended Compromise Agreement, and (b) the Successful Bidder will not acquire any of the Excluded Assets (except for any Unsold New Propco Purchased Assets), but the Successful Bidder's acquisition will include the Opco Properties plus the Cash Proceeds received by the Opco Group from Propco or its designee in consideration of the New Propco Purchased Assets, which proceeds shall be subject to the liens of the Opco Agent until the closing of the Successful Bid.  As provided in the Amended Compromise Agreement, the Cash Proceeds for all of the New Propco Purchased Assets shall be equal to $35,000,000 (even if Propco purchases less than all of the New Propco Purchased Assets), subject to adjustments as specified in the Amended Compromise Agreement.

If the Stalking Horse Bidder is <u>not</u> the Successful Bidder and for any reason Propco does not purchase any of the New Propco Purchased Assets, then the Successful Bidder will acquire the Unsold New Propco Purchased Assets in lieu of the Cash Proceeds for those assets that otherwise would have been paid to the Opco Group under the Amended Compromise Agreement, and the New Propco Purchased Assets shall remain subject to the liens of the Opco Agent until the closing of the Successful Bid.

If the Stalking Horse Bid is <u>not</u> the Successful Bid and Propco purchases some, but not all, of the New Propco Purchased Assets under and pursuant to the terms of the Joint Plan and/or the Amended Compromise Agreement, then the Successful Bid will include the Unsold New Propco Purchased Assets *in addition to* the Cash Proceeds received by the Opco Group from Propco or its designee in consideration of the New Propco Purchased Assets, which proceeds and Unsold New Propco Purchased Assets shall be subject to the liens of the Opco Agent until the closing of the Successful Bid.

**Accordingly, if the Successful Bidder is not the Stalking Horse Bidder, the Successful Bidder will acquire the Opco Properties, <u>plus</u> either (a) the New Propco Purchased Assets (if not purchased by Propco) or (b) the Cash Proceeds received by the Opco Group upon the sale of the New Propco Purchased Assets to Propco or its designee under, and pursuant to the terms of, the Joint Plan and/or the Amended Compromise Agreement, plus any Unsold New Propco Purchased Assets, in each case, subject to the Opco Agent's lien until the closing of the Successful Bid.**

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

(d)     it includes written evidence of a firm, irrevocable commitment for
financing, or other evidence of ability to consummate the Sale, that will
allow the Opco Debtors to make a reasonable determination as to the
Qualified Bidder's financial and other capabilities to consummate the Sale
contemplated by the purchase agreement and related documents;

(e)     it is not conditioned on (i) the outcome of unperformed due diligence by
the Qualified Bidder (and includes an acknowledgement and
representation that the Qualified Bidder has had an opportunity to conduct
any and all required due diligence regarding the Opco Properties prior to
making its offer); (ii) obtaining financing and (iii) in the case of a Joint
Bid, the resolution of any Interdependencies among the various Opco
Properties or entry of a cooperation agreement or similar agreement
among the various participants in the Joint Bid;

(f)     it fully discloses the identity of each entity that will be bidding for the
Opco Properties or otherwise sponsoring or participating in connection
with such bid, and the complete terms of any such participation;

(g)     it includes an acknowledgment and representation that the Qualified
Bidder will assume the Opco Debtors' obligations under the executory
contracts and unexpired leases proposed to be assigned pursuant to the
purchase agreement (or identifies with particularity which of such
contracts and leases of the Opco Debtors that the Qualified Bidder wishes
not to assume, or alternatively which additional executory contracts or
unexpired leases of the Opco Debtors that the Qualified Bidder wishes to
assume), contains full details of the Qualified Bidder's proposal for the
treatment of related cure costs; and it identifies with particularity any
executory contract or unexpired lease the assumption and assignment of
which is a condition to closing;

(h)     it includes an acknowledgement and representation that the Qualified
Bidder: (i) has relied solely upon its own independent review,
investigation and/or inspection of any documents and/or the Opco
Properties in making its bid; (ii) did not rely upon any written or oral
statements, representations, promises, warranties or guaranties
whatsoever, whether express or implied (by operation of law or
otherwise), regarding the Opco Properties or the completeness of any
information provided in connection therewith or the Auction; and (iii) is
not entitled to any expense reimbursement or break-up fee in connection
with its bid;

(i)     it includes evidence, in form and substance reasonably satisfactory to
Opco Debtors, of authorization and approval from the Qualified Bidder's
board of directors (or comparable governing body) with respect to the
submission, execution, delivery and closing of the purchase agreement;

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

(j)     it includes evidence, in form and substance reasonably satisfactory to Opco Debtors, of compliance or anticipated compliance with all required gaming and other regulatory approvals (including, but not limited to, Nevada Gaming Commission, National Indian Gaming Commission or other regulatory or other approvals required to close the Sale), the anticipated time-frame and any anticipated impediments for obtaining such approvals;

(k)     it is accompanied by a good faith deposit ("Good Faith Deposit") in the form of a wire transfer (to a bank account specified by the Opco Debtors), certified check or such other form acceptable to the Opco Debtors, payable to the order of the Opco Debtors (or such other party as the Opco Debtors may determine) in an amount equal to 5% of the Purchase Price, to be dealt with as provided for under "Good Faith Deposit" herein; provided, however, that the Opco Debtors, following consultation with the Consultation Parties, may agree to accept a commitment letter from a Qualified Bidder in lieu of requiring such Good Faith Deposit;

(l)     Any Qualified Bid must contain appropriate acknowledgements and covenants with respect to the posting of a Gaming Approval Deposit upon Bankruptcy Court approval of a Successful Bid, such Gaming Approval Deposit (see below) to be relinquished by Successful Bidder in the event of failure to secure required gaming authority consents;

(m)     it contains any proposed measures associated with the continued employment of the Opco Group's employees;

(n)     it includes evidence of the Qualified Bidder's ability to comply with Section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Opco Debtors and assigned or subleased to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

(o)     it contains other information reasonably requested by the Opco Debtors or the Consultation Parties.

2.     **All of the information and material required to be delivered by a Potential Bidder(s) must be received by the Bid Deadline.  The Bid Deadline has been set by the Bankruptcy Court as July 30, 2010.**

3.     The Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, will determine, in their reasonable business judgment, and after consultation with the Consultation Parties, whether to entertain bids for the Opco Properties that do not conform to one or more of the requirements specified herein and

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

whether to deem such bids to be Qualified Bids. The Opco Debtors shall notify any Qualified Bidders in writing as to whether or not their bid constitutes a Qualified Bid promptly following the expiration of the Bid Deadline.

4.      Each Potential Bidder, whether a Qualified Bidder or not, and its partners, affiliates and joint ventures, are deemed to have submitted to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters related to bids, the Auction and the Sale.

O.      Evaluation of Competing Bids

1.      A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to result from or be created by such bid in relation to other bids, the relative ability of the counterparties to the Sale proposed by the Qualified Bidder to consummate such Sale, the nature and extent of any proposed revisions to the APA, the terms of any proposed "take back" debt (*i.e.*, seller financing) to be issued to the Opco Lenders in connection with such Qualified Bid, the effect of the proposed Sale on the value of the ongoing businesses of the Opco Debtors (including ongoing relationships with customers and suppliers), the Qualified Bidder's proposed means for addressing the rights of the landlord of Texas Station, LLC with respect to any change in control provisions under the Texas Station ground lease, other factors affecting the speed, certainty and value of the proposed Sale (including Nevada Gaming Commission, National Indian Gaming Commission or other regulatory or other approvals required to close the Sale), any assets excluded from the bid, the transition services required from the Opco Debtors post-closing and any related restructuring costs, and the likelihood and timing of consummating such Sale, each as determined by the Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, following consultation with the Consultation Parties.

P.      No Additional Qualified Bids

1.      If the Opco Debtors do not receive any Qualified Bids in addition to the Stalking Horse Bid, the Opco Debtors reserve the right, in consultation with the Consultation Parties and subject to seeking and obtaining Bankruptcy Court approval, to terminate the sale process or extend, subject to the terms hereof, the deadlines set forth in the Bidding Procedures.  The Opco Debtors, in consultation with the Consultation Parties and subject to seeking and obtaining Bankruptcy Court approval, may, after consideration of the foregoing, determine that the Stalking Horse Bid is the Successful Bid and elect to forgo the Auction.  In such case, in lieu of an Auction, the Opco Debtors may proceed to a Sale Hearing for Court approval of the Stalking Horse Bid.

Q.      Auction Date, Time and Place

1.      If the Opco Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Opco Debtors will conduct an auction (the "Auction") of the

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Opco Properties.  The Auction shall be conducted under the supervision of the Honorable Gregg W. Zive in the United States Bankruptcy Court for the District of Nevada, 300 Booth Street, Reno, NV and shall commence at 10:00 a.m. (prevailing Pacific Time) on August 6, 2010.  If the Auction is not completed on August 6, 2010, the Auction will continue on August 9, 2010.  The Opco Debtors, in consultation with the Consultation Parties and subject to seeking and obtaining Bankruptcy Court approval, may cancel or adjourn the Auction without consent of any Qualified Bidder.

    R.    Auction Procedures

    1.    The Auction shall run in accordance with the following procedures:

    (a)    Only the Qualified Bidders that have timely submitted Qualified Bids, the Opco Debtors, the Consultation Parties, and any creditor of the Opco Debtors shall attend the Auction in person (and the advisors to such Qualified Bidder or creditor of the Opco Debtors), and only such Qualified Bidders will be entitled to make any subsequent bids at the Auction.

    (b)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

    (c)    At least two (2) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Opco Debtors whether it intends to attend the Auction, provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder, the Alternate Bid Expiration Date. At least one (1) Business Day prior to the Auction, the Opco Debtors will provide copies of the Qualified Bid which the Opco Debtors believe, in their reasonable business judgment and following consultation with the Consultation Parties, is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have timely submitted Qualified Bids and have informed the Opco Debtors of their intent to attend the Auction.

    (d)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction, provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

(e)    The Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, and after consultation with the Consultation Parties and subject to seeking and obtaining Bankruptcy Court approval, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court and (ii) disclosed to each Qualified Bidder at the Auction.

(f)    Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Opco Debtors determine, under the direction of Dr. James Nave, SCI's independent director, and in consultation with the Consultation Parties, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estate of at least US $5 million over the Starting Bid or the Leading Bid, as the case may be, provided that the Opco Debtors shall retain the right, after consultation with the Consultation Parties, to modify the increment requirements at the Auction, and provided, further that the Opco Debtors in determining the net value of any incremental bid to the estate shall not be limited to evaluating the incremental dollar value of such bid and may consider other factors as identified in the "Selection of Successful Bid" section of these Bidding Procedures, including, without limitation, factors affecting speed and certainty of obtaining Nevada Gaming Commission, National Indian Gaming Commission or other regulatory or other approvals required to close the Sale. After the first round of bidding and between each subsequent round of bidding, the Opco Debtors shall announce, after consultation with the Consultation Parties, the bid (and the value of such bid(s)) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Opco Debtors will, at each round of bidding, give effect to any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Opco Debtors.

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

S.    Selection Of Successful Bid

1.    Prior to the conclusion of the Auction, the Opco Debtors, under the
direction of Dr. James Nave, SCI's independent director, and following consultation with
the Consultation Parties, will (a) review each Qualified Bid that is either the Leading Bid
or submitted subsequent to and as an improvement to the submission of the Leading Bid
on the basis of financial and contractual terms and the factors relevant to the sale process,
including, among other things, the proposed revisions to the APA, the terms of any
proposed "take back" debt (*i.e.*, seller financing) to be issued to the Opco Lenders in
connection with such Qualified Bid, the effect of the proposed Sale on the value of the
ongoing businesses of the Opco Debtors (including ongoing relationships with customers
and suppliers), the ability of the counterparties to such proposed Sale to consummate the
Sale, the purchase price and the net value (including assumed liabilities and the other
obligations to be performed or assumed by the Qualified Bidder) provided by such
Qualified Bid, the claims likely to result from or be created by such bid in relation to
other bids, other factors affecting the speed, certainty and value of the Sale (including
Nevada Gaming Commission, National Indian Gaming Commission or other regulatory
or other approvals required to close the Sale), any assets excluded from the Qualified Bid,
the transition services required from the Opco Debtors post-closing and any related
restructuring costs, and the likelihood and timing of consummating the Sale, each as
determined by the Opco Debtors, in consultation with the Consultation Parties; (b)
identify the highest or otherwise best offer for the Opco Properties received in
accordance with the Bidding Procedures (such bid, the "Successful Bid" and the
Qualified Bidder making such bid, collectively, the "Successful Bidder"); and (c)
communicate to the Qualified Bidders the identity of the Successful Bidder, the Alternate
Bidder, if any, and the details of the Successful Bid and Alternate Bid, if any. The
determination of the Successful Bid and Alternate Bid by the Opco Debtors, at the
conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court.

2.    Upon selection of the Successful Bid and the Successful Bidder pursuant
to section S.1 above, the Opco Debtors shall file with the Bankruptcy Court and serve
upon the parties on the Opco Debtors' service list in the Chapter 11 Cases notice of the
selection of such Successful Bid and Successful Bidder.

3.    The Opco Debtors will sell the Opco Properties to the Successful
Bidder(s) pursuant to the terms of the Successful Bid(s) (or, under certain circumstances
described herein, the Alternate Bidders) upon the approval of such Successful Bid(s) by
the Bankruptcy Court at the Sale Hearing (defined below) to be held in conjunction with
the hearing before the Bankruptcy Court to consider confirmation of the Joint Plan (as
applicable), and subject to any required gaming or other regulatory approvals (including
Nevada Gaming Commission, National Indian Gaming Commission or other regulatory
or other approvals).

4.    If the Stalking Horse Bid is not selected as the Successful Bid and the
Opco Debtors consummate a transaction with a Successful Bidder other than the Stalking
Horse Bidder, then the Stalking Horse Bidder, the Propco Lenders and FG shall be

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

entitled to reimbursement of up to an aggregate for all such parties of $4 million of their reasonable and reasonably documented out-of-pocket expenses incurred since January 1, 2010 in connection with proposing and pursuing the Stalking Horse Bid, which such claim shall be an allowed administrative claim against SCI.

T.    Sale Hearing

1.    The hearing to approve the Successful Bid(s) and to authorize the Sale in accordance therewith (the "Sale Hearing") will be held before the Honorable Judge Gregg W. Zive (or any substitute therefor) in the Bankruptcy Court, on a date to be scheduled by the Opco Debtors, after notice to all parties in interest. The Sale Hearing may be adjourned or rescheduled by the Bankruptcy Court without further notice by an announcement of the adjourned date at the Sale Hearing or other means of communication. Unless the Bankruptcy Court orders otherwise, if the Opco Debtors do not receive any Qualified Bids in addition to the Stalking Horse Bid, the Opco Debtors shall proceed as set forth in the "No Additional Qualified Bids" section above. If the Opco Debtors receive one or more Qualified Bid(s) in addition to the Stalking Horse Bid, then, at the Sale Hearing the Opco Debtors will seek approval of the Successful Bid, and, at the Opco Debtors' election after consultation with the Consultation Parties, the next highest or best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder"). The Opco Debtors' presentation to the Bankruptcy Court of the Successful Bid, and, if applicable, the Alternate Bid will not constitute the Opco Debtors' acceptance of either of such bids, which acceptance will only occur upon the latest approval of such bids to be delivered by the Bankruptcy Court at the Sale Hearing. Following the Sale Hearing, the Debtors shall file such modifications to the Joint Plan (and, to the extent necessary, shall file modifications to the related disclosure statement) as may be necessary to incorporate into the Joint Plan the Successful Bidder and the terms of the Successful Bid.

U.    Circumstances under Which Alternate Bid(s) Will be Deemed Successful Bid(s)

1.    Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Opco Debtors will be authorized, but not directed, to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court. The Alternate Bid shall remain open until 45 days from the conclusion of the Auction (the "Alternate Bid Expiration Date"). All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by the Opco Debtors on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court.

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

V.    Gaming Approval Deposit

1.    Upon approval by the Bankruptcy Court of the Successful Bid, the Successful Bidder shall post a deposit (the "Gaming Approval Deposit") in the form of a wire transfer (to a bank account specified by the Opco Debtors), certified check or such other form acceptable to the Opco Debtors, payable to the order of the Opco Debtors (or such other party as the Opco Debtors may determine) in an amount equal to US $5,850,000; provided, however, that the Opco Debtors, following consultation with the Consultation Parties, may agree to accept a letter of credit or a commitment letter specifically for the Gaming Approval Deposit from the Successful Bidder in lieu of requiring such Gaming Approval Deposit to be in cash; and provided further that if the Stalking Horse Bid is the Successful Bid, the Stalking Horse Bidder, subject to and with the written consent of the Mortgage Lenders, may elect to commit cash collateral of the Mortgage Lenders held by PropCo for a portion of the Gaming Approval Deposit. The Gaming Approval Deposit shall be relinquished by Successful Bidder if the applicable purchase agreement for such Successful Bidder (the "Purchase Agreement") is terminated in accordance with its terms because the closing of the transactions contemplated therein has not been consummated by the applicable date of termination as set forth in such Purchase Agreement  and the condition  to the closing of the transactions contemplated therein relating to  the receipt of all requisite Gaming Approvals (as defined in the Purchase Agreement) has not been satisfied and the only other conditions to the closing of the transactions contemplated therein that have not been satisfied are: (i) if the termination occurs at any time from April 1, 2011 through June 30, 2011, the confirmation order issued for the transactions contemplated therein  remains subject to appeal by a U.S. federal governmental entity, and (ii) conditions that by their nature are to be satisfied on the closing of such transactions and with respect to which no facts or circumstances exist that would cause such conditions not to be satisfied on the date of such closing  (a "Gaming Approval Failure").  The Gaming Approval Deposit shall be returned to the Successful Bidder (plus any interest earned thereon) or the letter of credit or commitment letter shall automatically terminate, as the case may be, upon (a) the closing of the transactions contemplated in the Purchase Agreement or (b) the termination of the Purchase Agreement in accordance with its terms for any reason other than a Gaming Approval Failure.

W.    Good Faith Deposits

1.    The Good Faith Deposit of any Alternate Bidder shall be retained by the Opco Debtors until the Alternate Bid Expiration Date and returned to the Alternate Bidder within seven (7) days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid. The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Successful Bidder and the Alternate Bidder. The Good Faith Deposit of the Successful Bidder will be applied in accordance with the terms of the Successful Bid.

X.    Opco Debtors' Reservation Of Rights

1.    The Opco Debtors, under the direction of Dr. James Nave, SCI's independent director, and in consultation with the Consultation Parties: (a) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (b) may reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or any other orders applicable to one or more Opco Debtors, or the terms and conditions of the Sale or (iii) contrary to the best interests of the Opco Debtors, their estates, and stakeholders as determined by the Opco Debtors; and (c) subject to requesting and obtaining Bankruptcy Court approval may (i) impose additional terms and conditions and otherwise modify the Sale Procedures at any time; (ii) withdraw from sale any Opco Properties at any time and make subsequent attempts to market the same; or (iii) reject all bids.

*In re Station Casinos, Inc., et al.,*
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

Schedule 1

List of Opco Group Sellers

## Schedule 1

Auburn Development, LLC
Boulder Station, Inc.
Centerline Holdings, LLC
Charleston Station, LLC
CV HoldCo, LLC
Durango Station, Inc.
Fiesta Station, Inc.
Fresno Land Acquisitions, LLC
Gold Rush Station, LLC
Green Valley Station, Inc.
Inspirada Station, LLC
Lake Mead Station, Inc.
LML Station, LLC
Magic Star Station, LLC
Northern NV Acquisitions, LLC
Palace Station Hotel & Casino, Inc.
Past Enterprises, Inc.
Rancho Station, LLC
Reno Land Holdings, LLC
River Central, LLC
Santa Fe Station, Inc.
Sonoma Land Holdings, LLC
Station Construction, LLC
Station Holdings, Inc
STN Aviation, Inc
Sunset Station, Inc.
Texas Station, LLC
Town Center Station, LLC
Tropicana Acquisitions, LLC
Tropicana Station, Inc.
Tropicana Station, LLC
Vista Holdings, LLC

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

<u>Schedule 2</u>

List of SCI Retained Assets

**Schedule 2**

**SCI Retained Assets**

Capitalized terms used but not defined in this <u>Schedule 2</u> shall have the meanings assigned to such term in the APA.

1. All equity or other ownership interest in any Person which equity is owned by any Seller, other than the Transferred Equity Interests set forth on <u>Exhibit A-1</u> of the APA.

2. All Assets and Properties identified by Purchaser as Excluded Assets pursuant to <u>Section 2.6</u> of the APA, including (i) any accounts receivable primarily arising out of or in connection with any such Assets or Properties and (ii) any Sellers' deposits or prepaid charges and expenses paid primarily in connection with and relating to such Assets and Properties.

3. Cash of Sellers in an amount equal to the accrued and unpaid administrative expenses of Debtors accrued through Closing.

4. All employment agreements between any Seller and any Person

5. All incentive compensation arrangements between any Seller and any person (including all Long-Term Stay-On Performance Incentive Payment Agreements) and all Confidentiality and Non-Compete Agreements between any Seller and any Person.

6. All Employee Benefit Plans of Sellers.

7. Cash and cash equivalents, other than restricted cash, of Vista Holdings, LLC sufficient to pay (i) the success fee, and (ii) the supplemental fee, if any, not in excess of $2,000,000 in the aggregate, pursuant to that certain Consulting Agreement, dated as of July 15, 2009, between Warner Gaming LLC and Vista Holdings LLC.

*In re Station Casinos, Inc., et al.*,
U.S.B.C. D. Nevada Case No. BK-09-52477 (Jointly Administered)

<u>Schedule 3</u>

List of New Propco Purchased Assets

**Schedule 3**

**New Propco Purchased Assets**

All of the right, title and interest of Sellers in the Assets and Properties of Sellers set forth on this <u>Schedule 3</u> as of the Closing Date, except for Assets and Properties defined as "Excluded Assets"(capitalized terms used but not defined in this <u>Schedule 3</u> shall have the meanings assigned to such term in the APA):

1. All Marks and other branding elements exclusive to the Propco Properties (other than trademarks listed on <u>Exhibit C-1</u> to the APA), but excluding any OpCo Elements contained therein, including the trademarks and domain names on Annex 1 to this <u>Schedule 3</u>, together with matching corporate names, trade names, d/b/a names and domain names and including trademark rights in internet key words, social networks and new media.

2. All Marks and other branding elements exclusive to the Wild Wild West Assemblage (as defined below) (including VIVA and the trademarks and domain names on Annex 1 to this <u>Schedule 3</u>), including any matching domain names, corporate names, trade names, d/b/a names and including trademark rights in internet key words, social networks and new media.

3. All of Sellers' right, title and interest, if any, in and to the terms RED ROCK, BOULDER, SUNSET and PALACE not otherwise constituting or included in the trademarks described on <u>Exhibit C-1</u> to the APA.

4. All Assets and Properties of Tropicana Station, Inc., including its leasehold interest in a portion of the "Wild Wild West Assemblage" (the "<u>Wild Wild West Assemblage</u>").

5. That certain Option to Acquire Property and Escrow Instructions, dated as of December 30, 2008, by and among The Tiberti Company, a Nevada general partnership, SCI and Chicago Title Agency of Nevada, Inc., a Nevada corporation, as amended on December 31, 2008 (the "<u>SCI WWW Option</u>").

6. All of Sellers' right, title and interest in, to and under that certain Ground Lease and Option Agreement, dated as of September 15, 2004, by and between The Robert Cohen Foundation, a Nevada non-profit corporation, and Vista Holdings, LLC, a Nevada limited liability company.

7. All fee owned parcels and leasehold interests (and the rents, issues and profits thereof) owned by Tropicana Acquisitions, LLC that are partially or fully within the Wild Wild West Assemblage or adjacent thereto.

8. All vehicles allocated to the Propco Properties, concession contracts, space leases and similar contract rights relating to the retail vendors at the Propco Properties, and construction in progress relating to the Propco Properties.

9. All Gaming Equipment and other Furniture and Equipment (including all hardware and wires located at any Propco Property) (i) physically located on or otherwise allocated to one or

Schedule 3-1

more Propco Properties or the Wild Wild West Assemblage based on ownership (e.g., warehoused equipment belonging to the subtenants operating a Propco Property), and (ii) not allocated to any Property which Sellers allocate to the Propco Properties or the Wild Wild West Assemblage according to a pro rata equitable allocation between the Included Properties, on the one hand, and the Propco Properties and the Wild Wild West Assemblage, on the other hand.

10. Slot machine licenses and parts, to the extent permitted by applicable Law, not allocated to any Property which Sellers allocate to the Propco Properties or the Wild Wild West Assemblage according to a pro rata equitable allocation between the Included Properties, on the one hand, and the Propco Properties and the Wild Wild West Assemblage, on the other hand.

11. All inventory and other tangible personal property at or to be delivered to the Propco Properties or the Wild Wild West Assemblage, including all inventory located or dedicated to the Propco Properties or Wild Wild West Assemblage.

12. All accounts receivable, prepaid expenses, deposits (including customer deposits and security deposits for rent, electricity, telephone or otherwise), prepaid charges and expenses and other current assets of Sellers allocated to the Propco Properties or the Wild Wild West Assemblage.

13. All equity interests in CV PropCo, LLC.

14. To the extent relating to the Propco Properties or the Wild Wild West Assemblage, all rights, claims, rebates, discounts and credits (including all indemnities, warranties and similar rights), security and other deposits (excluding bank deposits), refunds, causes of action, rights of recovery, rights of set off, rights of recoupment (other than Tax refunds), and rights to insurance proceeds.

15. All Business Information of Sellers exclusively related to one or more of the Propco Properties and the Wild Wild West Assemblage, but excluding (i) personnel files for Employees of any Seller who are Transferred Employees, (ii) such files as Sellers are not permitted to transfer under applicable Laws regarding privacy, and (iii) Business Information described in Item 5 on Exhibit C-1 to the APA.

16. All Permits of or used by Sellers in the operation of the Propco Properties or the Wild Wild West Assemblage, to the extent transferable under applicable Law.

17. All supplies owned by Sellers and allocated to the Propco Properties or the Wild Wild West Assemblage.

18. All rights of any Seller under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees hired by the purchaser of the New Propco Purchased Assets or its Affiliates and agents of such Seller exclusively employed in respect of the Propco Properties or with third parties or agents in connection with the Propco Properties, except for such agreements that include obligations that constitute Excluded Liabilities.

19. All rights of Sellers under or pursuant to all warranties, representations and guarantees made by suppliers, manufacturers and contractors in Contracts exclusively related to the Propco Properties or the Wild Wild West Assemblage.

20. All of Sellers' gaming chips and tokens related to the Propco Properties.

21. All of Sellers' rights to customer lists, databases, history and other information related to the "Propco Primary Customers." The Propco Primary Customers shall be: (i) the top 25% of customers assigned to each Propco Property, which assignment shall be determined by Sellers in accordance with the following: (A) the casino player database will be segmented into active and inactive groups; (B) the assignment of active player accounts will be determined by the customer having rated play of any gaming type excluding Keno during the 24-month period immediately preceding the month in which the date of the entry by the Bankruptcy Court of the Bidding Procedures order; and (C) each customer qualifying as active will then be assigned to a Property by determining the Property of greatest combined gaming theoretical play for such customer within such 24-month period; and (ii) customers assigned to a Propco Property in accordance with the following: five Business Days prior to the Closing Date, each customer not assigned to a Property in accordance with the preceding clause (i) shall be assigned by Sellers to the Property at which such customer has the greatest rated play of any gaming type excluding Keno during the period beginning on the month in which the date of the entry by the Bankruptcy Court of the Bidding Procedures Order and ending on the Business Day immediately preceding such date of determination.

22. An undivided, equal joint ownership interest with the Purchasing Entities that acquire the Exhibit A Purchased Assets in all customer lists, databases, history and other information related to customers of the Propco Properties other than the Propco Primary Customers and the Opco Primary Customers.

23. An undivided, equal joint ownership interest with the Purchasing Entities that acquire the Exhibit A Purchased Assets in all company-wide Business Information (whether in print, digital computerized or electronic form) that is not confidential as between one or more of the Included Properties and the Propco Properties (e.g., Propco would receive a human resources manual used by all properties of Sellers but confidential from the public).

24. That certain Office Lease, dated as of November 1, 2007, by and between Cole SO Las Vegas NV, LLC, as landlord, and Station Casinos, Inc., as tenant, unless designated as an Excluded Asset pursuant to Section 2.6 of the APA.

25. Furniture and Equipment and other tangible personal property (other than physical books and records that constitute Exhibit A Purchased Assets) located in the space subject to that certain Office Lease, dated as of November 1, 2007, by and between Cole SO Las Vegas NV, LLC, as landlord, and Station Casinos, Inc., as tenant.

Schedule 3-3

26.   All Assets and Properties identified by Purchaser as Exhibit B Purchased Assets pursuant to <u>Section 2.6</u> of the APA.

<u>Designation of Purchasing Entities</u>

Only New Propco Landco shall acquire pursuant to the APA the New Propco Purchased Assets sold, transferred, assigned, conveyed and delivered by Tropicana Station, Inc., Tropicana Acquisitions, LLC, Vista Holdings, LLC and SCI as described in Items 2, 4, 5, 6, 7, 8, 9-12 (solely with respect to the Wild Wild West Assemblage), 13-21 (solely with respect to the Wild Wild West Assemblage) of this <u>Schedule 3</u> (the "<u>New Propco Landco Purchased Assets</u>").

Only Purchasing Entities that are, or on the Closing Date will become, parties to the New Propco Credit Agreement shall acquire the New Propco Purchased Assets that are not New Propco Landco Purchased Assets.

Schedule 3-4

<u>Annex 1 to Schedule 3</u>

**PropCo Exclusive Marks**

A.    **U.S. Trademark Registrations**

| Mark | Class(es) | Reg. No. | Reg. Date |
|------|-----------|----------|-----------|
| A3 | 45 | 3333612 | 11/13/2007 |
| ACTION BUFFET | 42 | 1565241 | 11/07/1989 |
| COSTA DEL SOL | 42 | 2184884 | 08/25/1998 |
| FISHERMANS BROILER (and design) | 42 | 1484814 | 04/12/1998 |
| GAUDI BAR | 42 | 2207672 | 12/01/1998 |
| HACHI | 43 | 3321554 | 10/23/2007 |
| KENO-TO-GO | 41 | 3391916 | 03/04/2008 |
| KENOMANIA | 41 | 1634451 | 05/05/1991 |
| LUCKY BAR | 41, 43 | 3204545 | 01/30/2007 |
| PASTA PALACE | 42 | 1634536 | 02/05/1991 |
| PLUNGE | 35 | 3500799 | 09/16/2008 |
| RED ROCK | 16 | 3339158 | 11/20/2007 |
| RED ROCK | 41 | 3424069 | 05/06/2008 |
| RED ROCK | 43 | 3552181 | 12/23/2008 |
| RED ROCK CASINO RESORT SPA | 43 | 3674651 | 08/25/2009 |
| RED ROCK CASINO, RESORT & SPA | 41 | 3424068 | 05/06/2008 |
| RED ROCK CASINO RESORT SPA | 35 | 3757660 | 03/09/2010 |
| RED ROCK CASINO RESORT SPA | 25 | 3754790 | 03/02/2010 |
| RED ROCK LANES | 41 | 3447885 | 06/17/2008 |
| RED ROCK SPA | 44 | 3298840 | 09/25/2007 |
| RED ROCK SPA ESSENTIALS (and design) | 3 | 3533012 | 11/18/2008 |
| REVERSIBLE ROYALS | 41 | 1634452 | 02/05/1991 |
| ROCKS LOUNGE | 41 | 3458072 | 07/01/2008 |
| ROCKSLOUNGE (and design) | 43 | 3467902 | 07/15/2008 |
| ROYAL COURT | 41 | 1788563 | 08/17/1993 |
| SAND BAR | 41 | 3563154 | 01/20/2009 |
| SANDBAR RED ROCK RESORT (and design) | 43 | 3448576 | 06/17/2008 |
| TERRA ROSSA | 43 | 3149992 | 09/26/2006 |
| VIVA | 25 | 3735308 | 01/05/2010 |
| VIVA | 41 | 3342201 | 11/20/2007 |
| VIVA | 43 | 3628800 | 05/26/2009 |
| VIVA CASINO | 41 | 3433703 | 07/22/2008 |

#4817-7278-8230

| VIVA LAS VEGAS | 43 | 3705345 | 11/03/2009 |
| WICKED 21 | 41 | 3717829 | 12/01/2009 |
| WILD WILD WEST | 41 | 2053006 | 04/15/1997 |
| WILD WILD WEST | 42 | 2053007 | 04/15/1997 |

**B.      U.S. Trademark Applications**

| Mark | Class(es) | Application No. | Filing Date |
| --- | --- | --- | --- |
| DETOX/RETOX | 43 | 77/624,741 | 12/02/2008 |
| DETOX/RETOX | 41 | 77/624,819 | 12/02/2008 |
| DETOX/RETOX | 44 | 77/624,749 | 12/02/2008 |
| THE RESIDENCES AT RED ROCK (and Design) | 36, 37 | 78/849,420 | 03/29/2006 |
| VIVA | 36 | 78/640,577 | 05/31/2005 |
| VIVA | 41 | 78/640,590 | 05/31/2005 |
| VIVA | 37 | 77/146,812 | 04/02/2007 |
| VIVA | 35, 36, 37 | 78/616,285 | 04/25/2005 |
| VIVA | 16 | 77/489,501 | 06/03/2008 |
| VIVA | 18 | 77/488,988 | 06/02/2008 |
| VIVA | 21 | 77/488,976 | 06/02/2008 |
| VIVA | 20 | 77/489,163 | 06/02/2008 |
| VIVA | 41 | 77/488,992 | 06/02/2008 |
| VIVA | 35 | 77/966,666 | 03/23/2010 |
| VIVA | 38 | 77/488,999 | 06/02/2008 |
| VIVA CASINO | 36 | 78/640,607 | 05/31/2005 |
| VIVA CASINO | 43 | 78/640,616 | 05/31/2005 |
| VIVA CASINO | 37 | 77/229,994 | 07/15/2007 |
| VIVA CASINO | 35 | 77/818,863 | 09/02/2009 |
| VIVA ENTERTAINMENT | 25 | 77/818,863 | 09/02/2009 |
| VIVA ENTERTAINMENT | 35 | 77/818,862 | 09/02/2009 |
| VIVA ENTERTAINMENT | 41 | 77/409,324 | 02/29/2008 |
| VIVA ENTERTAINMENT | 41 | 77/818,859 | 09/02/2009 |
| VIVA ENTERTAINMENT | 43 | 77/409,328 | 02/29/2008 |
| VIVA ENTERTAINMENT | 43 | 77/818,850 | 02/09/2009 |
| VIVA RESORT SPA CASINO | 25 | 77/725,571 | 04/29/2009 |
| VIVA RESORT SPA CASINO | 36 | 78/640,627 | 05/31/2005 |
| VIVA RESORT SPA CASINO | 37 | 77/242,439 | 07/30/2007 |
| VIVA RESORT SPA CASINO | 41 | 77/910,035 | 01/12/2010 |
| VIVA RESORT SPA CASINO | 35 | 77/966,666 | 03/23/2010 |
| VIVA RESORT SPA CASINO | 43 | 78/640,638 | 05/31/2005 |

**C.      Foreign Trademark Registrations**

None.

**D.      Foreign Trademark Applications**

None.

**E.      Nevada State Trademark Registrations**

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| A3 | E0272172007-8 | 04/17/2007 |
| ADVENTURE SPA | E0542782007-8 | 07/31/2007 |
| BINGO PALACE | SM00310027 | 06/15/1998 |
| BULLFIGHTER'S BAR | SM00300771 | 03/06/1998 |
| CAPRI | SM00300769 | 03/06/1998 |
| CLUB MADRID | SM00300768 | 03/06/1998 |
| DETOX/RETOX | E0031512010-4 | 01/22/2010 |
| DETOX/RETOX | E0042582010-4 | 01/22/2010 |
| DETOX/RETOX | E0651682009-0 | 12/17/2009 |
| ENDLESS PASTABILITIES! | SM0030616 | 08/10/2004 |
| FROM THE PEOPLE WHO CREATED LOCAL CASINOS | SM00340511 | 02/21/2002 |
| FROM THE PEOPLE WHO CREATED LOCAL CASINOS | SM00340512 | 02/21/2002 |
| KENOMANIA | SM00230436 | 03/09/1990 |
| LUCKY BAR | E0326522005-4 | 05/26/2005 |
| LUCKY BAR | E0326562005-8 | 05/26/2005 |
| LUCKY BAR | E0326572005-9 | 05/24/2005 |
| ONYX BAR | E0346712006-2 | 05/08/2006 |
| ONYX BAR | E0346732006-4 | 05/08/2006 |
| ONYX BAR | E0346752006-6 | 05/08/2006 |
| PASTA PALACE | SM00230434 | 03/09/1990 |
| RED ROCK | SM00360797 | 10/07/2004 |
| RED ROCK | SM00360798 | 10/07/2004 |
| RED ROCK | SM00360799 | 10/07/2004 |
| RED ROCK | TM00280867 | 03/05/1996 |
| RED ROCK LANES | E0320942007-0 | 05/02/2007 |
| RED ROCK RESORT CASINO | SM00360800 | 10/07/2004 |
| RED ROCK RESORT CASINO | SM00360801 | 10/07/2004 |
| RED ROCK RESORT CASINO | SM00360802 | 10/07/2004 |
| REVERSIBLE ROYALS | SM00230437 | 03/09/1990 |
| ROSALITA'S | SM00300772 | 03/06/1998 |
| ROYAL COURT | SM00250801 | 12/17/1992 |

#4817-7278-8230

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| SANDBAR | E0346372006-0 | 05/08/2006 |
| SANDBAR | E0346582006-5 | 05/08/2006 |
| SANDBAR | E0346592006-6 | 05/08/2006 |
| SANDBAR (and design) | E0343602006-6 | 05/08/2006 |
| SANDBAR (and design) | E0346192006-8 | 05/08/2006 |
| SANDBAR (and design) | E0346262006-7 | 05/08/2006 |
| SEVILLE BAR | SM00300767 | 03/06/1998 |
| STIMULUS FRIDAYS | E0673372008-8 | 10/24/2008 |
| STIMULUS FRIDAYS | E0673322008-3 | 10/24/2008 |
| STRIKE ZONE | E0275772005-1 | 05/10/2005 |
| STRIKE ZONE | E0275852005-1 | 05/10/2005 |
| STRIKE ZONE | E0275862005-2 | 05/10/2005 |
| SUNSET CAFÉ | SM00300770 | 03/06/1998 |
| SUNSET LANES | TN00320481 | 11/05/1999 |
| SUNSET LANES BOWLING CENTER | TN00260598 | 09/17/1993 |
| T BONES CHOPHOUSE & LOUNGE | E0343362006-6 | 05/08/2006 |
| T BONES CHOPHOUSE & LOUNGE | E0345562006-2 | 05/09/2006 |
| T BONES CHOPHOUSE & LOUNGE | E0345582006-4 | 05/09/2006 |
| TERRA ROSSA | E0345802006-2 | 05/08/2006 |
| TERRA ROSSA | E0346912006-6 | 05/09/2006 |
| TERRA ROSSA | E0346952006-0 | 05/09/2006 |
| THE BROILER | E234162008-2 | 04/03/2008 |
| THE GRAND CAFÉ | E0293212005-7 | 05/16/2005 |
| THE GRAND CAFÉ | E0293252005-1 | 05/16/2005 |
| THE GRAND CAFE | SM00360395 | 05/11/2004 |
| THE RESIDENCES AT RED ROCK | E0339772006-9 | 05/04/2006 |
| THE RESIDENCES AT RED ROCK | E0339782006-0 | 05/04/2006 |
| THE RESIDENCES AT RED ROCK | E0339822006-6 | 05/04/2006 |
| THE SPA AT RED ROCK | E0346652006-4 | 05/08/2006 |
| THE SPA AT RED ROCK | E0346672006-6 | 05/08/2006 |
| THE SPA AT RED ROCK | E0346692006-8 | 05/08/2006 |
| VIVA SALSA | SM00300766 | 03/06/1998 |

**F.    Top Level Domain Names**

| | |
|---|---|
| wwwvivaresorts.com | wwwvivacasino.net |
| wwwvivalasvegas.com | welcometoviva.net |

| | |
|---|---|
| welcometoviva.com | vivaresort-casino.net |
| vivresorts.com | vivaresort-casino.com |
| viviaresorts.com | vivarealm.com |
| viveresorts.com | vivaonlinecasino.net |
| vivecasino.com | vivaonlinecasino.com |
| vivatainmentinc.net | vivanightlife.net |
| vivatainmentinc.com | vivanightlife.com |
| vivatainment.org | vivalives.com |
| vivatainment.net | vivalasvegaspoker.com |
| vivatainment.com | vivalasvegashotels.com |
| vivasparesort.net | vivalasvegasgaming.net |
| vivasparesort.com | vivalasvegasgaming.com |
| vivasparesort.com | vivalasvegascasino.info |
| vivasparesort.com | vivahotelspalasvegas.net |
| vivaspahotel.com | vivahotelspalasvegas.com |
| vivaspacasino.net | vivahotelspa.net |
| vivaspacasino.com | vivahotelspa.com |
| vivaspaandresort.net | vivahotelresortlasvegas.net |
| vivaspaandresort.com | vivahotelresortlasvegas.com |
| vivaspaandhotel.com | vivahotelresortcasinolasvegas.net |
| vivaspaandcasino.net | vivahotelresortcasinolasvegas.com |
| vivaspaandcasino.com | vivahotelresortcasino.net |
| vivaresortspa.net | vivahotelresortcasino.com |
| vivaresortspa.com | vivahotelresort.net |
| vivaresortlasvegas.net | vivahotelresort.com |
| vivaresortlasvegas.com | vivahotelcasinolasvegas.net |
| vivaresorthotelcasino.net | vivahotelcasinolasvegas.com |
| vivaresorthotelcasino.com | vivahotelcasino.net |
| vivaresorthotel.net | vivahotelcasino.com |
| vivaresorthotel.com | vivahotelandspa.net |
| vivaresortcasinolasvegas.net | vivahotelandspa.com |
| vivaresortcasinolasvegas.com | vivahotelandresort.net |
| vivaresortcasinohotel.net | vivahotelandresort.com |
| vivaresortcasinohotel.com | vivahotelandcasino.net |
| vivaresortcasino.net | vivahotelandcasino.com |
| vivaresortcasino.com | vivahotel.net |
| vivaspacasino.com | vivahotel-casino.net |
| vivaresortandspa.net | vivahotel-casino.com |
| vivaresortandspa.com | vivagaming.net |
| vivaresortandhotel.net | vivagaming.com |
| vivaresortandhotel.com | vivaeverything.com |
| vivaresortandcasino.net | vivaentertainmentonline.net |
| vivaresortandcasino.com | vivaentertainmentonline.com |
| vivaresort.net | vivaentertainmentinc.net |

Annex to Schedule 3-5

| | |
|---|---|
| vivaentertainmentinc.com | viva-resort-hotel-casino.com |
| vivaentertainment.us | viva-resort-casino.net |
| vivaentertainment.biz | viva-resort-casino.com |
| vivadreamvacations.net | viva-resort-casino-lasvegas.net |
| vivadreamvacations.info | viva-resort-casino-lasvegas.com |
| vivadelcasino.com | viva-resort-casino-hotel.net |
| vivaconfessions.net | viva-resort-casino-hotel.com |
| vivaconfessions.com | viva-hotelcasino.net |
| vivacasinoresort.net | viva-hotelcasino.com |
| vivacasinoresort.com | viva-hotel.net |
| vivacasinolasvegas.net | viva-hotel.com |
| vivacasinolasveas.net | viva-hotel-spa.net |
| vivacasinolasveas.com | viva-hotel-spa.com |
| vivacasinohotel.net | viva-hotel-spa-lasvegas.net |
| vivacasinohotel.com | viva-hotel-spa-lasvegas.com |
| vivacasinoclub.com | viva-hotel-resort.net |
| vivacasinoandhotel.net | viva-hotel-resort.com |
| vivacasinoandhotel.com | viva-hotel-resort-lasvegas.net |
| vivacasino.net | viva-hotel-resort-lasvegas.com |
| vivabooking.com | viva-hotel-resort-casino.net |
| vivabingo.us | viva-hotel-resort-casino.com |
| vivabetting.com | viva-hotel-casino.net |
| viva2013.net | viva-hotel-casino.com |
| viva2013.com | viva-hotel-casino-lasvegas.net |
| viva2012.net | viva-hotel-casino-lasvegas.com |
| viva2012.com | viva-casino-lasveas.net |
| viva-tainment.org | viva-casino-lasveas.com |
| viva-tainment.net | viva-casino-hotel.net |
| viva-spa-resort.net | viva-casino-hotel.com |
| viva-spa-hotel.com | viva-brand.com |
| viva-spa-casino.net | vegasviva.com |
| viva-spa-casino.com | thisisviva.net |
| viva-resorts.com | thisisviva.mobi |
| viva-resortcasino.net | thisisviva.com |
| viva-resortcasino.com | thevivaspa.net |
| viva-resort.net | thevivaspa.com |
| viva-resort.com | thevivaresortcasino.net |
| viva-resort-spa.net | thevivaresortcasino.com |
| viva-resort-spa.com | thevivaresort.net |
| viva-resort-lasvegas.net | thevivaresort.com |
| viva-resort-lasvegas.com | thevivalv.net |
| viva-resort-hotel.net | thevivalv.com |
| viva-resort-hotel.com | thevivahotelspa.net |
| viva-resort-hotel-casino.net | thevivahotelspa.com |

#4817-7278-8230

| |
|---|
| thevivahotelresortcasino.net |
| thevivahotelresortcasino.com |
| thevivahotelresort.net |
| thevivahotelresort.com |
| thevivahotellasvegas.net |
| thevivahotellasvegas.com |
| thevivahotelcasino.net |
| thevivahotelcasino.com |
| thevivahotel.net |
| thevivahotel.com |
| thevivacasinolasvegas.net |
| thevivacasinolasvegas.com |
| theviva-resort.net |
| theviva-casino.net |
| theviva-casino.com |
| thenewviva.net |
| thenewviva.com |
| the-vivaresort.net |
| the-vivacasino.net |
| the-vivacasino.com |
| the-viva-spa.net |
| the-viva-spa.com |
| the-viva-resort.net |
| the-viva-resort.com |
| the-viva-resort-casino.net |
| the-viva-resort-casino.com |
| the-viva-hotel.net |
| the-viva-hotel.com |
| the-viva-hotel-spa.net |
| the-viva-hotel-spa.com |
| the-viva-hotel-resort.net |
| the-viva-hotel-resort.com |
| the-viva-hotel-lasvegas.net |
| the-viva-hotel-lasvegas.com |
| the-viva-hotel-casino.net |
| the-viva-hotel-casino.com |
| the-viva-casinolasvegas.net |
| the-viva-casinolasvegas.com |
| the-viva-casino.net |
| the-viva-casino.com |
| the-viva-casino-lasvegas.net |
| the-viva-casino-lasvegas.com |
| spaatviva.net |
| spaatviva.com |

| |
|---|
| onlyviva.com |
| lasvivalasvegas.net |
| lasvivalasvegas.com |
| bookviva.com |
| wwwesthotelcasino.com |
| wildwildwesthotellasvegas.com |
| wildwildwesthotelcasino.com |
| wildwildwesthotelandcasino.com |
| wildwildwestcasinolasvegas.com |
| wildwildwest.info |
| thewildwestcasino.net |
| thewildwestcasino.com |
| vegassunsetcasino.com |
| thesunsetcasinoclub.com |
| thesunsetcasino.com |
| sunsethotelncasino.com |
| sunsetcasino.net |
| sunset-casino.com |
| wwwredrockcasino.com |
| wwwredrock.net |
| wwredrock.net |
| wwredrock.com |
| theredrockcasino.com |
| rerocklasvegas.com |
| redrocllasvegas.com |
| redrockweddingchapel.net |
| redrockweddingchapel.com |
| redrockvips.net |
| redrockvip.net |
| redrockvegascasino.com |
| redrockvegas.net |
| redrocksucks.net |
| redrocksucks.com |
| redrockstyle.com |
| redrocksportsbook.net |
| redrocksportsbook.com |
| redrocksports.net |
| redrockspacasino.com |
| redrockspaandcasino.com |
| redrockspa.net |
| redrockslots.net |
| redrockslots.com |
| redrockroom.com |
| redrockresortvegas.net |

Annex to Schedule 3-7

| |
|---|
| redrockresortvegas.com |
| redrockresortsvegas.net |
| redrockresortsvegas.com |
| redrockresortsucks.net |
| redrockresortsucks.com |
| redrockresortspacasino.com |
| redrockresortspa.com |
| redrockresortslv.com |
| redrockresortslv.net |
| redrockresortslasvegas.net |
| redrockresortslasvegas.com |
| redrockresorts.net |
| redrockresortlv.net |
| redrockresortlv.com |
| redrockresortlasvegas.net |
| redrockresortlasvegas.com |
| redrockresorthotellasvegas.net |
| redrockresorthotellasvegas.com |
| redrockresorthotelcasino.net |
| redrockresorthotelcasino.com |
| redrockresorthotel.net |
| redrockresorthotel.com |
| redrockresortcasinosucks.net |
| redrockresortcasinosucks.com |
| redrockresortcasino.net |
| redrockresortcasino.com |
| redrockresortandhotel.net |
| redrockresortandhotel.com |
| redrockresortandcasino.net |
| redrockresortandcasino.com |
| redrockresort.us |
| redrockresort.net |
| redrockresort-lv.net |
| redrockresort-lv.com |
| redrockpoker.net |
| redrockplayersclub.com |
| redrockonlinecasino.com |
| redrocklv.net |
| redrocklasvegassportsbook.net |
| redrocklasvegassportsbook.com |
| redrocklasvegasresortandhotel.net |
| redrocklasvegasresortandhotel.com |
| redrocklasvegasresort.net |
| redrocklasvegasresort.com |

| |
|---|
| redrocklasvegasresidences.com |
| redrocklasvegasonline.net |
| redrocklasvegasonline.com |
| redrocklasvegashotelandcasino.net |
| redrocklasvegashotelandcasino.com |
| redrocklasvegashotel.net |
| redrocklasvegashotel.com |
| redrocklasvegasgaming.net |
| redrocklasvegasgaming.com |
| redrocklasvegascasino.net |
| redrocklasvegascasino.com |
| redrocklasvegas.us |
| redrocklasvegas.net |
| redrocklasvegas.mobi |
| redrocklasvegas.info |
| redrocklasvegas.com |
| redrocklanes.com |
| redrockhotels.net |
| redrockhotellasvegas.net |
| redrockhotellasvegas.com |
| redrockhotelcasinolasvegas.net |
| redrockhotelcasinolasvegas.com |
| redrockhotelcasino.net |
| redrockhotelcasino.com |
| redrockhotelandcasino.com |
| redrockgaminglasvegas.net |
| redrockgaminglasvegas.com |
| redrockgaming.net |
| redrockgaming.com |
| redrockdealers.org |
| redrockdealers.com |
| redrockconvention.info |
| redrockcinemas.com |
| redrockcasionvegas.com |
| redrockcasinosucks.net |
| redrockcasinosucks.com |
| redrockcasinos.net |
| redrockcasinos.com |
| redrockcasinoresortspa.org |
| redrockcasinoresortspa.net |
| redrockcasinoresortspa.com |
| redrockcasinoresortspa.biz |
| redrockcasinoresortandspa.com |
| redrockcasinoresort.net |

Annex to Schedule 3-8

| | |
|---|---|
| redrockcasinoresort.com | redrock-resortslasvegas.net |
| redrockcasinoonline.com | redrock-resortslasvegas.com |
| redrockcasinolasvegas.net | redrock-resorts.net |
| redrockcasinolasvegas.com | redrock-resorts.com |
| redrockcasinohotellasvegas.net | redrock-resorts-vegas.net |
| redrockcasinohotellasvegas.com | redrock-resorts-vegas.com |
| redrockcasinohotel.net | redrock-resorts-lv.net |
| redrockcasinohotel.com | redrock-resorts-lv.com |
| redrockcasino.us | redrock-resorts-lasvegas.net |
| redrockcasino.org | redrock-resorts-lasvegas.com |
| redrockcasino.net | redrock-resortlv.net |
| redrockcasino.mobi | redrock-resortlv.com |
| redrockcasino.info | redrock-resortlasvegas.net |
| redrockcasino.biz | redrock-resortlasvegas.com |
| redrockcasino-resort.net | redrock-resorthotellasvegas.net |
| redrockcasino-resort.com | redrock-resorthotellasvegas.com |
| redrockcasino-lasvegas.net | redrock-resorthotelcasino.net |
| redrockcasino-lasvegas.com | redrock-resorthotelcasino.com |
| redrockcasino-hotel.net | redrock-resorthotel.net |
| redrockcasino-hotel.com | redrock-resorthotel.com |
| redrockbingo.com | redrock-resortcasino.net |
| redrock.biz | redrock-resortcasino.com |
| redrock-weddingchapel.net | redrock-resortandhotel.net |
| redrock-weddingchapel.com | redrock-resortandhotel.com |
| redrock-wedding-chapel.net | redrock-resortandcasino.net |
| redrock-wedding-chapel.com | redrock-resortandcasino.com |
| redrock-vegas.net | redrock-resort.net |
| redrock-vegas.com | redrock-resort.com |
| redrock-sucks.net | redrock-resort-vegas.net |
| redrock-sucks.com | redrock-resort-vegas.com |
| redrock-sportsbook.net | redrock-resort-sucks.net |
| redrock-sportsbook.com | redrock-resort-sucks.com |
| redrock-sports.net | redrock-resort-lv.net |
| redrock-sports.com | redrock-resort-lv.com |
| redrock-spa.net | redrock-resort-lasvegas.net |
| redrock-spa.com | redrock-resort-lasvegas.com |
| redrock-slots.net | redrock-resort-hotellasvegas.net |
| redrock-slots.com | redrock-resort-hotellasvegas.com |
| redrock-resortvegas.net | redrock-resort-hotelcasino.net |
| redrock-resortvegas.com | redrock-resort-hotelcasino.com |
| redrock-resortsvegas.net | redrock-resort-hotel.net |
| redrock-resortsvegas.com | redrock-resort-hotel.com |
| redrock-resortslv.net | redrock-resort-hotel-lasvegas.net |
| redrock-resortslv.com | redrock-resort-hotel-lasvegas.com |

Annex to Schedule 3-9

| |
|---|
| redrock-resort-hotel-casino.net |
| redrock-resort-hotel-casino.com |
| redrock-resort-casino.net |
| redrock-resort-casino.com |
| redrock-resort-casino-sucks.net |
| redrock-resort-casino-sucks.com |
| redrock-resort-andhotel.net |
| redrock-resort-andhotel.com |
| redrock-resort-andcasino.net |
| redrock-resort-andcasino.com |
| redrock-resort-and-hotel.net |
| redrock-resort-and-hotel.com |
| redrock-resort-and-casino.net |
| redrock-resort-and-casino.com |
| redrock-lv.net |
| redrock-lv.com |
| redrock-lasvegassportsbook.net |
| redrock-lasvegassportsbook.com |
| redrock-lasvegasresortandhotel.net |
| redrock-lasvegasresortandhotel.com |
| redrock-lasvegasresort.net |
| redrock-lasvegasresort.com |
| redrock-lasvegasonline.net |
| redrock-lasvegasonline.com |
| redrock-lasvegashotelandcasino.net |
| redrock-lasvegashotelandcasino.com |
| redrock-lasvegashotel.net |
| redrock-lasvegashotel.com |
| redrock-lasvegasgaming.net |
| redrock-lasvegasgaming.com |
| redrock-lasvegascasino.net |
| redrock-lasvegascasino.com |
| redrock-lasvegas.net |
| redrock-lasvegas.com |
| redrock-lasvegas-sportsbook.net |
| redrock-lasvegas-sportsbook.com |
| redrock-lasvegas-resortandhotel.net |
| redrock-lasvegas-resortandhotel.com |
| redrock-lasvegas-resort.net |
| redrock-lasvegas-resort.com |
| redrock-lasvegas-resort-andhotel.net |
| redrock-lasvegas-resort-andhotel.com |
| redrock-lasvegas-resort-and-hotel.net |
| redrock-lasvegas-resort-and-hotel.com |

| |
|---|
| redrock-lasvegas-online.net |
| redrock-lasvegas-online.com |
| redrock-lasvegas-hotelandcasino.net |
| redrock-lasvegas-hotelandcasino.com |
| redrock-lasvegas-hotel.net |
| redrock-lasvegas-hotel.com |
| redrock-lasvegas-hotel-andcasino.net |
| redrock-lasvegas-hotel-andcasino.com |
| redrock-lasvegas-hotel-and-casino.net |
| redrock-lasvegas-hotel-and-casino.com |
| redrock-lasvegas-gaming.net |
| redrock-lasvegas-gaming.com |
| redrock-lasvegas-casino.net |
| redrock-lasvegas-casino.com |
| redrock-las-vegas.net |
| redrock-las-vegas.com |
| redrock-hotels.net |
| redrock-hotels.com |
| redrock-hotellasvegas.net |
| redrock-hotellasvegas.com |
| redrock-hotelcasinolasvegas.net |
| redrock-hotelcasinolasvegas.com |
| redrock-hotelcasino.net |
| redrock-hotelcasino.com |
| redrock-hotel.net |
| redrock-hotel.com |
| redrock-hotel-lasvegas.net |
| redrock-hotel-lasvegas.com |
| redrock-hotel-casinolasvegas.net |
| redrock-hotel-casinolasvegas.com |
| redrock-hotel-casino.net |
| redrock-hotel-casino.com |
| redrock-hotel-casino-lasvegas.net |
| redrock-hotel-casino-lasvegas.com |
| redrock-gaminglasvegas.net |
| redrock-gaminglasvegas.com |
| redrock-gaming.net |
| redrock-gaming.com |
| redrock-gaming-lasvegas.net |
| redrock-gaming-lasvegas.com |
| redrock-casinos.net |
| redrock-casinos.com |
| redrock-casinoresort.net |
| redrock-casinoresort.com |

Annex to Schedule 3-10

| |
|---|
| redrock-casinolasvegas.net |
| redrock-casinolasvegas.com |
| redrock-casinohotellasvegas.net |
| redrock-casinohotellasvegas.com |
| redrock-casinohotel.net |
| redrock-casinohotel.com |
| redrock-casino.net |
| redrock-casino.com |
| redrock-casino-sucks.net |
| redrock-casino-sucks.com |
| redrock-casino-resort.net |
| redrock-casino-resort.com |
| redrock-casino-lasvegas.net |

| |
|---|
| redrock-casino-lasvegas.com |
| redrock-casino-hotellasvegas.net |
| redrock-casino-hotellasvegas.com |
| redrock-casino-hotel.net |
| redrock-casino-hotel.com |
| redrock-casino-hotel-lasvegas.net |
| redrock-casino-hotel-lasvegas.com |
| redrckcasino.com |
| red-rock-casino.com |
| lasvegasredrockhotelandcasino.com |
| lasvegasredrock.com |

## G.    Foreign Domain Names

| |
|---|
| redrockcasino.hk |
| redrockcasino.jp |
| redrockcasino.sg |
| redrockcasino.tw |
| redrockhotel.cn |
| redrockhotel.hk |
| redrockhotel.jp |
| redrockhotel.sg |
| redrockhotel.tw |
| redrocklasvegas.hk |
| redrocklasvegas.jp |
| redrocklasvegas.sg |
| redrocklasvegas.tw |
| redrockresort.cn |
| redrockresort.hk |
| redrockresort.jp |
| redrockresort.sg |
| redrockresort.tw |
| redrockspa.cn |
| redrockspa.hk |
| redrockspa.jp |
| redrockspa.sg |
| redrockspa.tw |
| redrockvegas.cn |
| redrockvegas.hk |
| redrockvegas.jp |
| redrockvegas.sg |
| redrockvegas.tw |

| |
|---|
| vivahotelcasino.cn |
| vivahotelcasino.hk |
| vivahotelcasino.jp |
| vivahotelcasino.sg |
| vivahotelcasino.tw |
| vivahotelspa.cn |
| vivahotelspa.jp |
| vivahotelspa.sg |
| vivahotelspa.tw |
| vivaresort.cn |
| vivaresort.jp |
| vivaresort.sg |
| vivaresort.tw |
| vivaresortcasino.cn |
| vivaresortcasino.jp |
| vivaresortcasino.sg |
| vivaresortcasino.tw |
| vivaspa.cn |
| vivaspa.hk |
| vivaspa.jp |
| vivaspa.sg |
| vivaspa.tw |
| vivatainment.cn |
| vivatainment.jp |
| vivatainment.sg |
| vivatainment.tw |

# Exhibit 2

# Exhibit 2

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:     (213) 892-4000
Facsimile:     (213) 629-5063

Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:     (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA

In re:

STATION CASINOS, INC.

☐ Affects this Debtor
☒ Affects all Debtors
☐ Affects Northern NV Acquisitions, LLC
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PrSCI, LLC

Chapter 11

Case No. BK-09-52477
Jointly Administered
BK 09-52470 through BK 09-52487

**NOTICE OF BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF STATION CASINOS, INC. AND CERTAIN "OPCO" SUBSIDIARIES**

PLEASE TAKE NOTICE THAT on April 7, 2010, Station Casinos, Inc. ("SCI"), together with its affiliated debtors and debtors in possession (collectively, the "Debtors"), in the above-captioned Chapter 11 Cases, filed *Debtors' Motion for Entry of Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc and Certain "Opco" Subsidiaries*, dated April 7, 2010 [Docket No. 1175]

#4824-3437-4406

1

1    (the "<u>Motion</u>")[1] with the United States Bankruptcy Court for the District of Nevada (the "<u>Court</u>")

2    for an order pursuant to sections 105(a) and 363 of the Bankruptcy Code and Rules 2002, 6004,

3    and 6006 of the Federal Rules of Bankruptcy Procedure: (a) approving and establishing bid

4    procedures (the "<u>Bidding Procedures</u>") for the Debtors' sale (the "<u>Sale</u>") of all or substantially all

5    of the assets of SCI and certain of its "Opco" debtor and non-debtor subsidiaries (collectively,

6    and as more fully described in the Motion and in the Bidding Procedures, the "<u>Opco</u>

7    <u>Properties</u>"); and (b) authorizing an auction process to sell the Opco Properties in accordance

8    with the Bidding Procedures.

9        PLEASE TAKE FURTHER NOTICE THAT on June 3, 2010, the Court entered an

10   *Order Establishing Bidding Procedures and Deadlines Relating to Sale of Substantially All of*

11   *the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries* [Docket No. _____] (the

12   "<u>Bidding Procedures Order</u>") approving the form of this Bidding Procedures Notice and the

13   Bidding Procedures, and authorizing the Debtors to employ the Bidding Procedures.

14       PLEASE TAKE FURTHER NOTICE THAT pursuant to the Bidding Procedures, if

15   Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid, the Debtors

16   shall conduct an Auction as set forth in the Bidding Procedures commencing on August 6, 2010

17   at 10:00 a.m. under the supervision of the Honorable Gregg W. Zive in the United States

18   Bankruptcy Court for the District of Nevada, 300 Booth Street, Reno, Nevada, or at such later

19   date and time and at such alternative location as the Bankruptcy Court may direct.

20       PLEASE TAKE FURTHER NOTICE THAT the, pursuant to the Bidding Procedures,

21   the **"LOI Submission Date" is June 30, 2010 at 4:00 p.m. (Pacific Time)** and the "**Bid**

22   **Deadline" is July 30, 2010, at 4:00 p.m. (Pacific Time)**.  A Potential Bidder that desires to

23   make a bid for the Opco Properties, or any portion thereof, is required under the Bidding

24   Procedures and the Bidding Procedures Order to deliver written copies of its bid materials to the

25   parties identified in Paragraph M.1 of the Bidding Procedures **no later than the Bid Deadline.**

26

27

28       [1] All capitalized terms not otherwise defined shall have the respective meanings ascribed in the Motion or in
     the Bidding Procedures, as applicable.

#4824-3437-4406                              2

**Any person or entity that does not submit a bid by the Bid Deadline (as may be extended pursuant to the Bidding Procedures) may not be permitted to participate in the Auction**.

PLEASE TAKE FURTHER NOTICE THAT any person or entity wishing to submit a bid for the Opco Properties is urged to review the Bidding Procedures, the Bidding Procedures Order, the Disclosure Statement, the Plan and the Motion.  Copies of the Disclosure Statement, the Plan and the Motion along with the exhibits thereto, and of the Bidding Procedures Order, including the Bidding Procedures annexed as Exhibit 1 to the Bidding Procedures Order and incorporated by reference into the Bidding Procedures Order, may be (a) reviewed during regular Court hours at the United States Bankruptcy Court, 300 Booth Street, Reno, Nevada 89509, (b) reviewed electronically at (i) www.deb.uscourts.gov, the official website for the Court or (ii) or free of charge at www.kccllc.net/stationcasinos or (c) procured upon written request to (i) counsel for Debtors, Milbank, Tweed, Hadley & McCloy LLP, 601 South Figueroa Street, 30th Floor, Los Angeles, CA 90017, Attention:  Robert C. Shenfeld (rshenfeld@milbank.com) and Bria LaSalle Mertens (bmertens@milbank.com) or (ii) Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245, Attention: Aaron M. Doyle.

Dated: June 3, 2010                           Respectfully submitted,


                                      By:        /s/ Paul S. Aronzon
                                          Paul S. Aronzon (CA State Bar No. 88781)
                                          Thomas R. Kreller (CA State Bar No. 161922)
                                          MILBANK, TWEED, HADLEY & McCLOY LLP
                                          601 South Figueroa Street, 30th Floor
                                          Los Angeles, California 90017

                                          Reorganization Counsel for
                                          Debtors and Debtors in Possession

                                          Bruce T. Beesley, SBN 1164
                                          Laury Macauley, SBN 11413
                                          LEWIS AND ROCA LLP
                                          50 W. Liberty Street, Ste. 410
                                          Reno, Nevada 89501
                                          bbeesley@lrlaw.com; lmacauley@lrlaw.com

                                          Local Reorganization Counsel
                                          For Debtors and Debtors in Possession

#4824-3437-4406                              3