Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:    (213) 892-4000
Facsimile:     (213) 629-5063

Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:    (775) 823-2900
Facsimile:     (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Local Reorganization Counsel for
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>STATION CASINOS, INC.<br><br>☒ Affects this Debtor<br>☐ Affects all Debtors<br>☐ Affects Northern NV Acquisitions, LLC<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC<br>☐ Affects GV Ranch Station, Inc. | Chapter 11<br><br>Case No. BK-09-52477<br>Jointly Administered<br>BK 09-52470 through BK 09-52487 and<br>BK 10-50381<br><br>**MOTION OF STATION CASINOS, INC. FOR AUTHORIZATION TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT PURSUANT TO 11 U.S.C §§ 105(a), 363(b) AND 364(c)**<br><br>Hearing Date:    July 15, 2010<br>Hearing Time:    10:00 a.m.<br>Place:    300 Booth Street<br>    Reno, NV 89509 |

TO THE HONORABLE GREGG W. ZIVE, UNITED STATES BANKRUPTCY JUDGE, OFFICE OF THE UNITED STATES TRUSTEE AND ALL PARTIES IN INTEREST:

Debtor and debtor in possession, Station Casinos, Inc. ("SCI") submits this motion (the "Motion")  pursuant to sections 105(a), 363(b) and 364(c) of the Bankruptcy Code for an order

#4838-4563-2262

authorizing SCI to enter into the Insurance Premium Finance Agreement and Disclosure Statement (the "Insurance Premium Finance Agreement") with First Insurance Funding Corp. ("FIFC") in order to finance SCI's insurance coverage and provide FIFC with adequate protection, a copy of which is annexed hereto as Exhibit 1.[1] SCI submits the Declaration of Thomas M. Friel, sworn to on June 8, 2010 (the "Friel Decl.) concurrently herewith. In support of the Motion, represent as follows:

### I.    Jurisdiction and Basis for Relief

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory basis for the relief requested in the Motion is sections 105(a), 363(b) and 364(c) of the Bankruptcy Code.

### II.    Summary of Facts

2.    In connection with the day-to-day operations of its business, SCI is either required by law or compelled by sound business judgment to maintain various forms of insurance, including property casualty insurance and workers compensation. The insurance policies obtained by SCI to provide such coverage (which are set forth on the Schedule of Policies contained in the Insurance Premium Finance Agreement, collectively, the "Policies") require SCI to prepay the full premium for the applicable coverage period. Because all of the Policies cover policy periods of 12 months, the requirement to prepay the full premiums would impose a significant financial burden on SCI. To lesson this burden, SCI proposes to finance the premiums for the Policies pursuant to the Insurance Premium Finance Agreement and to grant FIFC adequate protection for SCI's repayment obligations by providing a post-petition security interest in return premiums, dividend payments, and certain loss payments related to the Policies, together with the right to cancel policies as set forth in the Insurance Premium Finance Agreement. Pursuant to the Insurance Premium Finance Agreement, FIFC will pay the premiums due under the Policies and SCI thereby will become obligated to repay FIFC for the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed in the Insurance Premium Finance Agreement.

#4838-4563-2262                                         -2-

amount financed under the Insurance Premium Finance Agreement in installments over the term of the Insurance Premium Finance Agreement.  The Insurance Premium Finance Agreement provides that the law of Illinois governs.

3. SCI believes the Insurance Premium Finance Agreement represents a fair and reasonable commercial transaction with competitive terms.  SCI is prepared to execute the Insurance Premium Finance Agreement for the financing of the Policies subject to Court approval.

4. Under the Insurance Premium Finance Agreement, the total amount financed is $4,242,459.10.  By virtue of the Insurance Premium Finance Agreement, SCI will become obligated to pay to FIFC the sum of $794,000.10 as a down payment and $391,592.57 per month in 9 monthly installments.  The finance charge is $75,874.13 and the annual percentage rate is 5.250%.

5. Pursuant to the terms of the Insurance Premium Finance Agreement, SCI is appointing FIFC as its attorney-in-fact with the irrevocable power to cancel the Policies and collect the unearned premium in the event SCI is in default of its obligations under the Insurance Premium Finance Agreement.

6. Without insurance, SCI would be forced to cease operations.

7. SCI and FIFC have reached an agreement that the appropriate adequate protection for FIFC would be an order of this Court:

a) authorizing and directing SCI to timely make all payments due under the Insurance Premium Finance Agreement and authorizing FIFC to receive and apply such payments to the indebtedness owed by SCI to FIFC as provided in the Insurance Premium Finance Agreement; and

b) directing that if SCI does not make any of the payments due under the Insurance Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable FIFC and/or third parties, including insurance companies providing the coverage under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to the indebtedness owed to FIFC by SCI.  In exercising such rights, FIFC and/or third parties shall comply with the notice and other relevant provisions of the Insurance Premium Finance Agreement.

8.      The only assets in which FIFC will have a security interest under the Insurance Premium Finance Agreement will be those sums payable under or in relation to the Policies, and the security interest granted to FIFC will only secure SCI's remaining payment obligations to FIFC under the Insurance Premium Finance Agreement. Therefore, the security interest granted under the Insurance Premium Finance Agreement will encumber only an asset of SCI's that will come into being by virtue of the financing provided by FIFC.

### IV.     Legal Argument

**A.    The Insurance Premium Finance Agreement was Entered Into In Good Faith, Is Necessary and Should Be Approved under Sections 105(a), 363(b) and 364(c)(2) of the Bankruptcy Code.**

9.      Section 364(c)(2) provides a debtor in possession with the ability to obtain post-petition financing with court authorization on property not otherwise subject to a lien. *See Burchinal v. Cent. Wash. Bank* (*In re Adams Apple Inc.*), 829 F.2d 1484, 1488 (9th Cir. 1987). Bankruptcy Code section 364(c)(2) provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(l) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> ... (2) secured by a lien on property of the estate that is not otherwise subject to a lien[.]

11 U.S.C. § 364(c)(2). Thus, section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.

10.     Generally, lenders are unwilling to finance insurance premiums on an unsecured basis. Under any new premium finance agreement, the counterparty would likely require that SCI grant a security interest in the unearned premiums under the financed policies. *See*, *generally*, *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp.* (*In re Schwinn Bicycle Co.*), 200 B.R. 980, 982 (Bankr. N.D. Ill. 1996) (describing insurance premium financing agreements). SCI is unaware of any insurance premium finance company that would agree to extend such credit on an unsecured basis, and in the past, SCI's insurance premiums have been financed in the same or similar fashion.

#4838-4563-2262                                -4-

11. SCI has compelling business reasons for seeking to enter into the Insurance Premium Finance Agreement. The insurance coverage provided under the Insurance Premium Finance Agreement is essential for preserving the value of SCI's assets and, in many cases, such coverage is required by various regulations, laws, and contracts that govern SCI's business operations. Indeed, maintenance of insurance policies, including the coverage provided by the Policies, is required by the operating guidelines established by the Office of the United States Trustee.

12. In addition, SCI has determined in the exercise of its business judgment that the prudent management of cash requires that the insurance premium payments be financed in accordance with the Insurance Premium Finance Agreement.

13. For the reasons stated above, SCI believes the obligations under the Insurance Premium Finance Agreement represents the reasonable exercise of SCI's business judgment. Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates. *See*, *e.g.*, *In re Ames Dep't. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Mastercraft Interiors, Ltd.*, Nos. 06-12769, 06-12770, 2006 WL 4595946, at *4 (Bankr. D. Md. Aug. 10, 2006) (authorizing the debtor's purchase of secured financing because the debtor's financing needs were "immediate and critical" to the success of the proceedings and the debtor was unable to obtain unsecured credit). Further, section 364(c) does not impose a duty on the debtor to request unsecured credit from every potential lender before seeking secured credit. *See In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

14. Because a borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, the Court should authorize SCI to enter into the Premium Finance Agreement. SCI has articulated a valid business justification for entering into the Insurance Premium Finance Agreement. In view of the importance of maintaining insurance coverage throughout the duration of the Chapter 11 Cases and preserving liquidity by financing

#4838-4563-2262                                -5-

1  the Policies, SCI believes it is in the best interests of the estates to authorize SCI to enter into and
2  honor the obligations under the Insurance Premium Finance Agreement with FIFC.

### V. Conclusion

**WHEREFORE**, Movants respectfully request that the Court authorize SCI to enter into the Insurance Premium Finance Agreement and provide the adequate protection to FIFC set forth in such Agreement, and enter an order substantially in the form annexed hereto as Exhibit 2, together with such other and further relief as the Court deems just and proper under the circumstances.

Dated:  June 17, 2010                           Respectfully submitted,


By:        */s/ Robert C. Shenfeld*
         Paul S. Aronzon, CA State Bar No. 88781
         Thomas R. Kreller, CA State Bar No. 161922
         Robert C. Shenfeld CA State Bar No. 228181
         MILBANK, TWEED, HADLEY & McCLOY LLP
         601 South Figueroa Street, 30th Floor
         Los Angeles, California 90017

         Reorganization Counsel for
         Debtors and Debtors in Possession

         Bruce T. Beesley NV SBN 1164
         Laury Macauley NV SBN 11413
         LEWIS AND ROCA LLP
         50 W. Liberty Street, Ste. 410
         Reno, NV   89501
         bbeesley@lrlaw.com; lmacauley@lrlaw.com

         Local Reorganization Counsel
         For Debtors and Debtors in Possession

#4838-4563-2262                           -6-

# Exhibit 1

# Exhibit 1

# FIRST INSURANCE FUNDING CORP.

**COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT**

Customer ID: n/a      Quote Number: 000001098184

| | | | |
|---|---|---|---:|
| A | Total Premium | $ | 4,242,459.10 |
| B | Cash Down Payment Required | $ | 794,000.10 |
| C | Unpaid Premium Balance | $ | 3,448,459.00 |
| D | Documentary Stamp Tax (only applicable in Florida) | $ | 0.00 |
| E | Amount Financed (The amount of credit provided on your behalf) | $ | 3,448,459.00 |
| F | FINANCE CHARGE (Dollar amount credit will cost you) | $ | 75,874.13 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $ | 3,524,333.13 |
| | ANNUAL PERCENTAGE RATE (Cost of your credit figured as a yearly rate) | | 5.250 % |

**INSURED/BORROWER** (Name and address as shown on Policy)
DIP Station Casinos Inc
1505 S Pavillion Center Dr
Las Vegas     NV     89135
Telephone Number: (702) 495-4212
Direct Correspondence to: Catherine Ross

**AGENT or BROKER** (Name and Business Address) 07053-0001
Cragin & Pike
2603 W. Charleston Blvd.
Las Vegas     NV     89102
Telephone Number: (702) 877-1111
F/D: 000

**LENDER**    **FIRST INSURANCE FUNDING CORP.**
450 Skokie Blvd, Suite 1000
P.O. Box 3306
Northbrook, IL 60065-3306
Telephone: (800) 837-3707
Fax: (800) 837-3709

**PAYMENT SCHEDULE BELOW**, or ☐ See Schedule Attached

| Number of Payments | Payments are due Monthly | Amount of Each Payment |
|---|---|---|
| 9 | Beginning 07/01/2010 | 391,592.57 |

**Prepayment** The Insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

**Security** As security for the payments to be made, the insured assigns FIRST INSURANCE FUNDING CORP. (herein referred to as "FIRST") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, FIRST HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

**Late Payment** A late charge will be imposed on any payment which is not received by FIRST within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by FIRST within such grace period) This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, and ND.

**Contract Reference** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

PRN:060310 CFG:Internal     RT:07053OPT1-IM CRD:0 BP:Bill P/F:0.00 SUB:FINCODEFAULT DOWN

## SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---:|
| KTKCMB545D866710 | 11027-001 - Travelers Prop Cas Ins Co | PROP [ME%: 0.000 CX: 10] | 12 | 06-01-2010 FIN TXS/FEES ERN TXS/FEES | 3,077,474.00 0.00 0.00 |
| CPP992766704 | 02213-249 - Great American Insurance Co | PROP [ME%: 0.000 CX: 10] | 12 | 06-01-2010 FIN TXS/FEES ERN TXS/FEES | 172,095.00 0.00 0.00 |
| | (Policies continued on next page.) | | | | |

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference and constitute a part of this agreement

**TOTAL PREMIUMS** (Record in "A")     4,242,459.10

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on Page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties recited herein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, courts costs, and other collection costs incurred by FIRST in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify FIRST for any and all losses FIRST incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

_____
Signature of Agent or Broker

_____
Title              Date

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER by FIRST, the named insured (herein referred to as "Insured") promised to pay, to the order of FIRST, the Total of Payments subject to all of the provisions set forth on both pages of this agreement.

**NOTICE TO THE INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge. (4) Keep your copy of this agreement to protect your legal rights.

_____
Name of Insured (Print or Type)

By: Signature _____

_____
Title              Date

FIF ST 0206

## SCHEDULE OF POLICIES

| Policy Number And Prefix | Full Name of Insurance Company and Name and Address of General Agent or Company Office to Which Premium is Paid | Type of Insurance | Policy Term in Months | Effective Date Mo. Day. Yr. | Policy Premiums |
|---|---|---|---|---|---|
| SP4042036 | 00818-001 - Safety National Casualty Corp | WC<br>[ME%: 0.000 CX: 10]<br>[AU ] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 128,626.00<br>0.00<br>0.00 |
| TBD | 02351-001 - National Union Fire Ins Co PA<br>000675 - SOCIUS INSURANCE | PROF<br>[ME%: 0.000 CX: 10] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 13,946.00<br>0.00<br>0.00 |
| TBD | 02350-001 - Lexington Insurance Company<br>000583 - National Specialty Underwriters | EXLB<br>[ME%: 35.000 CX: 10]<br>[AU ] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 180,900.00<br>6,331.50<br>723.60 |
| TBD | 02452-001 - St Paul Fire & Marine Ins Co<br>000583 - National Specialty Underwriters | UMB<br>[ME%: 0.000 CX: 10]<br>[AU ] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 436,338.00<br>0.00<br>1,750.00 |
| RMP268172176 | 02128-160 - Continental Casualty Company | PROP<br>[ME%: 0.000 CX: 10] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 50,000.00<br>0.00<br>0.00 |
| CAS3756927 | 02213-022 - Great American Insurance Co | CRME<br>[ME%: 0.000 CX: 10] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 169,275.00<br>0.00<br>0.00 |
| 8169-6136 | 03299-002 - Chubb Insurance Company of NJ | K&R<br>[ME%: 0.000 CX: 10] | 12 | 06-01-2010<br>FIN TXS/FEES<br>ERN TXS/FEES | 5,000.00<br>0.00<br>0.00 |

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT:

**WARRANTY OF ACCURACY.** The Insured represents and warrants to FIRST that the insurance policies listed in the Schedule of Policies are in full force and effect and that the Insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The Insured further represents and warrants to FIRST that: (i) none of the insurance policies listed in the Schedule of Policies are for personal, family or household purposes, and (ii) the Insured has no indebtedness to the Insurers issuing the listed policies, and none of those insurers have asserted any claims for payment against the Insured.

**REPRESENTATION OF SOLVENCY.** The Insured represents that the Insured is not insolvent nor presently the subject of any insolvency proceeding.

**COLLATERAL.** To secure payment of all amounts due under this agreement, Insured grants FIRST a security interest in the policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagee or loss payee interest.

**RIGHT TO CANCEL.** If Insured does not make a payment when it is due, or if Insured is otherwise in default under this agreement, FIRST may cancel the policies and act in Insured's place with regard to the policies, including endorsing any check or draft issued in the Insured's name for funds assigned to FIRST as security herein. This right given by Insured to FIRST constitutes a "Power of Attorney". Before FIRST cancels the policies, FIRST will provide notice to the Insured, as required by law. Insured agrees that this right to cancel which Insured has granted to FIRST cannot be revoked, and that FIRST's right to cancel will terminate only after all of Insured's indebtedness under this agreement is paid in full.

**DEFAULT.** Insured is in default under this agreement if, (a) a payment is not received by FIRST when it is due, (b) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor, (c) Insured fails to comply with any of the terms of this agreement, (d) insurance companies cancel coverages, (e) premiums increase under any policy listed in this agreement, and Insured fails to pay such increased premium within thirty (30) days of notification, or (f) Insured is in default under any other agreement with FIRST. Wherever the word "default" is used in this agreement, it means any one of the above. If the Insured is in default, FIRST has no further obligation under this agreement to pay premiums on the Insured's behalf, and FIRST may pursue any of the remedies provided in this agreement.

**LATE CHARGES.** A late charge will be imposed on any payment which is not received by FIRST within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by FIRST within such grace period) This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, and ND.

**DISHONORED CHECK FEE.** If an Insured's check is dishonored for any reason and if permitted by law, the Insured will pay FIRST a dishonored check fee equal to the maximum fee permitted by law.

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.** Once a Notice of Cancellation has been sent to any insurance company, FIRST has no duty to rescind it or to ask that the policy be reinstated, even if FIRST later receives Insured's payment. Payments which FIRST receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of FIRST's rights under this agreement.

**FIRST'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any policy is cancelled (whether by Insured or FIRST or anyone else) FIRST has the right to receive all unearned premiums and other funds assigned to FIRST as security herein and to apply them to Insured's unpaid balance under this agreement or any other agreement between the Insured and FIRST. If the amount received is more than the amount owed by Insured, any excess amount will be refunded to Insured. If the amount received is less than the amount owed by Insured, Insured will pay FIRST the balance due. FIRST may act in Insured's place to do whatever is necessary to collect such refunds. The insurance companies may rely on whatever FIRST tells them regarding the policies; it does not have to get any proof from the Insured or anyone else.

**INTEREST DUE AFTER CANCELLATION.** To the extent permitted by applicable law, if cancellation occurs, the Insured agrees to pay FIRST interest on the balance due at the contract rate or at the maximum rate allowed by applicable law, whichever is less, until the balance is paid in full or until such other date as provided by applicable law.

**RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL.** At any time after default, FIRST can demand and has the right to receive immediate payment of the total unpaid amount due under this agreement even if FIRST has not received any refund of unearned premium.

**CANCELLATION CHARGE.** If a default by the Insured results in cancellation of any insurance policy listed in the Schedule of Policies, the Insured will pay FIRST a charge equal to the maximum charge permitted by law.

**ASSIGNMENTS.** Insured may not assign any policy without FIRST's written consent. However, FIRST's consent is not needed to add mortgagees or other persons as loss payees. FIRST may transfer its rights under this agreement to anyone without the consent of Insured.

**COLLECTIONS AND ATTORNEY FEES.** FIRST may enforce its rights to collect amounts due to it without using the security interest granted in this agreement. If FIRST uses an attorney who is not a salaried employee of FIRST or incurs other collection costs to collect any money owed under this agreement, Insured agrees to pay reasonable attorney fees, court costs, and other collection costs incurred by FIRST, not to exceed 20 percent of the amount due and payable under this agreement.

**PREPAYMENT.** At any time, Insured may pay the entire amount still unpaid. If Insured pays the full unpaid amount before it is due, Insured will receive a refund of unearned Finance Charge computed by the actuarial method or the Rule of 78's, as permitted by applicable law. This refund will be subject to the maximum non-refundable service fee permitted by applicable law. There is no refund made if the amount to be refunded is less than $1.00.

**AUDIT AND REPORTING FORM POLICIES.** With regard to any policy in the Schedule of Policies, which is an auditable or reporting form type, Insured agrees to promptly pay to the insurance company the difference between the actual earned premium generated for the policy, and the premiums financed under this agreement.

**FINANCE CHARGE.** The finance charge begins on the earliest effective date of the policies listed in the Schedule of Policies section. The finance charge includes interest and may include a non-refundable service fee equal to the maximum fee permitted by applicable law. The finance charge is computed using a 365 day year.

**AGENT OR BROKER.** The agent or broker handling this agreement is not the agent or broker of FIRST, and cannot legally bind FIRST in any way.
Where permissible by law, some portion of this finance charge may be paid by FIRST to the agent or broker executing this agreement as payment for the services in rendering the financing of the insurance premiums. Any and all questions about this payment should be directed to the agent or broker.

**CORRECTIONS.** FIRST may insert the names of the insurance companies and policy numbers, if these are not known at the time Insured signs this agreement. FIRST is authorized to correct patent errors or omissions in this agreement.

**EFFECTIVE DATE.** This agreement will not become effective until it is accepted in writing by FIRST.

**GOVERNING LAW.** This agreement is governed by and interpreted under the laws of the state where FIRST accepts this agreement. In AR, this agreement shall be governed by the laws of the state of IL. If any court finds any part of this agreement to be invalid, such finding shall not affect the remainder of this agreement. Singular words in this agreement shall mean plural and vice versa as may be required to give the agreement meaning. North Carolina Department of Insurance Permit #B-482.

**SIGNATURE AND ACKNOWLEDGMENT.** Insured has signed this agreement and received a copy of it. If Insured is a corporation, the person signing is an officer of that corporation authorized to sign this agreement. If the Insured is not a corporation, all Insureds listed in any policy have signed.

**LIABILITY.** Insured understands and agrees that FIRST has no liability to Insured or any person or entity upon the exercise of FIRST's right of cancellation, except in the event of willful or intentional misconduct by FIRST.

---

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

**SIGNATURES GENUINE.** To the best of our knowledge, the Insured's signature is genuine.
**AUTHORIZATION/RECOGNITION.** The Insured has authorized this transaction. Both the Insured and the Agent/Broker recognize the security interest granted herein, pursuant to which the Insured assigns to FIRST all unearned premium, dividends and certain loss payments. Upon cancellation of any of the policies listed in the Schedule of Policies, the Agent/Broker agrees to immediately pay FIRST all unearned commissions and all unearned premiums, dividends and loss payments received. If such funds are not remitted to FIRST within 10 days of receipt by the Agent/Broker, the Agent/Broker agrees to pay FIRST interest on such funds at the maximum rate allowed by applicable law.
**POLICIES EFFECTIVE/PREMIUMS CORRECT.** The policies listed in the Schedule of Policies are in full force and effect, and the premiums are correct as listed.
**INSURED HAS THIS DOCUMENT.** The Insured has been given a copy of this agreement.
**NO INSOLVENCY.** To the best of our knowledge, neither the Insured nor the insurance companies are insolvent or involved in a bankruptcy or similar proceeding as debtor, except as clearly indicated on page 1 of this agreement.

**DEPOSIT/PROVISIONAL PREMIUMS.** Any Audit or Reporting Form policies or policies subject to retrospective rating included in this agreement are noted below in section (a). The deposit or provisional premiums for these policies are not less than the anticipated premiums to be earned for the full term of the policies.

**LOSS PAYEES NAMED.** Any policies which provide that the premium may be earned earlier in the event of loss are noted below in section (b) and/or (c). The Agent/Broker has notified the relevant insurance companies and the Insured that FIRST is to be named as a loss payee on any such policies.

**AUTHORIZED ISSUING AGENT.** For the scheduled policies, the Agent/Broker is either the insurance company's authorized policy issuing agent or the broker placing the coverage directly with the insurance company, except where the name and address of Issuing Agent or General Agent is listed in the Schedule of Policies.

**AMOUNTS DUE FROM INSURED.** The cash down payment and any installments due from the Insured have been collected from the Insured.

### FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a) No policies are Auditable, Reporting Form policies or policies subject to Retrospective Rating, except policies listed at right or as indicated on the Schedule of Policies.

(b) No policies are subject to Minimum Earned Premium except policies listed at right or as indicated on the Schedule of Policies. The Minimum Earned Premium for listed policies is $ _____

(c) All policies provide that unearned premiums are computed by the standard short rate or pro rata table, except those policies listed at right or as indicated on the Schedule of Policies.

(d) No policies contain provisions which prohibit cancellation either by the Insured or by the Insurance company within ten (10) days, except those policies listed at right or as indicated on the Schedule of Policies.

FIF ST 0206

| | Policy Number Of Exceptions | Comments |
|---|---|---|
| (a) | | |
| (b) | | |
| (c) | | |
| (d) | | |

I acknowledge I have entered into a premium finance contract between Station Casinos Inc. and First Insurance Funding Corp. ("finance company"). I understand Cragin & Pike, Inc. has provided this financing option, but is in no way a party to this contract. This contract is between Station Casinos Inc. and the finance company.

**The check for the down payment and first installment is to be made payable to Cragin & Pike, Inc.** After the contract is put into effect, I understand Station Casinos Inc. will be invoiced directly by the finance company. All other payments must be made payable to and mailed directly to the finance company. Cragin & Pike, Inc. cannot and will not accept any payments on behalf of the finance company.

I understand the finance company may cancel any financed policies for non payment of premium. Any notification of late payments or pending cancellations will come directly from the finance company. Cragin & Pike, Inc. is not a party to this contract and, consequently, is under no obligation to notify Station Casinos Inc. of any pending finance company action.

_____

Insured


_____

Date

# Exhibit 2

# Exhibit 2

Paul S. Aronzon (CA State Bar No. 88781)
Thomas R. Kreller (CA State Bar No. 161922)
MILBANK, TWEED, HADLEY & McCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017
Telephone:    (213) 892-4000
Facsimile:    (213) 629-5063

Reorganization Counsel for
Debtors and Debtors in Possession

Bruce T. Beesley (NV SBN 1164)
Laury Macauley (NV SBN 11413)
LEWIS AND ROCA LLP
50 West Liberty Street, Suite 410
Reno, Nevada 89501
Telephone:    (775) 823-2900
Facsimile:    (775) 823-2929
bbeesley@lrlaw.com; lmacauley@lrlaw.com

Local Reorganization Counsel for
Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

In re:

STATION CASINOS, INC.

☒ Affects this Debtor
☐ Affects all Debtors
☐ Affects Northern NV Acquisitions, LLC
☐ Affects Reno Land Holdings, LLC
☐ Affects River Central, LLC
☐ Affects Tropicana Station, LLC
☐ Affects FCP Holding, Inc.
☐ Affects FCP Voteco, LLC
☐ Affects Fertitta Partners LLC
☐ Affects FCP MezzCo Parent, LLC
☐ Affects FCP MezzCo Parent Sub, LLC
☐ Affects FCP MezzCo Borrower VII, LLC
☐ Affects FCP MezzCo Borrower VI, LLC
☐ Affects FCP MezzCo Borrower V, LLC
☐ Affects FCP MezzCo Borrower IV, LLC
☐ Affects FCP MezzCo Borrower III, LLC
☐ Affects FCP MezzCo Borrower II, LLC
☐ Affects FCP MezzCo Borrower I, LLC
☐ Affects FCP PropCo, LLC
☐ Affects GV Ranch Station, Inc.

Chapter 11

Case No. BK-09-52477
Jointly Administered
BK 09-52470 through BK 09-52487 and
BK 10-50381

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 364(c) AUTHORIZING STATION CASINOS, INC. TO ENTER INTO INSURANCE PREMIUM FINANCE AGREEMENT**

Hearing Date:    July 15, 2010
Hearing Time:    10:00 a.m.

#4838-4563-2262

Upon the *Motion of Station Casinos, Inc. for Authorization To Enter Into Insurance Premium Finance Agreement Pursuant to 11 U.S.C §§ 105(a), 363(b) and 364(c)*, dated June 17, 2009 (the "Motion"),[1] requesting entry of an order authorizing SCI to enter into the Insurance Premium Finance Agreement and to provide adequate protection to First Insurance Funding Corp ("FIFC") as set forth in the Insurance Premium Finance Agreement; and the Court having reviewed the Motion; and all objections to the Motion having been resolved, withdrawn or overruled; and the Court having determined that the legal and factual bases set forth in the Motion and the Friel Decl. establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

    A.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby.

    B.    Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

    C.    Under the circumstances, the Court concludes that the notice given by SCI of the Motion and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Rules 2002 and 4001(b), (c) and (d) of the Federal Rules of Bankruptcy Procedure and the local rules of the Court, and that no further notice of, or hearing on, the relief sought in the Motion and the relief granted herein is necessary or required.

    D.    SCI has demonstrated sufficient cause to grant the relief requested in the Motion and set forth in this Order under sections 105(a), 363(b) and 364(c) of the Bankruptcy Code.

    E.    Based on the foregoing, and upon the record made before this Court at the hearing on the Motion, and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Motion.

#4838-4563-2262    -2-

1. The Motion is granted and each objection thereto which has not been consensually resolved or withdrawn is overruled.  SCI is hereby authorized to enter into the Insurance Premium Finance Agreement.

2. The provisions of the Insurance Premium Finance Agreement that provide FIFC with adequate protection of its interest are hereby approved.

3. SCI is authorized and directed to timely make all payments due under the Insurance Premium Finance Agreement and FIFC is authorized to receive and apply such payments to the indebtedness owed by SCI to FIFC as provided in the Insurance Premium Finance Agreement.

4. If SCI does not make any of the payments due FIFC under the Insurance Premium Finance Agreement as they become due, the automatic stay shall automatically lift to enable FIFC and or/third parties, including insurance companies providing the protection under the Policies, to take all steps necessary and appropriate to cancel the Policies, collect the collateral and apply such collateral to the indebtedness owed to FIFC by SCI.

5. FIFC, or any third party, including insurance companies providing the coverage under the Policies, exercising such rights shall comply with the notice provisions and other provisions of the Insurance Premium Finance Agreement.

6. This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order or the Insurance Premium Finance Agreement.

///
///
///
///
///
///
///
///

#4838-4563-2262                     -3-

1  SUBMITTED BY:

2  Paul S. Aronzon (CA State Bar No. 88781)
   Thomas R. Kreller (CA State Bar No. 161922)
3  MILBANK, TWEED, HADLEY & McCLOY LLP
   601 South Figueroa Street, 30th Floor
4  Los Angeles, California 90017
5
   Reorganization Counsel for
6  Debtors and Debtors in Possession

7  Bruce T. Beesley (NV SBN 1164)
   Laury Macauley (NV SBN 11413)
8  LEWIS AND ROCA LLP
   50 West Liberty Street, Suite 410
9  Reno, Nevada 89501
10 bbeesley@lrlaw.com; lmacauley@lrlaw.com

11 Local Reorganization Counsel for
   Debtors and Debtors in Possession
12

13                                    # # #

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#4838-4563-2262                       -4-