# Exhibit C

# Exhibit C

# LIQUIDATION ANALYSIS

### 1. Best Interests Test

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired allowed claim or interest either: (i) accept the plan of reorganization; or (ii) receive or retain under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the applicable debtor were liquidated under chapter 7 of the Bankruptcy Code on the effective date. This is referred to as the "Best Interests Test."

Because the corporate structure of the Debtors is highly complex, but also highly interrelated, and because the Debtors are not proposing the substantive consolidation of their estates, the "Best Interests Test" has been applied to each of the 18 affiliated Debtors (and the claims and interests thereof) using two separate analytical frameworks: (i) one with respect to SCI, the Parent Debtors (FCP Holding, Inc., Fertitta Partners, LLC, FCP Voteco LLC) and the Other Opco Debtors (Northern NV Acquisition, LLC, Tropicana Station, LLC, River Central, LLC and Reno Land Holdings, LLC); and (ii) one with respect to Propco and the Mezzco Debtors (the "Propco/Mezzco Liquidation Analysis"), as illustrated below:

**Chart I: Debtors' Corporate Structure**



1

### 2. Best Interests Test as Applied to SCI and the Parent Debtors

SCI is the Debtor that owns, directly or indirectly, the fourteen gaming properties and other assets that are generally referred to as the "Opco Assets" and which the Plan proposes to sell as a going concern pursuant to an auction and sale process. Among the interests and assets that will be included in the auction and sale of the Opco Assets will be SCI's interests in, or the assets of, the Other Opco Debtors, and, accordingly, the Other Opco Debtors are included in the Best Interest of Creditors analysis with respect to SCI.

The sale process for the Opco Assets will run contemporaneously with the solicitation of votes on the Plan, and the auction will occur shortly before the Confirmation Hearing Date, but sufficiently in advance of the Confirmation Hearing Date so that the terms of the proposed sale to the highest bidder will be known and available to all holders of impaired claims under the Plan. The approval by the Court of any sale of the Opco Assets will be contingent upon, and occur in conjunction with, confirmation of the Plan. Under the Plan and the Bidding Procedures, the Opco Assets will be sold as a going concern to the highest bidder, with the net proceeds of that sale distributed to holders of claims and interests in accordance with their respective priorities, and only after approval of the sale by the Court.

SCI and the Other Opco Debtors believe that their creditors will receive at least as much, and likely significantly more, under the Plan as they would receive in a chapter 7 liquidation of the Opco Assets for the following reasons, among others: (i) the substantial delay that would be incurred in connection with the appointment of a chapter 7 trustee and the time required for the trustee and his or her professionals to fully understand the Debtors' situation; (ii) the fees payable to a chapter 7 trustee and newly appointed estate professionals; and (iii) the likely discounts that would be realized in one or more chapter 7 auctions of the Opco Assets.

SCI and the Other Opco Debtors believe that, in any sale of the Opco Assets (whether as a going concern or as part of a chapter 7 liquidation, any and all proceeds from such sale will be exhausted through distributions on account of the Prepetition Opco Secured Claims (in partial satisfaction of the valid and perfected first priority liens on substantially all of the Opco Assets and in partial satisfaction of the Superpriority Claims and replacement liens arising under the Opco Cash Collateral Order) and to administrative and other priority claimants, leaving no proceeds available for distributions to unsecured creditors under either scenario. Although SCI does have certain miscellaneous assets that are not encumbered by perfected liens granted under the Prepetition Opco Credit Agreement, the Debtors believe that any proceeds realized from those assets will be exhausted through distributions on account of the Superpriority Claims and replacement liens, Administrative Claims and/or other Claims having priority over general unsecured claims that might otherwise receive any such proceeds.

If the Stalking Horse Bid is the Successful Bid, there will be no distributions under the Plan to any of the Classes of creditors holding unsecured claims against SCI or the Other Opco Debtors. If, on the other hand, the auction results in a Successful Bid that yields proceeds sufficient to satisfy all senior, administrative and priority claims in full and is also sufficient to provide some recovery for general unsecured claims, the Plan will be modified to reflect that result and the Debtors will provide such supplemental disclosure as the Court requires.

The Equity Interests of SCI (Class S.9) are collectively held by, and are the only assets of, the Parent Debtors. All recoveries received by the claims and interests of, respectively, FCP VoteCo, LLC, Fertitta Partners, LLC and FCP Holding, Inc. are therefore derivative of the recovery received by Class S.9 pursuant to the sale of the Opco Assets described above. At the present time and based upon the value that would be delivered to the Debtors under the Stalking Horse Bid, SCI does not expect that Class S.9, the Parent Debtors or any claims and interests against the Parent Debtors will receive any recovery – either as a result of the proposed sale of the Opco Assets or in a hypothetical chapter 7 liquidation of SCI (which would, by its very nature, be longer, more costly and less likely to generate maximum sale proceed than the proposed sale).

3.  **The Propco/Mezzco Liquidation Analysis**

With respect to Propco and the Mezzco Debtors, the Debtors have shown compliance with Section 1129(a)(7) of the Bankruptcy Code by estimating a range of proceeds that would be generated from a chapter 7 liquidation of Propco and the Mezzco Debtors. Lazard, the Debtors' financial advisor, assisted the Debtors in the development of the Propco/Mezzco Liquidation Analysis, which represents their best estimates of a liquidation scenario.

THE PROPCO/MEZZCO LIQUIDATION ANALYSIS IS AN ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF A HYPOTHETICAL CHAPTER 7 LIQUIDATION OF PROPCO. Underlying the Propco/Mezzco Liquidation Analysis are a number of estimates and assumptions that are inherently subject to significant economic, competitive and operational uncertainties and contingencies beyond the control of the Debtors or a hypothetical chapter 7 trustee. In addition, various liquidation decisions upon which certain assumptions are based are subject to change. Therefore, there can be no assurance that the assumptions and estimates employed in determining the liquidation values of Propco's assets will result in an accurate estimate of the proceeds that would be realized were Propco to undergo an actual liquidation. The actual amounts of claims against the estate of Propco and the Mezzco Debtors could vary significantly from the estimate set forth herein, depending on the claims asserted during the pendency of the hypothetical chapter 7 cases. Accordingly, the actual liquidation value of Propco and the Mezzco Debtors is speculative in nature and could vary materially from the estimates provided herein. Neither the Debtors nor Lazard provide any assurance of the accuracy of the recoveries contained therein.

a.  **General Approach**

The Propco/Mezzco Liquidation Analysis assumes a hypothetical chapter 7 petition filed by Propco on June 30, 2010 (the "Chapter 7 Petition Date"), whereupon the Bankruptcy Court would appoint one chapter 7 trustee (the "Trustee") to oversee the liquidation of the Propco and Mezzco Debtors' estates. Should multiple Trustees be appointed to administer the Propco and Mezzco Debtors' estates, lower recoveries and higher administrative costs could result and distributions to creditors could be delayed.

The first step of the Propco/Mezzco Liquidation Analysis is to determine the dollar amount that would be generated from a hypothetical chapter 7 liquidation of each of the four Propco properties – Palace Station Hotel & Casino, Boulder Station Hotel & Casino, Sunset Station Hotel & Casino and Red Rock Casino Resort Spa. In such a hypothetical liquidation scenario, the Trustee would be required to either: (i) sell Propco Properties as going concerns; or (ii) shut down the Propco Properties and sell their individual assets. The gross amount of cash available from liquidation of the Propco Properties would be equal to: (i) all excess cash held by the Propco Properties at the time of the commencement of the hypothetical chapter 7 cases; (ii) cash generated by the Propco Properties during the liquidation period; and (iii) the sum of the proceeds from the disposition of the Propco Properties (the "Liquidation Proceeds").

The next step is to reduce the Liquidation Proceeds by: (i) the costs and expenses of the liquidation; (ii) the additional administrative expenses and priority claims that may result from the termination of Propco's business; and (iii) the amount of any claims secured by the Propco Properties. Any net cash would be allocated to the claims and interests against Propco in strict priority in accordance with section 726 of the Bankruptcy Code.

Finally, the Propco/Mezzco Liquidation Analysis compares the value received in a liquidation to the value provided under the Plan.

3

### b. Key Analytical Assumptions

The Propco/Mezzco Liquidation Analysis assumes that Propco will have access to cash collateral over the course of a hypothetical chapter 7 case. Other key assumptions include:

(a) <u>Timing and Expenses</u> – The Propco/Mezzco Liquidation Analysis assumes an orderly and expedited wind-down of the business to maximize recovery values. It assumes that the liquidation of Propco's estate would take approximately twelve (12) months and incur twelve (12) months of wind-down expenses (*e.g.*, trustee fees, shutdown costs, cash needed for/during the Propco Properties' sales processes). This reflects an estimate of the time required to dispose of the Propco Properties, allow a buyer of the Propco Properties to become licensed and generally wind down the affairs of Propco's estate.

(b) <u>Disposition of Propco Properties</u> – The Propco/Mezzco Liquidation Analysis assumes that the Propco Properties will have their greatest potential recovery value if liquidated for the purposes of continuing to operate as gaming establishments. The Debtors' management believes that alternative uses for the Propco Properties would not generate a significant recovery value for stakeholders.

It should be noted that management cannot judge with any degree of certainty the impact of: (i) a forced liquidation on the recoverable value of the Propco Properties; and (ii) the impact, in a hypothetical liquidation, that potential disputes between creditors of Opco and Propco with respect to title and interest in certain assets may have with respect to the recoverable value of the Propco Properties.

(c) <u>Going-Concern Liquidation</u> – To estimate the approximate liquidation range of value for the Propco Properties, a comparable company trading multiples analysis was used. This analysis is based on the enterprise values of publicly traded companies that have operating and financial characteristics similar to Propco. A reduction to the value derived under this analysis was then made to reflect the forced sale nature of a chapter 7 liquidation. This reduction was derived by considering such factors as the shortened time period involved in the sale process, discounts buyers would require given a shorter due diligence period and therefore potentially higher risks buyers might assume, potentially negative perceptions involved in liquidation sales and the "bargain hunting" mentality of liquidation sales. This estimated liquidation value for the Propco Properties, along with certain values based on the unaudited book values from the Debtors' preliminary and unaudited balance sheet as of March 31, 2010, was used to determine distributable value to Propco stakeholders.

The Propco/Mezzco Liquidation Analysis assumes that, in a hypothetical liquidation, no disputes occur between creditors of Opco and Propco with respect to title and interest in certain overlapping assets of Opco and Propco associated with the Propco Properties. To the extent that such disputes arise, the recoverable value of the Propco Properties may be materially lower than those that have been assumed herein.

The Propco/Mezzco Liquidation Analysis assumes that the Trustee will assume and assign to the purchaser of the Propco Properties all executory contracts and unexpired leases related to the ongoing operations of the Propco Properties. The Propco/Mezzco Liquidation Analysis also assumes that the existing staff currently working at each Propco Property will remain and maintain employment at the time of the hypothetical sale. Because those employees are employees of SCI or its subsidiaries, however, there can be no assurance that such employment arrangements could be maintained. If the cash flows from the Propco Properties are not sufficient to fund the ongoing operations during this period, the Trustee may have to lower expectations related to potential recovery value for the Propco Properties and further reduce the recovery estimates contained in the Propco/Mezzco Liquidation Analysis. Potential regulatory intervention from gaming authorities would also impose additional uncertainties on the Trustee's ability to generate value from the Propco Properties.

The Propco/Mezzco Liquidation Analysis assumes that the estimated sale proceeds for the Propco Properties would be less than the tax basis of the assets and would not generate any additional tax liabilities. Should the tax treatment and impact of this transaction result in a tax liability that is not reduced by other tax shields, recovery percentages in the Propco/Mezzco Liquidation Analysis could change materially.

Finally, it is assumed that cash flows (i.e., EBITDA, net of maintenance capital expenditures) from operation of the Propco Properties during the liquidation period would remain positive and total approximately $150 million during the wind-down period.

(d)     <u>Factors Considered in Valuing Hypothetical Liquidation Proceeds</u> – Other factors may limit the amount of Liquidation Proceeds available to holders of claims and interests against Propco. Certain of these factors that relate specifically to the liquidation of the assets are discussed in further detail below. In addition, it is possible that distribution of the Liquidation Proceeds would be delayed while the Trustee and his or her professionals become knowledgeable about the Chapter 11 Cases and Propco's businesses and operations. This delay could materially reduce the value, on a "present value" basis, of the Liquidation Proceeds.

(e)     <u>Certain Assets Assumed To Have No Value in Liquidation</u> – The Propco/Mezzco Liquidation Analysis assumes that the Master Lease Rejection Claim (and any potential recoveries to Propco in respect of the Master Lease Rejection Claim) has no value in a hypothetical liquidation.

(f)     <u>Exclusion of Certain Administrative and Priority Claims</u> – For simplicity, the Debtors have excluded certain Administrative Claims and Priority Claims from the Propco/Mezzco Liquidation Analysis. Among the Administrative Claims entitled to administrative expense priority under section 503 of the Bankruptcy Code that have been excluded are: (i) post-petition payables; and (ii) section 503(b)(9) claims of vendors for the value of any goods received by Propco in the ordinary course of business within twenty (20) days before the Petition Date. The Debtors have also excluded Priority Claims entitled to priority under section 507 of the Bankruptcy Code. Had such Administrative Claims and Priority Claims been included in the Propco/Mezzco Liquidation Analysis, the recovery percentages would likely be materially lower.

More specific assumptions are discussed in each of the various notes to the Propco/Mezzco Liquidation Analysis.

The tables below summarize the recovery estimates based on the estimated Liquidation Proceeds. The Propco/Mezzco Liquidation Analysis sets forth an allocation of the Liquidation Proceeds to Creditors in accordance with the priorities set forth in section 726 of the Bankruptcy Code. The Propco/Mezzco Liquidation Analysis provides for high and low recovery percentages for Claims upon the Trustee's application of the Liquidation Proceeds. The high and low recovery ranges reflect a high and low range of estimated Liquidation Proceeds from the Trustee's sale of the assets.

As illustrated by the Propco/Mezzco Liquidation Analysis, the Debtors estimate that pre-petition creditors of Propco will recover more value from confirmation of the proposed Plan than through an orderly liquidation and sale process.

5

**Table I: Assets Available for Distribution**

| ($ in 000's) | Notes | Reorganization Value Low | Reorganization Value High | Liquidation Discount Low | Liquidation Discount High | Hypothetical Liquidation Values Low | Hypothetical Liquidation Values High |
|---|---|---|---|---|---|---|---|
| **Hypothetical PropCo Liquidation Value** | A | $1,239,750 | $1,405,050 | 75% | 75% | $929,813 | $1,053,788 |
| **Cash and Cash Equivalents** | B | $250,000 | $250,000 | 100% | 100% | $250,000 | $250,000 |
| Other Assets: | C | | | | | | |
| Goodwill | | - | - | 0% | 0% | - | - |
| Intangible Assets, net | | - | - | 0% | 0% | - | - |
| **Total Other Assets** | | **-** | **-** | | | **-** | **-** |
| **Total Liquidation Proceeds Available for Distribution** | | | | | | **$1,179,813** | **$1,303,788** |

**Table II: Estimated Chapter 7 Expenses**

| ($ in 000's) | Notes | Estimated Balance / Claim | Estimated Creditor Recovery Percentage Low | Estimated Creditor Recovery Percentage High | Hypothetical Creditor Recovery Values Low | Hypothetical Creditor Recovery Values High |
|---|---|---|---|---|---|---|
| **Chapter 7 Expenses** | D | | | | | |
| Chapter 7 Trustee Fees (3% of Liquidation Proceeds) | | | | | $35,394 | $39,114 |
| Chapter 7 Professional Fees & Costs ($3 million/month; 12 months) | | 36,000 | 100% | 100% | 36,000 | 36,000 |
| **Total Chapter 7 Expenses** | | **$36,000** | | | **$71,394** | **$75,114** |
| **Net Proceeds after Chapter 7 Administrative Claims** | | | | | **$1,108,418** | **$1,228,674** |

6

**Table III: Estimated Creditor Recoveries**

| ($ in 000's) | Notes | Estimated PropCo Claims | | Estimated Creditor Recovery Percentage | | Hypothetical Creditor Recovery Values | |
|---|---|---|---|---|---|---|---|
| | | Low | High | Low | High | Low | High |
| **Administrative Claims (Corporate Overhead During Wind Down)** | E | $10,000 | $20,000 | *100.0%* | *100.0%* | $10,000 | $20,000 |
| **P.1 Other Secured Claims** | F | - | - | *NA* | *NA* | - | - |
| **P.2 Prepetition Mortgage Loan Claims** | G | $1,801,272 | $1,801,272 | *61.0%* | *67.1%* | 1,098,418 | 1,208,674 |
| **P.3 General Unsecured Claims** | H | $144,003 | $144,003 | *0.0%* | *0.0%* | - | - |
| **P.4 Intercompany Claims** | H | $8,805 | $8,805 | *0.0%* | *0.0%* | - | - |
| **Total PropCo Claims (Excl. Equity)** | | $1,964,079 | $1,974,079 | *56.4%* | *62.2%* | 1,108,418 | 1,228,674 |
| **P. 5 Equity Interests** | | | | | | - | - |

### c. Recovery of Claims and Interests Against the Mezzco Debtors

As discussed above, in connection with the 2007 Going Private Transaction, in November 2007, Propco entered into the CMBS Loan. Pursuant to the CMBS Loan structure, the Debtors formed the Mezzco Debtors. As shown in Chart I above, the corporate structure of the Mezzco Debtors is "nested" so that, for example, Mezzco I holds 100% of the equity interests of Propco, Mezzco II holds 100% of the equity interests of Mezzco I, Mezzco III holds 100% of the equity interests of Mezzco II, etc.

In addition, pursuant to the security documentation associated with the CMBS Loan: (i) all Propco Equity Interests were pledged to holders of Mezz I Loan Claims; (ii) all Mezzco I Equity Interests were pledged to holders of Mezz II Loan Claims; (iii) all Mezzco II Equity Interests were pledged to holders of Mezz III Loan Claims; and (iv) all Mezzco III Equity Interests were pledged to holders of Mezz IV Loan Claims.

As a result of these arrangements, and because each Mezzco Debtor has no tangible or intangible assets other than its equity interest in its respective mezzanine subsidiary, the recovery of each claim and interest of each Mezzco Debtor is derivative of the value of that Mezzco Debtor's equity interest in its respective mezzanine subsidiary. Each such value is, through structural subordination, ultimately derivative of the estimated recovery to Propco Equity Interests. Since Propco Equity Interests (pursuant to the Propco/Mezzco Liquidation Analysis described above) are expected to receive no recovery in a hypothetical liquidation, it follows that all claims and interests of each Mezzco Debtor will receive no recovery in a hypothetical liquidation.

8

**Notes to the Propco/Mezzco Liquidation Analysis**

  A.  **Hypothetical Propco Liquidation Value**

    With respect to the Propco Properties, the Propco/Mezzco Liquidation Analysis assumes that such assets are sold as continuing operations with a normal level of working capital. Therefore, the recovery percentage related to these assets is based on the estimated range of value that may be obtained in a going concern sale transaction, less an assumed forced sale discount of 25%. Lazard believes that this assumption represents a reasonable estimate of the discount that would be applicable to the Propco Properties in a forced sale environment and is within the range of similar forced-sale discounts used in liquidation analyses performed in other recent gaming sector bankruptcies. The Propco/Mezzco Liquidation Analysis assumes that the normalized working capital level is purchased by the buyer(s) of the Propco Properties.

  B.  **Cash**

    Cash and Cash Equivalents represent the Debtors' best estimate of existing cash (i.e., cash held by Propco on its own balance sheet or cash in which Propco has a security interest) as of the Chapter 7 Petition Date, less amounts estimated as required to run the Propco Properties (i.e., minimum cash required by the Nevada Gaming Control Board and minimum cash required to meet the minimum operating requirements of the Propco Properties). The Propco/Mezzco Liquidation Analysis identifies the potential "excess" cash above the operating requirements of the Propco Properties as recoverable (approximately $100 million). All other Cash and Cash Equivalents ($45 million) are assumed to be purchased by the buyer(s) of the Propco Properties.

    In addition, the Propco/Mezzco Liquidation Analysis assumes that cash flows (i.e., EBITDA, net of maintenance capital expenditures) from the operation of the Propco Properties during the 12-month liquidation period will total approximately $150 million, resulting in a total estimated distributable cash balance of $250 million.

  C.  **Other Assets**

    Other Assets are comprised of goodwill and intangibles. Goodwill and intangible assets would have no specific recovery in the Propco/Mezzco Liquidation Analysis other than the estimated recovery based on the proposed sale of the Propco Properties as going concerns.

  D.  **Estimated Chapter 7 Expenses**

    Detail regarding the costs of the wind-down is set forth below. Wind-down costs consist of the regularly occurring general and administrative costs required to operate the Debtors' assets during the liquidation process, and the costs of any professionals the Trustee employs to assist with the liquidation process, including investment bankers, attorneys and other advisors. Total fees for such professionals have been estimated at $3 million per month for the duration of the wind-down period. Lazard believes that this assumption is a reasonable one and may in fact be conservative in light of the fact that professional fees incurred by the Debtors in these cases have ranged approximately between $4 million and $7 million per month since the Petition Date.

Trustee fees necessary to facilitate the sale of the Propco Properties were assumed at the rate of 3% of available Liquidation Proceeds. These fees would be used for developing marketing materials and facilitating the solicitation process for the parties, in addition to general administration expenses, including the Trustee's compensation.

Given the complexity and nature of the Debtors' Estates, the Propco/Mezzco Liquidation Analysis assumes a twelve-month liquidation process to sell assets, allowing the buyer(s) of the Propco Properties to become licensed and allow the Debtors to otherwise settle claims and wind down the accounting and tax affairs of the Estates. This estimate also takes into account the time that will be required for the Trustee and any professionals to become educated with respect to the Debtors' businesses and the Chapter 11 Cases.

### E. Administrative Expenses (Corporate Overhead During Wind Down)

The Propco/Mezzco Liquidation Analysis assumes a gradual decline in corporate overhead during the wind-down period, with total corporate overhead during the wind-down period estimated at $10 to 20 million. Lazard believes that this assumed overhead range is reasonable based on the estimated corporate overhead that would be expected to be incurred by comparable gaming companies with operations of similar size as the Propco Properties.

### F. Other Secured Claims

Other Secured Claims include any hypothetical secured claim (other than Prepetition Mortgage Loan Claims). SCI and its advisors estimate that Other Secured Claims associated with the Propco Properties are *de minimis* and, for purposes of the Propco/Mezzco Liquidation Analysis, have been assumed to be $0.

### G. Prepetition Mortgage Loan Claims

The balance of Prepetition Mortgage Loan Claims was determined pursuant to a claims stipulation between the CMBS Lenders, the Debtors and various other parties dated as of January 21, 2010 [Docket No. 908].

### H. General Unsecured Claims and Intercompany Claims

General Unsecured Claims and Intercompany Claims reflect the claims in those classes that have been filed and scheduled with respect to Propco. In the event that non-debtor entities affiliated with SCI would need to file for bankruptcy in order to effectuate the practical sale of the Propco Properties as going concerns, the amount of such claims may well be higher (and, if so, would further dilute the recoveries for those classes that are reflected herein).