VAN C. DURRER II (*ADMITTED PRO HAC VICE*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
300 S. Grand Ave., Ste. 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
van.durrer@skadden.com

JANET CHUBB (NEVADA STATE BAR #176)
JONES VARGAS, LLP
100 West Liberty Street, Twelfth Floor
Reno, NV  89594
Telephone: (775) 786-5000
Facsimile: (775) 786-1177
jlc@jonesvargas.com

Counsel to Dr. James E. Nave

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>STATION CASINOS, INC.<br>☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects Station Casinos, Inc.<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC | Chapter 11<br><br>Case No. BK-09-52477-GWZ<br>Jointly Administered<br><br>**Status Report of Dr. James E. Nave, Independent Director, Regarding Compliance with Auction Procedures and Resulting Bids with respect to the Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries [Docket No. 1554]**<br><br>Hearing Date: August 6, 2010<br>Hearing Time: 10:00 a.m.<br>Place:  300 Booth Street<br>          Reno, NV 89509 |

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Dr. James E. Nave ("**Dr. Nave**"), the independent director of Station Casinos, Inc. ("**SCI**"), along with SCI and certain of its debtor subsidiaries (together with SCI, the "**Opco Debtors**") by and through Dr. Nave's undersigned counsel, hereby files this status report on the auction process and resulting bids (the "**Status Report**") with respect to the Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries, entered on June 4, 2010 [Docket No. 1563] (the "**Bidding Procedures Order**"),[1] and the final version of the bidding procedures approved thereby [Docket No. 1554] (the "**Bidding Procedures**"). In further support of this Status Report, Dr. Nave has also contemporaneously filed the Declaration of Daniel Aronson in Support of Status Report of Dr. James E. Nave, Independent Director, Regarding Compliance with Auction Procedures and Resulting Bids with respect to the Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries (the "**Aronson Declaration**").

This Status Report explains the process by which the Opco Debtors, under the direction of Dr. Nave and in consultation with the Consultation Parties (as appropriate), have sought and received bids in accordance with the terms of the Bidding Procedures Order. The Bidding Procedures set forth in detail the assets to be sold at the Auction (the "**Opco Assets**") and the process by which bids were to have been solicited and evaluated.

As of the deadline contemplated by the Bidding Procedures Order, only the Stalking Horse Bid[2] is before the Court as a Qualified Bid submitted in accordance with the procedures

---

[1] Capitalized terms used but not defined herein have the meanings set forth in the Bidding Procedures.

[2] Pursuant to the Bidding Procedures, as approved by the Court, the Stalking Horse Bidder was deemed a Qualified Bidder and the Stalking Horse Bid was deemed to be a Qualified Bid.

2

approved by the Court in the Bidding Procedures Order. Additionally, two (2) letters of intent have been submitted, as will be discussed below.

The Stalking Horse Bid was filed with the Court at Docket 1526. Under the terms of the Bidding Procedures Order, the Stalking Horse Bidder is the only Qualified Bidder that may participate in the Auction. As noted above, however, two (2) parties submitted letters of intent to purchase selected assets (the "**Non-Conforming Bids**"). This Status Report updates the Court as to the status of the bidding prior to the Auction to be conducted on August 6, 2010 and provides recommendations with respect to the conduct of the Auction.

**Auction Progress**

1.  **Solicitation of Potential Bidders:** After the Court's entry of the Bidding Procedures Order, the Opco Debtors and their advisors including Lazard Frères & Co. LLC ("**Lazard**"), acting under the direction of Dr. Nave and in consultation with the Consultation Parties, conducted a comprehensive 60-day marketing process to solicit alternative proposals to the Stalking Horse Bid to produce the highest and best bid for the Opco Assets. During this period, Lazard contacted seventy-nine (79) potential bidders, thirty-nine (39) of which expressed preliminary interest in participating in the Auction process. (Aronson Decl. ¶ 10.) The initial contacts included the following types of potential purchasers identified by Lazard: strategic bidders, financial bidders, and persons who had contacted either SCI or Lazard. Id.

2.  **Public Notice of Auction and Bidding Procedures:** In addition to the direct marketing efforts of Lazard, on June 9, 2010 or June 10, 2010, notice of the Auction and the Bidding Procedures Order was published once, in each of the Las Vegas Review-Journal, the Wall Street Journal, and the Financial Times. The Debtors filed proof of such publication on June 21, 2010. [Docket No. 1676, 1677 and 1678]. Such publication and notice satisfied the requirements of the Bidding Procedures Order.

3

3. **Confidentiality Agreements:** The Bidding Procedures require that any parties interested in submitting bids for all or any portion of the Opco Assets execute and deliver to Dr. Nave and the Consultation Parties a Confidentiality Agreement before being permitted to engage in any due diligence with respect to the Opco Assets. Lazard prepared and circulated draft Confidentiality Agreements among Dr. Nave, the Consultation Parties and their respective advisors for review and comment. (Aronson Decl. ¶ 11.) Final versions of the Confidentiality Agreements were offered to parties expressing interest in the Opco Assets. To the extent that potential bidders requested modifications to the form of Confidentiality Agreement, the Opco Debtors, under the direction of Dr. Nave were able to accommodate or reach agreement on such modifications in every case. Id. Thirty-nine (39) parties expressed a preliminary interest in participating in the Auction, and twenty-six (26) parties executed and delivered Confidentiality Agreements. Id.

4. **Preliminary Due Diligence:** Lazard developed a package of preliminary due diligence information, which included access to a "Phase 1 Data Room," which included informational materials describing the OpCo Assets and various other financial and legal information that Lazard felt would allow bidders to put forth thoughtful LOIs (defined below). The package was prepared with particular sensitivity to the concerns of SCI and other interested parties that competitive information not be shared prematurely with parties whose interest in acquiring the Opco Assets might not be genuine, while still providing sufficient information such that Potential Bidders could determine whether or not they wished to proceed with the Auction process. Parties who executed and delivered Confidentiality Agreements were provided with preliminary due diligence information.[3] (Aronson Decl. ¶ 12.)

5. **Letters of Intent:** In addition to having to enter into a Confidentiality Agreement, in order to have access to additional comprehensive due diligence, the Bidding Procedures required that any Potential Bidder submit a preliminary (non-binding) written proposal letter of intent ("**LOI**") by June 30, 2010 containing (1) the identification of the specific Assets the Potential

---

[3] Because one of the parties to submit a Non-Conforming Bid did not do so until July 30, 2010, that party was not provided with the preliminary due diligence information.

4

Bidder seeks to acquire; (2) the purchase price range for such specific Assets; (3) any material assets and liabilities expected to be excluded; (4) the structure and financing of the proposed sale; (5) any anticipated third-party approvals necessary for completion of the Sale; and (6) the anticipated time frame and any anticipated impediments to accomplishing each aspect of consummating a Sale of the Opco Assets. Potential Bidders were also required to deliver current audited financial statements and latest unaudited financial statements demonstrating an ability to consummate a Sale of the Assets proposed to be purchased by such party. The Opco Debtors received eight (8) LOIs by the applicable deadline. (Aronson Decl. ¶ 13.) None of those LOIs were submitted by either party submitting a Non-Conforming Bid. (Aronson Decl. ¶ 18.)

6. **Qualified Bidders:** The Opco Debtors, under Dr. Nave's direction and in consultation with the Consultation Parties, determined that seven (7) of the parties who submitted LOIs satisfied all the requirements necessary to be Qualified Bidders.[4] With respect to one party, the Opco Debtors, under Dr. Nave's direction and in consultation with the Consultation Parties, based on advice from Lazard, determined that the LOI submitted did not qualify with respect to the financing of the proposed sale because it remained uncertain at the time the LOI was submitted. (Aronson Decl. ¶ 13.) In that case, the Opco Debtors, under Dr. Nave's direction and in consultation with the Consultation Parties, required that Lazard communicate to such party that its LOI did not comply with the Bidding Procedures with respect to the financing of the proposed sale. Lazard did communicate this message to such party, and further dialogue ensued, but Lazard was unable to arrive at any greater comfort with respect to the financing issue. Id. In accordance with the Bidding Procedures Order, the Opco Debtors timely informed all parties that submitted LOIs if they were deemed to be Qualified Bidders.

7. **Nature of Bidders**: Other than the Stalking Horse Bidder, only one Qualified Bidder submitted a LOI purporting to seek to purchase substantially all of the Opco Assets: Boyd Gaming Corporation ("**Boyd Gaming**"). The other six Qualified Bidders submitted LOIs seeking

---

[4] The Stalking Horse Bidder was determined to be a Qualified Bidder pursuant to the terms of the Bidding Procedures Order, and so there are a total of six (6) Qualified Bidders.

5

to purchase selected assets (collectively, the "**Selected Asset Bidders**"). Because the Selected Asset Bidders did not seek to purchase assets that could easily be combined to form a Joint Bid for substantially all of the Opco Assets, both Boyd Gaming and the Stalking Horse Bidder were contacted to determine if either or both would have any interest in forming a bidding group with some or all of the Selected Asset Bidders. (Aronson Decl. ¶ 13.) It is Lazard's understanding that certain of the Selected Asset Bidders followed up with Boyd Gaming. Id.

8. **Diligence and Data Room Use:** Qualified Bidders were given access to an electronic data room that contained 115 documents (representing over 4,600 pages of confidential due diligence information). (Aronson Decl. ¶ 14.) Additionally, bidders that signed confidentiality agreements were offered the opportunity to conduct property tours and hold meetings with SCI management in order to review recent operating performance and answer detailed questions about the business. In particular, Boyd Gaming conducted multiple due diligence meetings with SCI management and the Debtors' advisors. In situations where bidders requested the opportunity to meet with third parties with whom the Opco Debtors have contractual relationships (particularly with respect to gaming assets that are merely under construction or are the subject of long-range future construction plans), Lazard worked with SCI management to facilitate such interaction, but could not, in every case, guarantee that such third parties would agree to such meetings. In every case, however, Lazard has confirmed that no Qualified Bidder had any outstanding diligence request for which Lazard had not provided a response. (Aronson Decl. ¶ 14.)

9. **Qualified Bids:** The Bid Deadline with respect to all Qualified Bids passed on July 30, 2010 at 4:00 p.m. (Pacific Time), by which time no Qualified Bidder submitted a Qualified Bid for all or substantially all of the Opco Assets, leaving the Stalking Horse Bid as the only Qualified Bid to seek such a transaction. (Aronson Decl. ¶ 18.) The Non-Conforming Bids were not submitted in compliance with the Bidding Procedures because, among other reasons, they were not submitted by parties who submitted timely LOIs, and are not considered Qualified Bids. (Aronson Decl. ¶ 18.)

6

10. **Recommendation and Request for Approval:** On the basis of the foregoing, and after consulting with Lazard, his counsel at Skadden, Arps, Slate, Meagher & Flom LLP, the management of SCI, and the Consultation Parties, Dr. Nave is of the opinion that the Stalking Horse Bid is the highest and best bid for the Opco Assets to date. Additionally, based on current information available to Dr. Nave and his advisors, Dr. Nave is unable to recommend further action with respect to the Non-Conforming Bids and believes that it would not be in the best interests of the Debtors to terminate the sale process or extend the deadlines set forth in the Bidding Procedures.. At the Auction, the Non-Conforming Bids may be improved, modified, or, with the consent of the Stalking Horse Bidder, be combined with the Stalking Horse Bid, such that Dr. Nave's recommendation with respect to the Non-Conforming Bids may change. Assuming that the Non-Conforming Bids are not improved or modified to such an extent, then Dr. Nave recommends that the Court (1) accept the Stalking Horse Bid as the Successful Bid, (2) reject the Non-Conforming Bids, and (3) formally close the Auction pending the outcome of the Sale Hearing and confirmation of the Debtors' reorganization plan, consistent with the proposed form of order attached to this Status Report as <u>Exhibit A</u>.

Dated: August 4, 2010

Respectfully submitted,

By: *[signature]*

VAN C. DURRER II (ADMITTED PRO HAC VICE)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
300 S. Grand Ave., Ste. 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
van.durrer@skadden.com

JANET CHUBB (NEVADA STATE BAR #176)
JONES VARGAS, LLP
100 West Liberty Street, Twelfth Floor
Reno, NV 89594
Telephone: (775) 786-5000
Facsimile: (775) 786-1177
jlc@jonesvargas.com

Counsel to Dr. James E. Nave

7

599042.16-Los Angeles Server 1A - MSW

# EXHIBIT A

| | |
|---|---|
| VAN C. DURRER II (*ADMITTED PRO HAC VICE*)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>300 S. Grand Ave., Ste. 3400<br>Los Angeles, CA 90071<br>Telephone: (213) 687-5000<br>Facsimile: (213) 687-5600<br>van.durrer@skadden.com | JANET CHUBB (NEVADA STATE BAR #176)<br>JONES VARGAS, LLP<br>100 West Liberty Street, Twelfth Floor<br>Reno, NV 89594<br>Telephone: (775) 786-5000<br>Facsimile: (775) 786-1177<br>jlc@jonesvargas.com |

Counsel to Dr. James E. Nave

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>STATION CASINOS, INC.<br><br>☐ Affects this Debtor<br>☒ Affects all Debtors<br>☐ Affects Reno Land Holdings, LLC<br>☐ Affects River Central, LLC<br>☐ Affects Tropicana Station, LLC<br>☐ Affects FCP Holding, Inc.<br>☐ Affects FCP Voteco, LLC<br>☐ Affects Fertitta Partners LLC<br>☐ Affects Station Casinos, Inc.<br>☐ Affects FCP MezzCo Parent, LLC<br>☐ Affects FCP MezzCo Parent Sub, LLC<br>☐ Affects FCP MezzCo Borrower VII, LLC<br>☐ Affects FCP MezzCo Borrower VI, LLC<br>☐ Affects FCP MezzCo Borrower V, LLC<br>☐ Affects FCP MezzCo Borrower IV, LLC<br>☐ Affects FCP MezzCo Borrower III, LLC<br>☐ Affects FCP MezzCo Borrower II, LLC<br>☐ Affects FCP MezzCo Borrower I, LLC<br>☐ Affects FCP PropCo, LLC | Chapter 11<br><br>Case No. BK-09-52477-GWZ<br>Jointly Administered<br><br>**Order Closing Auction and Designating Successful Bid With Respect to Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries**<br><br>Hearing Date: August 6, 2010<br>Hearing Time: 10:00 a.m.<br>Place: 300 Booth Street<br>          Reno, NV 89509 |

Upon this Court's *Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries* entered on June 4, 2010 [Docket No. 1563] (the "**Bidding Procedures Order**"),[1] and the final version of the bidding procedures approved thereby [Docket No. 1554] (the "**Bidding Procedures**"), an Auction was conducted under the supervision of this Court on August 6, 2010. Based on the *Debtors' Motion for Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries* dated April 7, 2010 [Docket No. 1175]; the *Status Report of Dr. James E. Nave, Independent Director, Regarding Compliance with Auction Procedures and Resulting Bids with respect to the Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries* dated August 4, 2010 [Docket No.    ]; the *Declaration of Daniel Aronson in Support of Status Report of Dr. James E. Nave, Independent Director, Regarding Compliance with Auction Procedures and Resulting Bids with respect to the Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries* dated August 4, 2010 [Docket No.    ]; the record of these cases and the statements made at the Auction, and after due deliberation and sufficient cause appearing therefore:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A. The solicitation of bids and the Auction were conducted in accordance with the terms of the Bidding Procedures Order and the Bidding Procedures.

B. The Stalking Horse Bid is the highest or otherwise best bid for the Opco Assets.

C. Based on the foregoing, and upon the record made before this Court at the Auction, and good and sufficient cause appearing therefore;

---

[1] Capitalized terms used but not defined herein have the meanings set forth in the *Status Report of Dr. James E. Nave, Independent Director, Regarding Compliance with Auction Procedures and Resulting Bids with respect to the Order Establishing Bidding Procedures and Deadlines Relating to Sale Process for Substantially All of the Assets of Station Casinos, Inc. and Certain "Opco" Subsidiaries* dated August 4, 2010.

1

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Auction is closed.

2. The Stalking Horse Bid is designated as the Successful Bid.

3. All other letters of intent, bids or expressions of interest for the Opco Assets are deemed rejected.

4. The hearing to approve the Successful Bid and to authorize the Sale in accordance therewith will be held before this Court in conjunction with the hearing to consider confirmation of the Joint Plan.

SUBMITTED BY:

VAN C. DURRER II (*ADMITTED PRO HAC VICE*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
300 S. Grand Ave., Ste. 3400
Los Angeles, CA 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
eric.waxman@skadden.com
van.durrer@skadden.com

JANET CHUBB (NEVADA STATE BAR #176)
JONES VARGAS, LLP
100 West Liberty Street, Twelfth Floor
Reno, NV 89594
Telephone: (775) 786-5000
Facsimile: (775) 786-1177
jlc@jonesvargas.com

Counsel to Dr. James E. Nave