James H.M. Sprayregen, P.C. (IL No. 6190206)
David R. Seligman, P.C. (IL No. 6238064)
Sarah H. Seewer (IL No. 6301437)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
james.sprayregen@kirkland.com
david.seligman@kirkland.com
sarah.seewer@kirkland.com

Reorganization Counsel
for GVR

Candace Carlyon (NV No. 002666)
James Patrick Shea (NV No. 000405)
Brandon P. Johansson (NV No. 012003)
SHEA & CARLYON, LTD.
701 Bridger Avenue, Suite 850
Las Vegas, Nevada 89101
Telephone:    (702) 471-7432
Facsimile:    (702) 471-7435
ccarlyon@sheacarlyon.com
jshea@sheacarlyon.com
bjohansson@sheacarlyon.com

Special Local Reorganization Counsel
for GVR

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

STATION CASINOS, INC., *et al.*,

    Debtors and Debtors in Possession.[1]

☒   Affects Green Valley Ranch Gaming, LLC

Chapter 11
Case No. 09-52477

Jointly Administered 09-52470 through
09-52487, 10-50381, 11-51188, 11-51190
through 11-51219, and 11-51702

**MEMORANDUM OF LAW IN SUPPORT
OF CONFIRMATION OF "FIRST
AMENDED PREPACKAGED JOINT
CHAPTER 11 PLAN OF
REORGANIZATION FOR SUBSIDIARY
DEBTORS, ALIANTE DEBTORS AND
GREEN VALLEY RANCH GAMING,
LLC (DATED MAY 24, 2011)" WITH
RESPECT TO GVR ONLY**

Hearing Date:    June 8, 2011
Hearing Time:    10:00 a.m.
Place:    300 Booth Street
    Reno, NV 89509

---

[1]   The debtors in these jointly administered chapter 11 cases are:  (i) Station Casinos, Inc.; Northern NV Acquisitions, LLC; Reno Land Holdings, LLC; River Central, LLC; Tropicana Station, LLC; FCP Holding, Inc.; FCP Voteco, LLC; Fertitta Partners LLC; FCP MezzCo Parent, LLC; FCP MezzCo Parent Sub, LLC; FCP MezzCo Borrower VII, LLC; FCP MezzCo Borrower VI, LLC; FCP MezzCo Borrower V, LLC; FCP MezzCo Borrower IV, LLC; FCP MezzCo Borrower III, LLC; FCP MezzCo Borrower II, LLC; FCP MezzCo Borrower I, LLC; and FCP PropCo, LLC (collectively, the "SCI Debtors"); (ii) Auburn Development, LLC; Boulder Station, Inc.; Centerline Holdings, LLC; Charleston Station, LLC; CV HoldCo, LLC; Durango Station, Inc.; Fiesta Station, Inc.; Fresno Land Acquisitions, LLC; Gold Rush Station, LLC; Green Valley Station, Inc.; GV Ranch Station, Inc.; Inspirada Station, LLC; Lake Mead Station, Inc.; LML Station, LLC; Magic Star Station, LLC; Palace Station Hotel & Casinos, Inc.; Past Enterprises, Inc.; Rancho Station, LLC; Santa Fe Station, LLC; SC Durango Development LLC; Sonoma Land Holdings, LLC; Station Holdings, Inc.; STN Aviation, Inc.; Sunset Station, Inc.; Texas Station, LLC; Town Center Station, LLC; Tropicana Acquisitions, LLC; Tropicana Station, Inc.; and Vista Holdings, LLC

i

1

**<u>TABLE OF CONTENTS</u>**

2

Page

3

I.    Introduction..................................................................................................................1

4

II.   Background ...................................................................................................................1

5

III.  Jurisdiction and General Background........................................................................3

6

IV.   Argument .....................................................................................................................3

7

     A.    The Plan Satisfies the Requirements of Section 1129 .........................................3

8

           1.    Section 1129(a)(1) - Compliance with Title 11 Requirements.......3

9

               a.    Sections 1122 and 1123(a)(1) - (a)(4) - Classification
10        and Treatment of Claims and Equity Interests ................3

11

               b.    Section 1123(a)(5) – Adequate Means for
12        Implementation ....................................................................4

13

               c.    Section 1123(a)(6) – Prohibition Against the
        Issuance of Nonvoting Equity Securities.........................4

14

               d.    Section 1123(a)(7) – Selection of Directors and
15        Officers.................................................................................4

16

               e.    Section 1123(b)(1) – Impairment of Claims and
        Equity Interests ...................................................................5

17

               f.    Section 1123(b)(2) Assumption, Assignment or
18        Rejection of Executory Contracts and Unexpired
        Leases ...................................................................................5

19

               g.    Section 1123(b)(3) – Retention, Enforcement and
20        Settlement of Claims Held by GVR.................................5

21

               h.    Section 1123(b)(4) – Sale of Assets of the Estate...........5

22

               i.    Section 1123(b)(5) – Modification of the Rights of
        Holders of Claims ...............................................................5

23

               j.    Section 1123(b)(6) – Other Appropriate Provisions........6

24

               k.    Section 1123(d) – Cure of Defaults .................................6

25

           2.    Section 1129(a)(2) – Compliance with   Applicable Provisions
        of the Bankruptcy Code ......................................................6

26

           3.    Section 1129(a)(3) – Good Faith Requirement ...........................7

27

28

(collectively, the "<u>Subsidiary Debtors</u>"); (iii) Aliante Gaming, LLC, Aliante Holding, LLC, and Aliante Station, LLC (collectively, the "<u>Aliante Debtors</u>"); and (iv) Green Valley Ranch Gaming, LLC ("<u>GVR</u>").

4.     Section 1129(a)(4) – Bankruptcy Court   Approval of Certain Payments as Reasonable ................................................................8

5.     Section 1129(a)(5) – Disclosure of New   Management and Compensation of Insiders ..........................................................8

6.     Section 1129(a)(7) – Best Interests Test...........................................8

7.     Section 1129(a)(8) – Acceptance   by or Unimpairment of Each Class................................................................................10

8.     Section 1129(a)(9) – Priority Claims..............................................10

9.     Section 1129(a)(10) – At Least One Consenting Impaired Class..10

10.    Section 1129(a)(11) – Plan is Not Likely to Be Followed   By Liquidation or Need for Further Reorganization ..........................10

11.    Section 1129(a)(12) – All Statutory   Fees Have Been or Will Be Paid............................................................................11

12.    Section 1129(b) – Confirmation of the Plan   Over the Nonacceptance of Impaired Classes .................................11

13.    Section 1129(d) – Purpose of Plan Not Tax Avoidance ...............12

**B.**    The Provisions of Article X of the Plan are Appropriate .................................12

1.     The Comprehensive Settlement ..........Error! Bookmark not defined.

2.     The Global Settlement of the GVR Prepetition Causes of Action................................................Error! Bookmark not defined.

    a.     The GVR Prepetition TransactionsError! Bookmark not defined.

3.     The Plan's Release Provisions ............Error! Bookmark not defined.

    a.     GVR's Release.......................Error! Bookmark not defined.

    b.     The Third Party Release........Error! Bookmark not defined.

4.     The Plan's Exculpation of Certain PartiesError! Bookmark not defined.

5.     "No Successor Liability" For GVR Purchaser..............................15

**C.**    Any Remaining Objections Should Be Overruled .................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Commercial Nat'l Bank v. Newtson,* 39 Ill.App.3d 216 (1976) ........................................................ 22

*Ferguson v. Arcata Redwood Co., LLC*, 2004 WL 2600471 (N.D.Cal. Nov. 12, 2004).................... 22

*Gavette v. The Warner & Swasey Co.*, 1999 WL 118438 (N.D.N.Y. Mar. 5, 1999) ......................... 23

*In re 47th and Belleview Partners*, 95 B.R. 117 (Bankr. W.D. Mo. 1988) ...................................... 14

*In re Acequia, Inc.*, 787 F.2d 1352 (9th Cir. 1986).......................................................................... 14

*In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650 (9th Cir. 1997) .................................................. 4

*In re American Media, Inc.*, Case No. 10-16140 (MG) (Bankr. S.D.N.Y. Dec. 20, 2010) ................. 9

*In re Blue Bird Body Co.*, Case No. 06-50026 (GWZ) (Bankr. D. Nev. Jan. 27, 2006) .................... 9

*In re CIT Group, Inc.*, 2009 WL 4824498 (Bankr. S.D.N.Y. Dec. 8, 2009) ..................................... 20

*In re Citadel Broadcasting, Inc.*, 2010 WL 210808 (Bankr. S.D.N.Y. May 19, 2010)...................... 20

*In re Cypresswood Land Partners, I*, 409 B.R. 396 (Bankr. S.D. Tex. 2009)............................... 14

*In re Hotel Mt. Lassen, Inc.*, 207 B.R. 935 (Bankr. E.D. Cal. 1997)............................................... 19

*In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995).................................................................. 18, 19

*In re Pacific Gas & Elec. Co.*, 304 B.R. 395 (Bankr. N.D. Cal. 2004) ............................................ 19

*In re Pero Bros. Farms, Inc.*, 90 B.R. 562 (Bankr. S.D. Fla. 1988)............................................... 14

*In re Sagewood Manor Assocs. Ltd. P'ship*, 223 B.R. 756 (Bankr. D. Nev. 1998) .................... 10

*In re Source Interlink Companies, Inc.*, Case No. 09-11424 (KG) (Bankr. D. Del. May 28, 2009) .... 9

*In re Trans World Airlines*, 322 F.3d 283 (3d Cir. 2003) ........................................................... 21, 23

*In re Western Asbestos Co.*, 313 B.R. 832 (Bankr. N.D. Cal. 2003)............................................... 4

*In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N.D. Ohio 1987) .......................................... 21

*Jeong v. Onada Cement Co., Ltd.*, 2000 WL 33954824 (C.D.Cal., May 17, 2000)......................... 22

*Lamb v. Leroy Corp.*, 454 P.2d 24 (Nev. 1969)............................................................................. 21

*Louisiana-Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260 (9th Cir. 1990) ......................................... 22

*Myers v. United States*, 297 B.R. 774 (S.D.Cal. 2003)................................................................... 21

*Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070 (9th Cir. 2002) ............................................................................................................................... 10

*Schumacher v. Richards Shear Co.*, 59 N.Y.S.2d 239 (1983) ............................................................. 23

*Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323 (9th Cir. 1994) ............................................. 4

*Village Builders 96, L.P. v. U.S. Laboratories, Inc.*, 112 P.3d 1082 (Nev. 2005) ........................ 21, 22

**Statutes**

11 U.S.C. § 1122 ............................................................................................................................. 8

11 U.S.C. § 1122(a) ......................................................................................................................... 8

11 U.S.C. § 1123 ........................................................................................................................... 12

11 U.S.C. § 1123(a)(1) ................................................................................................................ 8, 9

11 U.S.C. § 1123(a)(2) ..................................................................................................................... 9

11 U.S.C. § 1123(a)(3) ..................................................................................................................... 9

11 U.S.C. § 1123(a)(4) ..................................................................................................................... 9

11 U.S.C. § 1123(a)(5) ........................................................................................................ 10, 11, 26

11 U.S.C. § 1123(a)(5)(D) ............................................................................................................. 15

11 U.S.C. § 1123(a)(6) ................................................................................................................... 11

11 U.S.C. § 1123(a)(7) ................................................................................................................... 11

11 U.S.C. § 1123(b)(2) ................................................................................................................... 11

11 U.S.C. § 1123(b)(3)(A) ............................................................................................................. 12

11 U.S.C. § 1123(b)(4) ................................................................................................................... 12

11 U.S.C. § 1123(b)(5) ................................................................................................................... 12

11 U.S.C. § 1123(b)(6) ................................................................................................................... 13

11 U.S.C. § 1123(b)(l) ................................................................................................................... 11

11 U.S.C. § 1123(d) ....................................................................................................................... 13

11 U.S.C. § 1125 ....................................................................................................................... 8, 13

11 U.S.C. § 1125(e) ....................................................................................................................... 25

11 U.S.C. § 1125(g) .................................................................................................................. 14, 25

11 U.S.C. § 1126 ........................................................................................................................... 13

11 U.S.C. § 1126(c) ....................................................................................................................... 17

11 U.S.C. § 1127 ........................................................................................................................... 15

11 U.S.C. § 1128 ............................................................................................................... 8

11 U.S.C. § 1129 ............................................................................................................... 8

11 U.S.C. § 1129(a)(1) ...................................................................................................... 8

11 U.S.C. § 1129(a)(10) .................................................................................................... 18

11 U.S.C. § 1129(a)(11) .................................................................................................... 18

11 U.S.C. § 1129(a)(12) .................................................................................................... 19

11 U.S.C. § 1129(a)(2) ...................................................................................................... 13

11 U.S.C. § 1129(a)(3) ...................................................................................................... 15

11 U.S.C. § 1129(a)(4) ...................................................................................................... 15

11 U.S.C. § 1129(a)(5) ...................................................................................................... 16

11 U.S.C. § 1129(a)(7) ...................................................................................................... 16

11 U.S.C. § 1129(a)(8) ...................................................................................................... 17

11 U.S.C. § 1129(a)(9) ...................................................................................................... 18

11 U.S.C. § 1129(b) ..................................................................................................... 17, 19

11 U.S.C. § 1129(b)(2)(A)(ii) ........................................................................................... 20

11 U.S.C. § 1129(b)(2)(B)(ii) ........................................................................................... 20

11 U.S.C. § 1129(d) .......................................................................................................... 21

11 U.S.C. § 1141 ............................................................................................................... 29

11 U.S.C. § 1141(c) .......................................................................................................... 26

11 U.S.C. § 1141(d)(3) ...................................................................................................... 26

11 U.S.C. § 363 ........................................................................................................... 27, 29

11 U.S.C. § 363(f) ............................................................................................................. 26

11 U.S.C. § 365 ................................................................................................................. 12

11 U.S.C. § 365(b) ............................................................................................................ 13

11 U.S.C. § 507(a) ............................................................................................................ 18

11 U.S.C. § 524(e) ............................................................................................................ 24

28 U.S.C. 1334 .................................................................................................................. 8

28 U.S.C. 1408 .................................................................................................................. 8

28 U.S.C. § 1409 ................................................................................................................. 8

28 U.S.C. § 157 ................................................................................................................... 8

28 U.S.C. § 1930 ............................................................................................................... 19

**Other Authorities**

Fed. R. Bankr. P. 3016 ...................................................................................................... 14

Fed. R. Bankr. P. 3017 ...................................................................................................... 14

Fed. R. Bankr. P. 3018 ...................................................................................................... 14

Fed. R. Bankr. P. 3018(b) ................................................................................................. 14

Fed. R. Bankr. P. 3019 ...................................................................................................... 15

*H.R. Rep. No. 95-595* (1977) ...................................................................................... 8, 13

*S. Rep. No. 95-989* (1978) ............................................................................................... 13

## I.    **Introduction and Background**

1.    The Plan satisfies all Bankruptcy Code requirements and should be confirmed. The Plan effectuates the sale of GVR's assets to Station GVR Acquisition, LLC (the "GVR Purchaser"), according to the terms of an asset purchase agreement dated as of March 9, 2011 (the "GVR Purchase Agreement"), which in conjunction with a transition services agreement will seamlessly transfer ownership of GVR to GVR Purchaser. The GVR Purchase Agreement is the product of a comprehensive, independent and lengthy prepetition marketing process and is actively supported by an ad hoc group (the "Steering Committee") of GVR's first lien lenders (the "GVR First Lien Lenders").  Because the proceeds of the asset sale will not fully satisfy the Holders of GVR First Lien Allowed Claims, no lower ranking creditor or Holder of Equity Interests in GVR will receive a distribution through the Plan.[1]

2.    On July 28, 2009, Station Casinos, Inc. ("SCI"), and certain of its affiliates commenced chapter 11 cases in this Court (the "SCI Cases"). On August 27, 2010, this Court entered its order confirming the "First Amended Joint Chapter 11 Plan of Reorganization for Station Casinos, Inc. and its Affiliated Debtors (Dated July 28, 2010)" (the "SCI Plan") (docket no. 2039).[2] The Effective Date of the SCI Plan has not yet occurred.

3.    On April 12, 2011 (the "Petition Date"), GVR, the Subsidiary Debtors (excluding GV Ranch Station, Inc. which commenced its chapter 11 case on February 10, 2010 and Tropicana Station, Inc., which commenced its chapter 11 case on May 23, 2011), and Aliante Debtors (collectively, the "Debtors") commenced their chapter 11 cases (the "Chapter 11 Cases") in this Court. The Chapter 11 Cases are jointly administered with the SCI Cases. Also on April 12, 2011, the Debtors filed their "Prepackaged Joint Chapter 11 Plan of Reorganization for Subsidiary Debtors, Aliante Debtors and Green Valley Gaming, LLC (Dated March 22, 2011)" (the "Plan"), and their "Disclosure Statement to Accompany Prepackaged Joint Chapter 11 Plan of Reorganization for Subsidiary Debtors, Aliante Debtors and Green Valley Gaming, LLC (Dated March 22, 2011)" (the "Disclosure Statement") (both at docket no. 2797).

---

[1]    Capitalized terms used but not defined herein shall have the meanings attributed to them in the Plan.

[2]    Unless otherwise specified, all "docket no." references mean the docket in Case No. 09-52477 in this Court.

4.      Prepetition, commencing on March 23, 2011, GVR, the Subsidiary Debtors and Aliante Debtors distributed copies of the Plan and Disclosure Statement and related exhibits, schedules and other materials to certain of their creditors, and solicited prepetition acceptances of the Plan pursuant to Section 1125(g) of the Bankruptcy Code (the "Prepetition Solicitation"). On April 27, 2011, the Voting Agent filed its "Ballot Summary Declaration in Support of Confirmation of Joint Plan, Certifying Ballots Accepting and Rejecting the Plan, and Submitting Ballot Reports" with respect to the votes of Holders of Claims against and Equity Interests in the Subsidiary Debtors and GVR (docket no. 2895). All Voting Classes voted to accept the Plan, including Class GVRG.2, the only Class entitled to vote with respect to GVR.  On May 13, 2011, GVR filed and served the Plan Supplement, which contained the contracts and leases to be assumed and assigned to GVR Purchaser under the Plan (docket no. 3074).  On June 6, 2011, GVR filed and served its "Notice of Filing of First Amendment to Plan Supplement" (docket no. 3382).

5.      On May 20, 2011, the Debtors filed a revised, amended version of the Plan (docket no. 3186), and on May 24, 2011, the Debtors filed their "First Amended Prepackaged Joint Chapter 11 Plan of Reorganization for Subsidiary Debtors, Aliante Debtors and Green Valley Ranch Gaming, LLC (Dated May 24, 2011)" (docket no. 3253) (the "Amended Plan") containing the "Plan Modifications," which do not alter the terms of the Plan related to GVR.[3]

6.      In support of the Memorandum of Law and confirmation of the Plan, GVR submits the following declarations contemporaneously herewith: (a) the Declaration of Richard Haskins (the "Haskins Declaration"); (b) the Declaration of Eben Perison (the "Perison Declaration"); (c) the Declaration of Walt Brown (the "Brown Declaration"); and (d) the Declaration of Lawrence Taylor (the "Taylor Declaration"). GVR also incorporates by reference the Declaration of William A. Bible (GVR docket no. 20 ) (the "Bible Declaration"), the Declaration of William A. Bible in support of GVR's objection to the official committee of unsecured creditors' (the "Committee") motion to compel discovery (docket no. 3153) and the "Report of the Special Committee" attached thereto as Exhibit A (the "Special Investigation Report"), the "Ballot Summary

---

[3]    All further references to the "Plan" in this Memorandum of Law refer to the Amended Plan.

Declaration" of  P. Joseph Morrow IV in support of confirmation of the Plan (docket no. 2949) (the "Voting Declaration"), and the Declaration of James E. Nave, D.V.M (GVR docket no. 19) (the "Nave Declaration").

**II.    Jurisdiction and General Background**

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding in this District and before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 1125, 1128, and 1129 of 11 U.S.C. § § 101-1532 (as amended, the "Bankruptcy Code").[4]

**III.    Argument**

    **A.    The Plan Satisfies the Requirements of Section 1129 by a Preponderance of the Evidence.[5]**

        **1.    Section 1129(a)(1) - Compliance with Title 11**

8.    Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code, including the requirements of Sections 1122 and 1123 governing classification of claims and contents of plans.[6]

        **a.    Sections 1122 and 1123(a)(1) - (a)(4) - Classification and Treatment of Claims and Equity Interests**

9.    Sections 1122 and 1123(a)(1) require that the Plan designate Classes of Claims and Equity Interests (other than Administrative Claims and Priority Claims) and place a Claim or an Equity Interest in a particular class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests of such class.[7] Here, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  Here, the GVR First Lien

---

[4]    Unless otherwise specified, all "Section" or "§" references are to the Bankruptcy Code.

[5]    *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997).

[6]    *See,* H.R. Rep. No. 95-595, at 412 (1977); *see also, In re Western Asbestos Co.*, 313 B.R. 832, 840 (Bankr. N.D. Cal. 2003).

[7]    Section 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a).

Allowed Claims are separately classified from the GVR Second Lien Term Loan Claims in Classes GVRG.2 and GVRG.3. The Claims in those Classes have distinct legal rights under the GVR First Lien Credit Agreement, the GVR Second Lien Credit Agreement and the related intercreditor agreement (the "Intercreditor Agreement"). Although Classes GVRG.3 (GVR Second Lien Term Loan Claims) and GVRG.4 (General Unsecured Claims) receive the same treatment under the Plan, they are classified separately because the GVR Second Lien Term Loan Claims are structurally superior to the General Unsecured Claims.  Further, in accordance with the requirements of Sections 1123(a)(2) and 1123(a)(3), Article III of the Plan specifies which Classes of Claims are not impaired and the treatment of each such class.  Finally, Section 1123(a)(4) requires that the Plan provide the same treatment for each Claim or Equity Interest within a particular Class, unless the Holder of a Claim or Equity Interest agrees otherwise. Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular Class.

### b.    Section 1123(a)(5) – Adequate Means for Implementation

10.    The Plan also satisfies Section 1123(a)(5), which requires that the Plan provide adequate means for its implementation.  Specifically, Article V.D of the Plan provides for, among other things: assumption by GVR of the GVR Purchase Agreement; transfer of the GVR Purchased Assets to the GVR Purchaser; assumption by the GVR Purchaser of the GVR Assumed Liabilities; payment of the GVR Purchase Price to the GVR First Lien Administrative Agents for distribution to each Holder of an GVR First Lien Allowed Claim on a Pro Rata basis; implementation of the GVR Transition Services Agreement; cancellation of prepetition instruments evidencing Claims and Equity Interests against GVR; and the eventual dissolution of GVR.

### c.    Section 1123(a)(6) – Nonvoting Equity Securities

11.    The Plan complies with Section 1123(a)(6) as equity securities are not issued.

### d.    Section 1123(a)(7) – Selection of Directors and Officers

12.    The Plan complies with the requirements of Section 1123(a)(7) because as soon as practicable after the GVR Effective Date, the Executive Committee of GVR will be dissolved. In its place, Plan Administrators will be appointed.

4

  **e.**  **Section 1123(b)(1) – Impairment of Claims and Equity Interests**

  13.  Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests, in compliance with Section 1123(b)(l), which provides that a plan may "impair or  leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(l).

  **f.**  **Section 1123(b)(2) --  Assumption, Assignment or Rejection of Executory Contracts**

  14.  Article VI of the Plan provides for the assumption by GVR and assignment to the GVR Purchaser on the GVR Effective Date of certain designated Executory Contracts and Unexpired Leases and the rejection of all other Executory Contracts and Unexpired Leases in accordance with, Sections 365 and 1123(b)(2).

  **g.**  **Section 1123(b)(3) – Retention, Enforcement and Settlement of Claims Held by GVR**

  15.  Article X.E of the Plan provides for the Debtors' retention of Causes of Action and Litigation Claims, if any, not expressly released or settled under the Plan, and Articles X.B and X.C of the Plan provide for certain settlements and releases, in compliance with Section 1123(b)(3)(A), which provides that a plan may provide for the settlement or adjustment of any claim or interest belonging to GVR or its Estate.

  **h.**  **Section 1123(b)(4) – Sale of Assets of the Estate**

  16.  Section 1123(b)(4) provides that a plan may provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests. Here, the Plan provides just that.

  **i.**  **Section 1123(b)(5) – Modification of the Rights of Holders of Claims**

  17.  Consistent with Section 1123(b)(5), Article III of the Plan modifies, or leaves unaffected, as the case may be, the rights of Holders of each Class of Claims against and Equity Interests in GVR. Under the Plan (i) Holders of  Claims in Class GVRG.1 are Unimpaired; (ii) Holders of Claims in Class GVRG.2 will receive their *Pro Rata* share of the

5

GVR Purchase Price; and (iii) Holders of Claims in Classes GVRG.3, GVRG.4, and GVRG.5 will receive no distribution on account of their Claims or Equity Interests.

### j.    Section 1123(b)(6) – Other Appropriate Provisions

18.    Section 1123(b)(6) is a catchall provision that permits inclusion in the Plan of any appropriate implementation provision as long as it is not inconsistent with applicable provisions of the Bankruptcy Code. The Plan includes additional appropriate implementation provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including provisions governing distributions, procedures for resolving Disputed Claims, provisions treating the Plan as a Comprehensive Settlement, and various release and exculpation provisions.

### k.    Section 1123(d) – Cure of Defaults

19.    Article VI of the Plan provides for the cure of defaults for all Executory Contracts and Unexpired Leases to be assumed and assigned, consistent with Section 365(b). This complies with Section 1123(d), which requires that cure amounts are determined in accordance with the underlying agreement and applicable nonbankruptcy law.

### 2.    Section 1129(a)(2) – Compliance with Applicable Provisions of the Bankruptcy Code

20.    Section 1129(a)(2) provides that a court may confirm a plan only if the proponent of the plan complies with the applicable provisions of title 11.  Section 1129(a)(2) also encompasses the disclosure and solicitation requirements of Sections 1125 and 1126. Here, GVR complied with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules governing disclosure and plan solicitation.

21.    GVR conducted the prepetition solicitation in accordance with Section 1125(g).[8] Here, the solicitation period was 21 days, which is adequate, especially given the

---

[8]    Solicitation versions of the Plan and Disclosure Statement and related materials were filed (docket no. 2797).  The Voting Agent submitted a declaration about the solicitation process and vote tabulation (docket nos. 2895 and 2949).

sophistication of the GVR First Lien Allowed Claims Class.[9] Rule 3018(b) merely requires that a prepetition solicitation period not be unreasonably short.

22.     GVR has complied with all requirements of Sections 1125 and 1126 and Rules 3016, 3017 and 3018 regarding disclosure and vote solicitation.  The Disclosure Statement contains "adequate information" regarding (a) the business of GVR and the Restructuring Transactions in the Plan, (b) the classification and treatment of Claims against and Equity Interests in GVR, and (c) the other principal provisions of the Plan. The Disclosure Statement also discusses certain securities laws, gaming regulations and federal income tax considerations applicable to the decisions of creditors to accept or reject the Plan.

23.     The Plan complies with Section 1126 because Classes of Claims that are not Impaired under the Plan are conclusively deemed to accept the Plan, and Classes of Claims and Equity Interests that do not receive or retain any property under the Plan are conclusively deemed to reject the Plan. In both cases, Section 1126 provides that acceptances of the Plan need not be solicited from such Holders of Claims and Equity Interests, and GVR did not solicit acceptances from such Holders.

24.     GVR also complied with Section 1127 and Rule 3019 regarding the Plan Modifications, which did not relate to GVR, and thus the Plan may be confirmed without the need for any additional voting, in compliance with Section 1129(a)(2).

### 3.     Section 1129(a)(3) – Good Faith Requirement

25.     The Plan complies with Section 1129(a)(3) because it was proposed in good faith and not by any means forbidden by law. "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the [Bankruptcy] Code."[10] Here, the Plan maximizes value for creditors through the sale of the GVR Purchased Assets for the highest and best price, which is authorized by Section 1123(a)(5)(D). The extensive arms-length negotiations leading to the Plan's formulation further evidences GVR's good faith.

---

[9]     *Compare In re Blue Bird Body Co.*, Case No. 06-50026 (GWZ) (Bankr. D. Nev. Jan. 27, 2006) (docket no. 27) (approving solicitation period of two days where single voting class consisted of secured lenders that were sophisticated financial institutions that had engaged in lengthy restructuring negotiations with the debtors).

[10]    *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002).

### 4.    Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable

26.    In accordance with Section 1129(a)(4): (a) Article II.A.2 of the Plan makes all payments on account of Professional Fee Claims for services rendered prior to the Effective Date subject to the Bankruptcy Code requirements by requiring Professionals to file final fee applications with the Court; and (b) Article XI provides that the Court will retain jurisdiction after the Effective Date to hear and determine such applications.

### 5.    Section 1129(a)(5) – Disclosure of New Management and Compensation of Insiders

27.    The Plan complies with the requirements of Section 1129(a)(5) because GVR has proposed that Richard J. Haskins and Thomas M. Friel serve as the Plan Administrators. Section 1129(a)(5) does not apply to GVR Purchaser because it is not a successor to GVR or an affiliate of GVR participating in a Plan with the Debtors.

### 6.    Section 1129(a)(7) – Best Interests Test

28.    Section 1129(a)(7) requires that, with respect to each Impaired Class of Claims or Equity Interests, each Holder of a Claim or Equity Interest in such Impaired Class has either (a) accepted or is deemed to have accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if GVR was liquidated under chapter 7 of the Bankruptcy Code (the "best interests of creditors test").

29.    **Secured Creditors**. The GVR Liquidation Analysis[11] demonstrates that a liquidation of GVR's assets would not generate proceeds sufficient to satisfy the GVR First Lien Allowed Claims, which are approximately $603 million, leaving nothing available for Holders of Allowed GVR Second Lien Term Loan Claims, Allowed General Unsecured Claims, or Equity Interests in GVR.[12]  If the GVR Purchased Assets were liquidated in a chapter 7 proceeding, the net proceeds would be substantially less than the current $500 million because of, among other things: (i) substantial delay that would be incurred in connection with the appointment of a chapter 7 trustee

---

[11]    Disclosure Statement, Exhibit B.

[12]    *See* GVR Liquidation Analysis; *see also* Perison Declaration, Exhibit A.

1  and the time required for the trustee and his or her professionals to fully understand GVR's situation;

2  (ii) the fees payable to a chapter 7 trustee and newly appointed estate professionals; (iii) the likely

3  discounts that would be realized in one or more chapter 7 auctions of the applicable assets; and (iv)

4  the likelihood that GVR Purchaser would terminate the GVR Purchase Agreement based on a

5  number of termination triggers that would likely occur if the case were converted to a case under

6  chapter 7, including the failure to confirm a plan by June 15, 2011.[13] As a result the GVR

7  Liquidation Analysis takes the actual purchase price obtained by GVR and discounts such price to

8  reflect the forced nature of a chapter 7 process. Indeed, the GVR Liquidation Analysis shows that the

9  range of chapter 7 liquidation values is $325 - $375 million.[14] Therefore, distributions provided to

10  GVR First Lien Allowed Claims under the Plan are greater than under the GVR Liquidation

11  Analysis and the Holders of GVR Second Lien Term Loan Claims are receiving at least as much

12  under the Plan as they would under a hypothetical chapter 7 liquidation proceeding.

13         30.  **Unsecured Creditors and Equity Interests**. Under the Plan, Holders of

14  General Unsecured Claims and Second Lien Term Loan Claims against and Equity Interests in GVR

15  will receive no distributions, and they would not receive anything in a liquidation, because all of the

16  proceeds of the liquidation would be exhausted to pay Holders of administrative and other priority

17  Claims and Holders of GVR First Lien Allowed Claims. The proceeds of the liquidation would

18  include the liquidation net sale proceeds of the GVR hotel and casino and any net proceeds of any

19  Causes of Action (including avoidance actions). However, as previously discussed, any sale of the

20  GVR hotel and casino would yield significantly (i.e., over $200 million) less than the amount of the

21  GVR First Lien Lenders' claims, and such Causes of Action identified to date have been determined

22  by either the GVR Investigation Committee or GVR not to be actions that would result in material

23  net recoveries. Further, the net proceeds of such Causes of Action are part of the collateral securing

24  either (or both of) the GVR First Lien Lenders' pre-petition liens and post-petition adequate

25  protection liens. As a result, the Holders of General Unsecured Claims against and Equity Interests

26  in GVR are receiving under the Plan at least as much as they would receive in a chapter 7

27      [13]  *See* Haskins Declaration at ¶ 14.

28      [14]  *See* GVR Liquidation Analysis; *see also* Perison Declaration, Exhibit A.

1   liquidation, and the Plan satisfies the best interests of creditors test as to those creditors and interest

2   holders.

### 7.    Section 1129(a)(8) – Acceptance by or Unimpairment of Each Class

3       31.     Subject to the exceptions contained in Section 1129(b), Section 1129(a)(8)

4   requires that each Class of Claims or Equity Interests must either have accepted the Plan or not be

5   impaired under the Plan.  However, Classes GVRG.3, GVRG.4, and GVRG.5 were deemed to

6   reject the Plan and were not entitled to vote thereon. Although the Plan does not comply with

7   Section 1129(a)(8), it is still confirmable under Section 1129(b), discussed below.

### 8.    Section 1129(a)(9) – Priority Claims

8       32.     The Plan complies with Section 1129(a)(9) because it generally provides that

9   Allowed Administrative Claims shall be paid in full in cash unless otherwise agreed, and that the

10  rights of the Holders of Priority Tax Claims and Other Priority Claims are unaltered under the

11  Plan.[15]

### 9.    Section 1129(a)(10) –One Consenting Impaired Class

12      33.     Section 1129(a)(10) requires that at least one Impaired Class of Claims or

13  Equity Interests accepts the Plan, determined without including any acceptance of an insider.

14  Here, Holders of Claims in Class GVRG.2, GVR's sole Voting Class under the Plan,

15  overwhelmingly supported the Plan with 95.96% in number of Holders and 99.82% in amount

16  of Claims casting votes to accept the Plan.

### 10.   Section 1129(a)(11) – Plan is Not Likely to Be Followed By Liquidation or Need for Further Reorganization

17      34.     Section 1129(a)(11) requires the Court to find that a reasonable probability

18  of success that confirmation is not likely to be followed by the need for further financial

19  reorganization of GVR or any successor under the Plan.[16]  Because GVR is being liquidated, the

---

[15]    Under Article II.B of the Plan, Holders of Priority Tax Claims will receive, at the election of GVR, (i) payment in full in cash of the Allowed amount of such Claim, (ii) less favorable treatment if the Holder agrees, or (iii) installment payments in accordance with the requirements of Sections 1129(a)(9)(C) and (D). Holders of Other Priority Claims will receive payment in full in cash of the Allowed amount of such Claim.

[16]    *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986).

question of further financial reorganization of GVR is effectively moot.[17] Also because all of the GVR Purchased Assets are being sold to the GVR Purchaser, the Plan is feasible so long as the transactions under the Plan can be consummated.[18]

35.    The Plan is feasible because the GVR Purchaser has the financial wherewithal to close on the GVR Purchase Agreement and consummate all of the other Restructuring Transactions related to GVR.[19] Prior to executing the GVR Purchase Agreement, the GVR Purchaser secured written commitments for equity and debt financing, which are sufficient to effectuate the sale transaction.

### 11.    Section 1129(a)(12) – All Statutory Fees Have Been or Will Be Paid

36.    In accordance with Section 1129(a)(12), Article XII.A of the Plan provides that Administrative Claims for fees payable pursuant to 28 U.S.C. § 1930 will be paid in Cash on the GVR Effective Date and thereafter.

### 12.    Section 1129(b) – Confirmation of the Plan Over the Nonacceptance of Impaired Classes

37.    Section 1129(b) authorizes the Court to confirm the Plan even if not all Impaired Classes have accepted the Plan (a "cramdown"), provided that the Plan has been accepted by at least one impaired class and the Plan does not discriminate unfairly and is fair and equitable with respect to each Impaired Class that voted to reject the Plan. Here, Class GVRG.2, an Impaired Class of Claims, voted to accept the Plan.

38.    The Plan is fair and equitable with respect to Class GVRG.3 because it satisfies the cramdown test in Section 1129(b)(2)(A)(ii). GVR's assets that are subject to the liens of the Holders of GVR Second Lien Term Loan Claims are being sold to GVR Purchaser under the

---

[17]    *See e.g., In re 47th and Belleview Partners*, 95 B.R. 117, 120 (Bankr. W.D. Mo. 1988) ("under the literal wording of § 1129(a)(11) of the Bankruptcy Code, [it] is unnecessary to [show feasibility] when 'liquidation . . . is proposed in the plan.'"); *In re Pero Bros. Farms, Inc.*, 90 B.R. 562, 563 (Bankr. S.D. Fla. 1988) ("The feasibility test has no application to a liquidation plan.").

[18]    *See e.g., In re Cypresswood Land Partners, I*, 409 B.R. 396, 433 (Bankr. S.D. Tex. 2009) (plan that provides for a sale of substantially all of a debtor's assets offers a reasonable probability of success and can satisfy Section 1129(a)(11)).

[19]    *See* Disclosure Statement, Exhibit D; Nave Declaration at ¶ 40; Bible Transaction Committee Declaration at ¶ 41.

Plan and the subordinated liens of the Holders of GVR Second Lien Term Loan Claims will attach to the sale proceeds. Under the Plan, the sale proceeds will be paid to the GVR First Lien Administrative Agent for distribution *pro rata* to Holders of GVR's First Lien Allowed Claims, which by the terms of the Intercreditor Agreement are entitled to payment in full before any distribution to the Holders of GVR's Second Lien Term Loan Claims, with no funds remaining.

39.    Section 1129(b)(2)(B)(ii) requires, with respect to a class of unsecured claims, that (1) each holder of a claim receive on account of its claim property equal to the allowed amount of such claim or (2) no holder of a claim or interest that is junior to the claims in such class will receive or retain any property on account of such junior claim or interest in any property (the "absolute priority rule"). The Plan meets this test with respect to the General Unsecured Claims in Class GVRG.4 and the Second Lien Term Loan Claims in Class GVRG.3 because it does not provide for any distributions to the only junior Class -- Class GVRG.5. – who are not receiving any property on account of their interests under the Plan.

40.    The Plan is fair and equitable with respect to the Class of Equity Interest in GVR, GVRG.5, because there are no junior interest holders to the non-accepting Class.

41.    The Plan does not discriminate unfairly with respect to any non-accepting Class because there are no substantially similar Classes of Claims.

### 13.    Section 1129(d) – Purpose of Plan

42.    The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act.

### B.    The Provisions of Article X of the Plan are Appropriate

43.    Article X of the Plan contains various settlement, release, exculpation and related injunction provisions. As discussed in greater detail below, based upon the support for the Plan among GVR's creditors, and the fact that the Plan maximizes the value of GVR's assets for its creditors, the settlement, release, exculpation and related provisions of Article X of the Plan are fair and necessary for the successful implementation of the Plan.

44.    Article X.B.1 of the Plan provides that the Plan constitutes a general comprehensive settlement (the "Comprehensive Settlement"), which is a fundamental component of

the overall restructuring because it promotes finality by assuring GVR and its Estates that the Plan finally settles and satisfies the various Claims against and Equity Interests in GVR.  Article X.B.2 of the Plan implements the Global Settlement, which provides for the compromise and settlement of among other things, all of the GVR Prepetition Transactions Causes of Action among GVR and its Estate, and any Person, Entity or Governmental Unit. Under Article X.B.2 of the Plan, (x) all distributions made under the Plan are on account of and in consideration of the Global Settlement, and (y) the Global Settlement is binding on GVR, its Estate, and on all Claim or Equity Interest Holders who indicate on their Ballot their agreement to grant the releases provided for in Article X of the Plan. Article X.C.1 of the Plan provides for a release of the GVR Prepetition Transactions Causes of Action for or on behalf of GVR or its Estate.  The Global Settlement with respect to the GVR Prepetition Transactions Causes of Action are appropriate given the previous investigation of those Causes of Action discussed in considerable detail in the Declaration of Mr. William Bible. Mr. Bible's Declaration discusses the formation of and investigation by the GVR Investigation Committee, and how upon concluding its investigation, the GVR Investigation Committee found that there was not sufficient evidence to support bringing any such Causes of Action.[20]

45.     Article X.C of the Plan provides for releases of claims held by GVR and its Estate (Article X.C.1) against the identified Released Parties, to the fullest extent permissible under applicable law ("GVR's Release").  GVR's Release reflects a sound exercise of GVR's business judgment, because to effectively implement the Plan, the non-Debtor parties thereto need assurance that they will not be subject to any further liability from GVR, its Estate, or any party that seeks to bring a claim on behalf of GVR or its Estate. Absent GVR's Release, it is likely that the various Released Parties would not support the Plan because of their remaining potential exposure.[21]

46.     Article X.C. of the Plan provides for voluntary releases of claims held by Holders of Claims and Equity Interests against the identified Released Parties, to the fullest extent permissible under applicable law (Article X.C.2) (the "Third Party Release").  Similar to GVR's

---

[20]    *See* Special Investigation Report at pp. 60-61, 89; *see also* Taylor Declaration, Exhibit A.

[21]    *See* Haskins Declaration at ¶ 20.

Release, the Third Party Release provides assurance to the parties to the Plan and the other parties in interest in this chapter 11 case that their liability on account of claims related to GVR (including the GVR Prepetition Transactions Causes of Action) will be minimized, and provides an additional incentive for such parties to settle and consent to the Plan. The Third Party Release set forth in Article X.C.2 of the Plan is being made on a wholly voluntary basis by Holders of Claims that have indicated on their Ballot that they are consenting to such release. The entirely voluntary Third Party Release does not prejudice the rights of any party that did not agree to such Third Party Release. Although in *In re Lowenschuss*,[22] the Court of Appeals for the Ninth Circuit held that Section 524(e) applies to chapter 11 plan bankruptcy discharges, here, the voluntary creditor release does not implicate such concerns.[23]  Moreover, this Court has approved similar releases in the SCI Cases.[24]

47.    Finally, Article X.D of the Plan provides, subject to certain exceptions, an exculpation of the Exculpated Parties from various any claims or causes of action arising prior to or on the Effective Date.  The Plan's exculpation provision ensures that the major parties to the restructuring negotiations will not be subject to any claims or causes of action relating to their good faith acts or omissions in the restructuring efforts that began almost a year prior to the Petition Date. The Plan exculpation provisions do not violate Section 524(e) or the concerns expressed in *Lowenschuss*, because they are based upon the more limited exculpation provisions that are expressly contemplated and permitted by Section 1125(e), which grants immunity from liability not only under the securities laws, but also under any law, rule, or regulation governing solicitation or acceptance of a plan, to any person that participates in good faith in the solicitation of acceptances of a plan or the offer, issuance, sale or purchase of a security offered or sold in connection with the

---

[22]    67 F.3d 1394 (9th Cir. 1995).

[23]    *See e.g., In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 416-18 (Bankr. N.D. Cal. 2004) (confirming plan that included governmental agency's release of debtor's parent entity and its officers and directors because the agency had consented to the release); *see also In re Hotel Mt. Lassen, Inc.*, 207 B.R. 935, 941 (Bankr. E.D. Cal. 1997) ("[a]ny third-party release in connection with a plan or reorganization, at a minimum, must be fully disclosed and purely voluntary on the part of the releasing parties and cannot unfairly discriminate against others."). Section 524(e) provides that the "discharge of a debt of the debtor does not affect the liability of any other entity, on or the property of any other entity for, such debt."

[24]    *See* Order Confirming "First Amended Joint Chapter 11 Plan of Reorganization for Station Casinos, Inc., and Its Affiliated Debtors (Dated July 28, 2010)" (docket no. 2039).

14

plan. Nothing in Section 1125(e) limits that protection to post-petition activities.  Indeed, Section 1125(g) authorizes solicitation of acceptances of a chapter 11 plan prior to commencement of a bankruptcy case if solicited in compliance with applicable non-bankruptcy law.

48.    GVR's pre-petition restructuring efforts are precisely the type of activity that Section 1125(e) is designed to protect. It would be inequitable, and would not comport with the plain intent of Section 1125(e) if, after confirmation of the Plan and implementation of the Restructuring Transactions, the Exculpated Parties could then be sued for their good faith prepetition and post-petition restructuring efforts.[25]  Accordingly, each of the Exculpated Parties is entitled to the protections afforded them by Section 1125(e) and Article X.D of the Plan.

49.    In sum, the settlement, release, injunction and exculpation provisions in Article X of the Plan (i) are integral to the agreement among the various parties in interest and the overall objectives of the Plan and the Restructuring Transactions, (ii) are essential to the formulation and successful implementation of the Plan and the Restructuring Transactions for the purposes of Section 1123(a)(5), (iii) are being provided for valuable consideration and have been negotiated in good faith and at arm's-length, (iv) confer material and substantial benefits on GVR's Estate, and (v) are in the best interests of GVR, its Estate and other parties in interest and, as to the releases made by, or on behalf of, GVR or its Estate, are based on sound business judgment.

### 14.    "No Successor Liability" For GVR Purchaser

50.    Section 1141(c) provides in relevant part that "after confirmation of a plan, the property dealt with by a plan is free and clear of all claims and interests of creditors, equity security Holders, and of general partners in the debtor. 11 U.S.C. § 1141(c).[26]  Section 363(f) also provides statutory authority for the sale of estate property free and clear of "interests in the

---

[25]    Other bankruptcy courts in recent contested chapter 11 cases have approved plan exculpation clauses at least as broad, if not broader, in scope than that proposed in this Chapter 11 Case. *See e.g., In re Citadel Broadcasting, Inc.*, 2010 WL 210808, at *30 (Bankr. S.D.N.Y. May 19, 2010) ("Exculpated Claims" included all claims relating to the debtors' in or out of court restructuring efforts, and "Exculpated Parties" included, among others, the Holders of the senior secured debt and their agent, the agent and indenture trustee for the subordinated noteholders, and each of their respective professionals and affiliates); *In re CIT Group, Inc.*, 2009 WL 4824498 at *25 (Bankr. S.D.N.Y. Dec. 8, 2009) (the exculpated parties included a steering committee of prepetition lenders, the DIP lenders and their agent, the exit facility lenders and their agent, the indenture trustees for the unsecured note issuances).

[26]    Section 1141(c) is expressly subject to the provisions of Section 1141(d)(3), which provides that confirmation of a plan does not discharge a liquidating debtor, but Section 1141(c) refers to *property* of the debtor, not the debtor.

property," and courts have generally interpreted Section 363(f) to authorize sales free and clear of liens and claims.[27]  Courts have expressly held that transferees of a debtor's assets pursuant to a sale approved under Section 363 or pursuant to confirmation of a chapter 11 plan are not liable for claims against the debtor under successor liability theories.[28]

51.     The Plan at Article V.A (and as described in the Disclosure Statement) essentially provides that all conveyances, assignments, transfers and deliveries made pursuant to the Plan shall be made free and clear of all Liens, Claims, Equity Interests, encumbrances and any other interests asserted by GVR, any creditors of GVR, or other Persons or Entities and neither GVR Purchaser or its respective subsidiaries, creditors, equity holders or Related Persons, shall be deemed a successor of GVR, any Debtor or any SCI Debtor and shall have no successor liability.

52.     In applying a successor liability analysis to the transfer of a debtor's assets to a transferee, courts apply the default rule under state law that acquirers have no successor liability.[29] Successor liability against acquirers only applies when an exception has been proven.[30]  The evidence here strongly supports a finding of no successor liability because none of the exceptions to the general rule apply.

53.     First, the GVR Purchaser is not assuming GVR's liabilities; the Plan and the other Restructuring Transactions related documents are clear and unequivocal on that point. Second,

---

[27]  *See e.g., In re Trans World Airlines*, 322 F.3d 283, 290 (3d Cir. 2003) (holding that unsecured claims of debtor's employees "are interests within the meaning of Section 363(f) in the sense that they arise from the property being sold."); *Myers v. United States*, 297 B.R. 774, 781-82 (S.D.Cal. 2003) (concluding that purchaser had acquired assets of debtor free and clear of plaintiff's unsecured personal injury claims).

[28]  *See e.g., In re Trans World Airlines*, 322 F.3d at 290 (Section 363 sale); *Myers v. United States*, 297 B.R. at 781-82 (Section 363 sale); *In re White Motor Credit Corp.*, 75 B.R. 944, 950 (Bankr. N.D. Ohio 1987) (confirmation of plan). The court in *White Motor Credit Corp.* held that state law successor liability theories are preempted by the Bankruptcy Code.

[29]  *Village Builders 96, L.P. v. U.S. Laboratories, Inc.*, 112 P.3d 1082, 1087 (Nev. 2005) ("[I]t is the general rule that when one corporation sells all of its assets to another corporation the purchaser is not liable for the debts of the seller." (*quoting Lamb v. Leroy Corp.*, 454 P.2d 24, 26–27 (Nev. 1969)).

[30]  *Village Builders*, 112 P.3d at 1087 (purchasers of assets have no successor liability unless one of the following four exceptions are met: (a) the transferee has agreed to assume the transferor's liabilities; (b) the transaction is a *de facto merger*; (c) the transferee is mere continuation of the transferor; or (d) the transaction is a fraud to escape liabilities).

1  courts generally will not find a *de facto* merger unless the consideration for the assets is the stock of

2  the transferee, which is not the case here.[31]

3         54.    Third, courts will not find that the transferee is a mere continuation of the

4  transferor unless the shareholders of the transferor and transferee are substantially the same.[32] Here,

5  there is no substantial similarity between the shareholders of GVR and the shareholders of GVR

6  Purchaser, and thus no "identity" that would give rise to a finding of successor liability. GVR is a

7  50/50 joint venture between GV Ranch Station Inc., a wholly-owned subsidiary of SCI, and GCR

8  Gaming, LLC, which is an affiliate of the Greenspun Corporation. GVR Purchaser is an indirect,

9  wholly-owned subsidiary of Station Casinos, LLC ("New Propco"). On the Effective Date and

10  pursuant to the SCI Plan, New Propco will be owned 45% by FG Station Investor LLC (ultimately

11  owned by the Fertitta family), 40% by German American Capital Corporation and JP Morgan Chase

12  Bank, N.A. (the "Mortgage Lenders"), and 15% by the general unsecured creditors of the SCI

13  Debtors that acquire equity in New Propco through a rights offering. Therefore, a majority of equity

14  interests in GVR Purchaser will be held by the Mortgage Lenders and former unsecured creditors of

15  SCI, who have no interests in GVR.

16         55.    Further, numerous courts have not found a transferee to be a mere

17  continuation of the transferor where the selling corporation continues to exist, even if the selling

18  corporation ceases its business operations. For example, in *Village Builders*, where the Nevada

19  Supreme Court declined to find successor liability, the transferor had sold all of its assets, but the

20  transferor corporation was maintained for the purpose of a pending lawsuit.[33]  In this case, GVR will

21  _____

22  [31]   *See Louisiana-Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1264-65 (9th Cir. 1990) (overruled on other grounds)
      (finding no continuity of shareholders where consideration paid by purchaser was a combination of cash, promissory
23  note and payment of some debts, and no stock in purchaser or its parent company was exchanged as part of the sale);
      *see also Ferguson v. Arcata Redwood Co., LLC*, 2004 WL 2600471, *4 (N.D.Cal. Nov. 12, 2004) (purchaser was
      not alleged to have purchased seller's assets with stock, precluding a finding of successor liability).

24  [32]   *See e.g. Village Builders*, 112 P.3d at 1090-91 (no showing of mere continuation without "*identity* of stock,
      stockholders and directors between the two corporations") (emphasis added). *See also*, *Commercial Nat'l Bank v.*
25  *Newtson*, 39 Ill.App.3d 216, 271 (1976) (applying the general rule against corporate successor liability in a situation
      where one shareholder owned 25% of the predecessor corporation, and after the asset transfer the same shareholder
26  owned 40% of the successor corporation); *Jeong v. Onada Cement Co., Ltd.*, 2000 WL 33954824 at *4 n. 4
      (C.D.Cal., May 17, 2000) (acknowledging that under California law, successor liability exists where shareholders
27  are "practically" the same).

28  [33]   112 P.3d at 1091. Other jurisdictions have reached similar conclusions. *See e.g.*, *Schumacher v. Richards Shear Co.*,
      59 N.Y.S.2d 239, 245 (1983) ("Since Richards Shear survived the instant purchase agreement as a distinct, albeit

continue to exist after the Effective Date for the purpose of implementing the Plan. Other relevant facts to a finding of successor liability include that GVR Purchaser is not purchasing any of the assets listed as Excluded Assets in the GVR Purchase Agreement and those of GVR's employees who are to be employed by GVR Purchaser are being hired under new employment contracts or other arrangements to be entered into or to become effective at the time of the asset transfers.

56.     Fourth, the Plan is unmistakably not a fraud to escape liabilities. The record of the Chapter 11 Case shows that the parties to the Plan have acted in good faith, the Plan has been proposed in good faith, and the Plan maximizes the value of GVR's assets for the benefit of GVR's creditors. Thus, based upon the facts of this Chapter 11 Case, none of the exceptions to the rule against successor liability under non-bankruptcy law apply.

57.     In summary, Sections 363 and 1141 foreclose a finding of successor liability against GVR Purchaser and, even under a state law analysis, there is no basis for successor liability.[34]

## C.    Any Remaining Objections Should Be Overruled

58.     May 16, 2011 was the deadline for filing objections to confirmation of the Plan. On June 1, 2011, the Court set June 8, 2011 for the hearing to consider confirmation of the Plan as to GVR. However, at the conclusion of the status conference, following the Court's ruling removing MFS Investment Management, Panton Capital Group and Babson Capital Management, LLC (collectively, the "Second Lien Lenders") from the Committee, the Court fixed June 6, 2011, as the deadline for the Second Lien Lenders in their individual capacity to object to confirmation of the Plan with respect to GVR.

59.     Three objections and a supplement to an objection were filed to confirmation of the Plan with respect to GVR by: (a) the Committee (docket no. 3127); (b) Diane Dahlheimer

---

meager, entity, the Appellate Division properly concluded that Logemann cannot be considered a mere continuation of Richards Shear."); *Gavette v. The Warner & Swasey Co.*, 1999 WL 118438 at *5 (N.D.N.Y. Mar. 5, 1999) (finding that *de facto* merger did not justify a finding of successor liability because the seller corporation continued to exist "at least transcendentally for one year").

[34]     *See e.g., In re Trans World Airlines*, 322 F.3d at 292 (finding that to allow some general unsecured creditors to assert successor liability claims against transferee of debtors' assets, while limiting other creditors' recourse to proceeds of sale, would be inconsistent with Bankruptcy Code's priority scheme).

(docket nos. 3124 and 3368); and (c) Cathie Green (docket no. 3130). The objection filed by the Committee should be overruled, given this Court's May 25 ruling and the fact that the Committee presently has no members to pursue that objection. The objections filed by Diane Dahlheimer have been withdrawn (docket no. 3376). Finally, Ms. Green's objection to the Plan does not state a cognizable objection to confirmation, but appears to be a statement supporting her proof of claim against GVR. Ms. Green's claim will be treated like all other General Unsecured Claims under the Plan. Thus, her objection should be denied.

GVR respectfully requests that the Court enter the proposed Confirmation Order and proposed Findings of Fact and Conclusions of Law.

Dated: June 6, 2011

*/s/ Sarah H. Seewer*

James H.M. Sprayregen, P.C. (IL No. 6190206)
David R. Seligman, P.C. (IL No. 6238064)
Sarah H. Seewer (IL No. 6301437)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
james.sprayregen@kirkland.com
david.seligman@kirkland.com
sarah.seewer@kirkland.com

Reorganization Counsel
for GVR

- and -

Candace Carlyon (NV No. 002666)
James Patrick Shea (NV No. 000405)
Brandon P. Johansson (NV No. 012003)
SHEA & CARLYON, LTD.
701 Bridger Avenue, Suite 850
Las Vegas, Nevada 89101
Telephone:     (702) 471-7432
Facsimile:      (702) 471-7435
ccarlyon@sheacarlyon.com
jshea@sheacarlyon.com
bjohansson@sheacarlyon.com

Special Local Reorganization Counsel
for GVR