```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF NEVADA
    ──────────────────────────────────────────
                                              )
    In re:                                    )
                                              )
    STATIONS CASINOS, INC.          CH: 11    )   09-52477-GWZ
                                              )
    #1  HEARING PERTAINING TO JOINTLY         )
        ADMINISTERED DEBTOR GREEN VALLEY      )
        RANCH GAMING LLC, RE: APPROVAL OF     )
        JOINT DISCLOSURE STATEMENT FILED BY   )
        SUBSIDIARY DEBTORS, ALLANTE           )
        DEBTORS, AND GVR AND CONFIRMATION,    )
        PERTAINING TO JOINTLY ADMINISTERED    )
        DEBTOR GREEN VALLEY RANCH GAMING,     )
        LLC, OF JOINT CHAPTER 11 PLAN OF      )
        REORGANIZATION FILED BY SUBSIDIARY    )
        DEBTORS, ALLANTE DEBTORS & GVR - AS   )
        SUPPLEMENTED AND AMENDED              )
    ──────────────────────────────────────────
                                              )
    In re:                                    )
                                              )
    STATIONS CASINOS, INC.          CH: 11    )   09-52477-GWZ
                                              )
    #2  APPLICATION BY THE OFFICIAL           )
        COMMITTEE OF UNSECURED CREDITORS OF   )
        GREEN VALLEY RANCH GAMING LLC FOR     )
        ORDER APPROVING THE EMPLOYMENT AND    )
        RETENTION, NUNC PRO TUNC, OF BROWN    )
        RUDNICK LLP AS CO-COUNSEL             )
    ──────────────────────────────────────────
                                              )
    In re:                                    )
                                              )
    STATIONS CASINOS, INC.          CH: 11    )   09-52477-GWZ
                                              )
    #3  APPLICATION BY DOWNEY BRAND LLP FOR   )
        ORDER APPROVING ITS EMPLOYMENT AS     )
        LOCAL COUNSEL FOR THE OFFICIAL        )
        COMMITTEE OF UNSECURED CREDITORS      )
        GREEN VALLEY RANCH GAMING, LLC        )
    ──────────────────────────────────────────
    ──────────────────────────────────────────)
```

```
1   In re:                              )
                                        )
2   STATIONS CASINOS, INC.      CH: 11  )   09-52477-GWZ
                                        )
3   #4  APPLICATION BY THE OFFICIAL     )
        UNSECURED CREDITORS COMMITTEE OF)
4       GREEN VALLEY RANCH GAMING LLC FOR)
        ORDER APPROVING THE EMPLOYMENT OF)
5       GLC ADVISORS & CO., LLC AS      )
        FINANCIAL ADVISOR - NUNC PRO TUNC)
6
7                              U.S. Bankruptcy Court
                               300 Booth Street
8                              Reno, NV 89509

9                              June 8, 2011
                               10:07 a.m.

10           BEFORE THE HONORABLE GREGG W. ZIVE, Judge

11  APPEARANCES:

12  For Green Valley Ranch:      David Seligman
                                 KIRKLAND & ELLIS
13                               555 California Street
                                 San Francisco, CA 94104
14
    For Second-lien Lenders:     Howard Steel
15                               BROWN RUDNICK
                                 Seven Times Square
16                               New York, NY 10036

17  For U.S. Trustee:            William Cossitt
                                 300 Booth Street, Rm 3009
18                               Reno, NV 89509

19  For First-lien Lenders:      Ben Murphy
                                 DEWEY & LEBOEUF
20                               333 South Grand Avenue
                                 Los Angeles, CA 90071
21
    For Green Valley Ranch:      James Shea
22                               SHEA & CARLYON
                                 701 Bridger Ave., Suite 850
23                               Las Vegas, NV 89101

24  Proceedings recorded by electronic sound recording; transcript
    produced by AVTranz.
25
```

3

1          THE COURT:  Please be seated.  This is in the matter

2    of Green Valley Ranch Gaming, Inc.

3          I'm going to take care of a few procedural matters

4    before we get into the substance of the matter I have in front

5    of me.  First of all I need to make a short record.

6          I have reviewed a docket number 2856, a transcript of

7    proceedings conducted April 14th, 2011; docket number 3193,

8    transcript of hearing conducted May 18th; docket number 3286,

9    transcript of the hearing I conducted May 25th; docket number

10   3338, transcript of an emergency hearing status conference that

11   I conducted May 31; as well as docket number 3354, transcript

12   of proceedings, hearing status conference conduct June 1st.

13         In that regard several of those matters pertained to

14   my ruling that was entered on May 25th regarding the

15   constitution of the committee of unsecured creditors.  I would

16   point out that I still have the cases I relied upon, and I

17   looked at my notes as well as the transcript.

18         I instructed counsel to the prevailing party to

19   prepare findings and conclusions in an order.  I have been

20   provided with those.  They drew an objection pursuant to our

21   local rule 9021, as I was told they would during the status

22   conference.  And that is docket number 3404, and that was filed

23   yesterday afternoon.  I have had an opportunity, as I've

24   indicated, to study the transcript, study my notes, and study

25   the competing orders.

4

```
1          Who was preparing the order on behalf of GVR?  Who
2   was the scrivener?
3          MR. SELIGMAN:  Your Honor, David Seligman on behalf
4   of the debtors.  Kirkland Ellis prepared it.
5          THE COURT:  All right.
6          MR. SELIGMAN:  Did you have comments or questions
7   that you wanted us to --
8          THE COURT:  No.  What I'm going to do is -- because
9   neither of -- neither the findings nor the order are in my
10  computer.  I have gone through and made changes to both.  And
11  since I expected you to prepare them, I'm going to ask you to
12  prepare the changes.  These will constitute my findings and
13  conclusions and my order.
14         So I hate to do this, but I don't know any other way
15  of accomplishing it.  So we're just going to be scriveners for
16  a minute here, and we're going to get it done.
17         MR. SELIGMAN:  That's fine, Your Honor.  We'll --
18  I'll write those notes.
19         THE COURT:  I think we -- if I don't get this done,
20  it won't get done.  Let's go through the findings.
21         And who, on behalf of the second-lien lenders, was
22  responsible for the objection and the red-line versions that I
23  read?
24         MR. STEEL:  Your Honor, this is Howard Steel of Brown
25  Rudnick.  Can you hear me, Your Honor?
```

1           THE COURT:  Yes, sir, I can.

2           MR. STEEL:  Your Honor, Brown Rudnick prepared it on

3    behalf of the second-lien lenders.

4           THE COURT:  All right.  You might want to follow with

5    me.

6           MR. STEEL:  Thank you, Your Honor.

7           THE COURT:  Thank you.

8           As I went through the red-line notes provided -- it

9    was very helpful -- I compared it with what I wanted based upon

10   my notes as well as the proposed order.  So let's just go

11   through that.  There were no significant changes to the

12   findings and conclusions that I could see until we got to

13   paragraph 11 of the proposed findings.  The objection sought to

14   strike those.  I do not want to strike those.

15          I did pull the status conferences on May 31 and June

16   1.  They did pertain to some of the issues that I raised on May

17   25th, and I have no -- I think they have to be part of the

18   findings to adequately explain what had occurred.

19          Then the -- I am going to keep paragraphs, as

20   decreeal (sic) paragraphs, 14, 15, 16, 17, 18, 19, 20, and 21,

21   as proposed by counsel for GVR.

22          I think it's important to have those provisions

23   cited.  They are clearly what I relied upon.  They form the

24   predicate for my decision.  I don't know how anyone could

25   review the order and the findings without being aware of the

```
1    provisions of the agreement.  By including them I do not think
2    that I am making any determination that would require an
3    adversary, which is what I talked about both on May 25th, May
4    31st, and June 1st, and I'll deal with that again later.
5            The paragraph 20 in the proposed findings by the
6    second-lien creditors -- do you have that?  Strike the first
7    sentence, but include the second sentence and the third
8    sentence.  And that should be -- I'm going to keep paragraph 22
9    as proposed by GVR.  Then I'm going to insert amended 20 from
10   Brown Rudnick's.  So it would read:
11            "The intercreditor agreement does not contain
12            any proscription on unsecured creditors
13            serving on the committee, but to the extent
14            an unsecured creditor is a party to the
15            intercreditor agreement, that creditor's
16            service on the committee might be severely
17            limited and might preclude the creditor from
18            being an effective member of the committee,"
19   period.  And strike the last sentence.
20            Then paragraph 23 in the proposed order by GVR we're
21   going to amend.  It will read as follows: "The second-lien
22   lenders have not indicated a willingness to recover based on
23   any liens that" -- we're going to change that.  It should be:
24            "The second-lien lenders did indicate a
25            willingness not to recover based on any liens
```

7

```
 1                    that may exist for second -- pursuant to the
 2                    second-lien credit agreement and/or related
 3                    documents or otherwise and indicated a
 4                    willingness to waive such liens, but not
 5                    without certain conditions including orders
 6                    from the court to which the first-lien lenders
 7                     objected and which the court declined to
 8                    grant."
 9      And I think that accurately sums up what occurred.
10                    I am going to leave paragraph 24 in the proposed
11      findings as is.  And the next change will be in the conclusions
12      of law.   27, 28, and 29 shall remain.  30 shall remain.  31
13      shall remain.  Those were specific findings that I made.
14                    We are going to change what is proposed 32.  The
15      following will be added:
16                    "By this order the Court does not make any
17                    determination as to the rights, remedies, or
18                    obligations" --
19      I don't like "and/or" --
20                    "...or obligations the parties may have under
21                    the intercreditor agreement, the first-lien
22                    credit agreement, the second-lien credit
23                    agreement, or any related agreements" --
24      Oh, at the beginning of that sentence add the word "while."  So
25      it says: "While by this order the court does not make" -- then
```

1    there will be a comma after "related agreements," and it would

2    read:

3                "The restrictions imposed upon the

4                second-lien creditors by the agreement cited

5                in the foregoing findings and conclusions,

6                including the intercreditor agreement, would

7                preclude the second-lien creditors from

8                adequately representing the unsecured

9                creditors."

10               The next paragraph would then read as follows: "The

11   Court concludes that the second-lien creditors cannot be

12   members of the committee," period.

13               I do not believe that paragraphs 33, 34, or 35 are

14   necessary because I've already referred to the provisions that

15   I cited in the findings of fact.  So strike 33, 34, and 35.  36

16   shall remain, and 37 shall remain.

17               Those will constitute my findings and conclusions.

18   The order as proposed is acceptable to me.  Please submit those

19   and we'll sign them.  So that takes care of that.

20               I want to thank counsel very much for their

21   assistance both for GVR and the second-lien creditors.

22               I am now going to go to the only matter I have

23   scheduled for this morning, and that is a hearing regarding

24   approval of the joint disclosure statement and confirmation of

25   the plan.

529cc7c9a520654a

9

1        As to the disclosure statement, I have seen no

2  objections to the disclosure statement.  I have reviewed the

3  disclosure statement, docket number 2797, I believe.  I am

4  subject to being corrected.  2797 is correct, and the exhibit

5  to that is the plan.  I am going to approve the disclosure

6  statement.  And that gets us right to the plan itself.

7        Before I do that I want -- I had three other matters

8  on calendar for today, and I got a notice of continued

9  hearing.  And those are regarding the applications for three

10  professionals for the formerly constituted committee.  That

11  would have been Brown Rudnick, Downey Brand, and GLC, and they

12  asked to continue those hearings.  Is that correct?

13        Mr. Steel, is that correct?

14        MR. STEEL:  Yes, Your Honor.  That's correct.

15        THE COURT:  All right.  I know that it's a little bit

16  unusual because a committee was formed that, based upon the

17  oral ruling and now the written ruling that I've just

18  completed, that there are no committee members and the office

19  of the U.S. Trustee told me last week that there were no other

20  acceptances.

21        Mr. Cossitt, I need you to make an appearance at this

22  time, please.

23        MR. COSSITT:  Bill Cossitt, Office of the United

24  States Trustee.  We received no responses to the second

25  solicitation, Your Honor.

1    THE COURT:  Thank you.  Therefore there is no

2    committee.

3    MR. COSSITT:  There is no committee.

4    THE COURT:  Thank you.  So that, of course, leads to

5    a little bit of a conundrum, which is how can it be employed by

6    an entity that doesn't exist right now.  However, I don't have

7    any problem in appointing, just to let you know, and I have

8    seen no objections to these applications.

9    And I don't really know what the position is of the

10   U.S. Trustee, and I'm going to ask Mr. Cossitt.  But I don't

11   have, at least in theory, a problem with the appointment,

12   understanding that it's nunc pro tunc because of the services

13   that were provided.  Then we would evaluate what those services

14   are.

15   I know that GLC wanted a minimum of seven months.  I

16   obviously can't do that.

17   MR. COSSITT:  That one has been amended, Your Honor,

18   by them.  But all that should be heard on the date it's being

19   continued to.

20   THE COURT:  That's acceptable to your office?

21   MR. COSSITT:  Yes.  And in terms of the U.S. Trustee,

22   it's our position that it's the same as other professionals.

23   You may start employment before your approval, and that isn't

24   prohibited nor should it be because nobody could get a running

25   start -- you would never get things done around here.  It would

1    be even slower than it is now.

2            THE COURT:  I concur.

3            MR. COSSITT:  Yeah.

4            THE COURT:  Okay.  So we'll hear those on July 8th.

5    I was just told there was an amendment to GLC.  I haven't seen

6    that.

7            MR. COSSITT:  It's filed, Your Honor, or at least I

8    received it.  It's -- they are asking for a fee of 300,000

9    and --

10           THE COURT:  For two months.

11           MR. COSSITT:  -- and changing it from 328 approval to

12   330 approval.

13           THE COURT:  And review under 327.

14           MR. COSSITT:  Well, 330, yes.

15           THE COURT:  Which is, of course, what I would have

16   done.  I noted that in their --

17           MR. COSSITT:  Okay.

18           THE COURT:  -- application.

19           MR. COSSITT:  But those issues, again, we can address

20   them at the hearing date --

21           THE COURT:  Thank you very much.

22           MR. COSSITT:  -- when people got a chance to --

23           THE COURT:  It just allows me to move some of the

24   paper from in front of me.  I have plenty.

25           As I've indicated, I reviewed the transcripts of the

1    hearings that have been conducted in this case; I reviewed the

2    proposed findings of fact and conclusions of law; I've reviewed

3    the proposed order.

4            There are going to be a couple of -- at least two

5    changes that I'm aware of that we're going to need to do in

6    proposed findings, but let me make my record first.  I have

7    notebooks all over but I'm going to try to be complete.

8            The disclosure statement is docket number 2797.  I

9    have reviewed it again for the purposes of today's hearing.  I

10   have already approved it.

11           Exhibit A was the joint plan.  I have reviewed that.

12   I know that the joint plan was amended by docket number 3186

13   and docket number 3253.  They really didn't change any

14   provision of the plan as it related to the GVR entity, and, in

15   fact, the findings so state and that's accurate.

16           So what I have concentrated on was a notebook that

17   was provided to me for the hearing of May 25th, which is docket

18   number 3253, which is the plan that's before me today, and that

19   is the one that I have added to.

20           I did go back and review the asset purchase

21   agreement.  One of the problems that I had was finding an

22   effective date.  I know there's various conditions to effective

23   date, but I think that we're going to need to have those

24   clarified, and what that -- in the order.  I'm not, I think --

25   because some of the conditions already occurred.

1   So I think we need to clarify that.  I think the

2   effective date is important.  So I'm going to -- and I know I

3   went through this.  It doesn't do me much good when I read the

4   plan, and it says the effective date has -- I guess it's the

5   asset purchase agreement.  That's what I thought it -- I

6   couldn't find it in the plan; I couldn't find it in the

7   disclosure statement.

8   So I looked in the APA, and it says the effective

9   date has the meaning set forth in the preamble.  Not much help

10   because the preamble doesn't say anything about the effective

11   date, assuming that the preamble is the beginning of the

12   agreement, which by definition it should be.

13   So I can't find it.  So we're going to have to give

14   some thought to exactly what will trigger the effective date,

15   because there's a number of occurrences that must take place to

16   consummate this plan: the assumption of the GVR purchase

17   agreement; the assumed liabilities -- all those transactions

18   that are referred to throughout a variety of pleadings.  So I

19   do have -- I have reviewed that.

20   By the way the asset purchase agreement was Exhibit D

21   to the plan.  And so I did read it.

22   Also there's constant reference to the GVR purchaser,

23   but we know, do we not, that the GVR purchaser is Station GVR

24   Acquisitions, LLC.  Isn't that correct?

25   MR. SELIGMAN:  That's correct, Your Honor.

14

1          THE COURT:  And that is wholly owned by Station

2     Casino, LLC, also known as New Propco.  Correct?

3          MR. SELIGMAN:  That's correct.

4          THE COURT:  And Station, LLC, or New Propco, is owned

5     45 percent by what I will -- I'm not even sure any longer what

6     the entity is -- Fertitta Gaming, Fertitta Entertainment -- but

7     Fertitta controlled, 45 percent.

8          MR. SELIGMAN:  That's correct, Your Honor.

9          THE COURT:  Yeah.  And 40 percent by the lenders.

10         MR. SELIGMAN:  Right.

11         THE COURT:  And 15 percent by the creditors from the

12    prior cases that I've already confirmed.

13         MR. SELIGMAN:  That's correct, Your Honor.

14         THE COURT:  So that's -- I just think it's better to

15    refer to one entity, and it should be Station GVR Acquisition,

16    LLC.

17         I notice in Mr. Haskins' declaration, I think in

18    paragraph 17, that he said the purchaser was not a

19    corporation.  Well, a limited liability company is a

20    corporation, and that is kind of at odds with paragraph 28 of

21    his declaration.  But we have authority in this district

22    finding that LLCs be treated exactly the same as corporation,

23    just limited liability.

24         I don't think it makes any important difference, but

25    I think, when you get as complex a structure as existed in all

1    these cases, that specificity is helpful or else you get

2    tripped up between New Opco, New Propco -- who are all these

3    people?  And I think everybody's entitled to have so much

4    clarity as possible.  Now that was in volume II of some

5    notebooks that contained all the pleadings.

6              In volume I, there's the following -- and I've read

7    all of these matters.

8              Once again, docket number 3253, which is the plan.

9    It also provided me with pleadings I already had, and I pulled

10   them out separately.

11             I had docket number 3127, which was the preliminary

12   objection of the official committee of unsecured creditors when

13   it existed, filed on May 16th.  I have read it.  I read before

14   the hearing on May 25th.  I read the exhibits.

15             I allowed them to be filed under seal.  I'm sure

16   there's an order, but I haven't reviewed the order.

17             And then there was an amended preliminary objection,

18   filed docket number 3129, filed on the 23rd of May.  I read

19   that as well.  Some of the changes were subtle; others were

20   not.

21             What had happened, there had been certain occurrences

22   regarding discovery, the fact that I was going to set the

23   hearing on the 25th to make certain determinations regarding

24   the composition of the committee, and I had already agreed to

25   continue the hearing on the -- to the day.  And I think that

1    order is 3120 -- I can't remember.  I know it's in there and

2    I'll get to it.

3            I have also read the amended preliminary objection.

4    I've read the unredacted versions of all of those and the

5    exhibits attached thereto, and counsel can see -- you can see

6    that they are in fact tabbed.

7            And I read them because I thought that it's incumbent

8    upon the court to be aware of all the issues.  I have to make

9    certain findings under 1129, and it's helpful for me to read

10   the concerns that have been filed, and I have.  And I have.

11           I read the reply filed by the steering committee of

12   the first-lien lenders -- Mr. Murphy's pleading, I'm sure, and

13   that's docket number 3189, and it raised the intercreditor

14   agreement issues.  I obviously had read that before the hearing

15   on May 25th.

16           It also dealt with -- I read the same thing several

17   times.  I have the motion to adjourn.  At any rate I'm familiar

18   with it.

19           And then, as I said, I also received -- well, I

20   pulled them out separately at any event -- two other

21   objections.  I've only seen two other objections that were

22   filed.

23           One was docket number 3124, filed on May 16, on

24   behalf of Diane Dahlheimer (phonetic) who had allegedly

25   suffered some injuries in a fall that occurred January 17th,

1   2009, at the Green Valley Ranch.  And that was filed by a

2   supplemental opposition that contained some pretty good points

3   and authorities, frankly -- docket number 3368, filed on June

4   2nd.  I've read both of those.

5          I did not see where there was a reply, but based upon

6   the memorandum of law that I've read and the treatment of the

7   objection, I know that there were negotiations that were

8   entered into between counsel for the debtor and counsel for

9   this creditor, that it had been resolved, and Ms. Dahlheimer

10  has withdrawn her objection.  So that objection no longer

11  exists.  She's going to be allowed to proceed regarding -- and

12  collect on insurance proceeds.  It's, in sum, what has

13  occurred; correct?

14         MR. SELIGMAN:  That's correct, Your Honor.

15         THE COURT:  That's good.

16         The other objection was filed by Kathy Green

17  (phonetic).  Is counsel for Ms. Green either here or on the

18  telephone?  No.

19         I read the objection.  It really -- it tends to

20  support the claim that she has.  Once again, it's a premises

21  liability issue.  Counsel did not do as complete an analysis as

22  I found in the objection from Ms. Dahlheimer.

23         But, you know, you've got $8,100 in medical

24  specialists; you've got $2,000 in lost wages.  I'm not sure

25  that counsel's $100,000 value is correct, but why isn't she

1    being treated the same way as Dahlheimer?

2            MR. SELIGMAN:  Your Honor, we did reach out to

3    counsel, and we offered to try and resolve the objection, to

4    make clear that it was a proof of claim.  There wasn't a

5    request specifically with respect to insurance.  We would have

6    been happy to do that stipulation, but it --

7            THE COURT:  I don't want to take this woman, and her

8    only remedy might be somebody else's ENO carrier, because they

9    overlooked what they probably should be doing here, and perhaps

10   that lawyer should have sought benefit of bankruptcy counsel.

11   And I see no reason not to provide for the same type of relief.

12           MR. SELIGMAN:  Your Honor, that would --

13           THE COURT:  The insurance proceeds -- come on.  That

14   should be -- to me it's a --

15           MR. SELIGMAN:  Your Honor, that would have been fine

16   with us too, the stipulation --

17           THE COURT:  I want that --

18           MR. SELIGMAN:  -- about insurance proceeds.

19           THE COURT:  -- in my findings.  That's one of the

20   changes.

21           MR. SELIGMAN:  We will add that and make it

22   consistent with the Dahlheimer.

23           THE COURT:  I'm not saying what you did was improper,

24   incorrect.  I see no logical distinction.

25           MR. SELIGMAN:  Right.  If that was the request we

1    would have been happy to do it, but that was --

2              THE COURT:  That's my request.

3              MR. SELIGMAN:  That's totally fine, Your Honor.

4              THE COURT:  Thank you.

5              So as it stands right now, I have no outstanding

6    objections; is that correct?

7              MR. SELIGMAN:  That is correct, Your Honor.

8              THE COURT:  Okay.  I have also read the following:

9    the balance summary in docket number 2895.  And I read -- that

10   was filed on April 27th and it shows that class GVR, I think, 2

11   has voted in favor.  That was the impaired class.

12             Others I have been deemed to reject because they are

13   receiving nothing under the plan -- three, four, and five.  And

14   therefore confirmation will require analysis under 1129(b).

15             I have reviewed the prepetition solicitation

16   materials.  There were filed on May 3rd, docket number 2933.

17             There were two supplements to the plan.  The first

18   was filed on May 13th, 2011.  It's docket number 3087.  As far

19   as I can determine, based on my review, it's simply a schedule

20   of executory contracts and unexpired leases to be assumed and

21   assigned to the buyer.  Is that correct?

22             MR. SELIGMAN:  That's correct, Your Honor.

23             THE COURT:  And then there was a first amendment to

24   that plan supplement, docket number 3382, filed on the 6th of

25   June, that did exactly the same.  It's additional executory

1    contracts and unexpired leases.  Is that correct?

2            MR. SELIGMAN:  It was actually a removal of one

3    contract to be assumed.

4            THE COURT:  That's the only change?

5            MR. SELIGMAN:  Yes.

6            THE COURT:  Okay.  The motion to adjourn the hearing

7    that was set for May 25th is docket number 3217.  I reviewed

8    that.

9            I have, as indicated, docket number 3253 in front of

10   me, and I spent considerable time reviewing it.

11           I have reviewed, but I did not study, the orders and

12   the findings of fact regarding the other -- the SCI subsidiary

13   and Aliante subsidiary confirmed plans.  I had read them

14   enough.

15           I have read the following: I have read the proposed

16   draft order, the proposed draft findings -- I'll go through

17   those in a few minutes.

18           I have reviewed the memorandum of law filed as docket

19   number 3390 on the 6th of June.  Filed at 10 minutes to

20   midnight.

21           You know, it doesn't do me much good to have things

22   filed in the middle of the night, and it caused for a very long

23   day and evening yesterday and last night to read these.

24           We do not rubber stamp matters here, and if you're

25   going to file them, it strikes me that they are to serve two

1    purposes.  One, you want me to read them.  And two, you want

2    the record.  Well, you've made the record, and now -- and I

3    will tell you that I have read them.

4            But, Ms. Carlyon (phonetic), Mr. Shea's partner, got

5    a phone call from me yesterday morning asking where these were,

6    these pleadings.  And the copy service was able to get it here

7    several hours before they promised me they would be here.  I

8    assume I can thank Ms. Carlyon for that.

9            But frankly, I really don't know, sometimes, what

10    lawyers expect, especially in a case where the hearing had

11    already been adjourned.  Anyway, I've read them.

12            I read the declaration of Richard Haskins, filed as

13    docket number 3391.  I think there's -- would somebody please

14    turn to paragraph 19 of his declaration.

15            There's a sentence in here that doesn't make any

16    sense to me, and that may be my fault.  It says -- because I

17    was concerned about the settlement for lease provisions.

18    That's in section 10, and I know section 11 is the

19    exculpation.  But it says:  "Article 10 of the plan also

20    contains certain settlement and release provisions."  And I've

21    gone through those in considerable detail.  I'll just point

22    that out.

23            "The comprehensive settlement and global

24            settlement as described in the plan and

25            disclosure statement are fundamental

1          components of the overall restructuring

2          contained in the plan because they assured

3          GVR and its estate that the plan and the

4          distributions made thereunder will result

5          in the final settlement in satisfaction of

6          various claims against and equity interest

7          in GVR."

8          I do not know what that means.  I understand

9     settlement of -- satisfying claims against -- who?  It says,

10    "and equity" after that.  Something must have been left out.

11    But I went back and reviewed it but I don't know what that's

12    intended to mean.

13          And the page before is where he said, at paragraph

14    17, "GVR is not issuing equities, and the GVR purchaser is not

15    a corporation."

16          And then I looked at paragraph 28 where he says,

17    "There is no substantial similarity" -- well, first of all

18    paragraph 27 says," the consideration being paid for the GVR

19    purchase asset is cash not the stock of the GVR purchaser."

20    Well, if he was right it wasn't a corporation, there couldn't

21    be stock.

22          But then you look at paragraph 28, "There is no

23    substantial similarity between the shareholders of GVR and the

24    shareholders of GVR purchaser."  Well, if you're going to have

25    shareholders of GVR purchaser, it's got to be a corporation.

1  That's why I did the breakdown of the ownership and made sure I

2  understood the ownership.  I think that this declaration was

3  incorrect in that respect.

4       I have also read the declaration of Evan Pierson

5  (phonetic) and reviewed all the exhibits.  In fact, the

6  exhibits were the most important part.

7       I read the declaration of Lawrence X. Taylor

8  (phonetic).  I think I better include the "X" if he's from New

9  York.  At any rate, the declaration of Lawrence X. Taylor in

10 support of confirmation and the exhibits attached thereto.  It

11 sounded to be very helpful.

12      There was a motion filed to seal docket number 3395,

13 and I signed an order sealing certain portions.

14      And I have the unredacted declarations of Pierson --

15 Mr. Pierson and Mr. Taylor.  Mr. Taylor is with Odyssey

16 Consulting, and that -- he did most of the work for the

17 investigation committee -- a committee of one, Mr. Bible, and

18 so I'm familiar with that.

19      I have read the declaration of Walt Brown (phonetic)

20 who provided an analysis of any potential preference payments.

21 That's docket number 3392.  And -- okay, hold it -- I have

22 annotated the -- followed the explanation that he provided to

23 me of the payments.

24      I did look briefly at docket number 3186, that was

25 the first amended plan.  That was when PSI was added.  Not

1    really germane.

2          And then I received this morning a notice of filing

3    an amended statement of financial affairs, docket number 3407.

4          Have I read all the pleadings that have been -- that

5    anyone has filed regarding the hearing that I have settled for

6    today -- that I set for today?

7          MR. SELIGMAN:  Your Honor?

8          THE COURT:  Please.

9          MR. SELIGMAN:  David Seligman on behalf of the

10   debtors.

11         Your Honor, the other items which I just wanted to

12   mention for the record which I know you've stated you've read

13   before, was several first day declarations --

14         THE COURT:  Well, I've read all the first days.  I

15   went back.  I know that you referred to them in the findings.

16   One moment.  I'm looking at the proposed findings, and you --

17   well, you can't see.  But I went through and checked off each

18   docket number and have insured that I read them.

19         And in fact, one of the changes will be in paragraph

20   9, if you want to turn to your findings, proposed findings, and

21   I can give you the docket numbers that were blanks.

22         Memorandum of law is 3390.

23         Then I read the docket numbers -- Mr. Friel's

24   declaration, Mr. Bible's declaration, Dr. Knave's (phonetic),

25   Mr. Haskins'.  Mr. Haskins, and this is docket number 3391.

1  Mr. Pierson is 3393.  Walt Brown is 3392.  Lawrence X. Taylor

2  is 3394.  All right?  So I did read them.

3          MR. SELIGMAN:  Thank you, Your Honor.

4          THE COURT:  Is there anything else?  Any other

5  pleadings I may have overlooked?

6          MR. SELIGMAN:  I don't believe so, Your Honor.

7          THE COURT:  Okay.  Thank you.  As I did when I

8  considered the SCI subsidiary and the Aliante plans, I have

9  reviewed in detail the findings and the conclusions as well as

10 the proposed order.  I adopt those as my findings and

11 conclusions.

12         There's -- I need to look at one on the order at

13 paragraph -- proposed order at paragraph 41.

14         By the way, I went through, just so -- I'm very

15 concerned in every case about the settlements.  I know that

16 they are voluntary by the -- because I first said what does

17 that mean, "indicate."  Then I realized that they're indicating

18 an imbalance, so I'm willing to allow the word "indicate."

19 Those are the third party releases.

20         And I understand what the global settlement is; I

21 understand what's being released.  And the exculpation applies

22 to a large number of parties for their work on the bankruptcy

23 case and the plan, and I understand that.

24         Paragraph 41 of the order, do we need that now?

25         MR. SELIGMAN:  Your Honor, I don't believe we need

1    it.

2              THE COURT:  I think it should be rewritten.  It says,

3    "As a result of the order that was entered" -- whenever the

4    order is that I just approved today, that the committee -- that

5    the U.S. Trustee resolicited and that there were no responses

6    to that office's resolicitation.  And I think that that should

7    be what's in here.

8              MR. SELIGMAN:  We will make that change.

9              THE COURT:  I think it's paragraph 9 of the plan that

10   deals with the effective date, starting on page 129 of the

11   plan.  Yes.  There you've got certain --

12             First of all, there will be separate hearings.

13   That's accomplished.

14             B, conditions to proceed with the confirmation -- all

15   right.  You'll get an order.

16             Condition proceed to the occurrence of the applicable

17   effective date.  And then you'd list, what?  A through H.  And

18   you'll have an order for paragraph A.  Order for paragraph B.

19   I think C's already been accomplished.  I don't know what you

20   intend to do regarding D.  E, I'm sure is accomplished.  F, has

21   that been accomplished?

22             MR. SELIGMAN:  Yes, Your Honor.

23             THE COURT:  I thought so.

24             G, I'm not sure of any regulatory approval that's

25   necessary.  Or is it necessary?

1          MR. SELIGMAN:  Well, Your Honor, I'm sorry.  I was

2     looking at the -- under section 2, the conditions precedent to

3     GVR effective date.

4          THE COURT:  I'm sorry.  That's where I belong.  I was

5     looking at the -- -- I'm sorry.  You're right.  I have the tab

6     here.  The regulatory is F.  Is there more regulatory authority

7     approval that needs to be -- do you need more --

8          MR. SELIGMAN:  Not to my --

9          THE COURT:  Do you have to go in front of the gaming

10    commission?

11         MR. SELIGMAN:  There's no further regulatory

12    approvals on the gaming side that I'm aware of.  Yes, I'm

13    getting confirmation.  That's correct.

14         THE COURT:  That's what I would have thought.  Okay.

15         After reading all of these, when is going to be the

16    effective date?

17         MR. SELIGMAN:  Your Honor, David Seligman again.

18      Your Honor, I believe the idea of the effective date is we

19    want to have it occur as soon as possible, as we've -- as you

20    are well aware, with the Station's plan being confirmed, the

21    idea is just to go effective on that one as soon as possible.

22    I don't know that there was any specific date, but with the

23    regulatory approval behind us, I think that it's sort of an as-

24    soon-as-possible track.  I don't think that there is --

25         THE COURT:  How about a "not later than"?

28

```
 1            MR. SELIGMAN:  If you'll give me a moment, Your
 2    Honor?
 3            THE COURT:  Sure.
 4            MR. SELIGMAN:  Your Honor, I was just confirming with
 5    my client.  The actual schedule is -- the idea is to try and
 6    close Stations actually next week, June 15th.  So I think the
 7    idea would be to try and close GVR at or around that time frame
 8    as well.
 9            THE COURT:  June 15th was a deadline for
10    confirmation, as I understand it.  Is that correct?
11            MR. SELIGMAN:  That's correct, Your Honor.
12            MR. MURPHY:  That's correct, Your Honor.
13            THE COURT:  Was there an effective day?
14            MR. MURPHY:  June 30.
15            MR. SELIGMAN:  There was also --
16            THE COURT:  That's going to be the effective date
17    then.
18            MR. SELIGMAN:  That June 30th date was the outer end
19    of --
20            MR. MURPHY:  The last date for on effective date.
21            THE COURT:  That gives you more than enough time
22    then, doesn't it?
23            MR. SELIGMAN:  Yeah.  No, I don't think it's the --
24    oh, so you're saying, Your Honor, no later than June 30th.
25            THE COURT:  That's exactly what I'm saying.
```

```
1              MR. SELIGMAN:  I think that that is -- that's fine,
2    Your Honor.
3              THE COURT:  That way everybody knows.
4              MR. SELIGMAN:  That's fine, Your Honor.
5              THE COURT:  Thank you.
6              MR. MURPHY:  Thank you, Your Honor.
7              THE COURT:  So change the date.  That should be in
8    the findings; it should be in the order.
9              MR. MURPHY:  Your Honor, if I may?
10             THE COURT:  One moment, please.  I'm going through my
11   notes.  All right.  Let me just --
12             MR. MURPHY:  Just to correct a point on the record
13   from a few --
14             THE COURT:  Oh, please.
15             MR. MURPHY:  -- moments ago, if I may.
16             As we were going through conditions precedent to
17   effective dates, there was -- we spent a little time in section
18   1 before moving over to --
19             THE COURT:  But that was wrong.
20             MR. MURPHY:  -- section 2.
21             THE COURT:  I was in the wrong section.
22             MR. MURPHY:  Well, therefore, I wanted to point out
23   that subsection E, while it may have been met for the other
24   plans, is it the one we were just talking about --
25             THE COURT:  Right.
```

1          MR. MURPHY:  -- a moment ago.  And the conditions for

2    the purchase agreement to close are found in article 10 --

3          THE COURT:  Right.

4          MR. MURPHY:  -- of the APA, which APA, regrettably,

5    using the term "effective date" in a way completely alien to

6    how you use it, Your Honor, but uses it --

7          THE COURT:  That's when I said go back to the

8    preamble.

9          MR. MURPHY:  That's when my client signed their PSA,

10   her plan support agreement.  That's what "effective date" means

11   in the APA.

12         THE COURT:  Okay.  That's helpful.

13         MR. MURPHY:  The real conditions that have to be

14   met --

15         THE COURT:  I have the PSA, by the way, in front of

16   me.

17         MR. MURPHY:  I believe so.

18         THE COURT:  I use --

19         MR. MURPHY:  But the conditions that will need to be

20   met by June 30 are those --

21         THE COURT:  We should clarify --

22         MR. MURPHY:  -- in article 10 of the APA.

23         THE COURT:  -- PSA is plan support agreement.  Okay.

24   Fine.  Thank you, that is helpful.

25         MR. MURPHY:  Thank you.

1        THE COURT:  I was just struggling to find out when

2   the parties intended this to occur.  Now we know, not later

3   than June 30th, and that's fine by me.

4        MR. MURPHY:  I'm fine with first-lien lenders as

5   well, Your Honor.

6        THE COURT:  I assumed it would be.  Okay.

7        Do you have any evidence to offer, other than the

8   evidence that has been submitted in the form of an affidavit or

9   declaration?

10       MR. SELIGMAN:  Your Honor, that was it.  The only

11  housekeeping matter was that for two of the declarants,

12  Mr. Pierson and Mr. Taylor, because they were submitting

13  reports we were going to be tendering them as experts with

14  respect to the matters set forth in their reports.  And so we

15  tender them for that purpose and ask for admission into

16  evidence.  But other than that there's nothing else, Your

17  Honor.

18       THE COURT:  Well, let me make this clear that I am

19  going to consider all of the declarations that I referred to

20  that are already in the findings as part of the evidentiary

21  basis for my ruling together with all the exhibits that were

22  attached thereto.  I saw no objections.  I've read them; I'm

23  going to consider them and have considered them.  So the

24  findings are correct on that point.

25       Does anybody else have any evidence they wish to

1   offer at this time?  No.  All right.

2           I've already, as indicated reviewed the findings and

3   the conclusions.  I don't -- I've reviewed the memorandum of

4   law, which is a very detailed explanation, going through all of

5   the various provisions of 1129(a) and the sub parts thereof,

6   1122, 1123, 1125, 1126.

7           I have studied the 1129(b) analysis.  It's really

8   based on the second portion of 1129(b)(2)(B) which is the "or,"

9   which is the absolute priority rule, because the entire amount

10  of the 500 million is going to go to the first-lien creditors;

11  there will be no payment to either the second-lien lenders or

12  to any unsecured creditors in this case.  And I understand

13  that.  So it appears to me that the absolute priority rule has

14  been satisfied.

15          So I don't think I need much argument, but I've given

16  you the opportunity if there's anything I've overlooked or you

17  think I need to hear, counsel.

18          MR. SELIGMAN:  Your Honor, David Seligman on behalf

19  of the debtors.

20          Your Honor, as I was going through my notes, I

21  don't -- other than a recitation of the satisfaction of the

22  1129 confirmation standards which Your Honor has already eluded

23  to, I don't think that I have anything additional to add in

24  terms of arguments unless Your Honor had any specific

25  questions, which --

1          THE COURT:  I've been through --

2          MR. SELIGMAN:  -- I know you'd have asked --

3          THE COURT:  -- my questions.

4          MR. SELIGMAN:  -- if you had.  So I think with that,

5     Your Honor, I don't think we have anything else.

6          The one thing I just want to add, Your Honor, is on

7     the memorandum of law, I do apology for us getting to that

8     late.  We were waiting just to see if the individual lenders

9     were going to file something on Monday afternoon.

10          But be that as it may, we apologize for

11     inconveniencing you and certainly Your Honor has been very good

12     about reading all these documents in this case.  So with that,

13     Your Honor, I don't have anything else unless Your Honor has

14     any questions.

15          THE COURT:  I don't.  Does anybody else wish to be

16     heard regarding this matter?

17          Counsel, I think your client wants to talk to you.

18          All right then.  I am going to confirm the plan of

19     reorganization.  I would sign the findings and conclusions as

20     amended or modified, as I've placed on the record today,

21     together with the order.  I don't think I've overlooked

22     anything.

23          I know that at the beginning of the hearing I didn't

24     ask for counsel to enter their appearances because I didn't

25     want, frankly, to waste everybody's time.  Please make sure

1    that you talk to my courtroom deputy and your appearances are

2    noted.

3              We do -- I know there are a number of participants by

4    telephone.  The service that provides telephonic participation

5    has provided us a list of those folks, so we have that.

6              I think the next hearing I have in this matter, then,

7    will be on July 8th.

8              Is there anything that anybody wishes to bring to my

9    attention at this time?  Mr. Shea?

10             MR. SHEA:  Your Honor, I just wanted to make sure you

11   put these --

12             THE COURT:  Please go to the podium.

13             MR. SHEA:  Good morning, Your Honor.  James Patrick

14   Shea of Shea and Carlyon, appearing as Nevada counsel for GVR.

15             With regards to the orders that were discussed

16   previously, I'm assuming that no one will have -- they won't

17   have to recirculate it -- just to leave it to the court.

18             THE COURT:  They are my orders.  They are my orders.

19             MR. SHEA:  Correct, Your Honor.

20             THE COURT:  They are my findings.  No.  Very well.

21             MR. SHEA:  I just wanted to --

22             THE COURT:  Just submit them to me.

23             MR. SHEA:  Given the short time frame --

24             THE COURT:  Just give them to me.

25             MR. MURPHY:  -- that we discussed, I just wanted to

1   confirm that so there wouldn't be --

2           THE COURT:  We've already --

3           MR. SHEA:  -- a need to --

4           THE COURT:  -- done that.

5           MR. SHEA:  Thank you, Your Honor.

6           THE COURT:  The 9021 process has been concluded.  You

7   now have my findings and my order.  Thank you very much.  Good

8   question.

9           MR. SHEA:  Thank you.

10          THE COURT:  You're welcome.  Is there anything else?

11  Thank you all very much.

12      (Proceedings Concluded)

13

14

15

16      I certify that the foregoing is a correct transcript from

17  the record of proceedings in the above-entitled matter.

18

19

20  Dated: June 9, 2011                    *Alexandra MacDonald*

21                                 AVTranz, Inc.
                                   845 North Third Avenue
22                                 Phoenix, AZ  85003

23

24

25