**Entered on Docket**
**June 10, 2011**

_____
**Hon. Gregg W. Zive**
**United States Bankruptcy Judge**

James H.M. Sprayregen, P.C. (IL No. 6190206)
David R. Seligman, P.C. (IL No. 6238064)
Sarah H. Seewer (IL No. 6301437)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, Illinois  60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
james.sprayregen@kirkland.com
david.seligman@kirkland.com
sarah.seewer@kirkland.com

Reorganization Counsel
for GVR

Candace Carlyon (NV No. 002666)
James Patrick Shea (NV No. 000405)
Brandon P. Johansson (NV No. 012003)
SHEA & CARLYON, LTD.
701 Bridger Avenue, Suite 850
Las Vegas, Nevada  89101
Telephone:    (702) 471-7432
Facsimile:    (702) 471-7435
ccarlyon@sheacarlyon.com
jshea@sheacarlyon.com
bjohansson@sheacarlyon.com

Special Local Reorganization Counsel
for GVR

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11<br>Case No. 09-52477 |
| STATION CASINOS, INC., *et al.*, | |
| Debtors and Debtors in Possession.[1] | Jointly Administered 09-52470 through<br>09-52487, 10-50381, 11-51188, 11-51190<br>through 11-51219, and 11-51702 |
| ☒   Affects all debtors listed in footnote 2[2] | **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING MOTION OF GVR FOR AN ORDER DIRECTING THE U.S. TRUSTEE TO REMOVE THE SECOND LIEN LENDERS FROM THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**<br><br>Hearing Date:    May 25, 2011<br>Hearing Time:    10:00 a.m.<br>Place:    300 Booth Street<br>Reno, NV 89509 |

[1]   The debtors in these jointly administered chapter 11 cases are:  (i) Station Casinos, Inc.; Northern NV Acquisitions, LLC; Reno Land Holdings, LLC; River Central, LLC; Tropicana Station, LLC; FCP Holding, Inc.; FCP Voteco, LLC; Fertitta Partners LLC; FCP MezzCo Parent, LLC; FCP MezzCo Parent Sub, LLC; FCP MezzCo Borrower VII, LLC; FCP MezzCo Borrower VI, LLC; FCP MezzCo Borrower V, LLC; FCP MezzCo Borrower IV, LLC; FCP MezzCo Borrower III, LLC; FCP MezzCo Borrower II, LLC; FCP MezzCo Borrower

## I.       INTRODUCTION.

1.      On April 12, 2011 (the "Petition Date"), the above captioned Subsidiary Debtors (excluding GV Ranch Station, Inc. which had a chapter 11 case already pending), the Aliante Debtors and GVR (collectively, the "Debtors") commenced their chapter 11 cases (the "Chapter 11 Cases") in this Court.  Pursuant to an order of this Court, the Chapter 11 Cases are jointly administered with the SCI Cases.  Also on April 12, 2011, the Debtors filed their "Prepackaged Joint Chapter 11 Plan of Reorganization for Subsidiary Debtors, Aliante Debtors and Green Valley Gaming, LLC (Dated March 22, 2011)" (the "Plan"), and their "Disclosure Statement to Accompany Prepackaged Joint Chapter 11 Plan of Reorganization for Subsidiary Debtors, Aliante Debtors and Green Valley Gaming, LLC (Dated March 22, 2011)" (the "Disclosure Statement") (both at docket no. 2797).  On May 26, 2011, the Court entered an order confirming the Plan as modified (docket no. 3280), with respect to the Subsidiary Debtors and the Aliante Debtors only.

2.      On April 29, 2011, the United States Trustee for the District of Nevada (the "U.S. Trustee") appointed MFS Investment Management, Panton Capital Group and Babson Capital Management, LLC (collectively, the "Second Lien Lenders") to serve on the Official Committee of Unsecured Creditors in GVR's chapter 11 case (the "Committee") (docket no. 2917).

3.      On May 11, 2011, GVR filed its "Motion of GVR for an Order Directing the U.S. Trustee to Remove the Second Lien Lenders from the Official Committee of Unsecured Creditors" (docket no. 3021) (the "Motion").  Joinders in Support of the Motion were filed by the

---

I, LLC and FCP PropCo, LLC (collectively, the "SCI Debtors"), (ii) Auburn Development, LLC; Boulder Station, Inc.; Centerline Holdings, LLC; Charleston Station, LLC; CV HoldCo, LLC; Durango Station, Inc.; Fiesta Station, Inc.; Fresno Land Acquisitions, LLC; Gold Rush Station, LLC; Green Valley Station, Inc.; GV Ranch Station, Inc.; Inspirada Station, LLC; Lake Mead Station, Inc.; LML Station, LLC; Magic Star Station, LLC; Palace Station Hotel & Casinos, Inc.; Past Enterprises, Inc.; Rancho Station, LLC; Santa Fe Station, Inc.; SC Durango Development LLC; Sonoma Land Holdings, LLC; Station Holdings, Inc.; STN Aviation, Inc.; Sunset Station, Inc.; Texas Station, LLC; Town Center Station, LLC; Tropicana Acquisitions, LLC; Tropicana Station, Inc.; and Vista Holdings, LLC (collectively, the "Subsidiary Debtors"), (iii) Aliante Gaming, LLC, Aliante Holding, LLC, and Aliante Station, LLC (collectively, the "Aliante Debtors"), and (iv) Green Valley Ranch Gaming LLC ("GVR").

[2]     These Findings of Fact and Conclusions of Law affect:  GVR.

1  Steering Committee of the First Lien Lenders of GVR (the "Steering Committee") (docket no.

2  3190, which incorporated by reference the Steering Committee's "Opposition to Creditors'

3  Committee's Motion to Adjourn the Confirmation Hearing as it Pertains to Green Valley Ranch

4  Gaming, LLC and Joinder to Motion of GVR for a Protective Order Forbidding Discovery by the

5  Unsecured Creditors' Committee, or in the Alternative Limiting the Scope of the Unsecured

6  Creditors' Committee's Document and Deposition Requests" (docket no. 3060)), Wilmington

7  Trust FSB, as GVR's First Lien Administrative Agent (docket no. 3202), and Station Casinos,

8  Inc. (docket no. 3218) (collectively, the "Joinders").

9          4.      On May 12, 2011, upon an *ex parte* application of GVR (docket no. 3022)

10  and the related attorney information sheet (docket no. 3020), the Court entered an order

11  shortening time on the Motion, setting May 25, 2011 at 10:00 a.m. as the hearing on the Motion,

12  and established May 23, 2011 at 12:00 p.m. as the deadline to file oppositions to the Motion

13  (docket no. 3035).

14          5.      On May 23, 2011, the U.S. Trustee filed an objection to the Motion

15  (docket no. 3208) (the "U.S. Trustee Objection") and a declaration of William B. Cossitt in

16  support of same (docket no. 3209).

17          6.      Also on May 23, 2011, the Committee filed an objection to the Motion

18  (docket no. 3210) (the "Committee Objection").

19          7.      A hearing to consider the Motion was held on May 25, 2011 (the

20  "Hearing").

21          8.      The Court has considered the Motion and the exhibits thereto, including

22  the letter from David R. Seligman, P.C. of Kirkland & Ellis LLP to William Cossitt Esq., dated

23  May 6, 2011; Mr. Cossitt's letter to Mr. Seligman dated May 10, 2011; the First Lien Credit

24  Agreement dated as of February 16, 2007; the Second Lien Credit Agreement dated as of

25  February 16, 2007; and the Intercreditor Agreement dated as of February 16, 2007 among GVR

26  as Borrower, and Bank of America, N.A. as First Lien Collateral Agent, Second Lien Collateral

27  Agent and Control Agent (the "Intercreditor Agreement").

28

1    9.    The Court has considered all the papers filed in support of the Motion,

2    including the Joinders, and submissions made at the Hearing.  The Court has also considered and

3    taken judicial notice of various pleadings and documents filed with the Court, including the U.S.

4    Trustee Objection; the Committee Objection; GVR's Summary of Schedules, Schedule D -

5    Creditors Holding Secured Claims, and Schedule F - Creditors Holding Unsecured Non-Priority

6    Claims (docket no. 2988).  The Court has considered the cases cited by counsel in the Motion,

7    the Joinders, the U.S. Trustee Objection and the Committee Objection, including without

8    limitation *In re Ion Media Networks, Inc.*, 419 B.R. 585 (Bankr. S.D.N.Y. 2009); *In re Boston*

9    *Generating, LLC*, 440 B.R. 302 (Bankr. S.D.N.Y. 2010); *In re JNL Funding Corp.*, 438 B.R. 356

10   (Bankr. E.D.N.Y. 2010); *In re Erickson Retirement Communities*, 425 B.R. 309 (Bankr. N.D.

11   Tex. 2010); *In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002); *In re Pierce*, 237 B.R. 748

12   (Bankr. E.D. Cal. 1999); *In re Seascape Cruises Ltd.*, 131 B.R. 241 (Bankr. S.D. Fla. 1991), and

13   *In re Sharon Steel Corp.*, 100 B.R. 767 (Bankr. W.D. Pa. 1989).

14   10.   The Court also considered the transcripts from the Court's April 14 and

15   May 18, 2011 hearings in this these Chapter 11 Cases (docket nos. 2856 and 3228, respectively).

16   The Court also considered the transcript from the hearing on the *Application by Debtors for*

17   *Order Compelling the Office of the United States Trustee to Change the Membership of the*

18   *Official Committee of Unsecured Creditors* in the case of *In re Zante, Inc.* (Case No. 09-50746-

19   GWZ, June 1, 2009, docket no. 475).

20   11.   Subsequent to the Hearing, the Court held status conferences on May 31,

21   2011 and June 1, 2011.  The Court considered the transcripts from the Hearing (docket no. 3286)

22   and the May 31 and June 1 status conferences (docket nos. 3338 and 3354, respectively).

23   12.   The Court takes judicial notice of the Plan; the Plan Support Agreement

24   dated as of March 3, 2011 that was attached to the Disclosure Statement as Exhibit E; GVR's

25   List of Creditors Holding the 30 Largest Unsecured Claims (Case No. 11-51213, docket no. 1);

26   and GVR's Summary of Schedules, Schedule D and Schedule F.  The Court has entered a

27   separate order granting the Motion (the "Order") and makes the following Findings of Fact and

28   Conclusions of Law in connection therewith.

13.       Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.  These written Findings of Fact and Conclusions of Law shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Hearing in accordance with Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014, and such oral findings and conclusions are incorporated herein as though fully restated herein.

**II.       FINDINGS OF FACT**

14.       GVR commenced its chapter 11 case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code.  GVR has its principal place of business or principal assets in Nevada.

15.       There are various provisions of the Intercreditor Agreement that are relevant to this Court's determination.  Specifically, in Section 3.1(a)(i)(B) of the Intercreditor Agreement, the Second Lien Lenders agree not to:

> contest, protest or object to any foreclosure proceeding or action brought by the First Lien Collateral Agent or any First Lien Claimholder or any other exercise by the First Lien Collateral Agent or any First Lien Claimholder, of any rights and remedies relating to the Collateral under the First Lien Credit Documents or otherwise, provided that the respective interests of the Second Lien Claimholders attach to the proceeds thereof, subject to the relative priorities described in Section 2 and Section 4.

16.       Section 2.1 of the Intercreditor Agreement provides the following with respect to the priorities of the liens pursuant to the First Lien Credit Agreement and the Second Lien Credit Agreement:

> Relative Priorities. Notwithstanding the date, manner or order of grant, attachment or perfection of any Liens securing the Second Lien Obligations granted on the Collateral or of any Liens securing the First Lien Obligations granted on the Collateral and notwithstanding any provision of the UCC, or any applicable law or the Second Lien Credit Documents, the Second Lien Collateral Agent, on behalf of itself and the Second Lien Claimholders, hereby agrees that: (a) any Lien on the Collateral securing any

First Lien Obligations now or hereafter held by or on behalf of the First Lien Collateral Agent or any First Lien Claimholders or any agent or trustee therefor, regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be senior in all respects and prior to any Lien on the Collateral securing any of the Second Lien Obligations; and (b) any Lien on the Collateral now or hereafter held by or on behalf of the Second Lien Collateral Agent, any Second Lien Claimholders or any agent or trustee therefor regardless of how acquired, whether by grant, possession, statute, operation of law, subrogation or otherwise, shall be junior and subordinate in all respects to all Liens on the Collateral securing any First Lien Obligations.

17.     Section 2.4 of the Intercreditor Agreement provides that:

Prohibition on Contesting Liens.  Each of the Second Lien Collateral Agent, for itself and on behalf of each Second Lien Claimholder, and the First Lien Collateral Agent, for itself and on behalf of each First Lien Claimholder, agrees that it shall not (and hereby waives any right to) contest or support any other Person in contesting, in any proceeding (including any Insolvency or Liquidation Proceeding), the priority, validity or enforceability of a Lien held by or on behalf of any of the First Lien Claimholders in the First Lien Collateral or by or on behalf of any of the Second Lien Claimholders in the Second Lien Collateral, as the case may be; provided that nothing in this Agreement shall be construed to prevent or impair the rights of the First Lien Collateral Agent or any First Lien Claimholder to enforce this Agreement, including the priority of the Liens securing the First Lien Obligations as provided in Sections 2.1 and 3.1.

18.     Section 3.1(a)(ii) of the Intercreditor Agreement provides that:

Subject to Section 5.1, the First Lien Collateral Agent and the First Lien Claimholders shall have the exclusive right to enforce rights, exercise remedies (including set-off and the right to credit bid their debt) and make determinations regarding the release, disposition, or restrictions with respect to the Collateral without any consultation with or the consent of the Second Lien Collateral Agent or any Second Lien Claimholder; provided, that:

…

(D) in any Insolvency or Liquidation Proceeding, the Second Lien Claimholders shall be entitled to file any pleadings, objections, motions or agreements which assert rights or interests available to

unsecured creditors of the Grantors arising under either Bankruptcy Law or applicable nonbankruptcy law, in each case in accordance with the terms of Section 5.4.

19.    Section 3.1(c) of the Intercreditor Agreement provides that:

The Second Lien Collateral Agent, for itself and on behalf of the Second Lien Claimholders, agrees that (i) the Second Lien Collateral Agent and the Second Lien Claimholders will not take any action that would hinder, delay or impede any exercise of remedies under the First Lien Credit Documents, including any sale, lease, exchange, transfer or other disposition of the Collateral, whether by foreclosure or otherwise, and (ii) the Second Lien Collateral Agent, for itself and on behalf of the Second Lien Claimholders, hereby waives any and all rights it or the Second Lien Claimholders may have as a junior lien creditor or otherwise to object to the manner or order in which the First Lien Collateral Agent or the First Lien Claimholders seek to enforce or collect the First Lien Obligations or the Liens granted in any of the First Lien Collateral, provided that this clause (c) shall not prevent that Second Lien Collateral Agent and the Second Lien Claimholders from exercising the rights listed in the proviso in clause (ii) of Section 3.1 (a).

20.    Section 5.4 of the Intercreditor Agreement provides that:

Rights As Unsecured Creditors. Except as otherwise set forth in Section 2.1 or Section 3.1, the Second Lien Collateral Agent and the Second Lien Claimholders may exercise rights and remedies as unsecured creditors against any Grantor in accordance with the terms of the Second Lien Credit Documents and applicable law. Except as otherwise set forth in Section 2.1 and Section 4, nothing in this Agreement shall prohibit the receipt by the Second Lien Collateral Agent or any Second Lien Claimholders of the required payments of interest and principal so long as such receipt is not the direct or indirect result of the exercise by the Second Lien Collateral Agent or any Second Lien Claimholders of rights or remedies as a secured creditor (including set-off or recoupment) or enforcement of any Lien held by any of them.  Nothing in this Agreement impairs or otherwise adversely affects any rights or remedies the First Lien Collateral Agent or the First Lien Claimholders may have with respect to the Collateral.  In the event that any Second Lien Claimholder becomes a judgment Lien creditor as a result of its enforcement of its rights as an unsecured creditor, such judgment Lien shall be subject to the terms of this

-7-

1    Agreement for all purposes to the same extent as all other Liens
     securing the Second Lien Obligations subject to this Agreement.

2

3         21.     Section 6.2 of the Intercreditor Agreement provides that:

4
     Sale Issues.  The Second Lien Agent, on behalf of itself and the
5    Second Lien Claimholders, agrees that it will raise no objection to
     or oppose a sale or other disposition of any Collateral (and any
6    postpetition assets subject to adequate protection liens in favor of
     the First Lien Collateral Agent) free and clear of its Liens or other
7    claims under Section 363 of the Bankruptcy Code if the Requisite
     Lenders under the First Lien Credit Agreement have consented to
8    such sale or disposition of such assets so long as the interests of the
     Second Lien Claimholders in the Collateral (and any postpetition
9    assets subject to adequate protection liens, if any, in favor of the
     Second Lien Collateral Agent) attach to the proceeds thereof,
10   subject to the terms of this Agreement.  If requested by the First
     Lien Collateral Agent in connection therewith, the Second Lien
11   Collateral Agent shall affirmatively consent to such a sale or
     disposition.
12

13

14        22.     The "rights or remedies the First Lien Collateral Agent or First Lien

15   Claimholders may have with respect to the Collateral" referred to in Section 5.4 of the

16   Intercreditor Agreement includes the rights and remedies contained in Section 6 of the

17   Intercreditor Agreement.

18        23.     The Intercreditor Agreement does not contain any proscription on

19   unsecured creditors serving on the Committee.  But, to the extent an unsecured creditor is a party

20   to the Intercreditor Agreement, that creditor's service on the Committee might be severely

21   limited and might preclude the creditor from being an effective member of the Committee.

22        24.     The Second Lien Lenders did indicate a willingness not to recover based

23   upon any liens that may exist pursuant to the Second Lien Credit Agreement or related

24   documents or otherwise, and indicated a willingness to waive such liens, but not without certain

25   conditions, including orders from the Court, to which the First Lien Lenders objected and the

26   Court declined to grant.

27        25.     MFS Investment Management stated the following on its acceptance of the

28   solicitation to serve on the Committee:  "Although the second lien credit agreement does not

1    enable the MFS holders to waive subordinated liens absent consent of other second lien

2    creditors, we are prepared to serve on the official creditors' committee based on the presumption

3    that the second lien creditors are, in fact, 100 percent unsecured deficiency creditors.  We also

4    commit that should evidence come forward that the second lien creditors are not, in fact, 100

5    percent unsecured deficiency claimants, we will immediately inform the United States Trustee

6    and will then tender our resignation from the official creditors' committee."

7            26.    Panton Capital Group and Babson Capital Management, LLC included

8    substantially equivalent statements in their acceptances of the United States Trustee's

9    solicitation.

10            27.    The U.S. Trustee indicated that it intends to re-solicit creditors to serve on

11    the Committee.

12    **III.    CONCLUSIONS OF LAW**

13            28.    Section 1102(a)(1) of the United States Bankruptcy Code provides "…the

14    United States trustee shall appoint a committee of creditors holding unsecured claims…"

15    Section 1102(a)(4) further provides that, "[o]n request of a party of interest and after notice and a

16    hearing, the court may order the United States trustee to change the membership of a committee

17    appointed under this subsection, if the court determines that the change is necessary to ensure

18    adequate representation of creditors…."

19            29.    The Intercreditor Agreement is a valid and enforceable "subordination

20    agreement" as that term is used in section 510(a) of the Bankruptcy Code.

21            30.    The Intercreditor Agreement applies to the Second Lien Lenders as

22    members of the Committee.

23            31.    The sale of substantially all of GVR's assets that is contemplated in the

24    Plan is a "disposition of collateral" and an exercise of the rights and remedies of the First Lien

25    Collateral Agent and the First Lien Claimholders under the Intercreditor Agreement.

26            32.    The Intercreditor Agreement does not prohibit the Second Lien Lenders

27    from acting as unsecured creditors in accordance with section 3.1(a)(ii)(D) of the Intercreditor

28    Agreement, so long as they do so in accordance with section 5.4 of the Intercreditor Agreement,

1   which, by its reference to section 3.1, prohibits the Second Lien Lenders from contesting,

2   protesting, or objecting to the sale of GVR's assets that is contemplated in the Plan.

3           33.     While by this Order, the Court does not make any determinations as to the

4   rights, remedies, or obligations the parties may have under the Intercreditor Agreement, the First

5   Lien Credit Agreement, the Second Lien Credit Agreement or any related agreements, the

6   restrictions imposed upon Second Lien Lenders by the agreements cited in the foregoing

7   Findings and Conclusions, including the Intercreditor Agreement, would preclude the Second

8   Lien Lenders from adequately representing unsecured creditors.  The Court concludes that the

9   Second Lien Lenders cannot be members of the committee.

10          34.     No unsecured creditor that could be among the constituency of the

11  Committee would be subject to the restrictions contained in the Intercreditor Agreement

12  applicable to the Second Lien Lenders.

13          35.     In light of the foregoing, the Court concludes that the restrictions imposed

14  by the Intercreditor Agreement preclude the Second Lien Lenders from adequately representing

15  unsecured creditors of GVR.

16  \ \ \

17  \ \ \
    \ \ \
18

19

20

21

22

23

24

25

26

27

28

1    SUBMITTED BY:

2

3    */s/ Sarah H. Seewer*
     James H.M. Sprayregen, P.C. (IL No. 6190206)      Candace Carlyon (NV No. 002666)
4    David R. Seligman, P.C. (IL No. 6238064)           James Patrick Shea (NV No. 000405)
     Sarah H. Seewer (IL No. 6301437)                   Brandon P. Johansson (NV No. 012003)
5    KIRKLAND & ELLIS LLP                               SHEA & CARLYON, LTD.
     300 North LaSalle St.                              701 Bridger Avenue, Suite 850
6    Chicago, Illinois 60654                            Las Vegas, Nevada 89101
     Telephone:     (312) 862-2000                      Telephone:     (702) 471-7432
7    Facsimile:     (312) 862-2200                      Facsimile:     (702) 471-7435
     james.sprayregen@kirkland.com                      ccarlyon@sheacarlyon.com
8    david.seligman@kirkland.com                        jshea@sheacarlyon.com
     sarah.seewer@kirkland.com                          bjohansson@sheacarlyon.com
9

10   Reorganization Counsel                             Special Local Reorganization Counsel
     for GVR                                            for GVR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## RULE 9021 DECLARATION

2

In accordance with Local Rule 9021, counsel submitting this document certifies that these findings and conclusions accurately reflect the court's ruling and that:

3

4    ☒    The Court has waived the requirement of approval under LR 9021.

5    ☐    No parties appeared or filed written objections, and there is no trustee appointed in this case.

6

7    ☐    I have delivered a copy of these proposed findings and conclusions to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, any trustee appointed in this case, and each has approved or disapproved the order, or failed to respond, as indicated below:

8

9

10    ☐    Approved the form of these findings and conclusions

11    ☐    Disapproved the form of these findings and conclusions

12    ☐    Failed to respond

13

14    DATED this 9th day of June 2011            */s/ Sarah H. Seewer*

James H.M. Sprayregen, P.C. (IL No. 6190206)

15    David R. Seligman, P.C. (IL No. 6238064)
Sarah H. Seewer (IL No. 6301437)

16    KIRKLAND & ELLIS LLP
300 North LaSalle St.

17    Chicago, Illinois 60654
Telephone:    (312) 862-2000

18    Facsimile:    (312) 862-2200
james.sprayregen@kirkland.com

19    david.seligman@kirkland.com
sarah.seewer@kirkland.com

20

21    Reorganization Counsel
for GVR

22

23

24                                        # # #

25

26

27

28

K&E 19036176.8